UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| ALICE H. ALLEN, et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>DAIRY FARMERS OF AMERICA, INC.,<br>DAIRY MARKETING SERVICES, LLC,<br>and DEAN FOODS COMPANY,<br><br>               Defendants. | Civil Action No. 5:09-CV-00230 |

## OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH DEAN FOODS COMPANY

Intervenors, Bryan Davis, Reg Chaput, Rendell Tullar, John Gorton, Harold Howrigan, Jr., Louis Aragi, Jr., Clark Hinsdale III, Thomas Quint, and Clement Gervais (collectively "Intervening Farmers"), by and through their undersigned counsel, submit this Opposition to Motion for Preliminary Approval of Proposed Settlement With Dean Foods Company.

### INTRODUCTION AND SUMMARY

The Intervening Farmers are putative class members and have moved to intervene in this action for the purpose of objecting to the proposed settlement with Dean ("Proposed Settlement").[1] The basis for the motion to intervene is set forth in the Intervening Farmers' memorandum of law in support and describes how the terms of the Proposed Settlement will

---

[1] To be clear, should the Court grant Plaintiff's motion for preliminary approval, the Intervening Farmers should be permitted to remain in the case so that they may fully develop their arguments in opposition to the settlement at the final fairness hearing.

negatively impact the Intervening Farmers.[2] For these same reasons, the Proposed Settlement is deficient, fails to meet the applicable standards, and should be rejected. In particular, the Proposed Settlement is deficient not simply because the plaintiff class will not receive enough compensation, but because the Proposed Settlement poses a substantial risk that the Intervening Farmer will actually suffer economic harm as a result of the settlement.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT DOES NOT MEET THE STANDARDS FOR PRELIMINARY APPROVAL.

In order to grant Plaintiff's motion for preliminary approval, the Court must find that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval. . . ." after a final fairness hearing. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. October 16, 1997). This standard is not met here.

#### A. The Proposed Settlement Is Not Based On Informed Negotiations.

Setting aside the issue of monetary compensation, the terms of Section 9.2 of the Proposed Settlement – the injunctive component - demonstrate that the Plaintiffs have not adequately considered the impact that the Proposed Settlement will have on the putative class.[3] Moreover, Plaintiffs' memorandum of law offers only conclusory statements that "[t]he injunctive provisions of the Settlement Agreement constitute additional fair and adequate

---

[2] For the sake of efficiency and so as not to burden the Court with duplicative memoranda, the Intervening Farmers incorporate herein their memorandum of law in support of their motion to intervene and the supporting declarations.

[3] Under this provision, Dean agrees to offer to purchase between 10% and 20% of its raw milk in Order 1, not to exceed 60 million pounds per month, from farmers other than those who belong to DFA or who market their milk through DMS. *See id.*, ¶ 9.2. This provision allows Dean, in its "sole discretion" to determine what the "competitive market price" is for the milk that it offers to buy. *See id.* Finally, it provides Dean with the option to continue this practice at the end of the 30 month period as it sees fit. *See id.*

2

consideration that provides substantial value to the Settlement Class." Mem. at 12. The "substantial value", according to Plaintiffs' is that there will be "greater choice for Northeast dairy farmers and competition into the market for the purchase of raw Grade A milk produced by dairy farmers in the Northeast." *Id.* This single sentence is the sole basis on which Plaintiffs contend that Section 9.2 is a good deal for the putative class.

As explained in the Intervening Farmers' memorandum in support of their motion to intervene, the market for raw milk is complex, and when all of the implications are considered, this is not a good deal for dairy farmers for several reasons. First, DMS will have to find alternative buyers for the milk that Dean will purchase from non-DMS farmers, which will be difficult if not impossible to do without out lowering milk revenues. Either the price of the milk will have to be lowered or the milk will be sold at lower classes (for which DMS charges lower premiums), or at further distances with increased costs, or all of the above. Lower revenues for the cooperatives translate to smaller milk checks for the farmers.

Second, when Dean goes into the market to purchase milk from non-DMS farmers, it will certainly act in its own financial interest and offer prices that are less than what it currently pays to DMS. Indeed, the terms of the Proposed Settlement Agreement appear calculated to ensure that Dean does not pay more than it currently does because it specifically provides that it must only "offer" to purchase this milk at a price that in its "sole discretion, reflects a competitive market price. . ." Proposed Settlement, ¶ 9.2. This language virtually assures Dean that it will not be forced to pay prices higher than it wants to.

Finally, the Proposed Settlement may undermine the strength of the cooperatives by making it harder for the cooperatives to market and sell their milk by possibly inducing some members to leave their cooperative and sell directly to Dean.

Nothing in the Plaintiff's memorandum in support of their motion suggests that these implications were considered in the negotiation process. Thus, the Court cannot find that the Proposed Settlement is the product of informed negotiations.

### B. The Proposed Settlement Grants Preferential Treatment To Segments Of The Class.

The putative class is defined as "all dairy farmers . . . who produced raw Grade A milk in Order 1 and pooled raw Grade A milk in Order 1 during any time frame from January 1, 2002 to the Notice Date." Proposed Settlement, ¶ 2.2. This includes not only farmers who market their milk through DMS, but non-DMS farmers as well. The injunctive relief provision of the Proposed Settlement will take away market opportunities from DMS farmers and give them to non-DMS farmers. Accordingly, the Proposed Settlement improperly treats non-DMS farmers better than DMS farmers.

### C. The Proposed Settlement Is Not Within The Range Of Possible Approval After A Final Fairness Hearing.

The Proposed Settlement can only be approved if the Court finds "that it is fair, reasonable, and adequate." F.R.C.P. § 23(e)(2). At the preliminary approval stage the Court is required to make "a determination that there is what might be termed 'probable cause' to hold a full-scale hearing as to fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). Even under this lesser standard, the Proposed Settlement should not be preliminarily approved because it harms the putitative class, or at least a significant portion of the class. Thus, there is no "probable cause" to believe that the Proposed Settlement is "fair, reasonable, and adequate" under Rule 23(e)(2).

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Intervening Farmers' memorandum in support of their motion to intervene, the Court should deny Plaintiff's motion for preliminary approval. Should the Court grant the motion, it should permit the Intervening Farmers to fully participate in the proceedings as it relates to the Court's consideration of the Proposed Settlement at the final hearing stage.

Dated at Burlington, Vermont this 18th day of January, 2011.

Gary L. Franklin
Kevin M. Henry
Primmer, Piper, Eggleston, Cramer PC
150 S. Champlain Street
P.O. Box 1489
Burlington, VT 05402-1489
Tel: (802) 864-0880

Attorneys for Bryan Davis, Reg Chaput, Rendell Tullar, John Gorton, Harold Howrigan, Jr., Louis Aragi, Jr., Clark Hinsdale III, Thomas Quint, and Clement Gervais.

B04102-00001\Doc #: 30