U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 MAY -4 PM 1: 26

CLERK

BY_____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ALICE H. ALLEN, LAURANCE E. ALLEN,    )
d/b/a Al-lens Farm, GARRET SITTS,     )
RALPH SITTS, JONATHAN HAAR and        )
CLAUDIA HAAR, on behalf of themselves )
and all others similarly situated,    )
                                      )
            Plaintiffs,               )
                                      )
        v.                            )    Case No. 5:09-cv-230
                                      )
DAIRY FARMERS OF AMERICA, INC.,       )
DAIRY MARKETING SERVICES, LLC,        )
and DEAN FOODS COMPANY,               )
                                      )
            Defendants.               )

**OPINION AND ORDER GRANTING PRELIMINARY APPROVAL
OF REVISED DEAN SETTLEMENTAND DENYING MOTIONS TO
INTERVENE**
(Docs. 160, 189, 190, 191, 192, 294)

This matter came before the court on April 15, 2011 for a hearing on Plaintiffs'
motion for an order granting preliminary approval of the settlement they reached on
December 7, 2010 with Defendant Dean Foods Company ("Dean"). (Doc. 160.)   In this
lawsuit, Plaintiffs, on behalf of themselves and other dairy farmers who produced and
pooled raw Grade A milk in Federal Milk Marketing Order 1 ("Order 1"), allege that
Defendants engaged in anticompetitive conduct in the dairy industry.  Defendants deny
Plaintiffs' allegations.

Since the court's April 15th hearing, Plaintiffs and Dean have modified the Dean
Settlement in several material respects. First, they eliminated the injunctive relief set
forth in ¶ 9.2 of the Dean Settlement, advising the court that Dean planned to alter its
business practices with or without the injunctive relief. Thus far, ¶ 9.2 has been the sole
source of objections to the Dean Settlement. Second, they have clarified the ambiguity

the court identified in the definition of the proposed settlement class.[1]  Finally, they have revised their proposed notices to settlement class members to include additional financial information, permitting those class members to better evaluate their individual recoveries as a result of the Dean Settlement based upon a sliding scale of potential attorney's fees awards.  For the reasons set forth below, the court hereby GRANTS preliminary approval to the Dean Settlement.

### A. Procedural Background.

Plaintiffs and Dean filed their motion for preliminary approval of the Dean Settlement on December 23, 2010.  In addition to preliminary approval of the Dean Settlement, Plaintiffs request: (1) certification of the proposed settlement class; (2) appointment of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), and Baker Hostetler LLP ("Baker Hostetler")[2] as settlement class counsel; (3) approval of the notice to be provided to settlement class members; (4) authorization to disseminate the notice to settlement class members and publish the summary notice; (5) a hearing to determine whether the proposed settlement should be granted final approval and whether the application by class counsel for an award of attorney's fees and payment of costs and expenses should be granted; and (6) a stay of all proceedings against Dean.

On March 16, 2011, the court granted the Vermont Attorney General ("VT-AG") permission to file an amicus brief in this action.  At a March 24, 2011 hearing, the court directed the parties to cooperate in providing information sufficient to assist the VT-AG in analyzing the Dean Settlement.

On March 25, 2011, Dean notified each attorney general whose state is located within Order 1, the proposed geographic market, of the Dean Settlement.  Each of the

---

[1] Plaintiffs and Dean clarified the definition of "Settlement Class" but not the definition of "Settlement Class Member." (Doc. 294-1 at 8 ¶ 1.18).  The court considers this a mere oversight and directs Plaintiffs and Dean to correct it.

[2] At the April 15th hearing, Plaintiffs advised the court that their litigation team is now associated with Baker Hostetler LLP.

2

notified attorneys general will have an opportunity to present his or her concerns regarding the Dean Settlement at the court's fairness hearing.

Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") oppose the Dean Settlement based upon the injunctive relief set forth in ¶ 9.2[3] which has been removed from the Dean Settlement. In addition, four groups have moved to intervene in an effort to oppose the Dean Settlement. With the exception of the Maine Intervenors' motion, each motion to intervene is again premised upon an objection to ¶ 9.2 of the Dean Settlement Agreement.

