UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | | |
|---|---|---|
| ALICE H. ALLEN AND LAURENCE E. ALLEN, | ) | |
| d/b/a Al-lens Farm, | ) | |
| GARRET SITTS and RALPH SITTS, and | ) | |
| JONATHAN and CLAUDIA HAAR | ) | |
| on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs. | ) | |
| | ) | |
| v. | ) | Docket No. 5:09-cv-00230-cr |
| | ) | |
| DAIRY FARMERS OF AMERICA, INC., | ) | |
| DAIRY MARKETING SERVICES, LLC, and | ) | |
| DEAN FOODS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF SETTLEMENT WITH DEAN FOODS COMPANY**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................. 1

        A.      The Dean Settlement .................................................................. 1

                1.      The Settlement Class ...................................................... 2

                2.      The Settlement Amount .................................................. 2

                3.      Release ............................................................................ 2

        B.      Preliminary Approval and Notice to the Class ......................... 3

III.    STANDARD FOR APPROVAL OF CLASS ACTION SETTLEMENTS .......... 4

IV.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE
        ................................................................................................................ 5

        A.      Complexity, Expense, and Likely Duration of the Litigation .................... 5

        B.      Reaction of the Class to the Settlement .................................... 6

        C.      Stage of the Proceedings and Amount of Discovery Completed .............. 7

        D.      Risk of Establishing Conspiracy, Impact and Damages and Maintaining a
                Class Action Through Trial ...................................................... 9

        E.      Ability of the Defendant to Withstand Greater Judgment ........................ 9

        F.      Reasonableness of the Settlement Fund in Light of the Best Possible
                Recovery and All the Attendant Risks of Litigation ............................... 10

        G.      Additional Factor ..................................................................... 13

V.      PLAN OF ALLOCATION .................................................................. 14

        A.      Method of Calculation ............................................................ 14

        B.      Time of Distribution of Net Settlement Funds ....................... 14

        C.      The Plan of Allocation is Fair, Reasonable, and Adequate ................... 15

VI.     CONCLUSION ................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................6, 14

*In re AOL Time Warner ERISA Litig.*,
No. 02-CV-8853, 2006 WL 2789862 (S.D.N.Y. 2006)........................................10

*In re Austrian and German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................7

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ...............................11

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 5, 2010).............6

*Cavalieri v. General Elec. Co.*,
No. 06-CV-315, 2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009) ..............................10

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992).........................................................................13

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................... *passim*

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).................................................................................4, 7

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*
No. 98-CV-4318, 2001 WL 709262 (S.D.N.Y. June 22, 2001) ..............................6

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) .....................................................................7

*Fisher Bros., Inc. v. Mueller Brass Co.*,
630 F. Supp. 493 (E.D. Pa. 1985) ..........................................................................11

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................5

*Guardians Ass'n of New York City Police Dept. v. Civil Serv. Comm'n of City of New York*,
527 F. Supp. 751 (S.D.N.Y. 1981)............................................................................8

ii

*In re Initial Pub. Offering Sec. Litig,*
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)...................................................................12

*Joel A. v. Giuliani,*
   218 F.3d 132 (2d Cir. 2000)...........................................................................4

*Klein v. PDG Remediation, Inc.,*
   No. 95-CV-4954, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ...................................6

*Lazy Oil Co. v. Witco Corp.,*
   95 F. Supp. 2d 290 (W.D. Pa. 1997)................................................................10

*In re Linerboard Antitrust Litig.,*
   296 F. Supp. 2d 568 (E.D. Pa. 2003) ...............................................................9

*In re Linerboard Antitrust Litig.,*
   321 F. Supp. 2d 619 (E.D. Pa. 2004) ..............................................................11

*In re Lloyd's Am.  Trust Fund Litig.,*
   No. 96-cv-1262, 2002 WL 31663577 (S.D.N.Y. 2002) ........................................15

*Maley v. Del Global Techs. Corp.,*
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................5

