U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 JAN 18 PM 3: 00

CLERK
BY_____
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ALICE H. ALLEN, LAURANCE E. ALLEN, )
d/b/a Al-lens Farm, GARRET SITTS, RALPH )
SITTS, VINCE NEVILLE, JONATHAN HAAR, )
CLAUDIA HAAR, DONNA HALL, and )
RICHARD SWANTAK, on behalf of )
themselves and all others similarly situated, )
                                               )
             Plaintiffs, )
                                               )
    v. )    Case No. 5:09-cv-230
                                               )
DAIRY FARMERS OF AMERICA, INC., and )
DAIRY MARKETING SERVICES, LLC, )
                                               )
             Defendants. )

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO STRIKE
"REBUTTAL DECLARATION OF GORDON RAUSSER, PH.D."**
(Doc. 396)

       This matter came before the court on Defendants' motion to strike the March 16, 2012 Rebuttal Declaration of Gordon Rausser, Ph.D. (the "Rausser Rebuttal") (Doc. 396). Defendants argue that the Rausser Rebuttal should be stricken because it was untimely filed pursuant to the court's May 6, 2010 Scheduling Order (the "Scheduling Order") and the Federal Rules of Civil Procedure. Defendants ask that the Rausser Rebuttal be stricken on the further grounds that it exceeds the scope of a permissible rebuttal report and is an improper response to Defendants' pending motion to exclude certain of Dr. Rausser's expert opinions ("Defendants' *Daubert* motion").

       For the reasons stated below, the court DENIES Defendants' motion to strike the Rausser Rebuttal.

**I.    Factual and Procedural Background.**

       On July 22, 2011, Plaintiffs served Dr. Rausser's merits report pursuant to the Scheduling Order. Defendants deposed Dr. Rausser on November 3, 2011. On

December 16, 2011, Defendants served voluminous merits reports for their experts Joseph P. Kalt, Ph.D. and Edward W. Gallagher. Plaintiffs deposed Dr. Kalt and Mr. Gallager on February 14, 2012. The Scheduling Order defines the "Close of Expert Discovery" as the date on which Defendants' experts are deposed regarding their merits reports.

The court's Scheduling Order does not contain any provision regarding rebuttal reports, although the parties requested such a provision in their competing proposals for a scheduling order. In the course of this litigation, both parties have filed rebuttal reports without objection and the court has relied upon them in adjudicating various motions. Plaintiffs did not, however, seek a modification of the Scheduling Order to allow service of the Rausser Rebuttal.

On February 7, 2012, before Dr. Kalt was deposed, Defendants filed their *Daubert* motion, seeking exclusion of certain opinions rendered by Dr. Rausser in his merits report and in his deposition. On March 16, 2012, as part of their Opposition to Defendants' *Daubert* motion, Plaintiffs filed the Rausser Rebuttal. Following this filing, the parties conferred regarding the scheduling of an opportunity for Defendants to re-depose Dr. Rausser regarding the Rausser Rebuttal. Plaintiffs agreed to make Dr. Rausser available at Defendants' convenience. Defendants decided not to depose Dr. Rausser, pending the outcome of their motion to strike. Plaintiffs and Defendants have agreed that Dr. Rausser shall be made available for deposition in the event that Defendants' motion to strike is denied.

## II. Conclusions of Law and Analysis.

### A. Whether the Rausser Rebuttal Was Untimely.

The Scheduling Order's silence with respect to the filing of rebuttal reports does not necessarily constitute an exclusion of rebuttals; to the contrary, in this case, both parties have filed rebuttal reports and have done so without objection or reaction from the court. *See S.E.C. v. Badian*, 2009 WL 5178537, at *4 (S.D.N.Y. Dec. 23, 2009) (explaining that the "Scheduling Order was silent on rebuttal reports, but certainly did not exclude them"); *Mayou v. Ferguson*, 544 F. Supp. 2d 899, 901 (D.S.D. 2008) (rejecting

2

the argument that where a "scheduling order [is] silent, such serves to prohibit any designation of a rebuttal expert being made by the plaintiff"). It is nonetheless undisputed that the Rausser Rebuttal was served in noncompliance with the Scheduling Order, which sets a deadline for expert discovery that had expired when the Rausser Rebuttal was served. The Rausser Rebuttal was also served in noncompliance with the Federal Rules of Civil Procedure's "default" provision governing rebuttal reports. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) ("Absent a stipulation or a court order, the disclosures must be made: . . . if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure."). Because the Rausser Rebuttal was untimely, Plaintiffs should have obtained leave from the court to serve the Rausser Rebuttal beyond the deadline for doing so or should have sought modification of the Scheduling Order to allow for the Rausser Rebuttal. Plaintiffs did neither and proffer no good cause for their failure to do so.

