UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 MAY 16 PM 2: 11

CLERK

BY _____
DEPUTY CLERK

| | |
|---|---|
| ALICE H. ALLEN, LAURENCE E. ALLEN, d/b/a/ Al-lens Farm, GARRET SITTS, RALPH SITTS, JONATHAN HAAR, CLAUDIA HAAR, and RICHARD SWANTAK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC, and DAIRY MARKETING SERVICES, LLC,<br><br>Defendants. | Case No. 5:09-cv-230 |

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO STRIKE UNTIMELY REVISION OF EXPERT OPINION
(Doc. 486)

This matter comes before the court on the Motion to Strike Untimely Revision of Expert Opinion filed by Defendants, Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC (Doc. 486). Defendants ask the court to strike certain January 2014 supplements to the expert report of Plaintiff's economist Gordon Rausser, Ph.D. Defendants contend the supplements are untimely, impermissible, and will prejudice them as they will be forced to confront an array of new expert opinions regarding Plaintiffs' alleged damages. Plaintiffs oppose the motion, arguing that the supplementation was required under the Federal Rules of Civil Procedure and that Defendants will suffer no prejudice because they understand Dr. Rausser's revised opinions and cannot claim to have been surprised by them in light of Plaintiffs' previous

disclosures. Plaintiffs contend that, if the court finds any prejudice, it can be cured by allowing Defendants to re-depose Dr. Rausser.

The court held oral argument on the motion on May 8, 2014.

I.   **Factual and Procedural Background.**

In their Second Amended Complaint ("SAC"), Plaintiffs allege that Defendants engaged and are presently engaging in five violations of the Sherman Act, 15 U.S.C. §§ 1-2: (1) conspiracy to monopolize/monopsonize in violation of § 2 of the Sherman Act; (2) attempt to monopolize/monopsonize in violation of § 2 of the Sherman Act; (3) unlawful monopoly/monopsony in violation of § 2 of the Sherman Act; (4) price fixing in violation of § 1 of the Sherman Act; and (5) conspiracy to restrain trade in violation of § 1 of the Sherman Act.

Plaintiffs allege that Defendants engaged in a wide-ranging conspiracy at both the processor and cooperative levels to fix, stabilize, and artificially depress prices for fluid Grade A milk and to allocate markets within Federal Milk Market Order 1 ("Order 1") among the co-conspirators. Plaintiffs allege that the prices in Order 1 were suppressed when processors in Order 1 agreed with Defendants to suppress certain premiums paid to dairy farmers (which Plaintiffs call "Farmer Premiums") in exchange for Defendants and other alleged co-conspirators' agreement to guarantee and control the supply of milk to conspiring processors.

On February 7, 2012, Defendants moved to exclude certain of Dr. Rausser's opinions under Fed. R. Evid. 702 and under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny. In response, Plaintiffs submitted a revised March 16, 2012 rebuttal declaration for Dr. Rausser (the "2012 Rausser Rebuttal"). The 2012 Rausser Rebuttal consists of certain supplementations and revisions to the "previously submitted three Declarations" (Doc. 486-4 at 2) Dr. Rausser authored in this case. The 2012 Rausser rebuttal includes Dr. Rausser's statement under oath: "In my Merits Report, I estimated that the prices paid for raw Grade A milk produced and pooled on Order 1 were suppressed by $0.69/cwt. I stand by that conclusion." (Doc. 486-4 at 6) (footnote omitted). It also includes a "model to estimate a different rate of suppression for each

2

year in the Class Period" and states that "[t]he average of these suppression rates is $0.69/cwt, consistent with the results I reported in my Merits report." (Doc. 486-4 at 8.) In the 2012 Rausser Rebuttal, in a footnote, Dr. Rausser observes that when he "correct[s]" the damages model offered by Defendants' expert witness, economist Joseph Kalt, Ph.D., other suppression estimates are yielded:

> [Dr. Kalt's] corrected model finds that Farmer Premiums were suppressed in Order 1 by $0.24/cwt (calculating Farmer Premium based on Gross price, with State fixed effects); by $0.41/cwt (calculating Farmer Premium based on Mailbox price—i.e. net of hauling costs—with State fixed effects); by $0.26/cwt (calculating Farmer Premium based on Gross price, without State fixed effects); by $0.66/cwt (calculating Farmer Premium based on Mailbox price—i.e. net of hauling costs—without State fixed effects).

