# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| ALICE H. ALLEN, et al.,      ) | |
|                         ) | |
|       Plaintiffs,            ) | |
|                         ) | |
|          v.               ) | Civil Action No. 5:09-CV-00230-cr |
|                         ) | |
| DAIRY FARMERS OF AMERICA, INC., and   ) | |
| DAIRY MARKETING SERVICES, LLC,     ) | |
|                         ) | |
|      Defendants.          ) | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into as of this 1st day of July, 2014 by and between Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC (collectively, as defined in Paragraph 1.21, "Settling Defendants") and the Plaintiff Subclasses (hereafter "Plaintiff Subclasses"), through Subclass Counsel.

WHEREAS, the Plaintiff Subclasses are prosecuting the above-captioned action on their own behalf and on behalf of their respective Subclasses against the Settling Defendants;

WHEREAS, the Plaintiff Subclasses have alleged in their complaints and amended complaints (collectively, and with any other pleading filed in this matter or any consolidated matter, the "Complaint") that the Settling Defendants during the Class Period (defined below) engaged in certain conduct in violation of, among other things, the Sherman Act, 15 U.S.C. §§ 1 and 2, which caused the Plaintiff Subclasses to incur damages as a result of such conduct, for which the Plaintiff Subclasses seek an award of money damages and injunctive relief;

WHEREAS, the Settling Defendants deny each and every one of the Plaintiff Subclasses' allegations of unlawful conduct, have not conceded or admitted any liability, and have asserted a number of defenses to Plaintiff Subclasses' claims;

WHEREAS, Subclass Counsel have conducted an investigation into the facts and the law regarding the Complaint and have concluded, after carefully considering the facts and circumstances of the Complaint, the risks associated with continued litigation, and the applicable law, that a settlement with the Settling Defendants according to the terms and conditions set forth below (the "Settlement") is in the best interest of the Plaintiff Subclasses;

WHEREAS, the Settling Defendants, despite their belief that they are not liable for the claims asserted and that they have meritorious defenses to the claims alleged, have nevertheless concluded that they will enter into this Agreement solely to avoid the further expense, inconvenience, and burden of protracted litigation, and the distraction and diversion of its personnel and resources, and thereby to put to rest this controversy, and to avoid the risks inherent in uncertain, complex litigation;

WHEREAS, Subclass Counsel on behalf of the Plaintiff Subclasses and the Settling Defendants agree that neither this Agreement nor the terms hereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Settling Defendants or of the truth of any of the claims or allegations in the Complaint;

WHEREAS, arms-length settlement negotiations have taken place between Subclass Counsel and counsel for the Settling Defendants;

WHEREAS, Subclass Counsel and Settling Defendants have each had the full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied upon any representations (or the lack thereof) not set forth in this Agreement itself concerning the circumstances leading to this Agreement; and

WHEREAS, this Agreement, which is subject to the preliminary and final approval of the Court, sets forth all of the terms and conditions of the agreement between the Settling Defendants and Subclass Counsel on behalf of the Plaintiff Subclasses;

NOW, THEREFORE, in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned, on behalf of the Settling Defendants and on behalf of the Plaintiff Subclasses, that the Action (defined below) and all claims of the Plaintiff Subclasses against the Settling Defendants be settled, compromised and dismissed on the merits and with prejudice, without costs as to Plaintiff Subclasses, or the Settling Defendants, subject to the approval of the Court, on the following terms and conditions.

1.    **Definitions**

1.1.    "Actions" means the class action captioned as *Allen, et al. v. Dairy Farmers of America, et al.*, No. 5:09-cv-00230-cr (D. Vt.).

1.2.    "Claims Administrator" means the entity selected by Class Counsel to administer the Settlement and, in particular, the claims process in this matter.

1.3.    "Subclasses" means the DFA/DMS Subclass and the non-DFA/DMS Subclass certified by the Court in its Memorandum Opinion and Order dated November 19, 2012 (Court Docket No. 435).

1.4.    "Subclass Counsel" means the law firms of Baker Hostetler LLP, 1050 Connecticut Avenue, N.W., Suite 1100, Washington, D.C. 20036, as counsel for the non-DFA/DMS Subclass, and Cohen Milstein Sellers & Toll, PLLC, 1100 New York Ave., N.W., Suite 500, West Tower, Washington, D.C. 20005 and The Law Offices of David Balto, 1350 I Street N.W., Suite 850, Washington, D.C.

