U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 JUL -9  PM 4: 13

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ALICE H. ALLEN, LAURANCE E. ALLEN, )
d/b/a Al-lens Farm, GARRET SITTS, RALPH )
SITTS, JONATHAN HAAR, CLAUDIA HAAR, )
and RICHARD SWANTAK, on behalf of )
themselves and all others similarly situated, )
                                                                      )
              Plaintiffs, )
                                                                      )
v. ) Case No. 5:09-cv-230
                                                                    )
DAIRY FARMERS OF AMERICA, INC., and )
DAIRY MARKETING SERVICES, LLC, )
                                                                    )
              Defendants.

**ENTRY ORDER DENYING WITHOUT PREJUDICE EXPEDITED
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
BETWEEN DAIRY FARMERS OF AMERICA, INC., DAIRY
MARKETING SERVICES, LLC,
AND DAIRY FARMER SUBCLASSES
(Doc. 568)**

       This matter came before the court on the expedited motion of the DFA/DMS and non-DFA/DMS subclasses (collectively, the "Dairy Farmer Subclasses") for preliminary approval of a proposed settlement between the Dairy Farmers Subclasses and Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (the "Proposed Settlement") (Doc. 568). The Dairy Farmer Subclasses, through their attorneys ("Subclass Counsel"), ask that in conjunction with preliminary approval, the court approve their proposed notices to class members and set this matter for a hearing to determine whether the Proposed Settlement is "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e) (the "Fairness Hearing").

**I.    Basic Terms of the Proposed Settlement.**

       The Proposed Settlement was reached on the eve of trial and contemplates

settlement payments totaling $50 million, payable in two installments of $25 million each, the first in 2014 and the second prior to April 15, 2015. In addition, the Proposed Settlement requires DFA and DMS to implement certain changes to how they do business in the Northeast, including altering certain activities that the Dairy Farmers Subclasses challenged in this action. In exchange, class members will provide DFA and DMS a release.

Dairy Farmers Subclass Counsel seeks an attorney's fee award of $16.66 million or one third of the Settlement Fund, plus the payment of reasonable costs and expenses incurred in connection with this case. No estimate of these costs and expenses has been provided although these amounts should be calculable.

The Class Representatives for the DFA/DMS subclass are Jonathan Haar, Claudia Haar, and Richard Swantak. The Class Representatives for the non-DFA/DMS subclass are Alice H. Allen, Laurence E. Allen, Garrett Sitts, and Ralph Sitts. Subclass Counsel will request an incentive fee in the amount of $20,000 for each of the Class Representatives' farms. The Class Representatives for the Dairy Farmer Subclasses oppose the Proposed Settlement and will seek to voice their opposition at a Fairness Hearing. No reason for their opposition has been provided.

### A. The Draft Notices to Class Members.

When presented with a proposed settlement of a class action lawsuit, a "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(2). The notice to class members regarding a proposed settlement must therefore be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice "must express no opinion on the merits of the settlement," *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986), and "need not include the entire text of the proposed settlement but may describe it in general terms." *Id.* "Subject to these requirements . . . the district court has virtually complete discretion as to the manner of giving notice to class members." *Id.*

Subclass Counsel has submitted a draft "Notice of Proposed Settlement" (the "draft Notice") and a "Summary Notice of Proposed Settlement" (the "draft Summary Notice"). The draft Notice describes the purposes of the notice as follows: "A Court authorized this Notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to approve the settlement." (Doc. 568-3 at 4.) Although the draft Notices generally provide adequate notice of the Proposed Settlement, in certain respects, they describe Dairy Farmers Subclass members' rights and the effect of approval of the Proposed Settlement in an incomplete or inaccurate manner or in a manner that may be potentially confusing or misleading.

For example, although the amount each class member will receive from the Proposed Settlement has not and cannot be calculated with certainty, the draft Notices propose that class members be advised as follows:

How much money can I get from the Settlement?

> The amount of money you may receive cannot be calculated at this time. Your share will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to [Date] as well as the number of valid claims that are received and the attorneys' fees, incentive fees for the Subclass Representatives, costs, and expenses approved by the Court.
> We don't know how many people will file claims. However, if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be $4,000. Your payment could be more or less than $4,000 depending on the amount of raw Grade A milk you produced and pooled on Order 1.

(Doc. 568-3 at 7.) It is not clear what date will be inserted as the end date for the share calculation. This date may affect a class member's position with regard to the Proposed Settlement. Moreover, as the draft Notice requires all claims be received "no less than fourteen (14) days prior to the Fairness Hearing" (Doc. 568-1 at 6), a class member would be required to submit a claim or waive the right to do so even if he or she opposes the Proposed Settlement. The draft Notices should advise class members that they do not

3

waive the right to oppose the Proposed Settlement by submitting a claim.

