U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 NOV 25 PM 4: 30

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ALICE H. ALLEN, LAURANCE E. ALLEN, d/b/a Al-lens Farm, GARRET SITTS, RALPH SITTS, JONATHAN HAAR, CLAUDIA HAAR, and RICHARD SWANTAK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC,<br><br>Defendants. | Case No. 5:09-cv-230 |

**OPINION AND ORDER GRANTING IN PART RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN DAIRY FARMERS OF AMERICA, INC., DAIRY MARKETING SERVICES, LLC, AND DAIRY FARMER SUBCLASSES AND SETTING A FAIRNESS HEARING**
(Doc. 580)

This matter came before the court on the renewed motion of the DFA/DMS and non-DFA/DMS subclasses (collectively, the "Dairy Farmers Subclasses") for preliminary approval of a proposed settlement between the Dairy Farmers Subclasses and Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (the "Proposed Settlement"). (Doc. 580.) The Dairy Farmer Subclasses, through their attorneys ("Subclass Counsel"), ask that in conjunction with preliminary approval, the court approve their proposed notices to class members and set this matter for a hearing to determine whether the Proposed Settlement is "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e) (the "Fairness Hearing").

## I. Factual and Procedural Background.

The Proposed Settlement requires Defendants DFA and DMS to make a payment

of $50 million dollars to class members in two installments, authorizes certain injunctive relief, provides for incentive payments to Class Representatives in the amount of $20,000 per farm, and seeks a proposed attorney's fees award of $16.6 million, plus expenses, which Defendants have agreed not to oppose. Based on the number of claims that may be filed, the average payment per class member farm is estimated to be approximately $4,000. In exchange, class members must agree to a broad release, releasing any claims they have in this action, any claims which may have been brought in this action, and any claims which in certain respects are related to this action against Defendants and other entities with whom Defendants have a relationship.[1] The parties propose no further opt-out period and oppose an expanded opportunity to opt in and join the class as beneficiaries of the Proposed Settlement.

The court initially denied preliminary approval without prejudice because the proposed notices to class members required clarifications and because the court was advised that the Class Representatives unanimously opposed the Proposed Settlement but was not informed of the grounds for their opposition. (Doc. 569.) The court has since reviewed *in camera* the Class Representatives' letter to the court which sets forth the grounds for their opposition.

The Class Representatives oppose the Proposed Settlement on procedural grounds, asserting that Subclass Counsel entered into the Proposed Settlement without their authority and without their consent. They oppose the Proposed Settlement on substantive grounds, arguing that: (1) the class should be expanded to include all dairy farmers who pooled their milk on Federal Milk Marketing Order 1; (2) the Proposed Settlement's provisions governing injunctive relief are inadequate in both scope and duration; and (3) a payment of $4,000 to each class member dairy farm does not approximate the Dairy Farmer Subclasses' damages in this case and renders Subclass Counsel the primary beneficiaries of this lawsuit. In this respect, they appear to contest the proposed attorney's fee award for Subclass Counsel as excessive. Class Representatives will have

---

[1] The court directs class members attention to the proposed Release, itself, for the full extent of the "Released Claims." (Doc. 580-2 at 6-7, ¶¶ 1.16–1.18.)

2

an opportunity to more fully voice the grounds for their opposition at a Fairness Hearing.

Subclass Counsel counter that they conferred with and obtained authority from the Class Representatives prior to entering into the Proposed Settlement and that, in any event, no authority was necessary. They contend that no Class Representative objected to the Proposed Settlement prior to its finalization and that, again, approval of the Proposed Settlement by Class Representatives was not and is not required. They argue that the monetary amount of the Proposed Settlement is sizable and properly reflects the strengths and weaknesses of class members' claims and the risks of proceeding to trial. They contend that the Proposed Settlement's injunctive relief is broader than the relief that would have been available had class members prevailed at trial. Subclass Counsel point out that approval of their proposed attorney's fees award is not part of their request for preliminary approval.

For the following reasons, the court concludes that the Proposed Settlement satisfies the standards for preliminary approval and renders a Fairness Hearing appropriate. The court further rules that an opt-out period and a re-definition of the class are not warranted at this time, but that an expanded opportunity to opt in to the class should be available. As Subclass Counsel advise that they do not seek preliminary approval of their proposed attorney's fees award, the court does not address that request at this time.

