# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **ALICE H. ALLEN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 5:09–CV–00230–cr** |
| ) | |
| **DAIRY FARMERS OF AMERICA, INC., and** ) | |
| **DAIRY MARKETING SERVICES, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM IN SUPPORT OF
## DAIRY FARMER SUBCLASSES' EXPEDITED, UNOPPOSED MOTION TO
## DISSEMINATE AN AMENDED NOTICE AND
## ADJUST CERTAIN DEADLINES RELATED TO SETTLEMENT

The Dairy Farmer Subclasses, through their counsel, respectfully request that the Court adjust two deadlines related to the Settlement Agreement ("Agreement")[1] with Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (collectively "Defendants") and authorize the dissemination of an Amended Notice reflecting those adjustments.  Specifically, Subclass Counsel request that the Court:

> (1) extend the period for compensable claims from December 12, 2014 to December 31, 2014;

> (2) extend the deadline for filing of claims from January 15, 2015 to May 30, 2015; and

> (3) authorize dissemination of an amended notice regarding the same.

As described more fully below, ***all other events and deadlines (including the January 29, 2015 fairness hearing) can remain the same so the proposed adjustments will not have a material impact on the overall timeline for resolving this case***, but both adjustments are necessary to better ensure that farmers have sufficient time and information to submit valid claims.  Subclass Counsel conferred with counsel for DFA/DMS and confirmed that Defendants do not oppose this motion.

## BACKGROUND

On November 25, 2014, the Court granted preliminary approval of the Dairy Farmer Subclasses' settlement with the final Defendants in this litigation for $50 million plus substantial injunctive relief.  Op. and Order Granting in Part Renewed Mot. for Preliminary Approval , Dkt. No. 582 (Nov. 25, 2014) ("Preliminary Approval Order").  Pursuant to that Order, the Dairy Farmer Subclasses, through their counsel, amended the Notice and Summary Notice as directed by the Court, *see id*. at 8-10, and coordinated with the Federal Milk Marketing Administrator to

---

[1] The Agreement was attached as Exhibit A to Dairy Farmer Subclasses' Renewed Motion for Preliminary Approval, Dkt. No. 580 (Oct. 3, 2014).

disseminate Notice to the members of the Subclasses by U.S. Mail on December 12, 2014, *see id*. at 10-11.[2]

The Notice and Summary Notice set the deadline to submit claims as January 15, 2015. They also defined the time period for which Subclass members could claim their milk production pounds in accordance with the Court's definition of the Subclasses.  The two litigation Subclasses certified by the Court collectively include all dairy farmers "who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present."[3] During the administration of the settlement with Dean Foods, "through the present" was interpreted to mean that farmers, in the claims process, submitted their milk production information through the date on which notice was disseminated.  To be consistent, the same interpretation of "through the present" was used for finalizing notice to Subclass members, resulting in the December 12, 2014 date.  So, both notices instructed subclass members to submit the total amount of raw Grade A milk that their farm produced and pooled in Order 1 at any time from January 1, 2002 *to December 12, 2014*.

---

[2] While the vast majority of notices were mailed on December 12, 2014, a small amount of notices were mailed on December 15, 2014 as well.

In addition to disseminating Notice by mail in compliance with the Court Order, Summary Notice has been published in the publications identified by the Court's Order as well as the publication *Farmshine* and a website was created with all the relevant Settlement information, *see* Northeast Dairy Farmer Settlement with DFA/DMS, www.NortheastDairyClass.com (last updated Dec. 12, 2014).  *See* Preliminary Approval Order at 10-11.  Subclass Counsel do not propose publishing the adjusted deadlines, as the revised notices can be mailed directly to Subclass members, placed on the Internet, provided to Subclass members by the Claims Administrator, and the next available publications approved by the Court will not occur until after January 15, 2015.

[3] *See* Opinion and Order Granting Plaintiffs' Renewed Motion for Class Certification at 3-4, Dkt. No. 435 (Nov. 19, 2012).

**ARGUMENT**

Since the dissemination of notice, two issues have come to Subclass Counsel's attention that Subclass Counsel believe warrant an adjustment of the deadlines related to the Settlement and the issuance of an Amended Notice to the Subclasses. The Court has discretion to amend the notices, or order a second notice if necessary, to ensure that members of the class have all the relevant information necessary to file a claim. *See*, *e.g.*, *In re Elec. Books Antitrust Litig.*, No. 11-md-2293, Dkt. No. 657 (S.D.N.Y. Sept. 12, 2014) (approving second settlement notice to class to correct prior notice and including language in subsequent notice to disregard prior notice).