**B. The Dean Settlement Agreement.**

As revised, the Dean Settlement Agreement identifies the proposed settlement class as follows:

> All dairy farmers, whether individuals, entities or members of cooperatives, who produced raw Grade A milk in Order 1 and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the Notice Date. Defendants' current officers and directors are excluded from the Settlement Class.

(Doc. 294-1, Exhibit A at 7-8.) Paragraph 9.2 of the Dean Settlement Agreement sets forth the settlement funds:

> 9.1      Within fifteen calendar days after the entry of the Preliminary Approval Order, the Settling Defendant [Dean] will deposit a sum of thirty million United States dollars ($30,000,000) into an escrow account (the "Settlement Fund"), held and administered by Eagle Bancorp, Inc.[ ]

---

[3]  Paragraph 9.2 stated that:

> Not later than six months following the Effective Date, [Dean] will offer to purchase, at a price that, in [Dean's] sole discretion, reflects a competitive market price, from marketers other than [DFA] or [DMS], raw grade A milk that meets or exceeds [Dean's] quality specifications, including producer's certification that milk is rBST-free, in an aggregate quantity of at least 10% and up to 20% of Settling Defendant's monthly raw grade A milk purchases for its plants in Order 1, such quantity not to exceed 60,000,000 pounds (600,000 cwt) per month, for delivery at [Dean's] processing plants in East Greenbush, NY; Franklin, MA; and West Lynn, MA. [Dean] shall have independent discretion to continue or discontinue making such offers to purchase at such levels as it determines at the end of 30 months from the first purchase pursuant to this program.

Pursuant to the settlement, Dean admits no wrongdoing and Plaintiffs agree, on behalf of the proposed settlement class, that once the Dean Settlement Agreement becomes final, their claims against Dean will be released. Until such release, Dean has agreed to respond to reasonable discovery requests according to its role as a non-party.

## C. The Standard for Granting Preliminary Approval.

In determining whether to grant preliminary approval, the court starts with the proposition that "there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citations omitted). Settlements generally advance the public interest because they minimize the expense of litigation, avoid the expenditure of judicial resources, and ensure injured parties' recoveries without the time, expense, and inconvenience of litigation.

Preliminary approval is merely the first step in a multi-step process in which the Dean Settlement will be scrutinized by both the court and class members. *See* Fed. R. Civ. P. 23(e). It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the Dean Settlement can voice those objections. "Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (quoting *In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)).

Preliminary approval "is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006) (citations omitted). As one court observed:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or

4

> excessive compensation for attorneys, and appears to fall within the range
> of possible approval, the court should direct that notice under Rule 23(e) be
> given to the class members of a formal fairness hearing, at which
> arguments and evidence may be presented in support of and in opposition
> to the settlement.

*Prudential Sec. Litig.,* 163 F.R.D. at 209 (quoting *Manual for Complex Litig.* ("*MCL*") §

30.41 (3d ed. 1995)).  After granting preliminary approval, the court remains free to

reject a settlement in the event it determines that the settlement is not "fair, reasonable,

and adequate."  Fed. R. Civ. P. 23(e).

### D. The Dean Settlement Satisfies the Requirements for Preliminary Approval.

Plaintiffs and Dean represent that the Dean Settlement was reached after vigorous,

arm's-length negotiations between highly experienced counsel.  They contend that, in

preparation for the negotiations, they conducted a comprehensive examination of the

facts, reviewed voluminous documents produced in discovery, and briefed and argued

Defendants' motions to dismiss.  The Dean Settlement therefore "appears to be the

product of serious, informed, non-collusive negotiations."  *MCL* § 30.41 (3d ed. 1995).