*In re Merrill Lynch Tyco Research Sec. Litig.,*
   249 F.R.D. 124 (S.D.N.Y. 2008) ....................................................................12

*Munsey Trust v. Sycor, Inc.,*
   457 F. Supp. 924 (S.D.N.Y. 1978)...................................................................8

*In re NASDAQ Market-Makers Antitrust Litig.,*
   187 F.R.D. 465 (S.D.N.Y. 1998) ("*NASDAQ II*") ...............................................5

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972)..........................................................................11

*In re Painewebber Ltd. P'ship Litig.,*
   171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................13

*Perry v. FleetBoston Fin. Corp.,*
   229 F.R.D. 105 (E.D. Pa. 2005)......................................................................10

*In re Prudential Sec. Ltd. P'ships Litig.,*
   MDL No. 1005, 1995 U.S. Dist. LEXIS 22103 (S.D.N.Y. Nov. 20, 1995) ............12

*In re Salomon Inc. Sec. Litig.,*
   No. 91-CV-5442, 1994 U.S. Dist. LEXIS 8038 (S.D.N.Y. June 15, 1994) .......7, 13

*Schwartz v. Novo Industri A/S*,
   119 F.R.D. 359 (S.D.N.Y. 1988) ...........................................................................8

*In re Shopping Carts Antitrust Litig.*,
   MDL No. 451, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ........................................9

*In re Southeastern Milk Price Fixing Antitrust Litig.*,
   No. 08-md-1000 (E.D. Tenn.)................................................................................15

*Taft v. Ackermans*,
   No. 02-cv-7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan 31, 2007) ...............15

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
   No. 01-CV-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .......................4, 9

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06-cv-13761, 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008)...........15

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d. 503 (E.D.N.Y. 2003) ...................................................................6

*In re Vitamins Antitrust Litig.*,
   No. 99-197, 2000 WL 1737867 (D.D.C. March 31, 2000)......................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..............................................................................4, 5, 7

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985)..........................................................................9

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)......................................................................................4

*Weseley v. Spear, Leeds & Kellogg*,
   711 F. Supp. 713 (E.D.N.Y. 1989) ..........................................................................5

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure 23(e) ........................................................................1, 4

MANUAL FOR COMPLEX LITIG., THIRD § 30.47 (2003) ..................................................16

3 Newberg & Conte, Newberg on Class Actions § 12.10 (1992)............................. 15-16

4 Newberg on Class Actions § 11.41 ..............................................................................6

## I.   INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff class representatives[1] (collectively "Plaintiffs"), on behalf of themselves and the certified Dean Settlement Class, respectfully submit this Memorandum in Support of their Motion for Final Approval of the settlement with Defendant Dean Foods Company ("Dean").[2] The April 29, 2011 Revised Settlement Agreement, if finally approved by the Court, would secure a $30 million cash payment for the benefit of Dean Settlement Class and would resolve this litigation with Dean.  Copies of the notice have been sent to 9,067 potential class members.  Only two have objected to the settlement (four individuals opted out of the class by the June 27, 2011 deadline for doing so).

For the reasons set forth below, the Settlement is fair, reasonable, adequate, and in the best interest of Dean Settlement Class Members, and Plaintiffs respectfully request that the Court grant their request for final approval of the Settlement.  A proposed Judgment and Final Order is attached hereto as Exhibit 1.

## II.   BACKGROUND

### A.   The Dean Settlement

After extensive negotiations, during which the merits of each party's positions were thoroughly discussed, evaluated, and negotiated, a settlement was reached between the Plaintiffs and Dean.   The discussions were founded on a full understanding of the strengths and weaknesses of the case, based, *inter alia*, on information gleaned from pre-filing investigations

---

[1] The Plaintiff class representatives are Alice H. Allen and Laurence E. Allen, Garret Sitts and Ralph Sitts, and Jonathan Haar and Claudia Haar.