The Federal Rules of Civil Procedure allow a court to impose sanctions if a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Such sanctions may include "striking pleadings in whole or in part[.]" *Id.* at 37(b)(2)(A)(iii). The Second Circuit has recently opined that, notwithstanding the trial court's prior notice in an order that no further extension of discovery would be granted, the filing of an "expert report seven weeks late without first seeking the court's permission" was "not a transgression warranting the striking of plaintiff's expert report" when the party making such late filing "did not seek an unfair advantage over the adversary in the litigation[.]" *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012). In so ruling, the Second Circuit observed:

> We understand the district court's frustration with the lackadaisical manner in which this case was litigated. However, the district court failed to provide any analysis as to why the first sanction meted out was one of the most severe sanctions possible, and the record before us presents no plausible explanation. When an attorney's misconduct or failing does not involve an attempt to place the other side at an unfair disadvantage, any sanction should ordinarily be directed against the attorney rather than the

> party, absent strong justification. While we do not doubt that a sanction is appropriate, the facts before us suggest that sanctions should be imposed on the attorney, and not bar [the noncomplying party] from a full presentation of its case.

*Id.* at 160 (internal citation omitted). The instant case is, of course, distinguishable because neither party has litigated this case in a lackadaisical manner and the court has not previously advised the parties that no further extensions of discovery deadlines would be granted. The Second Circuit's opinion in *Shinkong Synthetic Fibers Corp.* nonetheless serves as an important reminder that the court should refrain from striking an expert report on the grounds of unexcused noncompliance with a scheduling order unless it is clear that no lesser sanction will suffice.

In the Second Circuit, the district courts are directed to consider the following factors in determining whether a motion to strike an expert witness's testimony should be granted as an appropriate sanction for failure to comply with a discovery deadline: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. and Scientific Commc'n, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988)).

With respect to the first *Outley* factor, Plaintiffs provide the following explanations for their noncompliance with the Scheduling Order: (1) although the Scheduling Order does not contemplate rebuttal reports; the parties' prior practices in this case and parallel litigation support the conclusion that rebuttal reports are permitted; (2) Dr. Rausser was forced to delay his rebuttal because Dr. Kalt was not made available for deposition until forty-one days after service of his expert report and was not actually deposed until sixty days following Plaintiffs' receipt of the Dr. Kalt's report; and (3) Dr. Kalt's expert opinions are voluminous and it would have been unreasonable to impose upon Plaintiffs an obligation to respond to them with a rebuttal report filed in accordance

4

with the thirty day deadline of Fed. R. Civ. P. 26(a)(2)(D)(ii). As Defendants point out, none of these contentions explain why Plaintiffs failed to seek an extension from the court rather than filing a rebuttal report which was unquestionably untimely. *See Softel*, 118 F.3d at 962 ("With respect to the first *Outley* factor, . . . Softel's explanation for its failure to comply with [the expert witness] deadline was that [the new expert] did not have enough time to conduct his inquiry because he did not have access to the relevant diskettes until shortly before the deadline. This explanation is inadequate. Softel could have provided its new expert with additional time in a variety of ways: . . . most obviously, it could have notified the court and the defendant . . . several months earlier than it did.").