(Doc. 486-4 at 4 n.288; 2012 Rausser Rebuttal at 101 n.288) ("footnote 288").

Defendants subsequently moved to strike the 2012 Rausser Rebuttal, arguing that it was untimely and improper rebuttal because it set forth new opinions after the close of expert discovery on February 14, 2012 and because it was a transparent effort to rebuff Defendants' *Daubert* challenges. The court agreed that the 2012 Rausser Rebuttal was improper and untimely, but nonetheless denied Defendants' motion to strike. In so ruling, the court reasoned that because a trial date had not been set, the court could alleviate any prejudice to Defendants by allowing them to re-depose Dr. Rausser and supplement their then pending *Daubert* motion. *See Allen v. Dairy Farmers of Am., Inc.*, 2013 WL 211303, at *1, *4, *5-6 (D. Vt. Jan. 18, 2013) (denying Defendants' motion to strike and allowing 2012 Rausser Rebuttal notwithstanding the court's conclusions that the revised opinions were "untimely," that Plaintiffs "should have obtained leave from the court to serve [them]," that "[c]ourts generally prohibit th[e] practice" of revising expert reports in response to *Daubert* motions, and that the revised opinion constituted improper rebuttal because "the Rausser Rebuttal exceeds what is necessary to simply rebut Defendants' expert opinions").

Thereafter, Defendants, who had deposed Dr. Rausser in 2011, re-deposed Dr. Rausser. At Dr. Rausser's deposition on June 26, 2013, Defendants specifically asked

3

him if his expert damages opinion remained at the $0.69/cwt suppression estimate. Dr. Rausser answered in the affirmative:

> Q. I'm asking you whether any of the damage calculations that you present in your rebuttal report are intended to change or amend the opinion that you offered in your July 2011 report.
>
> A. No.
>
> Q. Okay. Now—and we can pull it out if you need it, but in your July 2011 report you estimated that total damages were something on the order of $835 million, is that right? Does that sound about right?
>
> A. Based on the overall measure of 69 cents, yes.
>
> Q. 69 cents hundredweight across the entire class period for all pounds, whether they're in the payroll data or not, and then that summed up to $835,495,941?
>
> A. That is my recollection.
>
> Q. And if I understood what you said a few moments ago, the various damages calculations that are prepared—that are contained in your rebuttal report are not intended to change that number? That's still the damages number that you are offering as your opinion about the magnitude of damages in this case; is that correct?
>
> A. Yes, it is correct with the following proviso: You said intend. There are other damage estimations that are specified in this report. And my intention is to present my original damage calculation, but there are other damages that are there that could be presented to a trier of fact and/or a jury depending upon any court rulings that might emerge.

(Doc. 486-3 at 5.)

Defendants subsequently supplemented their *Daubert* challenge. Of particular relevance to the pending motion, in their *Daubert* motion, Defendants specifically challenged Dr. Rausser's suppression estimate of $0.69/cwt.

On August 1 and 5, 2013, the court held a hearing on Defendants' *Daubert* motion and on Plaintiffs' cross-motion to exclude under *Daubert* and Fed. R. Evid. 702 certain expert opinions of Defendants' economist Dr. Kalt. Plaintiffs did not advise either

4

Defendants or the court that Dr. Rausser's $0.69/cwt damages estimate was preliminary, tentative, or subject to revision. Instead, they argued forcefully that Dr. Rausser's damages calculations were "reliable" (Doc. 381 at 39) and that there was "no basis" to Defendants' claim that Dr. Rausser's use of the "Boston price" as the "uniform blend reference price" for Order 1 overstated Farmer Premiums in Order 1. (Doc. 458 at 24-25.) Plaintiffs maintained that Dr. Rausser's $0.69/cwt damages estimate using the Boston base blend price should be admitted into evidence under Fed. R. Evid. 702. They did not proffer an alternative damages estimate to the court.