20005, as counsel for the DFA/DMS Subclass.

1.5.   "Subclass Member" means a Person who falls within a Subclass definition and has not exercised a right to be excluded from the DFA/DMS Subclass or non-DFA/DMS Subclass as of April 30, 2013 (the "Exclusion Dates").  "Subclass Member" also means a Person who falls within the Subclass definition and who exercised a right to be excluded from his or her Subclass as of the Exclusion Dates but is permitted by Order of the Court to opt back into a Subclass. "Plaintiff Subclasses" include all of the Subclass Members.

1.6.   "Class Period" means the period from January 1, 2002 through the present.

1.7.   "Court" means the United States District Court for the District of Vermont.

1.8.   "Distribution Plan" shall have the meaning set forth in Paragraph 8.4 hereto.

1.9.   "Effective Date" means the earliest date on which all of the events and conditions specified in Paragraph 5.1 herein have occurred or have been met.

1.10.   "Fairness Hearing" shall have the meaning set forth in Paragraph 2.1 hereto.

1.11.   "FSA" refers to a full-supply agreement and means an agreement to assume the rights and/or responsibility for supplying all of a buyer's requirements for raw Grade A milk at a buyer's processing plant.

1.12.   "Judgment" means final order of judgment, dismissal, and approval of the Settlement.

1.13.   "Subclass Representatives" means the named plaintiffs Alice H. Allen and Laurence E. Allen doing business as Al-lens Farm, Garret Sitts and Ralph Sitts, Jonathan and Claudia Haar, and Richard Swantak, and any other plaintiffs designated by the Court as Subclass Representatives, individually and on behalf

of a Plaintiff Subclass..

1.14.  "Person" means an individual or an entity.

1.15.  "Preliminary Approval Order" means an order to be entered by the Court preliminarily approving the Settlement.

1.16.  "Released Claims" means all claims that were asserted or that could have been asserted in the Complaint as to the Released Parties, as defined in Paragraph 1.18 below.  Released Claims includes any and all claims regardless of their nature from January 1, 1994 through and including the Effective Date arising out of, associated with, or related to the facts or circumstances alleged in the Complaint, including but not limited to Settling Defendants' sale and marketing of raw Grade A milk, or their purchase of, or failure or refusal to purchase, raw Grade A milk that was produced in and pooled on Federal Milk Marketing Order 1 ("Order 1"). Released Claims includes all claims that were asserted or that could have been asserted arising out of or relating in any way to any conduct alleged in the Complaint, regardless of whether those claims arise from common law theories of tort or contract, including without limitation breach of contract and breach of fiduciary duty, or theories under federal, state, or other statute, law, rule, or regulation.

1.17.  "Released Parties" means the Settling Defendants, their predecessors, successors, parents, subsidiaries and affiliates, representatives of any kind, insurers, all entities in which they have an ownership interest, shareholders, partners, members, owners of any kind, attorneys, and any and all past and present officers, directors, employees, managing agents, and controlling persons of such entities,

including any past or present officers of these entities originally named as a Defendant, but not any other Defendant.

1.18.   "Releasing Parties" means, individually and collectively, the Plaintiff Subclasses and all Subclass Members on behalf of themselves and any Person claiming by or through them as an heir, administrator, devisee, predecessor, successor, parent, subsidiary, representative of any kind, all entities in which they have an ownership interest, shareholder, partner, director, member, owner of any kind, affiliate, assignee, agent, employee, contractor, attorney, or insurer.

1.19.   "Settlement Amount" shall have the meaning set forth in Paragraph 7.1 hereto.

1.20.   "Settlement Fund" shall have the meaning set forth in Paragraph 7.1 hereto.

1.21.   "Settling Defendants" means Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC, or their predecessors, successors, parents, subsidiaries and affiliates, representatives of any kind, heirs, administrators and devisees, all entities in which they have an ownership interest, shareholders, partners, members, owners of any kind, attorneys, and any and all past and present officers, directors, employees, managing agents, and controlling persons of such entities, but not any other Defendant.

1.22.   "Term of this Agreement" shall mean the period from the Effective Date, as defined in Paragraph 1.9 above, through and including December 31, 2016.