In the draft Notice, the Proposed Settlement's release (the "Release") is described as a release of the ability to "sue DFA or DMS, continue to sue, or be part of any other lawsuit against DFA or DMS regarding the legal claims in this case." (Doc. 568-3 at 7.) The draft Summary Notice does not mention the Release but, instead, states: "If you do nothing, you will be legally bound by the Settlement, your rights will be affected and you will not be able to sue DFA or DMS for any claim relating to the lawsuit." (Doc. 568-4 at 2.) Although the draft Notice properly refers class members to a copy of the complete Release posted on the Internet, the description of the Release in the draft Notices is arguably misleading because the Release is far broader than a release of DFA and DMS for the claims brought in this lawsuit. The Proposed Settlement defines the "Released Claims" as follows:

> [A]ll claims that were asserted or that could have been asserted in the Complaint as to the Released Parties[.] Released Claims includes any and all claims regardless of their nature from January 1, 1994 through and including the Effective Date arising out of, associated with, or **related to the facts or circumstances** alleged in the Complaint, **including but not limited to Settling Defendants' sale and marketing of raw Grade A milk, or their purchase of, or failure or refusal to purchase, raw Grade A milk that was produced in and pooled on Federal Milk Marketing Order 1 ("Order 1")**. Released Claims includes all claims that were asserted or that could have been asserted arising out of or relating in any way to any conduct alleged in the Complaint, regardless of whether those claims arise from common law theories of tort or contract, including without limitation breach of contract and breach of fiduciary duty, or theories under federal, state, or other statute, law, rule, or regulation.

(Doc. 568-2 at 6; ¶ 1.16) (emphasis supplied). The Release thus extends beyond the legal claims in this case.

The Proposed Settlement defines the "Released Parties" as DFA and DMS, "their predecessors, successors, parents, subsidiaries and affiliates, representatives of any kind, insurers, all entities in which they have an ownership interest, shareholders, **partners, members**, owners of any kind, attorneys, and any and all past and present officers,

4

directors, employees, managing agents, and controlling persons of such entities, including any past or present officers of these entities originally named as a Defendant, but not any other Defendant." (Doc. 582-2 at 6-7; ¶ 1.17) (emphasis supplied). DFA's and DMS's members and partners are thus covered by the Release; it is unclear how many entities in the dairy industry this will encompass. The definition of "Settling Defendants" contains similar language and includes not only DFA and DMS but also "any and all past and present officers, directors, employees, managing agents, and controlling persons" as well as the "**members**" of DFA and DMS. (Doc. 568-2 at 7; ¶ 1.21) (emphasis supplied).

Both the draft Notice and the draft Summary Notice must make it clear that the Release extends beyond DFA and DMS to certain related entities, extends beyond the legal claims in this lawsuit, and that class members should carefully review a full copy of the Release and seek legal advice if they have any questions.

Both the draft Notice and draft Summary Notice describe who will be bound by the Proposed Settlement and Release in an inconsistent and potentially confusing manner. For example, in the draft Notice, in a section entitled "Your Legal Rights and Options in this Settlement," the options presented to class members appear to be mutually exclusive and state that only if class members "DO NOTHING" will they "[g]ive up [their] rights to sue DFA or DMS about the legal claims in this case." (Doc. 568-3 at 2.) The draft Summary Notice contains this same language. (*See* Doc. 568-4 at 2.) However, whether or not a class member "does something" or "does nothing" he or she will be bound by the Release if the Proposed Settlement is approved.

Any confusion regarding who is bound by the Release is compounded by a statement in the draft Notice that: "If you remain in the Settlement Class, you can't sue DFA or DMS, continue to sue, or be part of any other lawsuit against DFA or DMS regarding the legal claims in this case." (Doc. 568-3 at 7.) As Subclass Counsel propose no further opt-out period and as the draft Notice elsewhere states class members "cannot exclude [themselves] from the Class at this time" (Doc. 568-3 at 6), the draft Notice erroneously suggests that only a class member who "remain[s] in the Settlement Class" is bound by the Release. (Doc. 568-3 at 7.)

5

A section in the draft Notice entitled "What am I giving up to stay in the Class?" and one entitled "What's the difference between objecting to the Settlement and excluding myself from the Settlement?" both similarly erroneously suggest class members may decide whether to "exclude" themselves from the Proposed Settlement when Subclass Counsel propose to eliminate this option. (Doc. 568-3 at 7, 10.)

The draft Notice seeks to clarify the difference between "objecting" and "excluding," but it does so in an inaccurate manner. It states: "Objecting is telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object because the Settlement no longer affects you." (Doc. 568-3 at 10.) Again, the draft Notice suggests class members may "exclude" themselves from the class when that option is not available. It further suggests that class members who "exclude" themselves from the Proposed Settlement both forfeit the right to object and will no longer be affected by the Proposed Settlement. In fact, a class member need not submit a claim form in order to object. Moreover, if a class member does not "want to be part of the Settlement," he or she will still be bound by the Release if the Proposed Settlement is approved. (Doc. 568-3 at 10.) In this respect, the Proposed Settlement will continue to "affect[]" that class member. (Doc. 568-3-at 10.)