## II. Conclusions of Law and Analysis.

### A. Authority to Settle and Opposition to the Proposed Settlement.

As a threshold matter, Subclass Counsel are correct in pointing out that the case law appears to permit them to settle a class action suit without authorization from class representatives. *See Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) (concluding cases "holding that an attorney cannot settle his individual client's case without the authorization of the client are simply inapplicable" in a class action "[b]ecause of the unique nature of the attorney-client relationship in a class action" and "because . . . it may be impossible for the class attorney to do more than act in what he believes to be the best interests of the class as a whole") (internal quotation marks and

3

citations omitted). In addition, Subclass Counsel persuasively argue that a court may grant preliminary and final approval of a settlement of a class action even if the class representatives oppose it. *See Charron v. Wiener*, 731 F.3d 241, 254 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1941 (2014) (holding that "the assent of class representatives is not essential to the settlement, as long as the Rule 23 requirements are met") (citing, *inter alia*, *Kincade*, 635 F.2d at 508 ("[T]he assent of named plaintiffs is not a prerequisite to the approval of a settlement.") (internal quotation marks omitted)). This does not mean, however, that the Class Representatives' opinions regarding the fairness, reasonableness, and adequacy of the Proposed Settlement are irrelevant. To the contrary, the reaction of the class to the Proposed Settlement remains an important consideration in determining whether the Proposed Settlement should be approved. *See Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000) (noting one of the factors to evaluate whether a class action settlement is fair, reasonable, and adequate is "the reaction of the class to the settlement"); *see also Kincade*, 635 F.2d at 508 (noting that "the unanimous disapproval of [a] settlement by the active named plaintiffs [is] a significant factor" in evaluating whether to approve a settlement). This conclusion is underscored in the instant case where the Class Representatives have actively participated in every stage of the litigation and have a commendable understanding of both the facts and the law underpinning their claims.

### B. Preliminary Approval.

"Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (quoting *In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)). It is appropriate where the settlement "is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006) (citations omitted).

In making this determination, the court focusses on the "negotiating process" by which the settlement was reached and on the reasonableness and "fairness" of its "substantive" terms. *Charron*, 731 F.3d at 247. With regard to the latter, the court considers the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted) (abrogated on other grounds by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)).

In this case, the Proposed Settlement resulted from arms-length, non-collusive negotiations on the eve of trial between experienced and fully-informed counsel. The Proposed Settlement was preceded by years of discovery and motion practice, including motions that addressed the merits of the parties' claims and defenses and the admissibility of evidence at trial. Accordingly, the negotiations between Subclass Counsel and Defendants' counsel satisfy the standards for preliminary approval with regard to the procedure by which the Proposed Settlement was reached. As Subclass Counsel point out, they did not require authority from or approval of the Class Representatives before they agreed to the Proposed Settlement.[2]

The substantive terms of the Proposed Settlement present a closer question. As the Class Representatives observe, a payment of $4,000 per dairy farm and limited injunctive relief does not appear to approximate the full value of their antitrust claims. However, the potential value of those claims must be juxtaposed against the legitimate

---

[2] For this reason, the court need not resolve the factual dispute between the Class Representatives and Subclass Counsel regarding the circumstances that gave rise to the Proposed Settlement.

5

risk of a defense verdict at trial. At the summary judgment stage, the court concluded that the documentary proof of antitrust violations was not as compelling as Subclass Counsel represented and in some respects did not provide evidence of a conspiracy. *See Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2610613, at *10-15 (D. Vt. June 11, 2014) (reviewing evidence in support of Plaintiffs' monopsony conspiracy claims; noting "the difficulty of accepting Plaintiffs' characterizations of the conspiracy's alleged anticompetitive conduct at face value"; and observing that "several of Plaintiffs' representations regarding the factual record are either problematic or unreliable" and "may not support the full breadth of Plaintiffs' extensive conspiracy claims"). The court therefore dismissed some claims and limited others. *See id.* at *7, *16, *20, *26-28 (granting, among other things, Defendants' motion for summary judgment on Plaintiffs' price-fixing claim and Plaintiffs' proffered geographic market definition which conflicted with their expert's definition).

Correspondingly, Defendants requested the court to exclude at trial the opinions of Gordon Rausser, Ph.D., the class members' sole expert witness, and the court agreed that certain aspects of Dr. Rausser's testimony were inadmissible. *See Allen v. Dairy Mktg. Servs., LLC*, 2013 WL 6909953, at *13-15 (D. Vt. Dec. 31, 2013) (excluding certain damages calculations offered by Plaintiffs' expert witness), and *Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2040133, at *4, *8 (D. Vt. May 16, 2014) (granting motion to strike expert's revision of damages).

Finally, as some of the alleged conspiracy's conduct took place outside the statute of limitations period, class members' ability to present this conduct to the jury faced almost certain challenges from Defendants at trial and required a strong factual record before a jury could impose liability and award damages for conduct beyond the limitations period. *See Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2610613, at *21-28 (D. Vt. June 11, 2014) (addressing theories on which Plaintiffs rely in arguing they could recover damages beyond the limitations period provided in 15 U.S.C. § 15b; noting that it may prove difficult for certain Plaintiffs to establish at trial that they were unaware of the nature and existence of their potential claims during the pre-limitations time

period; and granting in part Defendants' motion for summary judgment with regard to certain damages theories).