A.    **Two Modifications to the Notice are Necessary to Help Ensure Subclass Members Have the Time and Information Necessary to Complete Their Claims.**

First, the overall milk production information that Subclass members need to file a valid claim is compiled by the Federal Milk Market Administrator on a monthly basis, before being given to various handlers, such as milk cooperatives, marketing agencies, and processors, throughout the Order. Those handlers can then provide that information to farmers. Subclass Counsel has been informed that the data regarding farmers' production provided by the Market Administrator is only available in monthly increments. Thus, ending the claims period for damages in the middle of the month (on December 12, 2014) creates an insurmountable hurdle to providing Subclass members with the information they need – the total amount of milk they sold during the relevant period – to file a valid claim. To eliminate this problem, Subclass Counsel propose extending the relevant period from December 12, 2014 to December 31, 2014 to help ensure the Subclass members have access to the data necessary to complete their claim forms and that all qualifying sales of milk are included in allocating the Settlement.

The second issue similarly relates to Subclass members' ability to obtain data that many farmers will use to complete their claim forms.  Although some farmers (or their handlers) may have retained milk production data for the last 12 years (January 1, 2002 to December 31, 2014), past experience from the Dean settlement informs Subclass Counsel that many farmers need or want to rely on the Federal Milk Market Administrator's data.  The Federal Milk Market Administrator, however, recently confirmed that this data will not be available for approximately 2 and 1/2 months, given, among other things, the time needed to compile and verify the data, the holiday schedule, and year-end reporting.

Additionally, the Federal Milk Market Administrator recently confirmed that it cannot provide this data to farmers or their handlers absent the express authorization of all the handlers in Order 1.[4]  *See* 7 U.S.C. § 608d.  In administering the Dean Settlement and the settlements in *Southeastern Milk*, the Market Administrator obtained the necessary authorizations from the handlers, but learned that the process can take up to two months.

As a result, the Federal Milk Market Administrator expects that it will not be in position to release the relevant data to help Subclass Members complete their claim forms until approximately mid-March to early April.  Afterwards, it will take approximately two months for farmers to access the information given to handlers and to submit their claim forms.  Because each Subclass Member's share of the Settlement depends on the amount of raw Grade A milk produced and pooled in Order 1, having reliable access to that data is the best method, and for some possibly the only method, to submit an accurate claim.  This process will greatly aid Subclass Members in participating in the Settlement and receiving their fair share.  Accordingly,

---

[4] Unfortunately, the authorizations obtained in the Dean Settlement and *Southeastern Milk* litigation do not cover the same time period as in this Settlement, requiring the Market Administrator to obtain new authorizations.

so that members of the Subclasses may have a sufficient amount of time to obtain that information, Subclass Counsel request that the Court extend the deadline for filing claims in this Settlement from January 15, 2015 to May 30, 2015.

Attached hereto as Exhibit A is an Amended Notice that reflects the changes outlined above.[5]  Additionally, Subclass Counsel have attached as Exhibit B a short letter that describes the changes to the Amended Notice.  Should the Court grant the motion at hand, Subclass Counsel will disseminate the Amended Notice and Letter as soon as practical and update the Settlement website to reflect these changes immediately.[6]

**B.      Adjusting These Dates and Disseminating a Second Notice Will Not Delay the Resolution of this Case and Will Likely Not Delay the Distribution of the Settlement.**

As described above, adjusting the end of the Class Period and deadline for submitting claims is necessary to help ensure that Subclass members have adequate time and information with which to fill out their claim forms.  Importantly, however, making these two adjustments need not delay the ultimate resolution of this case.  No changes are proposed for any of the other deadlines included in the Court's Preliminary Approval Order, nor need the Court move the date

---

[5] Subclass Counsel have made two additional non-material changes to the Notice. The first is to Question 24 regarding the process for speaking at the hearing.  Previously, the question referred those intending to speak at the hearing to a prior question about how to submit an objection.  To ensure that there is no confusion regarding the process for speaking at the hearing, Question 24 has been amended to expressly lay out the process.  This change is not material and, alone, would not warrant disseminating an Amended Notice.  However, given that Subclass Counsel believe that an Amended Notice is necessary for the reasons described herein, it seems worthwhile to clarify the process for speaking at the hearing.  The Settlement Administrator has been instructed to provide Subclass Members inquiring about how to speak at the hearing with all the relevant information for doing so and that information is also available on the Frequently Asked Questions page of the Settlement website.  The second changed the word "received" to "postmarked" in Question 8 to be consistent with the rest of the Notice.