In addition, a thirty million dollar settlement at this stage of the litigation "does

not disclose grounds to doubt [its] fairness" or that other "obvious deficiencies" are

present.  *Id.*  Plaintiffs represent that their research reveals that this is the largest,

reported antitrust settlement in the history of the District of Vermont.  In a forty-one page

decision issued after extensive briefing and a lengthy hearing, the court analyzed

Plaintiffs' claims against Dean and the other defendants to determine whether they should

be dismissed.  Although the court acknowledged that Dean had pointed out certain

deficiencies in Plaintiffs' claims against it, and had asserted potentially viable defenses

such as the statute of limitations, the court determined that dismissal of Plaintiffs' claims

against Dean without the opportunity for discovery was inappropriate.  Accordingly, in

evaluating whether a settlement of thirty million dollars is sufficient, the court has

considered both the strengths and weaknesses of Plaintiffs' claims against Dean.

Moreover, were the court to deny preliminary approval to the Dean Settlement, it

would be depriving settlement class members of the right to even *consider* the Dean

Settlement. It would also force Dean, a party that is willing to settle on terms Plaintiffs consider favorable, to proceed with costly and protracted litigation. Neither the controlling case law nor the applicable rules and statutes favor such an approach. The Dean Settlement thus satisfies the relatively low threshold required for preliminary approval. A full review of the Dean Settlement shall take place at the court's "fairness hearing." Proposed settlement class members should at least have the opportunity to consider whether they believe the Dean Settlement is fair, reasonable and adequate.

The court thus GRANTS Plaintiffs' Motion for Preliminary Approval of the Dean Settlement, and will set a fairness hearing at which it will consider whether the Dean Settlement is "fair, reasonable, and adequate" pursuant to Fed. R. Civ. P. 23(e)(2).

### E. DFA's and DMS's Standing to Oppose the Dean Settlement.

DFA and DMS initially opposed the Dean Settlement, arguing that ¶ 9.2 would interfere with their contracts with Dean, notwithstanding Dean's assurances that it has evaluated its contractual obligations and concluded that it can comply with both its obligations to DFA and DMS and with ¶ 9.2. As ¶ 9.2 has been removed the Dean Settlement, DFA's and DMS's objections are now moot.

In any event, non-settling defendants generally do not have standing to object to settlements:

> [A] nonsettling defendant lacks standing to object to a court order approving a partial settlement because a nonsettling defendant is ordinarily not affected by such a settlement. . . . "This rule advances the policy of encouraging the voluntary settlement of lawsuits." *Waller [v. Fin. Corp. of Am.]*, 828 F.2d [579,] 583 [(9th Cir. 1987)]. Because, however, courts also have a duty to protect the rights of the parties before them, there is a recognized exception to this general rule which "permit[s] a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement." *Id.*

*Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993); *see also* 4 *Newberg on Class Actions* § 11:55 (4th ed. 2002) ("*Newberg*") ("[N]onsettling defendants in a multiple defendant litigation context have no standing to object to the fairness or adequacy of the settlement by any other defendants[.]").

Formal legal prejudice "has only been found to exist in rare circumstances, such as when the settlement agreement strips a non-settling party of a claim for contribution or indemnification, or invalidates a non-settling party's contract rights." *Armco, Inc. v. N. Atl. Ins. Co. Ltd.*, 1999 WL 173579, at *1 (S.D.N.Y. Mar. 29, 1999) (citations omitted). Moreover, "[m]ere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti v. ANR Freight Sys., Inc.,* 982 F.2d 242, 247 (7th Cir. 1992) (citation omitted). Here, DFA and DMS have not and cannot allege that the Dean Settlement strips them of claims for contribution or indemnification, or invalidates their contractual rights. Accordingly, DFA and DMS do not have standing to oppose preliminary approval of the Dean Settlement.

**F. Motions to Intervene.**

Pending before the court are four motions to intervene filed by individuals who presently are not parties to this case. These individuals seek to intervene as of right, pursuant to Fed. R. Civ. P. 24(a)(2) and, in the alternative, request permissive intervention pursuant to Fed. R. Civ. P. 24(b). The first group of proposed intervenors consists of farmers and a dairy organization from Maine (Barry E. Higgins, Sr., Mary G. Higgins, Victor L. Bissell, Jr. and the Maine Dairy Industry Association) (the "Maine Intervenors").

The second group calls itself the "Intervening Farmers"—a group of nine farmers, partnerships, and other entities that own and operate farms in Vermont, New Hampshire, Maine, and Massachusetts. All market and sell milk through DMS, and all but one are members of dairy cooperatives that pool some, if not all of their milk in Order 1.