[2] The remaining Non-Settling Defendants are Dairy Farmers of America Inc. ("DFA") and Dairy Marketing Services LLC ("DMS").

and discovery as well as an extensive review of documents and deposition testimony.  The basic

terms of the Settlement Agreement include:

### 1.      The Settlement Class

The Settlement Agreement defines a Dean Settlement Class as follows:

> All dairy farmers, whether individuals, entities or members of cooperatives, who produced raw Grade A milk in Order 1 and pooled raw Grade A milk on Order 1 during any time from January 1, 2002 to the Notice Date.  Defendants' current officers and directors, and Defendants' alleged co-conspirators are excluded from the Settlement Class.

Settlement Agreement ¶ 2.2.  The Dean Settlement Class was certified for settlement purposes by

this Court in its May 4, 2011 Order.  (Dkt. No. 297).

### 2.      The Settlement Amount

The Settlement Agreement with Dean provides that Dean will pay thirty million United

States dollars ($30,000,000) for the benefit of the Settlement Class.  This amount was deposited

in an Escrow Account, following this Court's May 4, 2011 Order preliminarily approving the

Dean Settlement Agreement and is available for distribution.[3]

### 3.      Release

In exchange for the above consideration from Dean, Plaintiffs have agreed for themselves

and on behalf of the putative Settlement Class to release and discharge Dean from any and all

claims against Dean arising out of, or related to, the facts or circumstances occurring from

January 1, 1995 through and including the Effective Date of the Settlement that were alleged in

Plaintiffs' Amended Class Action Complaint filed on January 21, 2010, in Plaintiffs'

Consolidated Amended Class Action Complaint filed on September 29, 2010, or in Plaintiffs'

---

[3]      The Settlement Agreement allows Dean to reduce the Settlement Amount based on the percentage of the Settlement Class that elects to opt out from the Settlement Agreement; the reduction would be calculated based on the percentage of opt outs' raw Grade A milk sales in Order 1 relative to total sales by the Settlement Class in Order 1.  Settlement Agreement ¶ 11.1.  Because there were only four eligible class members that elected to opt-out of this settlement, *see infra* Section IV(B), this reduction will be de minimus.

Revised Consolidated Amended Class Action Complaint filed on October 15, 2010, including, but not limited to, Dean's purchase of, or failure or refusal to purchase, raw Grade A milk that was produced in and pooled on Federal Milk Marketing Order 1.  Settlement Agreement ¶ 8.1. The release shall cover both claims that were asserted and claims that could have been asserted.

The Settlement Agreement, however, does nothing to abrogate the rights of any member of the putative Litigation Class or Settlement Class to recover from any other Defendant for the alleged participation by Dean in a conspiracy to depress the prices of raw Grade A milk during the relevant time period.  In addition, this Settlement Agreement does not release any claims brought on behalf of the Southeast dairy farmer class certified by Judge J. Ronnie Greer in *In re Southeastern Milk Antitrust Litigation,* No. 2:08-MD-1000 (E.D. Tenn.).

### B.    Preliminary Approval and Notice to the Class

Plaintiffs moved for preliminary approval of the Dean Settlement Agreement on December 23, 2010 (Dkt. No. 160).  On May 4, 2011, the Court entered an Order granting the motion.  (Dkt. No. 297).  The Order required Class Counsel to: (1) send notice to members of the Class, via first class mail, within 30 days; and (2) publish Summary Notice of the settlement in four agricultural publications widely circulated in the Northeast.

The Notice and Summary Notice explained the procedures by which class members could exclude themselves from the Dean Settlement Class or object to the settlement, and provided notice of the hearing on final approval of the settlement and related matters that is set for July 18, 2011.  On May 24, 2010, approximately 9,067 copies of the Notice were mailed to all Settlement Class members identified by the Administrator of Federal Milk Marketing Order 1.  Summary Notice was published in *Country Folks* on May 30, 2011, in *Farming: The Journal of Northeast Agriculture* on June 10, 2011, in *Prgressive Dairymen* (Northeast Edition), on June 10, 2011, and in *Farmshine* on May 27, 2011.  Requests for exclusion were to be postmarked no later than

June 27, 2011, while objections were to be sent to Counsel and filed with the Court no later than June 27, 2011.  Four exclusions were received, and two objections were filed with the Court. *See* Affidavit of Charlene Young (attached hereto as Exhibit 2).