In this case, while the court finds that Plaintiffs have failed to allege good cause for their failure to comply with the Scheduling Order's deadline for expert discovery, the court cannot further find that Plaintiffs were motivated by a dilatory purpose. Moreover, although Plaintiffs may have attempted to gain an advantage from an untimely filing of the Rausser Rebuttal,[1] the court cannot further find they acted in bad faith or truly sought to "place the other side at an unfair disadvantage[.]" *Shinkong Synthetic Fibers Corp.*,

---

[1] Defendants observe that Dr. Rausser has "a track record . . . of offering half-formed and tentative expert opinions on the appointed deadline, only to then make a revision to those opinions . . . in a supplemental report that is timed so as to be insulated from further criticism[.]" (Doc. 404 at 4.) However, there are ways of addressing this concern short of striking an expert opinion. *See Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 22 (1st Cir. 1994) (finding that "[i]t is not unusual for experts to make changes in their opinions and revise their analyses and reports frequently in preparation for, and sometimes even during, a trial[,]" the court explained that the proper approach is for opposing counsel to cross-examine the expert, and if necessary seek a continuance); *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 2008 WL 4911440, at *4 (E.D.N.Y. Nov. 13, 2008) ("[p]recluding testimony of an expert, even when there has not been strict compliance with Rule 26, may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.") (quoting *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003)); *see also RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002) (noting that "[e]xclusion of expert testimony is a 'drastic remedy[,]'" the court denied plaintiff's motion to exclude an expert report, "[r]egardless of whether the new report is supplemental or rebuttal").

694 F.3d at 160. The court thus finds the first *Outley* factor weighs in favor of Defendants' requested sanction, but by no means requires it.

With respect to the second *Outley* factor, the information encompassed by the Rausser Rebuttal is central to the merits of this case and addresses issues in this case which require expert testimony. The importance of the Rausser Rebuttal thus weighs in favor of denying Defendants' motion to strike. *See Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213 (2d Cir. 2009) (trial court abused its discretion in excluding expert opinion for noncompliance with pretrial order where, among other things, "the testimony of [the excluded expert] was critical to Hornbeck's defense on the issue of causation."); *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 2008 WL 4911440, at *4 (E.D.N.Y. Nov. 13, 2008) (denying motion to strike, the court explained that the rebuttal report was "important to plaintiff's case"); *Lab Crafters, Inc. v. Flow Safe, Inc.*, 2007 WL 7034303, at *7 (E.D.N.Y. Oct. 26, 2007) (noting that the rebuttal expert testimony was of "grave importance to defendant's case[,]" the court found that it "warrant[ed] admission under this factor of the test").

"The third *Outley* factor is the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony." *Softel, Inc.*, 118 F.3d at 962. The Second Circuit has observed that where the new testimony is in the form of a new expert witness opinion, the potential for prejudice is real. *Id.* ("Here, the excluded testimony *was* expert testimony. Moreover, the parameters of the dispute in a highly technical case such as this are largely defined by expert testimony. . . . Because [the opposing party] would have been forced, at a very late date in the discovery process, to accommodate potentially significant shifts in the theories being offered against it, this factor cuts in favor of [the opposing party]."); *see also Lore v. City of Syracuse*, 2005 WL 3095506, at *4 (N.D.N.Y. Nov. 17, 2005) ("The touchstone for determining whether to exclude an untimely expert report is whether the party opposing [its] admission is prejudiced."); *ABB Air Preheater, Inc. v. Regenerative Envt'l Equip. Co.*, 167 F.R.D. 668, 672 (D.N.J. 1996) ("[T]he pivotal issue is whether admission of the evidence will result in incurable prejudice to the resisting party.").

6

Defendants assert that Plaintiffs' untimely service of the Rausser Rebuttal will prejudice them by changing, at a very late date, the opinions to which they are required to respond and by forcing them to re-depose Dr. Rausser and supplement their *Daubert* motion, occasioning delay, effort, and expense. The court agrees that allowance of the Rausser Rebuttal is prejudicial to Defendants. If this prejudice cannot be cured or alleviated, this factor would weigh heavily in favor of granting the requested relief. However, because the court concludes that any prejudice may be cured through the allowance of a deposition and supplementation of Defendants' *Daubert* motion, the potential for prejudice is not dispositive. Indeed, prejudice from the introduction of a rebuttal report is commonly addressed by allowing the other party an opportunity to depose the expert. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL 31780188, at *4 (S.D.N.Y. Dec. 11, 2002) ("[A]ny prejudice is easily cured by allowing plaintiff to depose [expert] if [it] so desire[s]."); *Virgin Enters. Ltd. v. Am. Longevity*, 2001 WL 34314729, at *2 (S.D.N.Y. Mar. 1, 2001) (noting that "any prejudice will be remedied by the deposition of [the expert]"); *Lab Crafters, Inc.*, 2007 WL 7034303, at *8 ("Courts to address this issue have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial."). Other circuits have gone so far as to hold that exclusion of expert testimony produced in violation of a discovery order is not appropriate where the party seeking exclusion "made no attempt to cure the alleged surprise or prejudice . . . by requesting to depose the witness . . . or by seeking a continuance." *Berroyer v. Hertz*, 672 F.2d 334, 338-39 (3d Cir. 1982); *see also K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 766 (6th Cir. 1985) (denying request to exclude testimony when party seeking exclusion "could have requested a continuance if it needed additional time to prepare a response to [the] testimony, but it did not do so").