On December 31, 2013, the court granted in part and denied in part Defendants' motion to exclude Dr. Rausser's opinions. Among the court's rulings was a conclusion that Dr. Rausser's use of the Boston blend price of $0.69/cwt in Plaintiffs' damages model was unreliable, had the potential to artificially inflate Plaintiffs' damages, and was therefore inadmissible. *See Allen v. Dairy Mktg. Servs., LLC*, 2013 WL 6909953, at \*14, \*15 (D. Vt. Dec. 31, 2013) (ruling that "by using the Boston base blend price, Dr. Rausser's damages model artificially inflates the damages calculation by using a baseline that is not representative of actual prices in Order 1, but rather is representative of the highest price in Order 1" and, because Dr. Rausser's "approach is virtually certain to artificially inflate Plaintiffs' damages," "use of the Boston base blend price for Order 1 in Dr. Rausser's damages model" was not reliable under Fed. R. Evid. 702).

After the court issued its *Daubert* opinion, on January 22, 2014, Plaintiffs forwarded by email to Defendants "a breakdown of the $.41/cwt suppression of farmer premiums set forth in [Dr. Rausser's Rebuttal Report]." (Doc. 486-1 at 2.) Included in this email were eleven pages setting forth seven tables and various spreadsheets which included calculations that Plaintiffs had not previously disclosed and that purported to "provide[] . . . calculations in light of the Court's *Daubert* opinion." (Doc. 486-2 at 2.) (the "January 2014 calculations"). Each of these calculations revises at least some

5

portion of Dr. Rausser's 2012 Rebuttal Report to provide new calculations based upon Plaintiffs' adoption of a $0.41/cwt damage estimate.[1]

Plaintiffs claim the January 2014 calculations are neither untimely nor actual revisions because they merely "supplemented three of [Dr. Rausser's] previously-disclosed suppression calculations, in ways entirely consistent with his analyses and opinions, to reflect the suppression price estimate ($.41/cwt) permitted by the Court." (Doc. 490 at 5.) They further assert that their "Supplemental Disclosure does not rework Dr. Rausser's damages analysis—it simply inputs premiums based on plant location and mailbox prices (instead of Boston and gross prices) into the identical regression model and calculations that were disclosed in 2011 and 2012." (Doc. 490 at 12.) Plaintiffs point to footnote 288 as a previous disclosure of these calculations and note that, in his deposition, Dr. Rausser reserved the right to amend his opinion in response to court rulings.

Defendants do not oppose Dr. Rausser's use of Table A-1 because it merely translates the $0.41/cwt into actual damage amounts, broken out by year as well as by data source (payroll data versus all market administrator data). On that basis, the court agrees Plaintiffs' use of Table A-1 is permissible.

Defendants oppose the remaining January 2014 calculations and argue that they represent new and previously undisclosed expert opinions that substantially increase Plaintiffs' damages. *See* Doc. 494 at 2 ("[T]he difference between the calculations

---

[1] The seven tables disclosed in January 2014 are as follows: Table A-1 entitled "Class-wide Damages (Formerly Merits Report Figure 6): Suppression Based on Mailbox Price with State Fixed Effects [0.41]." Table A-2 entitled "Estimated Total Patronage Offset from Suppression (Formerly Rebuttal Report Table A-9) Suppression Based on Mailbox Price with State Fixed Effects [0.41]." Table A-3 entitled "Separation of Patronage Offsets into Retained Earnings and Cash Portions (Formerly Rebuttal Report Table A-10) Suppression Based on Mailbox Price with State Fixed Effects [0.41]." Table B-1 entitled an "Annual Suppression Coefficient Analysis," which sets forth "Suppression by Year (Formerly Daubert Rebuttal Report Table 16)." Table B-2 entitled "Class-wide Damages (Formerly Merits Report Figure 6): Annual Suppression Based on Mailbox Price with State Fixed Effects." Table B-3 entitled "Estimated Total Patronage Offset from Suppression (Formerly Rebuttal Report Table A-9) Annual Suppression Based on Mailbox Price with State Fixed Effects." Table B-4 entitled "Separation of Patronage Offset into Retained Earnings and Cash Portions (Formerly Rebuttal Report Table A-10) Annual Suppression Based on Mailbox Price with State Fixed Effects." (Doc. 486-1 at 3-13.)