2.   **Motion for Preliminary Approval**

2.1.   Within one week after the complete execution of this Agreement, Subclass Counsel shall file with the Court a motion, which shall not be opposed by the Settling Defendants, requesting entry of a Preliminary Approval Order, providing

SRK
FN

for, *inter alia*:

(a). Preliminary approval of this Agreement as fair, reasonable, and adequate and in the best interests of the Class, considering all relevant risks and factors of litigation;

(b). Approval of the form and manner of notice described in Section 3 hereto;

(c). Appointment of a Claims Administrator;

(d). A determination that no additional opt-out period is warranted or required by Rule 23(e)(4) of the Federal Rules of Civil Procedure;

(e). The scheduling of a hearing (the "Fairness Hearing") to consider (i) whether this Agreement should be approved as fair, reasonable, and adequate to, and in the best interests of, the Subclasses, and whether Judgment should be entered dismissing the Released Claims on the merits and with prejudice; (ii) whether to approve any application by Subclass Counsel for an award of attorneys' fees and payment of costs and expenses; and (iii) whether to approve any application for payment of incentive awards to the Subclass Representatives;

(f). The date by which any Subclass Member may serve written objections to this Agreement or to any application by Subclass Counsel for attorneys' fees and expenses, which date shall, subject to the Court's approval, be fourteen (14) days prior to the Fairness Hearing;

(g). A stay of all further pretrial and trial proceedings against the Settling Defendants; and

(h). An injunction against the initiation, commencement, or prosecution of any



Released Claim by any of the Releasing Parties.

2.2.   Upon the filing of the motion requesting entry of a Preliminary Approval Order, the Settling Defendants will not participate in further briefing in connection with the approval of this Agreement or as otherwise specified herein.

**3.   Notice to Subclass Members**

3.1.   The Plaintiff Subclasses shall develop, after consultation with the Settling Defendants and the Claims Administrator, a proposed plan by which to notify the Subclasses of the Settlement.   The proposed notice program shall include a proposed form of notice, which shall be agreed upon by the Defendants and Plaintiff Subclasses, and which shall be subject to Court approval.   Plaintiff Subclasses shall submit their proposed notice program to the Court for approval at the same time Plaintiff Subclasses file their motion requesting entry of a Preliminary Approval Order as described above in Paragraph 2.1.

3.2.   In accordance with the requirements of Rule 23 of the Federal Rules of Civil Procedure and Due Process, the notice program shall identify and individually notify, to the extent practicable, each member of the Subclasses reasonably ascertainable from records produced by the Settling Defendants or otherwise reasonably available.

In order to provide notice of the Settlement to those individuals who may not be capable of being identified for purposes of providing individual notice, publication notice, to the extent recommended by the Claims Administrator and ordered by the Court shall also be provided.

**4.   Fairness Hearing**

*SRF*

4.1.    At the Fairness Hearing, Plaintiff Subclasses shall seek entry of a Judgment, which shall not be opposed by the Settling Defendants, *inter alia*:

    (a).    Finally approving this Agreement and its terms as being fair, reasonable, and adequate, and in the best interest of the Subclasses, within the meaning of Rule 23 of the Federal rules of Civil Procedure, and directing its consummation according to its terms;

    (b).    Determining that the notices to the Subclasses constituted, under the circumstances, the most effective and practicable notice of this Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

    (c).    Ordering dismissal of the Action with prejudice and without payment of fees or costs by the Settling Defendants;

    (d).    Permanently barring and enjoining institution, commencement, or prosecution, by any of the Releasing Parties, of any action asserting any Released Claim against the Released Parties, in any local, state, federal, or other court or tribunal of any nation, or in any agency or other authority or arbitral or other forum wherever located;

    (e).    Providing that any Subclass Member who fails to object in the manner prescribed in this Agreement shall be deemed to have waived any objections to the Settlement or this Agreement and will forever be barred from making any such objections to this Agreement;

    (f).    Retaining exclusive jurisdiction over this Agreement, including the administration and consummation of this Agreement; and

(g).   Determining pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and directing that the judgment of dismissal shall be final and entered forthwith.