The Proposed Settlement excludes not only those class members who have previously opted out but also "the officers and directors of DFA, DMS, Dean Foods, HP Hood LLC, National Dairy Holdings, Farmland Dairies LLC, Kraft, Dairylea Cooperative, Inc., St. Albans Cooperative Creamery, Inc., Agri-Mark, Inc., Land O'Lakes, Inc., and Maryland and Virginia Milk Producers Cooperative Association, Inc. (Doc. 568-3 at 5.) As no dates are specified, it is unclear whether this exclusion is limited to present officers and directors of the identified entities or any person who served in that capacity during the alleged conspiracy. If the latter is intended, the Notices should state this clearly. The draft Summary Notice does not mention this exclusion. It, however, properly directs class members to "the detailed notice at the website for any

6

exceptions to Subclass Membership." (Doc. 568-4 at 2.)

Finally, both the draft Notice and the draft Summary Notice fail to apprise the Dairy Farmers Subclasses that their Class Representatives oppose the Proposed Settlement. In this case, that information is material because it will permit class members to evaluate Subclass Counsel's representation to the court that "Subclass Counsel [has] determine[d] [the Proposed Settlement] is in the best interests of the Subclasses *as a whole*" (Doc. 568-1 at 4) and its representation to class members in the draft Notice that "[b]ased on an extensive investigation of the facts and the law relevant to the lawsuit, Counsel think the Settlement is best for all Class Members." (Doc. 568-3 at 5.) In the absence of this information, the draft Notice arguably implies Class Representatives agree with the Proposed Settlement. (*See* Doc. 568-3 at 5) ("[T]here will be no trial against DFA and DMS. Instead, Plaintiffs and DFA and DMS agreed to a settlement. That way, they avoid the cost of a trial, and Class Members will get the benefits of this Settlement.").

### B. Preliminary Approval.

Fed. R. Civ. P. 23(e)(2) provides that if a settlement proposal is intended to bind class members, "the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." "As part of Rule 23(e)'s 'fairness, reasonableness, and adequacy' inquiry the court must first determine whether the terms of the proposed settlement warrant 'preliminary approval.'" *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006). "Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (quoting *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980)).

While "the threshold for preliminary approval of a proposed class action settlement is meaningfully lower than the threshold for final approval," *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2012 WL 5989763, at *1 (E.D.N.Y. Oct. 24, 2012), the court must nonetheless "make 'a preliminary evaluation' as

7

to whether the settlement" complies with Rule 23. *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). "Preliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009); *accord In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).

Although preliminary approval is merely the first step in a multi-step process in which the Proposed Settlement will be scrutinized by both the court and the Dairy Farmer Subclasses, the court is reluctant to grant even preliminary approval when it has no information regarding the basis for the Class Representatives' objections. It thus cannot rule out the possibility that Class Representatives object to the manner in which the Proposed Settlement was negotiated, or are claiming that the terms of the Proposed Settlement are unfair to class members. The court therefore cannot fairly determine whether there are "obvious deficiencies" in the Proposed Settlement or whether the Proposed Settlement "appears to fall within the range of possible approval." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (quoting Manual for Complex Litig. (Third) § 30.41 (1995)).

While it is true that a court may approve a settlement over class representatives' objections,[1] in this case, the court cannot fulfill its fiduciary role with regard to the class members,[2] and will potentitally thwart Class Representatives' own fiduciary

---

[1] *See Charron v. Wiener*, 731 F.3d 241, 254 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1941 (2014) (holding that "the assent of class representatives is not essential to the settlement, as long as the Rule 23 requirements are met").

[2] *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("In approving the proposed settlement of a class action, a district court has the fiduciary responsibility of ensuring that the

responsibilities to class members,[3] if it grants preliminary approval without this information. Accordingly, as a condition precedent to preliminary approval, Subclass Counsel must disclose to the court the grounds for the Class Representatives' opposition to the Proposed Settlement. This information is necessary for the court's preliminary assessment of whether the Proposed Settlememt is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

## CONCLUSION

For the foregoing reasons, the expedited motion for preliminary approval of the Proposed Settlement is DENIED WITHOUT PREJUDICE. (Doc. 568.)

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 9th day of July, 2014.

Christina Reiss, Chief Judge
United States District Court

---

settlement is fair and not a product of collusion, and that the class members' interests were represented adequately."); see also Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995) ("The ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court.");

In re Agent Orange" Prod. Liability Litig., 996 F.2d 1425, 1438 (2d Cir. 1993) ("A judge in a class action is obligated to protect the interests of absent class members."); Weinberger v. Kendrick, 698 F.2d 61, 69 (2d Cir. 1982) (directing that a district court "passing on settlements of class actions under [Rule 23]" is not "an umpire in [a] typical adversary litigation" but rather "a guardian for class members").

[3] See Martens v. Thomann, 273 F.3d 159, 173 (2d Cir. 2001) (directing that class representatives have "fiduciary duties towards the other members of the class") (citing, in part, Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 331 (1980) (stating that class representatives have a responsibility "to represent the collective interest of the putative class," in addition to their private interests); Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1077 (2d Cir. 1995) ("Both class representatives and class counsel have responsibilities to absent members of the class.")); see also Transpac Drilling Venture 1982-12 v. C.I.R., 147 F.3d 221, 225 (2d Cir. 1998) (noting class representatives owe class members "fiduciary duties").

9