On balance, a total monetary payment of $50 million falls within a reasonable range of potential outcomes when considered in the context of the legitimate risk of a defense verdict. Moreover, because class members have limited their request for injunctive relief to only "conduct found by the Court or jury to be illegal," the equitable relief set forth in the Proposed Settlement is broader than the scope of the equitable relief that may have been ordered by the court.

The parties' joint request that there be no period to opt out of the class for purposes of the Proposed Settlement reflects the late stage in the case in which the settlement was reached and the ample opportunity that class members had to opt out of the class before that stage was reached. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (rejecting argument that class "was denied due process because class members were not given the opportunity to opt out after the settlement notice was issued," and relying on *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992), which held, "[s]ince the parties had been given notice of the action, the opportunity to opt out, notice of the proposed settlement, and the opportunity to object, . . . [the district court] was not required to grant those who objected to the proposed settlement a second opportunity to opt out"); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778-79 (2d Cir. 1996) (affirming denial of motion to opt out of proposed settlement because movants "received the protections accorded by Fed. R. Civ. P. 23," and concluding that, "[i]f the procedural requirements of that Rule were satisfied, the [district courts] would be entitled to approve a settlement over the objection of those who were denied the opportunity to opt out of the class") (internal quotation marks omitted). While re-definition of the class is not warranted at this late juncture, the court agrees with the parties' joint request that individuals who previously have opted out be permitted to opt back in to the class for purposes of settlement. (Doc. 580-1 at 15.)

Although the Class Representatives assert that the proposed attorney's fees award is excessive in light of class members' modest recovery, the parties have properly

7

committed the issue of the appropriate attorney's fees award to the court's discretion. (*See* Doc. 580-1 at 26.) *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) ("[T]he fees awarded in common fund cases may not exceed what is reasonable under the circumstances. What constitutes a reasonable fee is properly committed to the sound discretion of the district court[.]") (internal quotation marks and citations omitted); *accord Wal-Mart Stores, Inc.*, 396 F.3d at 121 (2d Cir. 2005) (addressing attorney's fees sought in a class action settlement in an antitrust case and noting that the "'*Goldberger* factors' ultimately determine the reasonableness of a common fund fee").

Because preliminary approval is only "the first step in the settlement of a class action" to "preliminarily determine" whether to authorize notice and schedule a hearing, *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (internal quotation marks omitted), this step "requires only an initial evaluation of the fairness of the proposed settlement." At a Fairness Hearing, in contrast, the court must conduct a full "evidentiary hearing . . . to determine the fairness and adequacy of settlement," at which time the Class Representatives and class members will have the opportunity to fully voice their opinions regarding whether the Proposed Settlement is fair, reasonable, and adequate. *Id.* (internal quotation marks and citations omitted); *see also Authors Guild v. Google, Inc.*, 2009 WL 4434586, at *1 (S.D.N.Y. Dec. 1, 2009) (noting "nuances" are to be considered at and after the fairness hearing and after all interested parties "have had the opportunity to make their views known"). For these reasons, the court GRANTS the motion for preliminary approval.

### C. The Proposed Notices.

As part of preliminary approval of a proposed settlement of a class action lawsuit, a "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice "must express no opinion on the merits of the settlement," *Handschu v. Special Servs. Div.*, 787 F.2d 828,

8

833 (2d Cir. 1986), and "need not include the entire text of the proposed settlement but may describe it in general terms." *Id.*

Subclass Counsel has submitted a draft "Notice of Proposed Settlement" (the "draft Notice") and a "Summary Notice of Proposed Settlement" (the "draft Summary Notice") which contain most of the clarifications the court sought in previously denying preliminary approval. However, the draft Notice attached to the renewed motion differs in some respects from the proposed notices attached to Subclass Counsel's earlier submission in response to the court's denial without prejudice of their motion for preliminary approval. (Doc. 570.) Two issues require further clarification. First, Subclass Counsel's initial submission explained that the proposed notice had been revised to clarify that the settlement excludes, *inter alia*, "current and former" officers and directors of DFA, DMS, and other entities. (Doc. 570 at 6.) The draft Notice attached to the renewed motion, however, provides that only "the current officers and directors of" DFA, DMS, and other entities are excluded from the Settlement. (Doc. 580-4 at 5.) It is therefore unclear whether the draft Notice is meant to exclude current and former officers and directors of Defendants and related entities. Second, because the draft Notice attached to the pending motion explains only that "Subclass Representatives oppose the Settlement" (Doc. 580-4 at 5), a copy of this Opinion and Order shall be attached to the Notice and posted on the class action website to advise class members of the grounds for that opposition.