[6] As it was with the initial notice, a claim form will accompany the amended notice.  That claim form will reflect any changes to the amended notice ordered by the Court.

for the Final Approval Hearing.[7]  Indeed, it is quite common for late-filed claims (including claims submitted after a grant of Final Approval) to be accepted in class action settlements.[8] Here, instead of simply accepting late claims, Subclass Counsel recommend adjusting the dates so that farmers who cannot otherwise access the relevant milk production information are not dissuaded from filing a claim because of the deadline.

Moreover, the proposed date adjustments are unlikely to delay distribution of the Settlement should the Court ultimately grant Final Approval.  It is not uncommon for the claims administration process to take anywhere from 6-12 months.  Even with the current deadline to submit claims of January 15, given the issues described above, it very likely will be necessary for the Claims Administrator to accept late claims for months past that date.  So, the proposed change to the deadline will not slow the distribution to Subclass Members in the end, but rather will make the process more efficient, provide more clarity to farmers sooner, and help ensure that more farmers can file accurate claims and participate in the Settlement.

Finally, the proposed adjustments may ultimately save the Court time and the Subclasses money on claims administration.  The Agreement currently provides that the Settlement Amount of $50 million will be paid in two installments which, under the current deadlines (December 2014 and April 2015), would require two distributions to farmers.  Extending the deadline for filing claims will allow for Defendants to have paid both Settlement installments into escrow prior to distribution.  As a result, the Court can be presented with only one motion for

---

[7] Should the Court believe that the current issues warrant moving all the deadlines, Subclass Counsel will submit revised Notices reflecting those altered deadlines to the Court for approval within 72 hours of the Court issuing such an Order.

[8] *See*, *e.g.*, *Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972) (permitting late-filing class members to participate in settlement fund when the late filings were not detrimental to the settlement process); *In re Am. Tower Corp. Sec. Litig.*, 648 F. Supp. 2d 223, 225 (D. Mass. 2009) (ordering the net settlement fund to be distributed to authorized claimants including late claimants).

authorization to distribute the settlement proceeds and the Claims Administrator can make only one distribution of proceeds to the Subclasses.  This will eliminate the burden and costs associated with a second disbursement.

* * *

Subclass Counsel are available for a telephonic conference at the Court's convenience should the Court have any questions or concerns regarding the subjects raised herein.

## CONCLUSION

For the reasons stated above, the Subclasses respectfully request that this Court grant their expedited, unopposed motion to disseminate an amended notice and adjust certain deadlines related to the Settlement.

Dated:  December 22, 2014


/s/ *Robert G. Abrams*
Robert G. Abrams, Esq.
Robert J. Brookhiser, Esq.
Gregory J. Commins, Jr., Esq.
Terry L. Sullivan, Esq.
Danyll W. Foix, Esq.
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, DC  20036
202-862-1500
rabrams@bakerlaw.com
rbrookhiser@bakerlaw.com
gcommins@bakerlaw.com
tsullivan@bakerlaw.com
dfoix@bakerlaw.com

/s/ *Kit A. Pierson*
Kit A. Pierson, Esq.
Benjamin D. Brown, Esq.
Brent W. Johnson, Esq.
Emmy L. Levens, Esq.
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave., N.W.
Suite 500, West Tower
Washington, DC  20005
(202) 408-4600
kpierson@cohenmilstein.com
bbrown@cohenmilstein.com
bjohnson@cohenmilstein.com
elevens@cohenmilstein.com

Emily J. Joselson, Esq.
Lisa B. Shelkrot, Esq.
Langrock Sperry & Wool, LLP
210 College St.
P.O. Box 721
Burlington, VT 05402-0721
(802) 864-0217
ejoselson@langrock.com
lshelkrot@langrock.com

*Counsel for Alice E. and Laurence
E. Allen, Garret and Ralph Sitts,
and the non-DFA/DMS Subclass*

David A. Balto, Esq.
The Law Offices of David A. Balto
1350 I St., N.W., Suite 850
Washington, DC 20005
(202) 789-5424
david.balto@yahoo.com

Andrew D. Manitsky, Esq.
Gravel and Shea PC
76 St. Paul St., 7th Floor
P.O. Box 369
Burlington, VT  05402
(802) 658-0220
amanitsky@gravelshea.com

*Counsel for Jonathan and Claudia
Haar, Richard Swantak, and the
DFA/DMS Subclass*