The third group has called itself the "Intervening Farms"—a group of nine farmers, partnerships, and other entities that own and operate farms in New York. (Doc. 190.) These individuals and entities market and sell milk through "direct and/or indirect relationships with DMS and DFA." (Doc. 190-1 at 3.)

The fourth and final group identifies itself as the "Intervenor Dairy Farmers" and consists of two Pennsylvania farmers who have pooled their milk in Order 1, and sell their milk through DMS.

### 1. The Maine Intervenors' Motion (Doc. 192.)

The Maine Intervenors acknowledge that they are located outside the geographical limits of Order 1. They nonetheless assert that they should be included in the potential settlement class because they are fully regulated by, and they pool their milk into, Order 1. They contend that a proper, market-based definition of the term "produce" would allow them to be included in the proposed settlement class so that they could share in the Dean Settlement, and thereafter pursue this litigation.

The Maine Intervenors acknowledge that they have been aware of this lawsuit since its inception in October 2009. To explain why they have not sought to intervene previously, the Maine Intervenors contend that they reasonably assumed that they were class members. However, as Plaintiffs point out, the initial Complaint and each version of the Complaint thereafter is replete with references to a geographic market that excludes Maine, and specifically identifies the states that are included.[4] Accordingly, the court finds that the Maine Intervenors were on notice that they were excluded from the proposed class long before the Dean Settlement.[5]

---

[4] Plaintiffs' initial Complaint defined the proposed class as: "All dairy farmers . . . who produced Grade A milk within Order 1 and sold Grade A milk through DMS in Order 1[.]" (Doc. 1 ¶ 28, Doc. 16 ¶ 28.) The Revised Consolidated Amended Class Action Complaint defines the class as "All dairy farmers . . . who produced and pooled raw Grade A milk in Order 1[.]" (Doc. 117 ¶ 21.) Each version of the Complaint identifies the relevant geographic market as "consist[ing] of Federal Milk Market Order 1, which covers areas in Delaware, District of Columbia, Connecticut, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, and Virginia." (Doc. 1 ¶ 35, Doc. 16 ¶ 35.) The court decided Defendants' motions to dismiss based upon these proposed definitions. *See* Doc. 25 at 16 n.9, Doc. 25-20, Doc. 81 at 3, 14-16. Against this backdrop, the Maine Intervenors' belief that they were part of the proposed class was not reasonable.

[5] *See Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232, 233 (2d Cir. 1996) ("Among the most important factors in a timeliness decision is the length of time the applicant knew or should have known of his interest before making the motion" and denying intervention where notice of

"Nonparties to a settlement generally do not have standing to object to the settlement of a class action." 4 *Newberg* § 13.69; *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007) (finding that non-class-member intervenor lacked interest in the lawsuit and could not object to a proposed settlement agreement and class certification). The proper procedural vehicle for non-class members to interject their opposing views is "via intervention under Rule 24." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989). There remain, however, several impediments to the Maine Intervenors' entry into this lawsuit, as courts "usually reject the outsiders' attempts to enter the litigation during the settlement phase." *Id.* at 285.

Rule 24(a)(2) allows intervention as a matter of right when all four of the following conditions are met:

> (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). "Failure to meet any one of these requirements suffices for a denial of the motion." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197-98 (2d Cir. 2000).

To determine whether a motion to intervene is timely, courts generally consider the following factors:

> (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention. Generally, the court's analysis must take into consideration the totality of the circumstances.

---

potential grounds for intervention was "present in the litigation from the very beginning[.]" ) (internal quotation marks and citation omitted).

*Id.* at 198 (internal citations omitted). Application of these factors to the Maine Intervenors' motion reveals that it cannot be considered timely as the fifteen month delay in question is not only unreasonable, but prejudicial. *See United States v. State of N.Y.*, 820 F.2d 554, 557 (2d Cir. 1987) (finding untimely a motion to intervene that was filed fifteen months after proposed intervenor knew or should have known of his interest in the case).