## III.   STANDARD FOR APPROVAL OF CLASS ACTION SETTLEMENTS

Under Federal Rule of Civil Procedure 23(e), a class action "shall not be dismissed or compromised without the approval of the court. . . ."  The primary question posed "by [a] proposed settlement of a class action is whether the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  In determining whether the settlement meets these criteria, courts often consider both "the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  "A proposed class action settlement enjoys a strong presumption that it is fair, reasonable, and adequate if . . . it was the product of arm's length negotiations conducted by capable counsel experienced in class action litigation . . . and if it occurred after meaningful discovery." *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,  No. 01-CV-11814, 2004 WL 1087261, at *1 (S.D.N.Y. May 14, 2004).

The Second Circuit has identified nine factors to guide courts in determining whether to approve the settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted); s*ee also*

*Wal-Mart*, 396 F.3d at 117 (approving the use of the *Grinnell* factors to determine the fairness of a class action settlement).  In evaluating these factors "[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

For the reasons explained below, Plaintiffs respectfully submit that the proposed Settlement should be approved as fair, reasonable and adequate.

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    Complexity, Expense, and Likely Duration of the Litigation

Antitrust class actions are "notoriously complex, protracted, and bitterly fought." *Weseley v. Spear, Leeds & Kellogg,* 711 F. Supp. 713, 719 (E.D.N.Y. 1989).  Although all fact discovery in this case is complete, pursuing the Plaintiffs' claims to a final resolution against Dean including a trial on the merits would consume substantial additional time and resources of the parties and the Court.  Plaintiffs would contend with additional defense counsel and likely additional arguments and defenses were Dean to continue to litigate this case.  *See, e.g., In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("*NASDAQ II*") ("Antitrust litigation in general, and class action litigation in particular, is unpredictable").  Thus, absent this settlement, there would be significant additional resources and costs expended to prosecute the claims against Dean through trial and the inevitable appeal.  *See, e.g., In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 456-57 (S.D.N.Y. 2004) (granting final approval where "the proposed partial settlement would grant relief to all class members without subjecting them to the risks, complexity, duration, and expense of continuing litigation"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and

delay of trial.  These factors weigh in favor of the proposed [s]ettlement"); *Klein v. PDG Remediation, Inc.*, No. 95-CV-4954, 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999) (complexity, expense, and likely duration of litigation favored settlement that "offer[ed] Class members the benefit of immediate recovery as opposed to an uncertain award several years from now").

In light of the additional risks and expenses Plaintiffs would face if they continued to litigate against Dean and the substantial cash payment that Dean has made, the Settlement is fair, reasonable, and adequate and should be finally approved.

### B.        Reaction of the Class to the Settlement

"It is well settled that the 'reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'"   *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001); *see also In re Dreyfus Aggressive Growth Mut. Fund Litig.* No. 98-CV-4318, 2001 WL 709262, at *3 (S.D.N.Y. June 22, 2001).

A small number of objections may itself be taken as evidence of the fairness of a settlement.  "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." 4 Newberg & Conte, Newberg on Class Actions § 11.41, at 108.  *See also Wal-Mart Stores, Inc.*, 396 F.3d at 118 ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 5, 2010) ("A small number of objections is convincing evidence of strong support by class members"); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) ("[A] certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of

the settlement." (citation omitted)).

Counsel and the parties have complied fully with the notice procedures set forth in the Court's May 4, 2011 Order.  Notice was mailed to 9,067 potential class members, and the deadline for the receipt of objections and exclusion expired on June 27, 2011.  Only four requests for exclusion were submitted, and only two objections were filed by individual farmers.[4]  These facts weigh heavily in favor of finally approving the Settlement Agreement.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (holding that the district court properly concluded that 18 objections and 72 exclusions from a class of 27,883 weighed in favor of settlement); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239-240 (E.D.N.Y. 2010) ("Of the 11,800,514 class members, only 127 opted out and 24 objected. Such a small number of class members seeking exclusion or objecting indicates an overwhelmingly positive reaction of the class.").