Defendants were served with the Rausser Rebuttal on March 16, 2012. Plaintiffs made Dr. Rausser available to Defendants for a deposition immediately thereafter and have agreed to make him available following the outcome of this motion. Defendants thus have had and will continue to have ample time to address the opinions set forth in the Rausser Rebuttal.

The final *Outley* factor is the possibility of a continuance. In this case, no trial date has been set and a continuance to alleviate the prejudice associated with the Rausser Rebuttal may be readily granted without significantly delaying the adjudication of the merits of this dispute.[2] *See RMED Int'l, Inc.*, 2002 WL 31780188, at *4 (allowing a new expert report when it "will not disrupt the trial, which is set to begin almost a month from now"); *Lab Crafters, Inc.*, 2007 WL 7034303, at *8 (noting that the trial date had not been set and party submitting expert testimony was not seeking an extension, the court found "this factor also weighs heavily in favor of admitting [expert] testimony"); *Plew v. Limited Brands, Inc.*, 2012 WL 379933, at *2 (S.D.N.Y. Feb. 6, 2012) ("'Exclusion of expert testimony is a drastic remedy' and is inappropriate where the movant could easily have cured the prejudice by seeking more discovery.") (citations omitted).

On balance, the *Outley* factors weigh in favor of denying the motion to strike as too drastic a sanction in light of the facts and circumstances of this case. The court however, will hereby amend the Scheduling Order to permit Defendants to re-depose Dr. Rausser and to supplement their *Daubert* motion. The terms and conditions for doing so are set forth below. In addition, Defendants may petition the court to impose upon Plaintiffs or their counsel all or some of the reasonable costs incurred in the re-deposition of Dr. Rausser and the supplementation Defendants' *Daubert* motion.

**B.     Whether the Rausser Rebuttal Exceeds the Scope of a Proper Rebuttal.**

Defendants argue that the Rausser Rebuttal should be stricken for the further reason that it exceeds the scope of a proper rebuttal report by supplementing the analysis in Dr. Rausser's merits report rather than confining the rebuttal to the opinions of Defendants' experts. In addition, Defendants contend that the Rausser Rebuttal is an

---

[2] The parties previously advised the court that it need not rule on Defendants' motion to strike the Rausser Rebuttal prior to the court's adjudication of Plaintiffs' pending motion for class certification. Accordingly, the delay occasioned by the Rausser Rebuttal is properly attributed in part to the court's agreement to proceed with the class certification motion rather than addressing the motion to strike first and by Defendants' decision to defer the deposition of Dr. Rausser until the court ruled on this motion.

8

improper response to Defendants' *Daubert* motion and should be stricken on that basis as well. Again, Defendants' arguments are not without merit.

Expert rebuttal evidence is allowed if it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party[.]" Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also United States v. Casamento*, 887 F.2d 1141, 1172 (2d Cir. 1989) ("The function of rebuttal evidence is to explain or rebut evidence offered by the other party."); *S.W. v. City of New York*, 2011 WL 3038776, at *2 (E.D.N.Y. July 25, 2011) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party.") (citation and internal quotation marks omitted). The scope of a rebuttal is limited to the "same subject matter" encompassed in the opposing party's expert report, Fed. R. Civ. P. 26(a)(2)(D)(ii), but district courts have been "reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language." *T.C. Sys. Inc., v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002); *see also S.W. v. City of New York*, 2011 WL 3038776, at *4 ("Even assuming that portions of plaintiffs' experts' reports should have been included in their initial reports, there is no prejudice to [defendant] by permitting plaintiffs' experts to serve these reports since expert depositions have not been taken and no trial date has been set."). It is also acceptable for an expert to use new methodologies in a rebuttal "for the purpose of rebutting or critiquing the opinions of Defendants' expert witness[.]" *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009). However, "[a] rebuttal expert report is not the proper 'place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice.'" *STS Software Sys., Ltd. v. Witness Sys., Inc.*, 2008 WL 660325, at *2 (N.D. Ga. Mar. 6, 2008) (quoting *Baldwin Graphics Sys., Inc. v. Siebert, Inc.*, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005)).