disclosed in the March 2012 Rebuttal Report, and the new calculations disclosed in January 2014, is that the latter adds between $57 million and $75 million to Plaintiffs' damages claim during the period within four years of the filing of the Complaint. That amounts to a potential difference of $171 million to $225 million after trebling.") (internal citation omitted). As Defendants point out:

> Moreover, Dr. Rausser has not simply waited until now to disclose the complete basis for his newly-adopted $0.41/cwt damages opinion, he has waited until now to *change* that opinion to yield a higher damages total than the one disclosed in his Rebuttal Report. Those changes include an entirely new regression analysis that switches from the flat rate of $0.41/cwt per year disclosed in the Rebuttal Report to a variable rate that averages closer to $0.51/cwt during the period that begins four years before the Complaint was filed. And it includes downward revisions to the patronage offset that Dr. Rausser disclosed in his Rebuttal Report. There is no way to characterize those revised analyses as anything but new opinions that were not disclosed until January of 2014, nearly two years after the close of expert discovery.

(Doc. 486 at 7).

As for prejudice, Defendants claim that, "[h]ad Dr. Rausser included this year-by-year analysis in his Rebuttal Report, then Defendants could have deposed him on that calculation, had their own experts prepare a response, and addressed it in their supplemental *Daubert* memorandum and expert report." (Doc. 486 at 13.) Instead, Defendants focused their *Daubert* challenge, and the court focused its *Daubert* opinion, on Dr. Rausser's use of the $0.69/cwt Boston blend price because Plaintiffs proffered this as the basis of Dr. Rausser's damages opinion.

This case has been pending since October 8, 2009 and is set for a seven week trial commencing on July 7, 2014. Pursuant to the most recent Scheduling Order, expert discovery closed on February 14, 2012.[2] The parties represented to the court that they would be trial ready by April 29, 2014. The trial has been continued once, and Defendants' motion for summary judgment is pending. Plaintiffs did not and do not seek

---

[2] There have been at least three Scheduling Orders in this case and numerous extensions of the individual deadlines set forth in each of those Orders.

an extension of the court's Scheduling Order to authorize disclosure of Dr. Rausser's January 2014 calculations. Instead, they claim that the January 2014 calculations are permissible and even required supplementation of their expert's opinions pursuant to Fed. R. Civ. P. 26(e)(1)-(2).

## II.  Conclusions of Law and Analysis.

Rule 26 of the Federal Rules of Civil Procedure requires a party to disclose "a complete statement of all opinions the [expert] witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The Rule imposes upon a party to supplement or correct an expert disclosure "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)-(2).

In essence, Plaintiffs assert that Rule 26(e) permits them to "correct" an expert opinion in response to an adverse evidentiary ruling even if the "correction" would otherwise be an untimely supplementation of an expert report. None of the cases Plaintiffs cite support this contention. Indeed, Plaintiffs' approach to expert supplementation would disrupt trials and trial preparation to the point of chaos and would render the expert disclosure rules meaningless. *See Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011) (interpreting Rule 26(e) to allow an expert to supplement an inadequate expert report "would wreak havoc on docket control and amount to unlimited expert opinion preparation") (internal quotation marks and alterations omitted); *Cedar Petrochem., Inc. v. Dongbu Hannong Chem. Co. Ltd.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) (noting that "experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions") (internal quotation marks omitted). As the District of Connecticut recently observed:

> "[Rule] 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect. . . . [T]herefore courts have held that a Plaintiff's duty to supplement its initial expert report does not arise when

8

> plaintiff seeks to bolster its earlier submission, but rather, arises only if the expert *subsequently* learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete[.] Therefore, [i]f an expert's report does not rely [on] any information that was previously unknown or unavailable to him, it is not an appropriate supplemental report under Rule 26.

*Levinson v. Westport Nat'l Bank*, 2013 WL 3280013, at *4-5 (D. Conn. June 27, 2013) (internal citations and quotation marks omitted). Plaintiffs' disclosure of the January 2014 calculations was not based on information previously unknown or unavailable to Dr. Rausser. Moreover, the court did not "correct" an inaccuracy in Dr. Rausser's opinion; it merely ruled a portion of that opinion inadmissible pursuant to Fed. R. Evid. 702. Plaintiffs' untimely disclosure of the January 2014 calculation is thus not permissible supplementation of an expert witness opinion under Rule 26(e).