4.2.   Any Subclass Member who objects to the Settlement may appear at the Fairness Hearing in person or through counsel, at its own expense, to present any evidence or argument with respect to the Settlement, to the extent permitted by the Court. However, no such Subclass Member shall be heard, and no papers, briefs, pleadings, or other documents shall be received and considered by the Court, unless such Subclass Member properly submits a written objection that includes (a) notice of intention to appear, (b) proof of membership in the Subclass, and (c) the specific grounds for the objection.  The Plaintiff Subclasses will request that the Court order that any written objection must be filed with the Court no later than fourteen (14) days prior to the date set for the Fairness Hearing, and mailed to Subclass Counsel and counsel for the Settling Defendants, received no later than fourteen (14) days prior to the date of the Fairness Hearing.  Any Subclass Member who fails to object in the manner prescribed herein shall be deemed to have waived any objections to the Settlement and this Agreement and will forever be barred from making any such objections to the Settlement or this Agreement.

4.3.   Any Person who timely requested exclusion from the Subclass, and who has not in his individual capacity sued in a separate lawsuit one or more of the Settling Defendants for the same conduct alleged in the Actions, may apply to the Court to be reinstated to the Subclass provided such application sets forth the reasons for seeking reinstatement and is received by the Claims Administrator at least

fourteen (14) days prior to the date of the Fairness Hearing.

4.4.    If this Agreement is finally approved by the Court in its current form, or in a form not materially different therefrom, the Plaintiff Subclasses and Defendants agree not to take any appeal from entry of judgment.  Final approval of this Agreement shall not be contingent upon the Court making any particular award of attorney's fees, costs or expenses or any incentive award to Subclass Representatives, and any order of the Court making or relating to such award shall not affect the approval or finality of this Agreement or the validity, effectiveness or enforceability of the releases set forth herein.

**5.    Effective Date of Agreement**

5.1.    This Agreement shall become final and effective on the earliest date on which all of the following events and conditions have occurred or have been met:

(a).    No party has timely availed itself of any right to terminate this Agreement pursuant to Paragraph 11.1 herein;

(b).    The Court has entered the Judgment, following notice to the Subclasses and the Fairness Hearing, finally approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Actions with prejudice as to all Subclass Members, and without costs; and

(c).    The time for appeal or to seek permission to appeal from the Judgment has expired or, if appealed, approval of this Agreement and the Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that neither the provisions of Rule

60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

6.     **Release and Covenant Not To Sue**

6.1.   Upon the Effective Date, and in consideration of the Settlement Consideration specified in Section 7 herein and for other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, each of the Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, shall have covenanted not to sue any of the Released Parties with respect to all Released Claims, and shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claims against any of the Released Parties.

6.2.   Upon the Effective Date, each member of the Plaintiff Subclasses shall have expressly waived, and each of the Releasing Parties shall be deemed to have waived, and by operation of the Judgment shall have waived, any and all provisions, rights, and operation of the Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code § 1542 and § 20-7-11 of the South Dakota Codified Laws or that would otherwise act to limit the effectiveness or scope of the releases.  Plaintiff Subclasses and the Releasing Parties expressly acknowledge that they may hereafter discover facts in addition



to or different from those that any of them or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or otherwise, but upon the Effective Date each Plaintiff shall expressly have, and, upon the Effective Date, each Releasing Party shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, that could have been asserted with respect to the subject matter of the Released Claims. Plaintiff Subclasses acknowledge, and the Releasing Parties shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

7.    **Settlement Consideration**

**Monetary Payment**

7.1.    Settling Defendants will pay an aggregate sum of fifty million United States dollars ($50,000,000) (the "Settlement Amount") into an escrow account (the "Settlement Fund"), with fifty per cent (50%) allocated to DFA, and fifty per cent (50%) allocated to DMS.   The Settlement Amount shall be paid in two installments, with the first installment of twenty-five million United States dollars

*SRK*

($25,000,000) paid into the Settlement Fund within 15 days of entry of the Preliminary Approval Order, and the second installment of twenty-five million United States dollars ($25,000,000) paid into the Settlement Fund prior to April 15, 2015. JPMorgan Chase Bank, National Association shall serve as the escrow agent (unless the Plaintiff Subclasses and Defendants agree upon another escrow agent), and the escrow account shall be established and administered in accordance with Section 8 hereof.

7.2.  The monetary relief described in Paragraph 7.1 shall be the sole monetary relief afforded to the Plaintiff Subclasses. Settling Defendants will have no responsibility to make any payment other than the payments described in Paragraph 7.1.