With these minor clarifications, the draft Notice and Summary Notice provide class members "with a fair understanding of the action, the parties, and the nature of the settlement, by asking and answering questions that putative settlement class members might have." *Allen v. Dairy Farmers of Am., Inc.*, 2011 WL 1706778, at *11 (D. Vt. May 4, 2011). The draft Notice and Summary Notice are therefore reasonable and "adequate" to apprise class members of the Proposed Settlement and "the consequences of taking, or not taking, action in response." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 130 (2d Cir. 2011) (concluding notice was sufficient when "contain[ed] a list of readable questions and answers discussing the content of the Class Action and the

9

consequences of taking, or not taking, action in response" and "offered advice from class counsel, provid[ed] lawyers' contact information and instruct[ed] class members to contact them should the content of the Class Notice be unclear"); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 113 ("The standard for the adequacy of a settlement notice in a class action . . . is measured by reasonableness. . . . Notice is adequate if it may be understood by the average class member.") (internal quotation marks and citations omitted).

Accordingly, the court GRANTS approval of the draft Notice and Summary Notice to class members and ORDERS that this Opinion and Order must accompany the draft Notice and be posted on the class action website to more fully apprise the class members of the nature and extent of the court's approval and the position of their Class Representatives.

### D. Method of Disseminating Notice and Deadlines.

Subclass Counsel propose that notice to the class be provided in three ways. First, the Notice will be mailed to each member "whose identities and locations are reasonably ascertainable, which may be satisfied by sending the Notice to the addresses of potential Subclass members compiled in the course of the Dean settlement and class notice, plus any additional identified potential Subclass members." (Doc. 580-3 at 3.) Second, the Summary Notice will be published in the next available issues of *American Agriculturalist*, *Country Folks* (Eastern edition), *Farming: The Journal of Northeast Agriculture*, and *Progressive Dairyman* (Northeast edition). Third, the Proposed Settlement Agreement, Notice, and the court's Opinion and Order will be posted on the class action website maintained by the Claims Administrator.

Subclass Counsel further propose the following deadlines for dissemination of notice, settlement administration, and the Fairness Hearing: (1) Notice and Summary Notice must be mailed and published, respectively, as soon as practicable following the issuance of this Opinion and Order; (2) requests for permission to opt back in to the class must be filed 14 days before the Fairness Hearing; (3) claims forms and/or objections must be filed 14 days before the Fairness Hearing; (4) requests to be heard at the Fairness

Hearing must be filed 14 days before the Fairness Hearing; (5) any motion for final approval and responses to objections must be filed 7 days before the Fairness Hearing; and (6) the court set a Fairness Hearing. The procedures for submitting requests to opt back in to the class, claims forms, objections, and requests to be heard are explained in the draft Notice.

In light of these proposals, the court finds that the manner and method for dissemination of Notice and Summary Notice and the deadlines for responses are reasonable and sufficient to both apprise the class of the pendency of the Proposed Settlement and the Fairness Hearing and to afford class members an opportunity to present their objections. *See Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (directing that "the notice provided to absent class members" is "measured by reasonableness" and "must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action") (internal quotation marks and citations omitted).

The court therefore AUTHORIZES dissemination of notice and deadlines in accordance with the proposals set forth above. **The Fairness Hearing is set for January 29, 2015.**

## CONCLUSION

For the foregoing reasons, the court GRANTS preliminary approval of the Proposed Settlement, but DECLINES to grant preliminary approval of the attorney's fees request. The court ORDERS that no further opt out period and a re-definition of the class are warranted at this time; however, the court ORDERS that class members who previously opted out of the class may seek to opt back in to the class for purposes of settlement.

With the corrections noted herein, the court GRANTS approval of the draft Notice and Summary Notice and ORDERS that this Opinion and Order accompany the draft Notice. The court further AUTHORIZES dissemination of Notice and publication of Summary Notice in accordance with this Opinion and Order, and the court ORDERS that Notice and Summary Notice be mailed and published, respectively, as soon as practicable

11

following the issuance of this Opinion and Order. The court ORDERS that requests for permission to opt back in to the class be filed 14 days before the Fairness Hearing; that claims forms and/or objections be filed 14 days before the Fairness Hearing; that requests to be heard at the Fairness Hearing be filed 14 days before the Hearing; and that any motion for final approval and responses to objections be filed 7 days before the Fairness Hearing.

**The court SCHEDULES the Fairness Hearing for January 29, 2015 to determine whether the Proposed Settlement is fair, reasonable, and adequate.**

Because the remainder of the relief sought in the renewed motion is more appropriately addressed following the Fairness Hearing, the court DENIES all remaining requests in the renewed motion WITHOUT PREJUDICE.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 25th day of November, 2014.

Christina Reiss, Chief Judge
United States District Court