In finding prejudice, the court first observes that the Maine Intervenors seek to radically change the definition of the proposed class and the geographic market encompassing Plaintiffs' antitrust claims. The geographic market in this lawsuit has been the subject of extensive motion practice before the court, and the focus of time consuming and expensive discovery among the parties, and from third parties who have relevant information. All parties would be prejudiced if this process started anew. "The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." 7C Wright & Miller, *Federal Practice & Procedure* § 1916 (3d ed. 2010). Here, if the Maine Intervenors are permitted to join the lawsuit, prejudice will inevitably result. On this point, Plaintiffs, Dean, DFA, and DMS are in agreement.

Second, there is no authority for altering a proposed class definition or a proposed geographic market solely to enable individuals who are not putative class members to join in a settlement. *See Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("Intervenors must take the pleadings in a case as they find them.") (citations omitted). The Maine Intervenors do not claim otherwise and yet this is the relief they request.

Third, additional prejudice may be found where intervention would destroy the settlement reached by the parties, "sending them back to the drawing board[.]" *Holocaust Litig.*, 225 F.3d at 199. The Dean Settlement was negotiated and entered into with the understanding that the settlement will benefit the proposed settlement class of approximately 9,000 to 10,000 dairy farmers who produce and pool their raw Grade A

10

milk in Order 1. Expanding that class to all dairy farmers who pool into Order 1, regardless of where they are located, would substantially diminish the expected recovery of settlement class members and would require renegotiation of the scope of Dean's release.

Finally, the Second Circuit has held that if intervenors "remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied." *Id.* Even where they face "many significant obstacles" in filing their own lawsuit, permission to intervene need not be granted. *Id.* Because nothing prevents the Maine Intervenors from filing their own lawsuit against Dean, DFA, and DMS, they have not established prejudice if their motion is denied. To the contrary, the Maine Intervenors will "possess the same legal rights against [Dean] whether or not the Settlement Agreement [is] approved." *Cent. States*, 504 F.3d at 244.

For the foregoing reasons, the court hereby DENIES the Maine Intervenors' motion to intervene as of right. For the same reasons, the court DENIES the Maine Intervenors' motion for permissive intervention. *See H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) ("Permissive intervention . . . is discretionary with the trial court"); *see also* Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

## 2. The Remaining Motions to Intervene (Docs. 189, 190, 191).

The remaining intervenors do not seek to intervene in the lawsuit itself, but only in the preliminary approval process. They oppose ¶ 9.2 of the Dean Settlement, claiming that its injunctive relief will disrupt their business relationships with DFA and DMS. Because ¶ 9.2 has been eliminated from the Dean Settlement, this objection is now moot. To the extent the remaining intervenors believe that Plaintiffs and proposed class counsel cannot adequately represent their interests, they may present their concerns at the court's fairness hearing. They have not demonstrated that, without intervention, they will be unable to protect their interests. *See MasterCard Int'l Inc.*, 471 F.3d at 389.

Accordingly, their motions to intervene as of right under Rule 24(a)(2) are DENIED. Denial of permissive intervention under Rule 24(b) is appropriate for the same reasons.

### G. Certification of Settlement Class.

"Although Fed. R. Civ. P. 23 does not explicitly provide for certifying settlement-only classes, the district court derives its authority to do so from Fed. R. Civ. P. 23(d), which authorizes the court to 'issue orders that [ ] determine the course of proceedings.'" *Chin v. RCN Corp.*, 2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12, 2010) (citing 4 *Newberg* § 11.27). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

The party seeking certification "bears the burden of establishing the existence of all four Rule 23(a) requirements, often referred to as the criteria of 'numerosity, commonality, typicality, and adequacy.'" *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350 (E.D.N.Y. 2006) (citations omitted); *see also* Fed. R. Civ. P. 23(a).[6]

1. Numerosity.

In determining whether a class is so numerous that joinder of all class members is impracticable, joinder is "generally presumed to be impracticable when a putative class exceeds 40 members." *Menkes*, 270 F.R.D. at 90 (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). Here, the proposed settlement class consists of approximately

---

[6] Fed. R. Civ. P. 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable [numerosity];
> (2) there are questions of law and fact common to the class [commonality];
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and
> (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

9,000 to 10,000 dairy farmers, dispersed throughout different states. The court finds that joinder of each of these dairy farmers as a party to this case will be difficult, inconvenient, and expensive, and will unduly complicate and delay the resolution of this lawsuit. Joinder is thus impracticable and the numerosity requirement has been satisfied.