## C.   Stage of the Proceedings and Amount of Discovery Completed

This *Grinnell* factor is designed to assure the Court "that the counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them and the risks of maintaining the class action through trial."  *In re Salomon Inc. Sec. Litig.*, No. 91-CV-5442, 1994 U.S. Dist. LEXIS 8038, at *40 (S.D.N.Y. June 15, 1994).  "[I]t is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make ... an appraisal' of the Settlement."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citations omitted).

Here, Plaintiffs conducted a substantial factual, legal, and economic investigation before even commencing this case.  Counsel had already reviewed millions of pages of documents and

---

[4] Both objections argue that the settlement amount is insufficient.  Yet, the settlement amount of $30 million is an excellent result for the Dean Settlement Class, and its sufficiency is explained in detail in Section F.

conducted numerous depositions in *In re Southeastern Milk Antitrust Litigation* that bore on facts and law at issue in this litigation and afforded counsel an ability to value the claims.  Since filing this action in October 2009, Plaintiffs' counsel have vigorously pursued both class and merits discovery.  During the course of discovery, Plaintiffs' counsel analyzed millions of pages of documents, including extensive documents regarding Dean's practices in the Northeast.  They have also taken and/or reviewed extensive deposition testimony and consulted with two economic experts, Dr. Gordon Rausser and Dr. Richard Sexton, who created multiple expert reports concerning class certification, merits, and damages issues.  Plaintiffs' counsel also briefed and argued opposition to Defendants' motions to dismiss, which further assisted in identifying the material issues in this case and the strengths and weaknesses of the claims asserted, as well as other extensive briefing of other significant issues, such as class certification.

This extensive history of pre-filing investigation, fact and expert discovery, and motion practice have greatly assisted both parties in identifying the strengths and weaknesses of the claims and defenses in this case.  Plaintiffs' counsel have had more than sufficient information to form a well-grounded belief that the settlement is fair, reasonable, adequate and in the best interest of the Dean Settlement Class, particularly considering Plaintiffs' counsel's extensive experience litigating class actions involving agricultural and antitrust issues.

When a settlement has been the subject of arms-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial, there is a strong presumption in favor of the settlement, *see Guardians Ass'n of New York City Police Dept. v. Civil Serv. Comm'n of City of New York*, 527 F. Supp. 751, 757 (S.D.N.Y. 1981); *Munsey Trust v. Sycor, Inc.*, 457 F. Supp. 924, 926 (S.D.N.Y. 1978), and this *Grinnell* factor should be given substantial weight.  *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 362

(S.D.N.Y. 1988) (Where counsel "has had sufficient information to act intelligently on behalf of the class," this factor is satisfied.).

### D.      Risk of Establishing Conspiracy, Impact and Damages and Maintaining a Class Action Through Trial

Courts within this Circuit have noted that "[l]ittle about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys.* 2004 WL 1087261, at *3.

Antitrust class actions in particular present significant challenges with respect to establishing conspiracy, causation, and damages. *See, e.g., In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) (quoting *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)) ("'[a]n antitrust class action is arguably the most complex action to prosecute … [T]he legal and factual issues involved are always numerous and uncertain in outcome"); *see also In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983), ("antitrust price fixing actions are generally complex, expensive and lengthy"). Although the Court's decision to deny Defendants' motions to dismiss are significant, Plaintiffs must still prove all elements of their case – conspiracy, impact, and damages – at trial, and then defend any favorable verdict against post-trial motions and an appeal. This settlement, on the other hand, provides for definite, immediate benefits without delay. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985).

Thus, the risks associated with establishing conspiracy, impact, and damages at trial and upholding a favorable jury verdict weigh in favor of approving the settlement.