Here, the Rausser Rebuttal exceeds what is necessary to simply rebut Defendants' expert opinions. However, given the voluminous nature of Defendants' expert disclosures, that conclusion is not easily reached by a point-by-point comparison. Moreover, it remains true that Dr. Rausser's rebuttal opinions are confined to the general

9

subject matter of Defendants' expert witnesses' criticisms of Dr. Rausser's opinions. Although Defendants point out that Plaintiffs have used the Rausser Rebuttal to shore up alleged weaknesses in Dr. Rausser's original opinions, courts often leave such concerns to exposure on cross-examination rather than excluding the supplemental opinions as improper rebuttal. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Advanced Fiber Techs. Trust v. J & L Fiber Servs., Inc.*, 2010 WL 1930569, at *6 (N.D.N.Y. May 11, 2010) (addressing a motion to strike expert testimony where the expert's report was allegedly inconsistent with deposition testimony, the court explained that "[a]ny perceived inconsistencies should be addressed through cross-examination, and it is for the jury to decide the relative weight his testimony should be given"). Such an approach is warranted here, where the scope of the Rausser Rebuttal may be addressed by further discovery and through vigorous cross-examination.

Defendants' second challenge to the scope of the Rausser Rebuttal is that it purports to respond to Defendants' *Daubert* motion and in fact was filed as part of Plaintiffs' objection to it. Courts generally prohibit this practice. *See Pride v. BIC Corp.*, 218 F.3d 566, 579 (6th Cir. 2000) (trial court properly denied request to file rebuttal reports that constituted a "transparent attempt to reopen the *Daubert* hearing now that the weaknesses in [the movant's] expert testimony have been pointed out"); *Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865, 879 (S.D. Ohio 2010) (finding that a rebuttal report following defendants' *Daubert* motion was "an improper attempt to correct the weaknesses and improprieties of his original reports"). Here, however, Defendants' *Daubert* motion was filed before Plaintiffs had the opportunity to depose Defendants' experts, and thus before Dr. Rausser could have rebutted Dr. Kalt's criticism. Additionally, while Defendants reasonably assert that Dr. Rausser had a "free look" at Defendants' *Daubert* motion, they do not further contend that the "free look" will prejudice them by resulting in an unfair adjudication of the merits of their motion. Any

prejudice to Defendants may be cured by permitting them to supplement their *Daubert* motion in response to the Rausser Rebuttal and re-deposition of Dr. Rausser.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion to strike the "Rebuttal Declaration of Gordon Rausser, Ph.D." (Doc. 396.) The court hereby GRANTS an extension of the Scheduling Order to allow Defendants to re-depose Dr. Rausser and amends the deadline for the close of expert discovery until such deposition takes place or Defendants advise Plaintiffs that they no longer seek to re-depose Dr. Rausser.

Defendants shall have fourteen (14) days from the date of this Order to advise Plaintiffs whether they seek to re-depose Dr. Rausser. If so, Plaintiffs shall make Dr. Rausser available at dates, times, and locations convenient to Defendants and such deposition shall take place within sixty (60) days from the date of this Order unless the parties agree in writing to an extension of this deadline.

The court hereby GRANTS Defendants leave to supplement their *Daubert* motion in response to the Rausser Rebuttal and re-deposition of Dr. Rausser; the deadline for such supplementation shall be thirty-days (30) after the Rausser re-deposition, if any, or fourteen (14) days after the date on which Defendants advise Plaintiffs that no re-deposition shall take place. Plaintiffs may file a timely supplemental opposition should Defendants supplement their *Daubert* motion.

The court hereby also GRANTS Defendants leave to seek further accommodations and sanctions from the court in order to cure or alleviate any additional prejudice occasioned by the Rausser Rebuttal.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 18th day of January, 2013.

*/s/ Christina Reiss*

Christina Reiss, Chief Judge
United States District Court

11