Rule 37 of the Federal Rules of Civil Procedure provides in relevant part that, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In the Second Circuit, prior to determining whether exclusion is the appropriate sanction, the court must consider:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (quoting *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988)).

Application of the *Outley* factors to the instant case reveals that Plaintiffs' failure to comply with the court's Scheduling Order is inexcusable, that a continuance is not reasonably available, and that only the sanction of exclusion will prevent unfair and substantial prejudice to Defendants.

9

With regard to the first *Outley* factor, Plaintiffs offer no explanation for their failure to comply with the court's Scheduling Order—perhaps because they erroneously contend the January 2014 calculations are permissible supplementation. They therefore do not squarely address Defendants' argument that Plaintiffs had an obligation to disclose the January 2014 calculations in accordance with the Scheduling Order on February 14, 2012.[3]

Plaintiffs' characterization of the January 2014 calculations as unsurprising and even *required* is both factually and legally untenable.[4] Their further suggestion that Defendants, themselves, are at fault because they failed to sufficiently probe Dr. Rausser about his alternative damages estimates at deposition cannot be asserted in good faith. *See* Doc. 490 at 20 ("Likewise, Defendants cannot claim 'prejudice' now that they regret their decision to ignore Dr. Rausser's alternative damages opinions."). Dr. Rausser's deposition testimony was unequivocal in affirming that the $0.69/cwt damage estimate was his expert opinion and that it remained unchanged in his 2012 Rebuttal. The fact that he erroneously arrogated to himself the right to change his expert witness opinion in response to an adverse evidentiary ruling does not rise to the level of an affirmative disclosure of the $0.41/cwt opinion. Indeed, footnote 288 does not contain *any* indication that Dr. Rausser agrees with Dr. Kalt's "corrected" damages opinion or that any one of the calculations offered in that footnote is preferable to the others. The January 2014

---

[3] *See Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011) (observing that "[i]t should be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought") (internal quotation marks omitted).

[4] Plaintiffs suggest *the court* has required them to perform the remaining January 2014 calculations. *See* Doc. 490 at 17 ("The mere fact that Dr. Rausser corrected these existing calculations by replacing the Boston price input with the alternative price input, as required by the Court's *Daubert* ruling, does not result in 'new' opinions as Defendants contend."). They ask: "why do Defendants burden the Court with a motion to exclude them?" (Doc. 490 at 18.) As Defendants aptly respond, the question before the court is not why Defendants are seeking to exclude the January 2014 calculations, but "*why do [Plaintiffs] find themselves in the position of needing to revise their damages claim at the last minute, when they had both the ability and the obligation to disclose these figures in March 2012 if they had any intention of relying on them at trial?*" (Doc. 494 at 2.)

calculations thus represent "new" opinions, even if they represent adjustments to Dr. Rausser's previously disclosed damages tables. Plaintiffs therefore should have sought an extension of the court's Scheduling Order to permit them.

In light of the court's ruling on Defendants' motion to strike the 2012 Rausser Rebuttal, Plaintiffs had clear notice that the court was unlikely to permit further untimely expert disclosures. In the absence of any rational explanation for failing to disclose the January 2014 calculations sooner, Plaintiffs fall far short of establishing either good cause or good faith in their failure to comply with the court's Scheduling Order.

With regard to the second *Outley* factor, Plaintiffs urge the court to find the January 2014 calculations are "important to Plaintiffs' case." (Doc. 490 at 18). In support of this conclusory statement, they do not explain any likely impact on their case if the January 2014 calculations are excluded. The 2012 Rebuttal Report contains the information Dr. Rausser will use to testify in support of his new damages estimate of $0.41/cwt and he may use Table A-1 to illustrate that opinion. Plaintiffs do not need the January 2014 calculations for Dr. Rausser's damages opinion; however, they could undoubtedly present a more complete (and substantially different) damages analysis with the revised calculations. As Plaintiffs make no claim that the January 2014 calculations are essential to the presentation of their damages claim at trial, the second *Outley* factor also weighs in favor of exclusion.