7.3.  Conduct elements.

(a).  Settling Defendants, during the Term of this Agreement, will not enter into any FSAs for the supply or sale of raw Grade A milk to customers in Order 1, provided, however, that Settling Defendants retain the right to renew existing FSAs (as set forth in the attached Schedule A), for the supply or sale of raw Grade A milk in Order 1 subject to the provisions below.

(b).  Settling Defendants agree that, during the Term of this Agreement, any new agreements for the supply or sale of raw Grade A milk to customers in Order 1, or any renewal of existing agreements for the supply or sale of raw Grade A milk customers in Order 1, shall be presented, reviewed, and approved by the DFA Board of Directors, prior to DFA entering into or

renewing such an agreement, or presented, reviewed, and approved by the DMS Board of Directors, prior to DMS entering into or renewing such an agreement.

(c).   Settling Defendants agree that they will, upon written request by any of their respective members who are located in Order 1, disclose to that member a summary of the terms of any DFA or DMS agreement for the supply or sale of raw Grade A milk customers in Order 1.  This disclosure shall state whether the agreement is a full supply agreement, the duration of the agreement, and any other material provision, provided its disclosure is permitted by the terms of said agreement.

(d).   Settling Defendants agree that any cooperative member, affiliate, or associate of DFA or DMS in Order 1 may, during the Term of this Agreement, terminate its relationship with DFA or DMS upon no more than ninety (90) days written notice without penalty.

(e).   Settling Defendants agree not to oppose a request by Subclass Counsel to unseal and release materials submitted to the Court, including briefs and the documents that provided the source for supporting exhibits, filed with the Court in connection with Plaintiffs' motion for certification of subclasses (Court Docket No. 388) and Defendants' motion for summary judgment (Court Docket No. 479), to the extent the disclosure of such documents is not prohibited by Settling Defendants' obligations to third parties.

(f).   DFA's Northeast Area Council ("NEAC") will undertake a careful review

of members' milk checks, with respect to clarity, transparency, and any other matters, including an opportunity for members' input, in order to determine whether changes in the milk checks are warranted, and if the NEAC so recommends, such changes will be implemented.

(g).   DFA financial reports are and will be prepared in accordance with generally accepted accounting principles as promulgated by the Financial Accounting Standards Board, and DFA further undertakes as follows.

   (i).   DFA will disclose the identity of members of the Board of Directors and of the Committees of the Board and the generally applicable per diem payment rate compensation for Board members.

   (ii).   DFA will post on its secure, members-only website, myDFA, an annual disclosure of all material related-party transactions, other than the sales or purchases of raw milk to or from affiliates, specifically broken out and identified per transaction (not aggregated), with the definition of "material" to be consistent with the SEC's Item 404 promulgated at 17 C.F.R. 229.404 (defining materiality as involving an amount of $120,000 or more).

   (iii).   DFA Board members and senior executive management will continue to execute annual conflict of interest certifications, which shall be subject to review by the Audit Committee, with a report by the Audit Committee of any issues to the delegates at the Annual Meeting.

(iv). DFA will disclose to delegates at DFA's annual meeting financial information which shall include material related-party transactions as defined in Paragraph 7.3(i)(ii), and DFA's financial results from its participation in joint ventures and off-balance sheet transactions, specifically broken out and identified per transaction (not aggregated), with the definition of "material" to include any transaction involving more than $5 million, excluding the sales or purchases of raw milk to or from affiliates.

(v). DFA auditors shall be selected from one of the nationally recognized accounting firms.

(vi). DFA senior management and the Audit Committee of the DFA Board will affirmatively represent that they are responsible for the preparation, integrity and accuracy of DFA's Annual Financial Report.

(j.) DFA's NEAC will undertake a careful review, including an opportunity for members' input, as to whether changes are warranted in the election procedure by which Area Council members and delegates are chosen, including specifically whether the membership should be able to cast ballots by mail, in addition to casting votes in person at meetings, and if the NEAC so recommends, such changes will be implemented.

(h). Compliance with the Terms of this Settlement Agreement will be monitored by the Audit Committee of the DFA Board, whose membership has a total of 7 members plus two (2) independent advisors with expertise



in accounting, financial reporting and auditing matters.  Other than serving as advisors to the Audit Committee, the two (2) advisors are currently free of any other relationship with DFA.  The Audit Committee shall report its views to the delegates at DFA's annual meeting.

(i).   Settling Defendants agree that they will not discriminate or retaliate, or cause discrimination or retaliation, of any kind whatsoever in response to the participation or support of the Subclass Representatives or any other farmer in this Action.