    2. Commonality.

    Commonality requires the existence of questions of law or fact common to the class. It is "not a demanding standard, as it 'is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims.'" *Id.* (quoting *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 116 (D. Conn. 2009)). "Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2)." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996) (citing cases).

    Rule 23(b)(3) also requires that common questions of law and fact predominate over individual questions. This "predominance" requirement is met "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001).

    Plaintiffs allege, among other things, a conspiracy to monopolize/monopsonize; a price-fixing conspiracy; and a conspiracy to restrain trade. Among the common questions of law and fact are whether Defendants conspired to fix, stabilize, maintain and/or artificially lower the over-order premiums paid to dairy farmers for raw Grade A milk, and whether Defendants entered into agreements to foreclose those dairy farmers' access to milk bottling and processing plants. Each putative class member "has a common interest in proving the existence, scope, effectiveness and impact of [those] conspirac[ies], as well as the appropriate injunctive and monetary relief to remedy the injury caused by the conspirac[ies]." *NASDAQ*, 169 F.R.D. at 510. There are thus

sufficient common questions of fact and law to satisfy the requirements of Rules 23(a)(2) and 23(b)(3).

3. Typicality.

Rule 23(a)(3) requires Plaintiffs' claims to be "typical" of the class. This requirement is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation and quotation marks omitted). Typicality "in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) (citation and internal quotation marks omitted). Plaintiffs' claims in this case meet the typicality requirement of Rule 23(a)(3).

4. Adequacy.

To ensure adequacy, a court determines whether "(1) the class representative's interests are not antagonistic to other class members and the class representative's character assures a vigorous prosecution; and (2) the class representative's counsel possesses the competence to undertake the litigation." *Id.* (citations omitted). This inquiry focuses on "uncovering 'conflicts of interest between named parties and the class they seek to represent.'" *Flag*, 574 F.3d at 35 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks and citation omitted). "[T]he great weight of authority in price-fixing conspiracy cases, absent special circumstances such as arbitration, holds that the victim of one alleged co-conspirator is adequate to prove liability for victims of all co-conspirators." *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 112-13 (S.D.N.Y. 2010) (citing cases). To warrant denial of class certification, "it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the

14

litigation." *NASDAQ*, 169 F.R.D. at 514-15.  At this juncture, a conflict of this magnitude has not been identified.

Rule 23(a)(4) also requires the court to find that Plaintiffs' attorneys are "qualified, experienced and generally able to conduct the proposed litigation." *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996) (citation omitted). Plaintiffs' attorneys, Cohen Milstein and Baker Hostetler, have substantial experience in complex antitrust and class action litigation, and have vigorously prosecuted this action to date.  Plaintiffs have thus satisfied the adequacy requirement.

5. Rule 23(b).

Rule 23(b) provides that a class action may be maintained if Rule 23(a) is satisfied and if "the court finds that the questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The court has already found that the predominance requirement has been satisfied.  The remaining issue is whether a class action is "the most 'fair and efficient' method of resolving this case."  *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) (citing Rule 23(b)(3)).  In analyzing that question, courts consider:

> (1) the interest of the class members in maintaining separate actions; (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the difficulties likely to be encountered in the management of a class action."

*Id.* (quoting Rule 23(b)(3)).

Class action litigation in this case avoids multiple trials on the same claims in multiple forums with the possibility of inconsistent results.  Conservation of judicial resources favors class action litigation, both on the questions of liability and damages. The court need not address manageability at this point.  *See Amchem*, 521 U.S. at 620 (holding that when assessing a settlement-only class certification, a district court need not

inquire about manageability pursuant to Rule 23(b)(3)(D) because there will be no trial). Consequently, Plaintiffs have shown that the relevant requirements of Rule 23(b)(3) have been met.