### E.      Ability of the Defendant to Withstand Greater Judgment

This factor directs courts to consider the extent to which a settling defendant has the ability to pay more than the settlement amount if the case were litigated to conclusion and a

larger judgment was obtained.  *See e.g., Teachers' Ret. Sys.*, 2004 WL 1087261, at *4.

Around the time of the Settlement, here was some concern expressed in the financial press that Dean Foods was in financial distress.  *See, e.g.,* Douglass MacIntyre, 10 American Companies That Will Disappear in 2011, Daily Finance, January 18, 2011 (available at *http://www.dailyfinance.com/2011/01/18/10-american-companies-that-will-disappear-in-2011/*) (article published by AOL's Money and Finance division approximately one month after proposed Settlement reached predicting that Dean Foods, crippled by debt, would have to be broken up sometime during 2011 to satisfy large debt-holders).  Despite those concerns, Dean Foods stock price has improved this year, moving from under $10 at the time of the Settlement Agreement to over $12 as of this filing.   (Real time stock charts available at *http://ycharts.com/companies/DF*.)  Yet, even if Dean could withstand a greater judgment, courts in the Second Circuit have stated that this fact alone does not "indicate that the settlement is unreasonable or inadequate."  *In re AOL Time Warner ERISA Litig.*, No. 02-CV-8853, 2006 WL 2789862, at *5-9 (S.D.N.Y. 2006); *see also Cavalieri v. General Elec. Co.*, No. 06-CV-315, 2009 WL 2426001, at *2 (N.D.N.Y. Aug. 6, 2009); *Lazy Oil Co. v. Witco Corp*., 95 F. Supp. 2d 290, 318 (W.D. Pa. 1997) ("The Court presumes that Defendants have the financial resources to pay a larger judgment.  However, in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial, the Court accords this factor little weight in deciding whether to approve the proposed Settlement."); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005) ("Fleet could certainly withstand a much larger judgment as it has considerable assets. While that fact weighs against approving the settlement, this factor's importance is lessened by the obstacles the class would face in establishing liability and damages.").

F.      **Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The determination of a "reasonable" settlement is not susceptible to a simple mathematical equation yielding a particular sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. . . ."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

This Settlement Agreement, which provides $30 million in cash, falls well within the range of reasonableness and thus warrants final approval.  Our understanding is that the settlement amount is the largest reported antitrust settlement in the history of the District of Vermont.  In its May 4, 2011 order preliminarily approving the settlement, this Court held that "a thirty million dollar settlement at this stage of the litigation 'does not disclose grounds to doubt [its] fairness' or that other 'obvious deficiencies' are present."  (citation omitted).  This Court explained that it had "considered both the strengths and weaknesses of Plaintiffs' claims against Dean" in order to determine that the settlement for $30 million was "sufficient."

The $30 million settlement amount constitutes approximately 20.86% percent of the total over-order premiums paid by Dean to the Dean Settlement Class during the Class Period, which is well within the range of the size of settlements approved in other antitrust cases.  *See, e.g., In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004) (approving a settlement representing approximately two percent of sales during the Class Period); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving a settlement representing 0.2 percent of the defendant's sales, and noting that earlier settlements approved in the case represented 2.4 percent, 0.88 percent, 0.65 percent, 0.3 percent, 0.2 percent, and 0.1 percent of other settling defendants' sales); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426,

11

2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (approving settlement represented approximately two percent of sales during the Class Period).