The prejudice to Defendants in allowing the January 2014 calculations is substantial, unwarranted, and at this point not easily remediable without considerable burden upon both Defendants and the court. If the court allows Plaintiffs to present the January 2014 calculations to the jury, Defendants will inevitably incur the time and expense to depose Dr. Rausser yet again. They will also need to prepare their own expert witness to respond to them, and it is quite possible that another *Daubert* challenge will ensue. This would inevitably interfere with Defendants' trial preparation and trial strategy. Plaintiffs' suggestion that the court merely permit Defendants to re-depose Dr. Rausser and allow additional motion practice thus fails to cure the substantial prejudice to Defendants and ignores the proximity of trial. *See Bowers v. NCAA*, 564 F. Supp. 2d

11

322, 345 (D. N.J. 2008) (holding that "reconvening expert depositions where so much water is already under the bridge is not a suitable remedy of the pattern of non-disclosure of important discovery" and that the court should not "be forced by Plaintiff's last-minute disclosures to reopen discovery and eventually reargument upon the *Daubert* in limine motions, lest this case . . . be literally without end"); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296-97 (2d Cir. 2006) (affirming exclusion of untimely damages opinion where "discovery had been closed for 'approximately one and a half years,' and at the time of the offer of expert testimony there was only 'a short time left before trial'").

    Under the third *Outley* factor, the prejudice to Defendants is substantial and cannot be fully redressed by permitting another deposition. *See Shea v. Royal Enters. Inc.*, 2011 WL 2436709, at *8 (S.D.N.Y. June 16, 2011) ("Given the numerous extensions of the discovery deadline, the further delay of this two-year-old litigation is neither deserved nor warranted, and the additional costs such delay would impose on Defendants amounts to real prejudice.").

    For similar reasons, a continuance is no longer reasonably available in this case. The trial has already been continued once, and the court has allocated almost two months of court time to it, during which no other cases can be heard and during which no other cases have been scheduled. In addition, the court is in the process of ruling on Defendants' voluminous summary judgment motion and Plaintiffs' equally voluminous opposition to it. It is anticipated that both parties will seek to file motions in limine in advance of trial. Re-opening discovery to allow Dr. Rausser's remaining January 2014 calculations and continuing the trial dates so that Defendants can challenge Dr. Rausser's revised opinions under *Daubert* would thus prejudice not only Defendants, but would significantly impact the court's own schedule and its administration of justice. *See* Fed. R. Civ. P. 1 (directing that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

    In summary, each of the *Outley* factors weighs in favor of granting Defendants' motion to strike. The court has considered whether a lesser sanction would suffice and

has concluded that, in the facts and circumstances of this case, it would not. *See Softel, Inc.*, 118 F.3d at 962-63 (concluding lesser sanctions unwarranted when, on "balance," the *Outley* factors favored the sanction of preclusion, particularly when the burden on the court in granting a continuance would be great, and noting that the "expeditious management of discovery schedules is especially important in cases [that] require extensive expert involvement over lengthy periods of time"); *see also Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 263 (E.D.N.Y. 2011) (finding preclusion warranted when "lesser sanctions would be ineffective"). Indeed, any sanction short of preclusion would reward Plaintiffs for their tactical decision not to timely disclose Dr. Rausser's opinions regarding the $0.41/cwt damages estimate in hopes that his $0.69/cwt damages estimate, *which they knew Defendants challenged*, would survive *Daubert* scrutiny. *See World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (directing courts considering Rule 37 sanctions to consider "'whether a tactical benefit was sought'" by the conduct warranting the sanctions) (quoting *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996) (considering whether a party's delay was "designed to benefit [the party's] strategic interests")). In light of the court's previous response to Plaintiffs' untimely disclosure of the 2012 Rausser Rebuttal, Plaintiffs cannot claim to be unfairly surprised by the sanction of exclusion now that trial is imminent.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion to Strike Untimely Revision of Expert Opinion (Doc. 486). Plaintiffs may advance the $0.41/cwt damage estimate and use Table A-1 of the January 2014 calculations to support it. No other revised damages opinions by Dr. Rausser based upon the January 2014 calculations will be permitted at trial.

SO ORDERED.

    Dated at Rutland, in the District of Vermont, this 16th day of May, 2014.

                                  */s/ Christina Reiss*

                                  Christina Reiss, Chief Judge
                                  United States District Court