(j).   Settling Defendants shall not enter or maintain any agreement or understanding, written or unwritten, with any cooperative that limits or restricts any form of solicitation of milk supplies from dairy farmers, including but not limited to any agreement that restricts contacting or approaching dairy farms to offer more favorable financial terms, services or other terms or conditions.

(k).   Settling Defendants will have and maintain an on-going antitrust compliance program.

## 8.   The Settlement Fund

8.1.   The Plaintiff Subclasses and Defendants, their counsel, and the Court shall treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 for all periods after the date of initial funding of the Settlement Fund.  The Plaintiff Subclasses and Defendants, their counsel, and the Court agree to take no action inconsistent with the treatment of the Settlement Fund in such manner, and all provisions of this Agreement shall be

interpreted in a manner, that is consistent with such treatment.  As required, the Plaintiff Subclasses and Defendants shall timely make such elections as are necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.

8.2.  For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, the regulations promulgated thereunder, the "administrators" of the Settlement Fund shall be the Claims Administrator designated by Class Counsel and approved by the Court.  The Class Counsel's designee shall timely and properly file or cause to be filed on a timely basis all tax returns necessary or advisable with respect to the Settlement Fund (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

8.3.  The Settlement Fund shall be invested, at the sole discretion of Subclass Counsel, and in accordance with the escrow agreement described in Paragraph 7.1 hereof, in a United States treasury money market fund subject to the regulations of the United States Securities Exchange Commission or United States Government Treasury Bills or Notes of no more than six (6) months' duration, provided however that when disbursement of some or all of the Settlement Fund is approved by the Court, the necessary funds may be transferred into and paid out of a federally insured bank account.  All interest earned on the Settlement Fund shall become and remain part of the Settlement Fund.

8.4.  After the Effective Date, the Settlement Fund shall be distributed in accordance

with a plan that Subclass Counsel shall submit at the appropriate time for approval by the Court ("Distribution Plan"). In no event shall the Settling Defendants bear any risk or have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration or any losses associated therewith.

8.5.     Subclass Representatives and Subclass Counsel shall be reimbursed, indemnified, and paid solely out of the Settlement Fund for all expenses, including, but not limited to, attorneys' fees, costs, and expenses. The Settling Defendants shall not be liable for any costs, fees, or expenses of any of Plaintiff Subclasses' or Subclass Representatives' respective attorneys, experts, advisors, agents, or representatives, and all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund. In no event shall Settling Defendants be obligated to pay anything in addition to the Settlement Amount described in Paragraph 7.1 hereto, including without limitation Subclass notice costs, attorneys' fees, payments to named Plaintiffs for their efforts on behalf of the Subclasses, settlement administration costs, escrow costs, taxes, or any other cost or expense arising from or to be paid as part of this Agreement.

8.6.     Prior to the Effective Date, (i) up to $100,000 of the Settlement Fund may be used to give notice of the Settlement to Subclass members and for settlement administration costs, (ii) up to $10,000 of the Settlement Fund may be used for escrow agent costs, and (iii) any amount of the Settlement Fund may be used to pay required taxes on income earned on the Settlement Fund. Except as otherwise

provided in this Paragraph, any disbursement from the Settlement Fund, including disbursements for attorneys' fees, costs and expenses, and incentive fees to named Subclass Representatives, shall be made only upon approval and order of the Court, and only after the Effective Date.

9. **Opt Outs**

9.1. Subclass Members who timely and validly requested exclusion from the Subclasses as of the applicable Exclusion Date or such other deadline as the Court may set for opting out, and who have not opted back in as permitted by Court order (collectively "Opt Outs"), shall have no rights with respect to this Agreement and shall receive no payments as provided in this Agreement.

10. **Attorneys' Fees**

10.1. Settling Defendants will have no responsibility to pay Subclass Counsel's attorneys' fees, costs, or expenses. Subclass Counsel may apply to the Court for payment of attorneys' fees, costs, and expenses from the Settlement Fund. Under no condition will Subclass Counsel seek an amount of attorneys' fees in excess of 33 1/3% of the Settlement Consideration in Paragraphs 7.1 through 7.3 plus reimbursement for reasonable litigation and administrative expenses.

10.2. Settling Defendants will not oppose an application for attorneys' fees or expenses submitted by Subclass Counsel consistent with the limitation described in Paragraph 10.1 hereto.