Having met the requirements of Rule 23(a) and (b)(3), the court therefore certifies the class for purposes of the Dean Settlement only. Certification of the settlement class will be considered further at the court's fairness hearing.

## H. Appointment of Settlement Class Counsel.

The "role of settlement counsel is to assist the [c]ourt in the process leading to the approval of the settlement." *In re Holocaust Victim Assets Litig.*, 2010 WL 3851697, at *1 (E.D.N.Y. Sept. 24, 2010) (citation omitted). Courts will approve class counsel for purposes of settlement if they "will fairly and adequately protect the interests of the Settlement Class[ ]." *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3253037, at *1 (S.D.N.Y. Nov. 8, 2006).

At the preliminary approval stage, Plaintiffs have established that Cohen Milstein and Baker Hostetler will fairly and adequately protect the interests of the settlement class. Accordingly, these firms are appointed as class counsel for purposes of the Dean Settlement only. Although certain intervenors have questioned whether Plaintiffs' counsel have a conflict of interest and can adequately represent them,[7] the revised Dean Settlement no longer contains the provision which gave rise to that claim. If settlement class members wish to pursue a conflict of interest claim nonetheless, they will have an opportunity to do so at the court's fairness hearing.

## I.   The Form and Manner of Notice to the Class.

Plaintiffs propose that notice to the settlement class be provided in two ways. First, notice will be mailed to each member "who can be identified with reasonable effort by the administrator of Federal Milk Marketing Order 1, as well as to anyone who

---

[7] The court notes that another federal court recently rejected an identical conflict of interest claim in *In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747, at *6-7 (E.D. Tenn. Sept. 7, 2010).

requests notice." Second, "a Summary Notice of the proposed settlement will be published in the following four publications: *American Agriculturalist*; *Country Folks* (Eastern edition); *Farming: The Journal of Northeast Agriculture*; and *Progressive Dairyman* (Northeast edition)." (Doc. 160-1 at 35.) Plaintiffs have attached the proposed notices as exhibits to their motion.

As indicated above, Plaintiffs have revised the proposed class notice to exclude the phrase "Defendants' alleged co-conspirators" from the settlement class definition, and have clarified the expected recovery by each class member, dependent upon a sliding scale of reasonable attorney's fees awards and expenses. They have also correspondingly revised the summary notice. As revised, the two notices provide settlement class members with a fair understanding of the action, the parties, and the nature of the settlement, by asking and answering questions that putative settlement class members might have.

In addition, the notices provide the date and time of the court's fairness hearing and information about the rights of members of the settlement class to attend and object at that hearing. Contact information for class counsel and a website and toll-free number where possible class members can obtain additional information are also provided. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (observing that notice must be reasonably calculated to apprise the class of the pending action and to afford class members an opportunity to object). Accordingly, the form and manner of the notice proposed by the settling parties fulfill the requirements of Rule 23, and the court APPROVES such notice, as well as AUTHORIZES dissemination of the revised notice to settlement class members and publication of the revised summary notice.

## CONCLUSION

For the foregoing reasons, the court:

1. GRANTS Preliminary Approval of the Dean Settlement Agreement, as revised (Doc. 294-1);

2. DENIES the motions to intervene by the Maine Intervenors, the Intervening Farmers, the Intervening Farms, and the Intervenor Dairy Farmers;

3. CERTIFIES the proposed settlement class for purposes of the Dean Settlement only;

4. APPOINTS Cohen Milstein and Baker Hostetler as class counsel for purposes of the Dean Settlement only;

5. APPROVES the forms of class notice to be provided to the settlement class members, as revised (Doc. 294-2), and the summary notice, as revised (Doc. 294-4), and AUTHORIZES dissemination of the revised notice to settlement class members and publication of the summary notice;

6. STAYS all proceedings against Dean; and

7. SCHEDULES a final fairness hearing for Monday, July 18, 2011 at 9:30 A.M. to determine whether the Dean Settlement is fair, reasonable, and adequate.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this ___4ᵗʰ___ day of May, 2011.

Christina Reiss, Chief Judge
United States District Court

18