The $30 million settlement amount is also approximately 3.6% of the total damages claimed by Plaintiffs in this case, which is within the percentage thresholds typically approved by courts in the Second Circuit.  *See, e.g, In re Initial Pub. Offering Sec. Litig,* 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (approving settlement which provided only two percent of defendants' maximum possible liability, observing that "the Second Circuit has held that a settlement amount of even a fraction of the potential recovery does not render a proposed settlement inadequate"); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("estimated recovery of three percent of the total damages estimated by the plaintiffs, does not meaningfully diverge from the range of reasonableness"); *In re Prudential Sec. Ltd. P'ships Litig.*, MDL No. 1005, 1995 U.S. Dist. LEXIS 22103 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages); *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (3.2% to 3.7% of the potential recovery "well within the ball park"), *aff'd in part, rev'd on other grounds*, 495 F.2d 448 (2d Cir. 1974). A settlement amount constituting 3.6% of the total damages claimed by Plaintiffs is particularly sufficient considering Dean's share of the processor capacity in the Northeast during the Class Period.  (In contrast to Dean, the remaining non-settling Defendants – DFA and DMS – controlled over 60% of the market for the sale of raw Grade A milk in the Northeast during the Class Period.)

Indeed, even if the Settlement were a much smaller percentage, "courts have determined that a settlement can be approved even if the benefits amount to a small percentage of the recovery sought . . . And 'there is no reason, at least in theory, why a satisfactory settlement

could not amount to a hundredth or even a thousandth part of a single percent of a potential recovery.'" *Grinnell Corp.*, 495 F.2d at 455 n.2.

The $30 million recovery is fair, reasonable, and adequate, particularly when balanced against the expense, risk and potential delays that Plaintiffs would face in litigating this case against Dean through trial and appeal.  Taking into account all of the risks associated with this litigation as well as the fact that the settlement achieves a highly beneficial result for the Dean Settlement Class, this *Grinnell* factor strongly favors approval of the settlement.

### G.   Additional Factor

"A substantial factor in determining the fairness of the settlement is the opinion of counsel involved in the settlement."  *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).  Courts have noted that "the opinion of experienced and informed counsel is entitled to considerable weight" in deciding whether to approve a settlement.  *In re Am. Bank Note*, 127 F. Supp. 2d at 430.  *See also In re Painewebber Ltd. P'ship Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation); *In re Salomon*, 1994 U.S. Dist. LEXIS 8038, at *42 (the judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement").

In the present case, Plaintiffs were represented by counsel with extensive experience litigating complex antitrust class actions and thorough familiarity with the factual and legal issues of the case, and Defendant was represented by similarly experienced and knowledgeable counsel.  Plaintiffs' counsel and defense counsel also have particularly extensive experience litigating class actions involving dairy and other agricultural issues, including years of experience litigating similar claims against several of the same defendants in *In re Southeastern Milk Price Fixing Antitrust Litig.*, No. 2:08-MD-1000 (E.D. Tenn.).  Accordingly, counsel's

recommendation that the Court approve the settlement, in light of their extensive knowledge and experience, is an additional factor favoring the granting of approval.

## V.      PLAN OF ALLOCATION

Class Plaintiffs respectfully submit for the Court's approval this Proposed Plan of Allocation of the Settlement Funds.  Under the proposed Plan of Allocation, members of the Dean Settlement Class certified in this action must timely file a Claim Form with the claims administrator to obtain a share of settlement proceeds.

### A.      <u>Method of Calculation</u>

The Settlement Funds and the interest earned thereon will be distributed to approved Claimants, less any monies transferred into the Opt-Out Settlement Account[5] and any amounts approved by the Court for payment of attorneys' fees, reimbursement of litigation expenses, and incentive awards to class representatives ("Net Settlement Funds").

The Net Settlement Funds will be distributed on a *pro rata* basis to approved Claimants. An approved Claimant's *pro rata* share of the settlement will be determined by dividing (a) the dollar value of the Claimant's total amount of raw Grade A milk produced and pooled from January 1, 2002 to May 23, 2011 by (b) the total dollar value of all Claims made by members of that Class.

The Claims Administrator will review all Claim Forms received and is authorized to investigate any claims and require additional documentation or proof as the Claims Administrator deems necessary to verify the claims.