10.3. In the event the Court disapproves of, or reduces the amount sought in, any such application, such disapproval or reduction shall have no effect on the terms of the Agreement.

11.    **Withdrawal From or Modification of the Settlement**

11.1.    If the Court declines to approve this Agreement or any material part hereof, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the Judgment, or if the Court enters the Judgment and appellate review is sought and, on such review, such Judgment is not affirmed or is materially modified, then the Settling Defendants and Plaintiff Subclasses shall each, in their respective sole discretion, have the option to rescind this Agreement in its entirety. Any Defendant or Plaintiff Subclass wishing to rescind pursuant to this Paragraph 11.1 must provide written notice of rescission within thirty (30) calendar days of the event giving rise to the option to rescind.

11.2.    A modification or reversal on appeal of any amount of Subclass Counsel's fees and expenses awarded by the Court from the Settlement Fund or any Distribution Plan shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

11.3.    If the Agreement is not approved by the Court in all material parts or is otherwise rescinded, the Settling Defendants shall promptly be reimbursed the Settlement Fund, including interest thereon, if any, less any funds actually disbursed pursuant to Paragraph 8.6 hereto; in addition, Subclass Counsel shall promptly reimburse Settling Defendants for any funds actually disbursed pursuant to Paragraph 8.6(i) and 8.6 (ii).

11.4.    In the event that this Agreement is rescinded pursuant to Paragraph 11.1, or for any reason the Effective Date does not occur in accordance with the terms of Paragraph 5.1 herein, then:

(a).    The terms and provisions of this Agreement, with the exception of this Paragraph 11.4 (which shall continue in full force and effect), shall be null and void and shall have no force or effect;

(b).    Neither the existence nor the terms of this Agreement, nor any negotiations preceding this Agreement, nor any acts performed pursuant to, or in furtherance of, this Agreement, shall be used or offered in evidence in the Actions or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect); and

(c).    The Settling Defendants may oppose and assert all objections to the continued certification of the Subclasses or such other class as the Court may certify.

## 12.    Taxes

12.1.   Subclass Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid, when due, from the Settlement Fund; Subclass Counsel shall direct the escrow agent to do so in writing. The Settling Defendants shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned

by the Settlement Fund or pay any taxes on the Settlement Fund, unless the settlement is not consummated and the Settlement Fund is returned to the Settling Defendants. In the event the settlement is not consummated, the Settling Defendants shall be responsible for the payment of any taxes (including any interest or penalties) on said income.

**13.** **Miscellaneous**

13.1.   Subclass Counsel and the Settling Defendants shall use their best efforts to effectuate this Agreement, including cooperating in promptly seeking the Court's approval of procedures (including the giving of class notice under Rule 23(e) of the Federal Rules of Civil Procedure) to secure the prompt, complete, and final dismissal with prejudice of the Actions as to the Settling Defendants.

13.2.   The United States District Court for the District of Vermont shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Subclass Counsel and Settling Defendants.

13.3.   This Agreement constitutes the entire agreement among Subclass Counsel on behalf of the Plaintiff Subclasses and the Settling Defendants pertaining to the settlement of the Actions against the Settling Defendants only and supersedes any and all prior and contemporaneous undertakings of Plaintiff Subclasses and the Settling Defendants in connection therewith. This Agreement may be modified or amended only by a writing executed by Subclass Counsel and Settling

Defendants.

13.4.   This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.  Without limiting the generality of the foregoing and subject to the Effective Date occurring:  (a) each and every covenant and agreement made herein by Subclass Counsel shall be binding upon all Subclass Members and Releasing Parties, and (b) each and every covenant and agreement made herein by the Settling Defendants shall be binding upon all Released Parties.

13.5.   This Agreement may be executed in counterparts by Subclass Counsel  and the Settling Defendants (or their counsel), and an emailed signature shall be deemed an original signature for purposes of executing this Agreement.

13.6.   Neither the Settling Defendants nor Plaintiff Subclasses, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

13.7.   Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Subclass Members, Releasing Parties, and Released Parties any right or remedy under or by reason of this Agreement.

13.8.   Other than in a proceeding to enforce its terms, this Agreement shall not be used or admitted in any other action or proceeding for any purpose and shall not be deemed an admission of any fact in any proceeding.