---

[5]      The Settlement Agreement allows Dean to reduce the Settlement Amount based on the percentage of the Settlement Class that elects to opt out from the Settlement Agreement; the reduction would be calculated based on the percentage of opt outs' raw Grade A milk sales in Order 1 relative to total sales by the Settlement Class in Order 1.  Settlement Agreement ¶ 11.1.

**B.**      **Time of Distribution of Net Settlement Funds**

Class Plaintiffs propose that the Net Settlement Funds be distributed, according to the Plan of Allocation, as soon as practicable after all of the following have occurred: a) the Court has granted final approval to the proposed settlement; b) the Court has ruled on Class Counsel's requests for an award of attorneys' fees, for reimbursement of litigation expenses, and for incentive awards to class representatives; c) the Claims Administrator has reviewed all Claim Forms and determined the amounts recommended to be paid to Claimants; and d) the time for appeal of the final approval has passed or the approval is affirmed on appeal.

**C.**      **The Plan of Allocation is Fair, Reasonable, and Adequate**

The standard for "approval of a plan of allocation is the same as the standard for approving a settlement: 'namely, it must be fair and adequate.'" *In re Top Tankers, Inc. Sec. Litig.*, No. 06-cv-13761, 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) (citing *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)).  Further, if the plan of allocation is "formulated by 'competent and experienced class counsel, an allocation plan need only have a 'reasonable, rational basis.'" *Taft v. Ackermans*, No. 02-cv-7951, 2007 U.S. Dist. LEXIS 9144, at *27 (S.D.N.Y. Jan 31, 2007).

Settlement distributions, such as this one, that apportion available settlements funds on a *pro rata* basis to approved Claimants, without favoring any class member over another, have consistently been deemed fair, reasonable, and adequate by numerous courts.  *See*, *e.g.*, *In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262, 2002 WL 31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations…are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits."); *In re Vitamins Antitrust Litig.,* No. 99-197, 2000 WL 1737867 at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members, have

repeatedly been deemed fair and reasonable."). *See also* 3 Newberg & Conte, Newberg on Class

Actions § 12.10 (1992) (noting that settlement agreements may provide for *pro rata* distributions

based on the fraction of a claimant's loss to the total aggregate recognized loss); MANUAL FOR

COMPLEX LITIG., THIRD § 30.47 (2003).

Accordingly, for all the foregoing reasons, Class Plaintiffs respectfully request that this

Court grant approval of this Plan of Allocation.

**VI.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion

for Final Approval of Settlement with Dean and enter the proposed Judgment and Final Order

appended to this motion as Exhibit 1.


Dated: July 11, 2011                                        Respectfully submitted,


                                                            /s/ *Brent W. Johnson*
                                                            Benjamin D. Brown, Esq.
                                                            Kit A. Pierson, Esq.
                                                            Daniel A. Small, Esq.
                                                            Brent W. Johnson, Esq.
                                                            Emmy L. Levens, Esq.
                                                            Cohen Milstein Sellers & Toll, PLLC
                                                            1100 New York Avenue, N.W.
                                                            Suite 500, West Tower
                                                            Washington, DC  20005
                                                            (202) 408-4600
                                                            bbrown@cohenmilstein.com
                                                            kpierson@cohenmilstein.com
                                                            dsmall@cohenmilstein.com
                                                            bjohnson@cohenmilstein.com
                                                            elevens@cohenmilstein.com

                                                            Andrew D. Manitsky, Esq.
                                                            Gravel and Shea PC
                                                            76 St. Paul Street, 7th Floor, P. O. Box 369
                                                            Burlington, VT  05402-0369
                                                            (802) 658-0220
                                                            amanitsky@gravelshea.com

Robert G. Abrams, Esq.
Gregory J. Commins, Jr., Esq.
Baker Hostetler
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5304
202-862-1500
rabrams@bakerlaw.com
gcommins@bakerlaw.com

Charles E. Tompkins, Esq.
Rachel M. Brown, Esq.
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109-2802
(617) 439-3939
ctompkins@shulaw.com
rbrown@shulaw.com

*Counsel for Plaintiffs and the
Proposed Class*