13.9.    Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by electronic mail, or letter by overnight delivery, to counsel for that party, and in the case of notice to members of the Subclass, notice to Subclass Counsel shall be sufficient.

13.10.   Each of the undersigned attorneys represents that he or she is fully authorized by their respective clients and/or the Court's November 19, 2012 Order certifying the Subclasses and appointing Subclass Counsel to enter into the terms and conditions of, and to execute, this Agreement on behalf of their respective clients and/or the Subclass each Subclass counsel represents, subject to Court approval.

13.11.   The recitals set forth above are incorporated herein and thereby made a part hereof.

13.12.   New York law shall apply to any dispute arising from or relating to this Agreement.

Dated: July 1, 2014

Robert G. Abrams, Esq.
Robert J. Brookhiser, Esq.
Gregory J. Commins, Jr., Esq.
Terry L. Sullivan, Esq.
Danyll W. Foix, Esq.
Baker & Hostetler LLP
Washington Square, Ste. 1100
1050 Connecticut Ave., N.W.
Washington, DC 20036
Tel: (202) 862-1500
rabrams@bakerlaw.com
rbrookhiser@bakerlaw.com
gcommins@bakerlaw.com

Steven R. Kuney, Esq.
Kevin Hardy, Esq.
Carl R. Metz, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
skuney@wc.com
khardy@wc.com
cmetz@wc.com



tsullivan@bakerlaw.com
dfoix@bakerlaw.com

Emily J. Joselson, Esq.
Lisa B. Shelkrot, Esq.
Langrock Sperry & Wool, LLP
210 College St.
P.O. Box 721
Burlington, VT 05402
Tel: (802) 864-0217
ejoselson@langrock.com
lshelkrot@langrock.com

*Counsel for the non-DFA/DMS Subclass*

R. Jeffrey Behm, Esq.
Ian Carleton, Esq.
SHEEHEY FURLONG & BEHM P.C.
30 Main Street
P.O. Box 66
Burlington, VT 05402
Tel: (802) 864-9891
Fax: (802) 864-6815
jbehm@sheeheyvt.com
icarleton@sheeheyvt.com

W. Todd Miller, Esq.
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, N.W.
Suite 300
Washington, DC 20037
Tel: (202) 663-7820
Fax: (202) 663-7849
tmiller@bakerandmiller.com

*Counsel for Defendants Dairy Farmers of
America, Inc. and Dairy Marketing Services,
LLC*

Kit A. Pierson, Esq.
Benjamin D. Brown, Esq.
Brent W. Johnson, Esq.
Emmy L. Levens, Esq.
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave., N.W.
Ste. 500, West Tower
Washington, DC 20005
Tel: (202) 408-4600
kpierson@cohenmilstein.com
bbrown@cohenmilstein.com
bjohnson@cohenmilstein.com
elevens@cohenmilstein.com

SRK

David A. Balto, Esq.
The Law Offices of David A. Balto
1350 I St,, N.W., Suite 850
Washington, DC 20005
Tel:  (202) 789-5424
david.balto@yahoo.com

Andrew D. Manitsky, Esq.
Gravel and Shea PC
76 St. Paul St., 7th Floor,
P.O. Box 369
Burlington, VT 05402
Tel:  (802) 658-0220
amanitsky@gravelshea.com

*Counsel for the DFA/DMS Subclass*

## SCHEDULE A

| Plant Name | Parent Group | City | State |
|---|---|---|---|
| Crowley Foods, LLC | H.P. Hood, Inc. | Concord | NH |
| Crowley Foods, LLC | H.P. Hood, Inc. | Arkport | NY |
| Crowley Foods, LLC | H.P. Hood, Inc. | Lafargeville | NY |
| Crowley Foods, LLC/Penn Maid | H.P. Hood, Inc. | Philadelphia | PA |
| Garelick Farms, Inc | Dean Dairy Group | Florence | NJ |
| Leprino Foods Co | Leprino Foods Co. | Waverly | NY |
| Maplebrook Farm | | Bennington | VT |
| Rosenberger's Dairies, Inc | H. P. Hood, Inc. | Hatfield | PA |
| Schneider's Valley Farms | Schneider's Dairy | Williamsport | PA |
| Tuscan/Lehigh Valley Dairies, L. P. | Dean Dairy Group | Schuylkill Haven | PA |
| Swan Valley | Swan Valley | Swanton | VT |