# EXHIBIT 3

DISTRICT COURT DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| ALICE H. ALLEN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 5:09-cv-230 |
| | ) |
| DAIRY FARMERS OF AMERICA, INC., and | ) |
| DAIRY MARKETING SERVICES, LLC, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF KIMBERLY K. NESS REGARDING NOTICING STATISTICS**

I, Kimberly K. Ness, declare as follows:

    1.    I am a Senior Project Administrator for Rust Consulting, Inc. ("Rust Consulting") which serves as the Claims Administrator for the above-captioned action.  I was responsible for supervising the services provided by Rust Consulting for this matter.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would testify competently to the following facts.  My business address is 201 South Lyndale, Faribault, Minnesota 55021.  I am over twenty-one years of age, I have never been convicted of a felony and I am authorized to make this Affidavit on behalf of Rust Consulting and myself.

    2.    Rust Consulting specializes in Class Action notification and claims administration, including telephone support and web-based support, direct mail services, claims processing, and settlement fund distribution.  Founded in 1976, Rust Consulting began its claims administration practice in 1989 and has extensive experience in Class Action matters, having provided services in Class Actions ranging in size from 100 to 100 million class members and has provided notification and/or claims administration services in more than 3,500 class action cases.

1

Declaration of Kimberly K. Ness regarding Noticing Statistics

**ENGAGEMENT**

3.     Rust Consulting was engaged by Cohen Milstein Sellers & Toll, PLLC to serve as the administrator for this class action settlement.

4.     On January 31, 2013, Rust Consulting obtained a mailing address of PO Box 2958, Faribault, MN 55021-2958 to receive claim forms and other correspondence.

5.     Attached as Exhibit A is the electronic documents Rust Consulting prepared and provided for the initial notification mailing.

6.     Attached as Exhibit B is the electronic documents Rust Consulting prepared and provided for the amended notification mailing.

**INCOMING MAIL**

7.     As of January 20, 2015, Rust Consulting received 516 claim forms.

8.     Between the initial mailing and January 20, 2015, Rust Consulting has received four pieces of correspondence.

**TOLL-FREE NUMBER**

9.     On January 31, 2013, Rust Consulting established and activated a toll-free number, ("TFN") 1-855-460-1533 to receive calls regarding the settlement. Beginning December 11, 2014, incoming callers hear a brief summary of the settlement with the opportunity to speak with a customer service representative ("CSR") during the open hours of Monday through Friday from 8:00 am to 6:00 pm Eastern Standard Time.

10.    Between the initial mailing and January 20, 2015, there have been a total of 728 calls made to the TFN with 184 connecting with a CSR and 176 requesting settlement documents be mailed.

**EMAIL ADDRESS**

11.    On January 31, 2013, Rust Consulting established an email address info@northeastdairyclass.com for potential class members to make inquiries regarding the settlement.

12.    Between the initial notification mailing and January 20, 2015, there have been a total of 21 emails received with eight requesting settlement documents be mailed.

13.    As of January 20, 2015, a total of 184 settlement documents have been mailed to fulfill requests received through telephone calls and emails.

Declaration of Kimberly K. Ness regarding Noticing Statistics

**WEBSITE**

14.     On January 31, 2013, Rust Consulting reserved a website, www.northeastdairyclass.com, to provide information to those seeking information about the proposed settlement. The website was made available to the public on December 11, 2014.

15.     The website provides: (i) a summary of the Settlement; (ii) DFA/DMS Settlement Notice and Claims Documents (iii); DFA/DMS Settlement Court Documents; (iv) Other Court Documents; (v) Order 1 Farm Locations; (vi) Important Dates and Deadlines; (vii) Frequently asked Questions and other information related to the class action settlement.

16.     As of January 20, 2015, there have been 1,749 unique visitors to the website.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*Kimberly K. Ness*

Kimberly K. Ness

Declaration of Kimberly K. Ness regarding Noticing Statistics



FOR OFFICIAL USE ONLY

01

Page 1 of 2

# SETTLEMENT CLAIM FORM

**You Must Complete this Form if You Want to Request Payment from DFA and DMS**

*Allen v. Dairy Farmers of America, Inc.,*
**No. 5:09-CV-230**

**Must Be Received No Later Than January 15, 2015**

You may be eligible to receive a payment from a settlement reached with Dairy Farmers of America, Inc. ("DFA"), and Dairy Marketing Services, LLC ("DMS") if your farm produced and pooled raw Grade A milk in Federal Milk Market Order 1 ("Northeast").

## GENERAL INSTRUCTIONS

A.  If you wish to receive a payment from the Settlement with DFA and DMS, you must complete and return this Claim Form so that it is received no later than January 15, 2015 to the following address:

**Northeast Dairy Farmer Settlement**
**PO Box 2958**
**Faribault MN 55021-2958**

B.  In Section 2 you must provide the total amount of raw Grade A milk that your farm produced and pooled in Order 1 at any time from January 1, 2002 to December 12, 2014. Order 1 includes the states of Connecticut, Delaware, Massachusetts, New Hampshire, New Jersey, Rhode Island, Vermont and the District of Columbia and certain counties, cities and townships within the state of Maryland, New York, Pennsylvania and Virginia. For specific information on whether your farm is located in Order 1, please visit the website: www.NortheastDairyClass.com.

C.  You must complete and sign your Claim Form.

D.  Claim Forms received after January 15, 2015 may be rejected and you may not receive a payment.

E.  Submission of a Claim Form does not guarantee you will receive a payment from the Settlement.

---

**1.   CLASS MEMBER INFORMATION – Please type or neatly print all information.**

Last Name: _____   First Name: _____

Address Number or P.O. Box: _____   Street or Road: _____

City: _____   State: _____   Zip Code: ___ ___ ___ ___ ___

**FARM INFORMATION**

Farm Name: _____

Specify ownership info:   ☐ Individual(s)   ☐ Corporation   ☐ Cooperative   ☐ Other: _____

Name of County in which Farm is located: _____

FARM ADDRESS -   ☐ Check if Farm Address is the same as address above.

Farm Address Number or P.O. Box: _____   Farm Street or Road: _____

City: _____   State: _____   Zip Code: ___ ___ ___ ___ ___

---

**2.   TOTAL AMOUNT OF RAW GRADE A MILK**

In the table below, indicate the total number of pounds of Raw Grade A Milk your farm produced and pooled in Federal Milk Market Order 1 from January 1, 2002 until December 12, 2014.

***Note:  Amount of Raw Grade A Milk should be claimed in pounds <u>not in hundredweight</u>.  (Example:  12,345/cwt. of raw Grade A milk should be entered as 1,234,500 pounds below.)***

Total Number of Pounds of Raw Grade A Milk: ___ ___ ___ , ___ ___ ___ , ___ ___ ___ , ___ ___ ___ .

***Note:   You can obtain information on the total number of Pounds of Raw Grade A Milk from the Federal Milk Market Administrator at 89 South Street, Boston, MA 02111-2671, or telephone (617) 737-7199.***





*012345 6789*

---

### 3.    REQUEST FOR FEDERAL TAXPAYER IDENTIFICATION NUMBER ("TIN")

**If your payment is over $600.00 and you do not provide a valid TIN for the person or entity to which the check will be issued, you will be subject to a withholding of taxes of 28% of the amount of your payment.**

Enter Taxpayer Identification Number "TIN" on the appropriate line.

- For individuals, this is your Social Security Number ("SSN")
- For sole proprietors, you must show your individual name, but you may also enter your business or "doing business as" name.   You may enter either your SSN or your Employer Identification Number ("EIN")
- For other entities, it is your EIN.

Social Security Number (for individuals)                    Employer Identification Number

**OR**

\_\_\_ \_\_\_ \_\_\_ - \_\_\_ \_\_\_ - \_\_\_ \_\_\_ \_\_\_ \_\_\_                    \_\_\_ \_\_\_ - \_\_\_ \_\_\_ \_\_\_ \_\_\_ \_\_\_ \_\_\_ \_\_\_

**If you are exempt from backup withholding, enter your current TIN above and write "exempt" on the following line:** _____.

**UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:**

1. The number shown on this form is my current TIN; and

2. I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Service (IRS) because: (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the IRS that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the IRS has notified me (us) that I am (we are) no longer subject to backup withholding.

Note:  If you have been notified by the IRS that you are subject to backup withholding, please strike out the language that you are not subject to back up withholding in the certification above.  The IRS does not require your consent to any provision other than the certification required to avoid backup withholding.

---

### 4.    RELEASE OF CLAIMS AND COVENANT NOT TO SUE

If this settlement is approved by the Court, you will not be able to sue DFA and DMS, as well as their members, partners, and certain related entities, for the claims in this suit or related claims. You should carefully review a full copy of the Release of Claims to make sure you understand what you are giving up. The "Release of Claims" is described more fully in the Settlement Agreement.  The Settlement Agreement is available at www.NortheastDairyClass.com.

---

### 5.    CERTIFICATION

I certify under penalty of perjury that the information above is true and correct and the submission of false information may subject me to civil and/or criminal penalties.

Signature: _____ Print Name/Capacity of person signing: _____

Farm Name: _____ Date: \_\_\_ / \_\_\_ / \_\_\_ \_\_\_

***PLEASE NOTE****: All information provided on this Claim Form will be used solely for the administration of this Settlement and will remain confidential.*

**If you have any questions, please call 1-855-460-1533**

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

# If Your Farm Produced and Pooled Grade A Milk
# In Federal Milk Marketing Order 1 Since 2002

## You Could Get Money from a Class Action Settlement.

*A court authorized this amended notice. You are not being sued.*

**THIS IS AN AMENDED NOTICE.  CERTAIN DEADLINES HAVE BEEN MODIFIED.  PLEASE DISREGARD THE PRIOR SETTLEMENT NOTICE YOU MAY HAVE RECEIVED.**

- A $50 million Settlement with Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services LLC ("DMS") has been reached.  The Settlement provides financial payment to certain dairy farmers in the Northeast and results in changes to DFA's and DMS's business practices.

- This settlement resolves all claims against DFA and DMS in a lawsuit alleging they engaged in anticompetitive conduct within Federal Milk Marketing Order 1. If this settlement is approved, you will not be able to sue DFA and DMS, as well as their members, partners, and certain related entities, for the claims in this suit or related claims.

- The average payment is estimated to be approximately $4,000, but this depends on the number of valid claims. You may receive a greater or lesser amount depending on how much milk you produced and pooled in Order 1. You must file a claim to get a payment.

- If you received this notice in the mail, records indicate that you produced milk in the Northeast between January 1, 2002 and the present and may be eligible to receive a payment from the settlement.

- Your legal rights are affected whether you act or do not act.  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive a cash payment. |
| **OPT-IN TO THE SETTLEMENT** | If you previously asked to be excluded from the Class, you may now ask the Court to reinstate you as a member of the Class for purposes of the settlement with the Settling Defendants. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment from the settlement. |

- These rights and options – and the deadlines to exercise them – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** .............................................................................................................**Page 3**

    1.  Why was this notice issued?

    2.  Why is this a class action?

    3.  Who are the Defendants?

    4.  What is this lawsuit about?

    5.  Why is there a Settlement with DFA and DMS?

**WHO IS IN THE SETTLEMENT CLASS** ................................................................................**Page 3**

    6.  How do I know if I'm part of the Settlement?

    7.  Are there any exceptions to being included?

    8.  If I previously asked to be excluded from the Class, can I change my mind now?

    9.  If I previously did not ask to be excluded from the Class, can I change my mind now?

    10.  I'm still not sure if I'm included.

**SETTLEMENT BENEFITS** ...........................................................................................................**Page 4**

    11.  What does the Settlement Provide?

    12.  How much money can I get from the Settlement?

    13.  What am I giving up under the Settlement?

**HOW TO GET A PAYMENT** ........................................................................................................**Page 6**

    14.  How can I get a payment?

    15.  When will I get my payment?

    16.  Can I submit a claim even if I oppose the Settlement?

**THE LAWYERS REPRESENTING YOU** ...................................................................................**Page 6**

    17.  Do I have a lawyer in the case?

    18.  How will the Plaintiffs' lawyers be paid?

    19.  What are Incentive Fees for the Subclass Representatives?

**OBJECTING TO THE SETTLEMENT** .......................................................................................**Page 7**

    20.  How do I tell the Court that I don't like the Settlement?

    21.  Can I receive a payment even if I object?

**THE COURT'S FAIRNESS HEARING** .......................................................................................**Page 7**

    22.  When and where will the Court decide whether to approve the Settlement?

    23.  Do I have to come to the hearing?

    24.  May I speak at the hearing?

**IF YOU DO NOTHING** ................................................................................................................**Page 8**

    25.  What happens if I do nothing at all?

**GETTING MORE INFORMATION** ...........................................................................................**Page 8**

    26.  How do I get more information?

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this Notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to approve the settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for those benefits, and how to get them.

Judge Christina Reiss, of the United States District Court for the District of Vermont, is currently overseeing this case. The case is known as *Allen v. Dairy Farmers of America, Inc.*, No. 5:09-CV-230. The people who sued are called the Plaintiffs and the people and companies they sued are called the Defendants (*see* Question 3 below).

This settlement is separate from a prior settlement with Dean Foods Company. Even if you previously participated in the Settlement with Dean Foods, you have separate legal rights and options in this settlement with DFA and DMS.

This Notice summarizes the settlement. To view the complete Settlement Agreement, visit www.NortheastDairyClass.com.

### 2. Why is this a class action?

You previously received a notice informing you that this lawsuit has been "certified" as a Class Action. This means that the Court has found that the lawsuit meets the requirements for class actions and may proceed accordingly. The Court has certified two "subclasses" which are described below. If you are included in a Subclass, you have decisions to make now about whether to participate in this Settlement. This notice explains these decisions.

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims. All these people are a class or class members, except for those who exclude themselves from the class.

In this case, the representative dairy farmers for the DFA/DMS subclass include: Jonathan Haar, Claudia Haar and Richard Swantak. The representative dairy farmers for the non-DFA/DMS subclass are Alice H. Allen, Laurence E. Allen, Garrett Sitts and Ralph Sitts.

### 3. Who are the Defendants?

This litigation is proceeding against two remaining Defendants, Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS"), involved in the marketing, sale, purchase, and processing of Grade A milk produced by dairy farmers in the Northeast.

### 4. What is this lawsuit about?

The lawsuit claims that Defendants (including previous Defendant Dean Foods and other co-conspirators) unlawfully conspired to monopolize and to eliminate competition for the marketing, sale, and purchase of raw Grade A milk in the Northeast and thereby suppressed prices lower than they would have been in a competitive market. This lawsuit seeks to stop Defendants from engaging in the alleged unlawful conduct, to prohibit practices found to be unlawful, and to recover damages for the illegally suppressed prices for raw Grade A milk. The Defendants deny that they did anything wrong or that they acted in a manner that harmed dairy farmers. There has not yet been a determination as to whether Plaintiffs' claims are correct or Defendants have done anything wrong.

### 5. Why is there a Settlement with DFA and DMS?

The Court has not decided in favor of Plaintiffs or DFA and DMS. The Plaintiffs think they would win against DFA and DMS at a trial. DFA and DMS thinks the Plaintiffs would not win. But there will be no trial against DFA and DMS. Instead, Plaintiffs and DFA and DMS agreed to a settlement. That way, they avoid the cost of a trial, and Class Members will get the benefits of this Settlement.

The Court previously appointed Counsel to represent each Subclass in this case. Based on an extensive investigation of the facts and the law relevant to the lawsuit, Counsel think the Settlement is best for all Class Members. The Subclass Representatives oppose the Settlement. A copy of the Court's Opinion and Order preliminarily approving the Settlement is attached to this Notice and available at the settlement website. That Opinion contains a summary of the Subclass Representatives' reasons for opposing the Settlement. The Subclass Representatives – as well as any other members of the Subclasses – will have an opportunity to explain why they oppose the Settlement at the Fairness Hearing, see questions 22-24.

## WHO IS IN THE SETTLEMENT CLASS

### 6. How do I know if I'm part of the Settlement?

If you are a member of either of the two Subclasses certified by the Court – and have not excluded yourself – then you are a part of the Settlement. The Court has certified two groups or Subclasses:

**<u>DFA/DMS Member Subclass</u>**

- All dairy farmers (individuals or entities) who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are members of DFA or otherwise sell milk through DMS.

**<u>Non-DFA/DMS Member Subclass</u>**

- All dairy farmers (individuals or entities), who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, and who are <u>not</u> members of DFA and do <u>not</u> sell milk through DMS.

If there are multiple owners of your dairy farm, please forward this Notice to all of the owners. If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please send your correct address to the Notice Administrator at the address in Question 26.

| **7.  Are there any exceptions to being included?** |
| --- |

You are **not** part of the Settlement if you excluded yourself from the Class in this litigation.

The following persons and entities are also excluded from the Settlement: the current and former officers and directors of DFA, DMS, Dean Foods, HP Hood LLC, National Dairy Holdings, Farmland Dairies LLC, Kraft, Dairylea Cooperative, Inc., St. Albans Cooperative Creamery, Inc., Agri-Mark, Inc., Land O'Lakes, Inc., and Maryland and Virginia Milk Producers Cooperative Association, Inc. These entities are alleged to have conspired with Defendants with regards to some of the alleged unlawful acts, but are not themselves Defendants in the lawsuit. If you sold milk to or were a member of one or more of these entities, you are still eligible to participate in the lawsuit unless you were an officer or director of the entity. If you hold some other position with any of these entities, but are not an officer or director, you are still eligible to participate in this lawsuit.

| **8.  If I previously asked to be excluded from the Class, can I change my mind now?** |
| --- |

If you previously asked to be excluded from the Class in response to the Court's notice of class certification dated November 19, 2012, you may ask the Court to reinstate you as part of the Class for purposes of the settlement with the Settling Defendants. You must deliver an application to Northeast Dairy Farmer Class Reinstatements, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958 explaining your reasons for seeking reinstatement for purposes of the settlement with the Settling Defendants, so that it is **postmarked** no later than January 15, 2015. Please include your claim form.

If you are reinstated, you may be eligible for a payment from the settlement with Settling Defendants, provided you file a claim form as described below in Question 14. Note that reinstatement for this settlement will not make you a part of any class for purposes of any claims you may have against any other Defendants. If you previously asked to be excluded from the Class and wish to pursue claims against any other Defendants, you must do so in a separate lawsuit. In evaluating whether to pursue any individual claim, you should consult your own attorney.

| **9.  If I previously did not ask to be excluded from the Class, can I change my mind now?** |
| --- |

You cannot exclude yourself from the Class at this time.

| **10.  I'm still not sure if I'm included.** |
| --- |

If you are still not sure whether you are included in the Settlement Class, you can ask for free help.

For more information, visit www.NortheastDairyClass.com, or call 1-855-460-1533, or write to Northeast Dairy Farmer Settlement, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958.

**SETTLEMENT BENEFITS**

| **11.  What does the Settlement provide?** |
| --- |

DFA and DMS have agreed to pay $50,000,000 into a Settlement Fund. After deducting attorneys' fees, plus costs, expenses, and incentive fees for the dairy farmers who brought the lawsuit (*see* Questions 18 and 19), the net Settlement Fund will be distributed to members of the Subclasses who file valid claims.

In addition to the $50 million Settlement Fund, DFA and DMS have agreed to change their business practices in the following ways:

- DFA and DMS will not enter any agreement to restrict solicitation of raw Grade A milk from farmers including any agreement that would limit the ability of any cooperative to approach farmers and offer them more favorable prices, services, or other terms.

- DFA and DMS agree not to oppose a request by Subclass Counsel to unseal and release certain of their previously confidential materials that were submitted to the Court during this case.

- DFA and DMS will not enter into any new full-supply agreements for the supply or sale of raw Grade A milk in Order 1 during the Settlement Term, although existing agreements may be renewed; and any new supply agreements of any type, or the renewal of existing full supply or other agreements, shall be presented, reviewed, and approved by the DFA and/or DMS Board of Directors prior to entering or renewing the agreements.

- Upon written request by any of their respective members in Order 1, DFA and DMS agree to disclose to that member a summary of the terms of any DFA or DMS agreement for the supply or sale of raw Grade A milk to customers in Order 1, to the extent the contracts so permit.

- Any cooperative member, affiliate, or associate of DFA or DMS in Order 1 may, during the Settlement Term, terminate its relationship with DFA or DMS upon no more than ninety (90) days written notice without penalty.

- DFA will prepare financial reports in accordance with generally accepted accounting principles and DFA will be audited by a nationally-recognized accounting firm.

- DFA senior management and Audit Committee members will affirmatively represent they are responsible for the preparation, integrity and accuracy of DFA's annual financial report.

- DFA will post on its member-only website an annual disclosure of all material related-party transactions, specifically broken out and identified by transaction.

- At its annual meeting, DFA will disclose to its delegates all material related-party transactions as well as DFA's financial results from its participation in joint ventures and off-balance sheet transactions, specifically broken out and identified by transaction.

- DFA will disclose the identity of the members of its board of directors and its committees and their generally applicable *per diem* payment rate compensation.

- DFA senior executive management and board members will execute annual conflict of interest certifications, which will be subject to review by DFA's Audit Committee and a report by the Committee at DFA's annual meeting.

- DFA's Northeast Area Council ("NEAC") will undertake a careful review of: (1) members' milk checks in order to determine whether changes in the milk checks are warranted to improve their clarity or transparency and (2) the election procedure by which Area Council members and delegates are chosen, including specifically whether the membership should be able to cast ballots by mail. Changes recommended by the NEAC will be implemented.

The Settlement Term expires on December 31, 2016. The Settlement Agreement, available at the website, contains more details about the settlement with DFA and DMS.

## 12.  How much money can I get from the Settlement?

The amount of money you may receive cannot be calculated at this time. Your share will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to **December 31, 2014** as well as the number of valid claims that are received and the attorneys' fees, incentive fees for the Subclass Representatives, costs, and expenses approved by the Court.

We don't know how many people will file claims. However, if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be $4,000. Your payment could be more or less than $4,000 depending on the amount of raw Grade A milk you produced and pooled on Order 1.

## 13.  What am I giving up under the Settlement?

In exchange for the Settlement Benefits explained above, you and other members of the Subclasses give up the right to continue this lawsuit against DFA or DMS.

You also give up the right to sue DFA and DMS, as well as their members and partners and certain related entities, for legal claims that are related to the facts or circumstances of this case including any lawsuit against DFA, DMS, or their related entities regarding the sale, marketing, or purchase, of raw Grade A Milk produced in and pooled on Federal Milk Marketing Order 1.

Giving up the right to sue DFA, DMS, their members and partners and certain related entities is called a "Release of Claims." The "Release of Claims" is described more fully in the Settlement Agreement. The Settlement Agreement is available at www.NortheastDairyClass.com.

You should carefully review a full copy of the Release of Claims to make sure you understand what you are giving up. As stated above, the Release extends beyond DFA and DMS to certain related entities and extends beyond the legal claims in this lawsuit. You may seek legal advice if you have any questions regarding the Release of Claims.

## HOW TO GET A PAYMENT

### 14. How can I get a payment?

To ask for a payment, complete and submit a Claim Form. A Claim Form is enclosed with this Notice.  Claim Forms are also available at www.NortheastDairyClass.com or by calling 1-855-460-1533. Please read the instructions carefully, fill out the Claim Form, provide the required documentation and mail it postmarked no later than **May 30, 2015**, to:

Northeast Dairy Farmer Settlement with DFA/DMS
c/o Rust Consulting, Inc.
PO Box 2958
Faribault, MN 55021-2958

### 15. When will I get my payment?

Payments will be mailed to Class Members who send in valid Claim Forms on time, after the Court grants "final approval" to the Settlement and after any appeals are resolved. If the Court approves the Settlement after a hearing on January 29, 2015, there may be appeals. It's always uncertain when any appeals will be resolved, and resolving them can take time.

### 16. Can I submit a claim even if I oppose the Proposed Settlement?

Yes.  You have the right to oppose the Settlement or any part of the Settlement even if you submit a claim.  To learn more about your right to object to the Settlement, see questions 20 and 21.

## THE LAWYERS REPRESENTING YOU

### 17. Do I have a lawyer in the case?

Yes.  The Court has appointed the following firms as counsel for the Subclasses:

| DFA/DMS MEMBER SUBCLASS | NON-DFA/DMS MEMBER SUBCLASS |
|---|---|
| Kit A. Pierson, Esq.<br>Benjamin D. Brown, Esq.<br>Brent W. Johnson, Esq.<br>Emmy L. Levens, Esq.<br>Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue, NW<br>Suite 500, West Tower<br>Washington, DC 20005<br>Tel: (202) 408-4600<br><br>Andrew D. Manitsky, Esq.<br>Gravel and Shea PC<br>76 St. Paul Street, 7th Floor,<br>PO Box 369<br>Burlington, VT 05402-0369<br>Tel: (802) 658-0220<br><br>Ian McGloughlin, Esq.<br>Shapiro Haber & Urmy LLP<br>53 State Street<br>Boston, MA 02109-2802<br>Tel: (617) 439-3939<br><br>David A. Balto<br>The Law Offices of David A, Balto<br>1350 I Street, N.W., Suite 850<br>Washington, DC 20005<br>Tel: (202)-789-5424 | Robert G. Abrams, Esq.<br>Gregory J. Commins, Jr., Esq.<br>Robert J. Brookhiser, Esq.<br>Baker Hostetler LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Avenue, NW<br>Washington, DC  20036-5304<br>Tel: (202) 861-1500<br><br>Emily J. Joselson, Esq.<br>Lisa B. Shelkrot, Esq.<br>Langrock Sperry & Wool, LLP<br>210 College Street,<br>PO Box 721<br>Burlington, VT 05402-0721<br>Tel: (802) 864-0217 |

You will not be charged for these lawyers.  If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

### 18.  How will the Plaintiffs' lawyers be paid?

Subclass Counsel will ask the Court for attorneys' fees of $16.66 million or one-third the Settlement Fund plus the payment of costs and expenses incurred in connection with the case.  Subclass Counsel's applications for attorneys' fees, costs, and expenses will be filed with the Court by January 1, 2015, and posted on the settlement website.

The Court may award less than these amounts. Payments approved by the Court will be made from the Settlement Fund.

### 19.  What are Incentive Fees for the Subclass Representatives?

Incentive fees provide money to the dairy farmers who brought this suit and have served as Subclass Representatives.  These fees (sometimes referred to as plaintiff incentive awards) provide payments to the Subclass Representatives for their work in representing the interests of the Subclasses throughout the course of this litigation.  The representatives for the DFA/DMS subclass are Jonathan Haar, Claudia Haar and Richard Swantak.  The representatives for the non-DFA/DMS subclass are Alice H. Allen, Laurence E. Allen, Garrett Sitts and Ralph Sitts.

Subclass counsel will request incentive fees of $20,000 to each of the Subclass Representatives' farms.  Applications for incentive payments will be filed along with Subclass Counsel's application for fees and expenses on January 1, 2015, and posted on the settlement website.

The Court may award less than these amounts. Payments approved by the Court will be made from the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

### 20.  How do I tell the Court that I don't like the Settlement?

If you are a Subclass Member, you can object to the Settlement or to Class Counsel's requests for fees, expenses, and incentive fees for the Subclass Representatives. To object, you must send a letter saying that you object. Your letter must also include the following:

- Your name, address, and telephone number,
- The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- A brief statement regarding your milk sales and any cooperative status or affiliation,
- The specific reasons you object to the Settlement, and
- Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than January 15, 2015, to the following three addresses:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| United States District Court for the District of Vermont<br>*Allen v. Dairy Farmers of America, Inc.*<br>No. 5:09-CV-230<br>NE Dairy Settlement Communication<br>11 Elmwood Avenue<br>Burlington, VT 05401 | Benjamin D. Brown, Esq.<br>Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue, NW<br>Suite 500, West Tower<br>Washington, DC 20005<br><br>Robert G. Abrams, Esq.<br>Baker Hostetler LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Avenue, NW<br>Washington, DC  20036-5304 | Steven R. Kuney, Esq.<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005 |

### 21.  Can I receive a payment even if I object?

Yes.  You can submit a claim and receive your share of the Proposed Settlement even if you oppose the Settlement.  If you want to receive your share of the Proposed Settlement you must submit a claim by May 30, 2015.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for attorneys' fees, expenses, and incentive payments for the Subclass Representatives. You may attend and you may ask to speak, but you don't have to.

**22. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a hearing beginning at 9:30 a.m. on January 29, 2015, at the United States District Court for the District of Vermont, 11 Elmwood Avenue, Burlington, VT 05401, in Courtroom 542. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NortheastDairyClass.com. At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who asked to speak at the hearing. The Court may also decide how much to pay the lawyers for Plaintiffs and the Class. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**23. Do I have to come to the hearing?**

No. Plaintiffs' lawyers will answer any questions Judge Reiss may have. But you are welcome to attend the hearing at your own expense. If you send a written objection, you do not have to come to the Court to discuss it. As long as you mailed your written objection on time, following the instructions in this Notice, the Court will consider it. You may also pay your own lawyer to attend, if you wish, but it's not necessary.

**24. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear at the Fairness Hearing." Be sure to include all of the information listed in Question 19. You must mail your Notice of Intention to Appear, postmarked no later than January 15, 2015, to the four addresses in question 20.

### IF YOU DO NOTHING

**25. What happens if I do nothing at all?**

If you do nothing, you will not get a payment from the Settlement.

In addition, your rights will be affected. As fully explained in the Release of Claims, under the terms of the Settlement all Subclass Members – regardless of whether you submit a claim, object, or do nothing – give up the right to sue DFA and DMS, as well as their members, partners, and certain related entities, for the claims in this suit or related claims.

### GETTING MORE INFORMATION

**26. How do I get more information?**

This notice summarizes the lawsuit. You can get more information and important court documents at www.NortheastDairyClass.com or by calling 1-855-460-1533. You may also write with questions to: Northeast Dairy Farmer Settlement, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958.

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 NOV 25   PM 4: 30

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ALICE H. ALLEN, LAURANCE E. ALLEN,       )
d/b/a Al-lens Farm, GARRET SITTS, RALPH  )
SITTS, JONATHAN HAAR, CLAUDIA HAAR,      )
and RICHARD SWANTAK, on behalf of        )
themselves and all others similarly situated,  )
                                         )
          Plaintiffs,                    )
                                         )
     v.                                  )     Case No. 5:09-cv-230
                                         )
DAIRY FARMERS OF AMERICA, INC., and      )
DAIRY MARKETING SERVICES, LLC,           )
                                         )
          Defendants.                    )

**OPINION AND ORDER GRANTING IN PART RENEWED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN DAIRY FARMERS
OF AMERICA, INC., DAIRY MARKETING SERVICES, LLC, AND DAIRY
FARMER SUBCLASSES AND SETTING A FAIRNESS HEARING**
(Doc. 580)

This matter came before the court on the renewed motion of the DFA/DMS and

non-DFA/DMS subclasses (collectively, the "Dairy Farmers Subclasses") for preliminary

approval of a proposed settlement between the Dairy Farmers Subclasses and Defendants

Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS")

(the "Proposed Settlement"). (Doc. 580.) The Dairy Farmer Subclasses, through their

attorneys ("Subclass Counsel"), ask that in conjunction with preliminary approval, the

court approve their proposed notices to class members and set this matter for a hearing to

determine whether the Proposed Settlement is "fair, reasonable, and adequate" as

required by Fed. R. Civ. P. 23(e) (the "Fairness Hearing").

I.     **Factual and Procedural Background.**

The Proposed Settlement requires Defendants DFA and DMS to make a payment

of $50 million dollars to class members in two installments, authorizes certain injunctive relief, provides for incentive payments to Class Representatives in the amount of $20,000 per farm, and seeks a proposed attorney's fees award of $16.6 million, plus expenses, which Defendants have agreed not to oppose. Based on the number of claims that may be filed, the average payment per class member farm is estimated to be approximately $4,000. In exchange, class members must agree to a broad release, releasing any claims they have in this action, any claims which may have been brought in this action, and any claims which in certain respects are related to this action against Defendants and other entities with whom Defendants have a relationship.[1] The parties propose no further opt-out period and oppose an expanded opportunity to opt in and join the class as beneficiaries of the Proposed Settlement.

The court initially denied preliminary approval without prejudice because the proposed notices to class members required clarifications and because the court was advised that the Class Representatives unanimously opposed the Proposed Settlement but was not informed of the grounds for their opposition. (Doc. 569.) The court has since reviewed *in camera* the Class Representatives' letter to the court which sets forth the grounds for their opposition.

The Class Representatives oppose the Proposed Settlement on procedural grounds, asserting that Subclass Counsel entered into the Proposed Settlement without their authority and without their consent. They oppose the Proposed Settlement on substantive grounds, arguing that: (1) the class should be expanded to include all dairy farmers who pooled their milk on Federal Milk Marketing Order 1; (2) the Proposed Settlement's provisions governing injunctive relief are inadequate in both scope and duration; and (3) a payment of $4,000 to each class member dairy farm does not approximate the Dairy Farmer Subclasses' damages in this case and renders Subclass Counsel the primary beneficiaries of this lawsuit. In this respect, they appear to contest the proposed attorney's fee award for Subclass Counsel as excessive. Class Representatives will have

---

[1] The court directs class members attention to the proposed Release, itself, for the full extent of the "Released Claims." (Doc. 580-2 at 6-7, ¶¶ 1.16–1.18.)

an opportunity to more fully voice the grounds for their opposition at a Fairness Hearing.

Subclass Counsel counter that they conferred with and obtained authority from the Class Representatives prior to entering into the Proposed Settlement and that, in any event, no authority was necessary. They contend that no Class Representative objected to the Proposed Settlement prior to its finalization and that, again, approval of the Proposed Settlement by Class Representatives was not and is not required. They argue that the monetary amount of the Proposed Settlement is sizable and properly reflects the strengths and weaknesses of class members' claims and the risks of proceeding to trial. They contend that the Proposed Settlement's injunctive relief is broader than the relief that would have been available had class members prevailed at trial. Subclass Counsel point out that approval of their proposed attorney's fees award is not part of their request for preliminary approval.

For the following reasons, the court concludes that the Proposed Settlement satisfies the standards for preliminary approval and renders a Fairness Hearing appropriate. The court further rules that an opt-out period and a re-definition of the class are not warranted at this time, but that an expanded opportunity to opt in to the class should be available. As Subclass Counsel advise that they do not seek preliminary approval of their proposed attorney's fees award, the court does not address that request at this time.

## II.    Conclusions of Law and Analysis.

### A.    Authority to Settle and Opposition to the Proposed Settlement.

As a threshold matter, Subclass Counsel are correct in pointing out that the case law appears to permit them to settle a class action suit without authorization from class representatives. *See Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) (concluding cases "holding that an attorney cannot settle his individual client's case without the authorization of the client are simply inapplicable" in a class action "[b]ecause of the unique nature of the attorney-client relationship in a class action" and "because . . . it may be impossible for the class attorney to do more than act in what he believes to be the best interests of the class as a whole") (internal quotation marks and

citations omitted). In addition, Subclass Counsel persuasively argue that a court may grant preliminary and final approval of a settlement of a class action even if the class representatives oppose it. *See Charron v. Wiener*, 731 F.3d 241, 254 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1941 (2014) (holding that "the assent of class representatives is not essential to the settlement, as long as the Rule 23 requirements are met") (citing, *inter alia*, *Kincade*, 635 F.2d at 508 ("[T]he assent of named plaintiffs is not a prerequisite to the approval of a settlement.") (internal quotation marks omitted)). This does not mean, however, that the Class Representatives' opinions regarding the fairness, reasonableness, and adequacy of the Proposed Settlement are irrelevant. To the contrary, the reaction of the class to the Proposed Settlement remains an important consideration in determining whether the Proposed Settlement should be approved. *See Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000) (noting one of the factors to evaluate whether a class action settlement is fair, reasonable, and adequate is "the reaction of the class to the settlement"); *see also Kincade*, 635 F.2d at 508 (noting that "the unanimous disapproval of [a] settlement by the active named plaintiffs [is] a significant factor" in evaluating whether to approve a settlement). This conclusion is underscored in the instant case where the Class Representatives have actively participated in every stage of the litigation and have a commendable understanding of both the facts and the law underpinning their claims.

### B.  Preliminary Approval.

"Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (quoting *In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)). It is appropriate where the settlement "is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006) (citations omitted).

In making this determination, the court focusses on the "negotiating process" by which the settlement was reached and on the reasonableness and "fairness" of its "substantive" terms. *Charron*, 731 F.3d at 247. With regard to the latter, the court considers the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted) (abrogated on other grounds by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)).

In this case, the Proposed Settlement resulted from arms-length, non-collusive negotiations on the eve of trial between experienced and fully-informed counsel. The Proposed Settlement was preceded by years of discovery and motion practice, including motions that addressed the merits of the parties' claims and defenses and the admissibility of evidence at trial. Accordingly, the negotiations between Subclass Counsel and Defendants' counsel satisfy the standards for preliminary approval with regard to the procedure by which the Proposed Settlement was reached. As Subclass Counsel point out, they did not require authority from or approval of the Class Representatives before they agreed to the Proposed Settlement.[2]

The substantive terms of the Proposed Settlement present a closer question. As the Class Representatives observe, a payment of $4,000 per dairy farm and limited injunctive relief does not appear to approximate the full value of their antitrust claims. However, the potential value of those claims must be juxtaposed against the legitimate

---

[2] For this reason, the court need not resolve the factual dispute between the Class Representatives and Subclass Counsel regarding the circumstances that gave rise to the Proposed Settlement.

risk of a defense verdict at trial. At the summary judgment stage, the court concluded that the documentary proof of antitrust violations was not as compelling as Subclass Counsel represented and in some respects did not provide evidence of a conspiracy. *See Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2610613, at *10-15 (D. Vt. June 11, 2014) (reviewing evidence in support of Plaintiffs' monopsony conspiracy claims; noting "the difficulty of accepting Plaintiffs' characterizations of the conspiracy's alleged anticompetitive conduct at face value"; and observing that "several of Plaintiffs' representations regarding the factual record are either problematic or unreliable" and "may not support the full breadth of Plaintiffs' extensive conspiracy claims"). The court therefore dismissed some claims and limited others. *See id.* at *7, *16, *20, *26-28 (granting, among other things, Defendants' motion for summary judgment on Plaintiffs' price-fixing claim and Plaintiffs' proffered geographic market definition which conflicted with their expert's definition).

Correspondingly, Defendants requested the court to exclude at trial the opinions of Gordon Rausser, Ph.D., the class members' sole expert witness, and the court agreed that certain aspects of Dr. Rausser's testimony were inadmissible. *See Allen v. Dairy Mktg. Servs., LLC*, 2013 WL 6909953, at *13-15 (D. Vt. Dec. 31, 2013) (excluding certain damages calculations offered by Plaintiffs' expert witness), and *Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2040133, at *4, *8 (D. Vt. May 16, 2014) (granting motion to strike expert's revision of damages).

Finally, as some of the alleged conspiracy's conduct took place outside the statute of limitations period, class members' ability to present this conduct to the jury faced almost certain challenges from Defendants at trial and required a strong factual record before a jury could impose liability and award damages for conduct beyond the limitations period. *See Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2610613, at *21-28 (D. Vt. June 11, 2014) (addressing theories on which Plaintiffs rely in arguing they could recover damages beyond the limitations period provided in 15 U.S.C. § 15b; noting that it may prove difficult for certain Plaintiffs to establish at trial that they were unaware of the nature and existence of their potential claims during the pre-limitations time

period; and granting in part Defendants' motion for summary judgment with regard to certain damages theories).

On balance, a total monetary payment of $50 million falls within a reasonable range of potential outcomes when considered in the context of the legitimate risk of a defense verdict. Moreover, because class members have limited their request for injunctive relief to only "conduct found by the Court or jury to be illegal," the equitable relief set forth in the Proposed Settlement is broader than the scope of the equitable relief that may have been ordered by the court.

The parties' joint request that there be no period to opt out of the class for purposes of the Proposed Settlement reflects the late stage in the case in which the settlement was reached and the ample opportunity that class members had to opt out of the class before that stage was reached. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (rejecting argument that class "was denied due process because class members were not given the opportunity to opt out after the settlement notice was issued," and relying on *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992), which held, "[s]ince the parties had been given notice of the action, the opportunity to opt out, notice of the proposed settlement, and the opportunity to object, . . . [the district court] was not required to grant those who objected to the proposed settlement a second opportunity to opt out"); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778-79 (2d Cir. 1996) (affirming denial of motion to opt out of proposed settlement because movants "received the protections accorded by Fed. R. Civ. P. 23," and concluding that, "[i]f the procedural requirements of that Rule were satisfied, the [district courts] would be entitled to approve a settlement over the objection of those who were denied the opportunity to opt out of the class") (internal quotation marks omitted). While re-definition of the class is not warranted at this late juncture, the court agrees with the parties' joint request that individuals who previously have opted out be permitted to opt back in to the class for purposes of settlement. (Doc. 580-1 at 15.)

Although the Class Representatives assert that the proposed attorney's fees award is excessive in light of class members' modest recovery, the parties have properly

committed the issue of the appropriate attorney's fees award to the court's discretion. (*See* Doc. 580-1 at 26.) *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) ("[T]he fees awarded in common fund cases may not exceed what is reasonable under the circumstances. What constitutes a reasonable fee is properly committed to the sound discretion of the district court[.]") (internal quotation marks and citations omitted); *accord Wal-Mart Stores, Inc.*, 396 F.3d at 121 (2d Cir. 2005) (addressing attorney's fees sought in a class action settlement in an antitrust case and noting that the "'*Goldberger* factors' ultimately determine the reasonableness of a common fund fee").

Because preliminary approval is only "the first step in the settlement of a class action" to "preliminarily determine" whether to authorize notice and schedule a hearing, *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (internal quotation marks omitted), this step "requires only an initial evaluation of the fairness of the proposed settlement." At a Fairness Hearing, in contrast, the court must conduct a full "evidentiary hearing . . . to determine the fairness and adequacy of settlement," at which time the Class Representatives and class members will have the opportunity to fully voice their opinions regarding whether the Proposed Settlement is fair, reasonable, and adequate. *Id.* (internal quotation marks and citations omitted); *see also Authors Guild v. Google, Inc.*, 2009 WL 4434586, at *1 (S.D.N.Y. Dec. 1, 2009) (noting "nuances" are to be considered at and after the fairness hearing and after all interested parties "have had the opportunity to make their views known"). For these reasons, the court GRANTS the motion for preliminary approval.

### C.   The Proposed Notices.

As part of preliminary approval of a proposed settlement of a class action lawsuit, a "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice "must express no opinion on the merits of the settlement," *Handschu v. Special Servs. Div.*, 787 F.2d 828,

833 (2d Cir. 1986), and "need not include the entire text of the proposed settlement but may describe it in general terms." *Id.*

Subclass Counsel has submitted a draft "Notice of Proposed Settlement" (the "draft Notice") and a "Summary Notice of Proposed Settlement" (the "draft Summary Notice") which contain most of the clarifications the court sought in previously denying preliminary approval. However, the draft Notice attached to the renewed motion differs in some respects from the proposed notices attached to Subclass Counsel's earlier submission in response to the court's denial without prejudice of their motion for preliminary approval. (Doc. 570.) Two issues require further clarification. First, Subclass Counsel's initial submission explained that the proposed notice had been revised to clarify that the settlement excludes, *inter alia*, "current and former" officers and directors of DFA, DMS, and other entities. (Doc. 570 at 6.) The draft Notice attached to the renewed motion, however, provides that only "the current officers and directors of" DFA, DMS, and other entities are excluded from the Settlement. (Doc. 580-4 at 5.) It is therefore unclear whether the draft Notice is meant to exclude current and former officers and directors of Defendants and related entities. Second, because the draft Notice attached to the pending motion explains only that "Subclass Representatives oppose the Settlement" (Doc. 580-4 at 5), a copy of this Opinion and Order shall be attached to the Notice and posted on the class action website to advise class members of the grounds for that opposition.

With these minor clarifications, the draft Notice and Summary Notice provide class members "with a fair understanding of the action, the parties, and the nature of the settlement, by asking and answering questions that putative settlement class members might have." *Allen v. Dairy Farmers of Am., Inc.*, 2011 WL 1706778, at *11 (D. Vt. May 4, 2011). The draft Notice and Summary Notice are therefore reasonable and "adequate" to apprise class members of the Proposed Settlement and "the consequences of taking, or not taking, action in response." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 130 (2d Cir. 2011) (concluding notice was sufficient when "contain[ed] a list of readable questions and answers discussing the content of the Class Action and the

consequences of taking, or not taking, action in response" and "offered advice from class counsel, provid[ed] lawyers' contact information and instruct[ed] class members to contact them should the content of the Class Notice be unclear"); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 113 ("The standard for the adequacy of a settlement notice in a class action . . . is measured by reasonableness. . . . Notice is adequate if it may be understood by the average class member.") (internal quotation marks and citations omitted).

Accordingly, the court GRANTS approval of the draft Notice and Summary Notice to class members and ORDERS that this Opinion and Order must accompany the draft Notice and be posted on the class action website to more fully apprise the class members of the nature and extent of the court's approval and the position of their Class Representatives.

### D.    Method of Disseminating Notice and Deadlines.

Subclass Counsel propose that notice to the class be provided in three ways.  First, the Notice will be mailed to each member "whose identities and locations are reasonably ascertainable, which may be satisfied by sending the Notice to the addresses of potential Subclass members compiled in the course of the Dean settlement and class notice, plus any additional identified potential Subclass members." (Doc. 580-3 at 3.)  Second, the Summary Notice will be published in the next available issues of *American Agriculturalist*, *Country Folks* (Eastern edition), *Farming: The Journal of Northeast Agriculture*, and *Progressive Dairyman* (Northeast edition).  Third, the Proposed Settlement Agreement, Notice, and the court's Opinion and Order will be posted on the class action website maintained by the Claims Administrator.

Subclass Counsel further propose the following deadlines for dissemination of notice, settlement administration, and the Fairness Hearing: (1) Notice and Summary Notice must be mailed and published, respectively, as soon as practicable following the issuance of this Opinion and Order; (2) requests for permission to opt back in to the class must be filed 14 days before the Fairness Hearing; (3) claims forms and/or objections must be filed 14 days before the Fairness Hearing; (4) requests to be heard at the Fairness

Hearing must be filed 14 days before the Fairness Hearing; (5) any motion for final approval and responses to objections must be filed 7 days before the Fairness Hearing; and (6) the court set a Fairness Hearing.  The procedures for submitting requests to opt back in to the class, claims forms, objections, and requests to be heard are explained in the draft Notice.

In light of these proposals, the court finds that the manner and method for dissemination of Notice and Summary Notice and the deadlines for responses are reasonable and sufficient to both apprise the class of the pendency of the Proposed Settlement and the Fairness Hearing and to afford class members an opportunity to present their objections. *See Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (directing that "the notice provided to absent class members" is "measured by reasonableness" and "must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action") (internal quotation marks and citations omitted).

The court therefore AUTHORIZES dissemination of notice and deadlines in accordance with the proposals set forth above.  **The Fairness Hearing is set for January 29, 2015.**

## CONCLUSION

For the foregoing reasons, the court GRANTS preliminary approval of the Proposed Settlement, but DECLINES to grant preliminary approval of the attorney's fees request.  The court ORDERS that no further opt out period and a re-definition of the class are warranted at this time; however, the court ORDERS that class members who previously opted out of the class may seek to opt back in to the class for purposes of settlement.

With the corrections noted herein, the court GRANTS approval of the draft Notice and Summary Notice and ORDERS that this Opinion and Order accompany the draft Notice. The court further AUTHORIZES dissemination of Notice and publication of Summary Notice in accordance with this Opinion and Order, and the court ORDERS that Notice and Summary Notice be mailed and published, respectively, as soon as practicable

following the issuance of this Opinion and Order.  The court ORDERS that requests for permission to opt back in to the class be filed 14 days before the Fairness Hearing; that claims forms and/or objections be filed 14 days before the Fairness Hearing; that requests to be heard at the Fairness Hearing be filed 14 days before the Hearing; and that any motion for final approval and responses to objections be filed 7 days before the Fairness Hearing.

**The court SCHEDULES the Fairness Hearing for January 29, 2015 to determine whether the Proposed Settlement is fair, reasonable, and adequate.**

Because the remainder of the relief sought in the renewed motion is more appropriately addressed following the Fairness Hearing, the court DENIES all remaining requests in the renewed motion WITHOUT PREJUDICE.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _25th_ day of November, 2014.

Christina Reiss, Chief Judge
United States District Court

12

Northeast Dairy Farmer Settlement with DFA/DMS
c/o Rust Consulting, Inc.
PO Box 2958
Faribault, MN 55021-2958


Dear Producer,

The enclosed Amended Notice was approved by a Federal Court.  You should have already received Notice of a Settlement with DFA and DMS that is very similar to this one.  This Amended Notice contains two material changes that may affect your rights:

First, your share of the Settlement will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to **December 31, 2014** (rather than January 1, 2002 through December 12, 2014).  For other information regarding how your share of the Settlement will be calculated, please see Question 12 of the enclosed Amended Notice.

Second, the **deadline for submitting a valid claim form** has been extended from January 15, 2015 to **May 30, 2015** so that all producers will have access to the information necessary for completing their claim forms.  Please note all other deadlines related to the Settlement remain the same.  You can find those deadlines in the enclosed notice or on the "Important Dates and Deadlines" page of the Settlement website, www.NortheastDairyClass.com.

An amended claim form is also attached to the Amended Notice.  Please read it carefully and use this form for submitting your claim.

If you have any questions about these changes or any other aspect of the Settlement or claims process, you can visit the settlement website at www.NortheastDairyClass.com or call 1-855-460-1533.


Sincerely,

Rust Consulting
Claims Administrator

[THIS PAGE IS INTENTIONALLY LEFT BLANK]



FOR OFFICIAL USE ONLY

01

Page 1 of 2



*012345678 9*

# AMENDED CLAIM FORM

**You Must Complete this Amended Form if You Want to Request Payment from DFA and DMS**

*Allen v. Dairy Farmers of America, Inc.,*
**No. 5:09-CV-230**

**Must Be Postmarked No Later Than May 30, 2015**

You may be eligible to receive a payment from a settlement reached with Dairy Farmers of America, Inc. ("DFA"), and Dairy Marketing Services, LLC ("DMS") if your farm produced and pooled raw Grade A milk in Federal Milk Market Order 1 ("Northeast").

**GENERAL INSTRUCTIONS**

A.   If you wish to receive a payment from the Settlement with DFA and DMS, you must complete and return this Claim Form so that it is postmarked no later than May 30, 2015 to the following address:

**Northeast Dairy Farmer Settlement**
**PO Box 2958**
**Faribault MN 55021-2958**

B.   In Section 2 you must provide the total amount of raw Grade A milk that your farm produced and pooled in Order 1 at any time from January 1, 2002 to December 31, 2014. Order 1 includes the states of Connecticut, Delaware, Massachusetts, New Hampshire, New Jersey, Rhode Island, Vermont and the District of Columbia and certain counties, cities and townships within the state of Maryland, New York, Pennsylvania and Virginia. For specific information on whether your farm is located in Order 1, please visit the website: www.NortheastDairyClass.com.

C.   You must complete and sign your Claim Form.

D.   Claim Forms postmarked after May 30, 2015 may be rejected and you may not receive a payment.

E.   Submission of a Claim Form does not guarantee you will receive a payment from the Settlement.

| **1.   CLASS MEMBER INFORMATION – Please type or neatly print all information.** |
|---|

Last Name: _____     First Name: _____

Address Number or P.O. Box: _____   Street or Road: _____

City: _____   State: _____   Zip Code: ___ ___ ___ - ___ ___ ___ ___

**FARM INFORMATION**

Farm Name: _____

Specify ownership info:   ☐ Individual(s)   ☐ Corporation   ☐ Cooperative   ☐ Other: _____

Name of County in which Farm is located: _____

**FARM ADDRESS -**   ☐   Check if Farm Address is the same as address above.

**Farm Address Number or P.O. Box:** _____   **Farm Street or Road:** _____

City: _____   State: _____   Zip Code: ___ ___ ___ - ___ ___ ___ ___

| **2.   TOTAL AMOUNT OF RAW GRADE A MILK** |
|---|

In the table below, indicate the total number of pounds of Raw Grade A Milk your farm produced and pooled in Federal Milk Market Order 1 from January 1, 2002 until December 31, 2014**.**

*Note:  Amount of Raw Grade A Milk should be claimed in pounds **not in hundredweight**. (Example: 12,345/cwt. of raw Grade A milk should be entered as 1,234,500 pounds below.)*

Total Number of Pounds of Raw Grade A Milk: ___ ___ ___ , ___ ___ ___ , ___ ___ ___ , ___ ___ ___ .

*Note:   **You** can obtain information on the total number of Pounds of Raw Grade A Milk from your milk checks, year-end statements, or by contacting your handler or cooperative. Some handlers and cooperatives will not have complete information regarding the total number of Pounds of Raw Grade A Milk for the entire period (January 1, 2002 until December 31, 2014) until March, 2015.  If you have any questions regarding how to obtain information for completing your claim form, please visit **www.NortheastDairyClass.com** or call 1-855-460-1533.*



*3805*



*CF*



**3.   REQUEST FOR FEDERAL TAXPAYER IDENTIFICATION NUMBER ("TIN")**

**If your payment is over $600.00 and you do not provide a valid TIN for the person or entity to which the check will be issued, you will be subject to a withholding of taxes of 28% of the amount of your payment.**

Enter Taxpayer Identification Number "TIN" on the appropriate line.

- For individuals, this is your Social Security Number ("SSN")
- For sole proprietors, you must show your individual name, but you may also enter your business or "doing business as" name.   You may enter either your SSN or your Employer Identification Number ("EIN")
- For other entities, it is your EIN.

Social Security Number (for individuals)                          Employer Identification Number

**OR**

\_\_\_\_ \_\_\_\_ \_\_\_\_ - \_\_\_\_ \_\_\_\_ - \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_                    \_\_\_\_ \_\_\_\_ - \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_

**If you are exempt from backup withholding, enter your current TIN above and write "exempt" on the following line:** _____.

**UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:**

1.   The number shown on this form is my current TIN; and

2.   I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Service (IRS) because: (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the IRS that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the IRS has notified me (us) that I am (we are) no longer subject to backup withholding.

Note:  If you have been notified by the IRS that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.  The IRS does not require your consent to any provision other than the certification required to avoid backup withholding.

**4.   RELEASE OF CLAIMS AND COVENANT NOT TO SUE**

If this settlement is approved by the Court, you will not be able to sue DFA and DMS, as well as their members, partners, and certain related entities, for the claims in this suit or related claims. You should carefully review a full copy of the Release of Claims to make sure you understand what you are giving up. The "Release of Claims" is described more fully in the Settlement Agreement.  The Settlement Agreement is available at www.NortheastDairyClass.com.

**5.   CERTIFICATION**

I certify under penalty of perjury that the information above is true and correct and the submission of false information may subject me to civil and/or criminal penalties.

Signature: _____ Print Name/Capacity of person signing: _____

Farm Name: _____ Date: \_\_\_\_ / \_\_\_\_ / \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_

***PLEASE NOTE***: *All information provided on this Claim Form will be used solely for the administration of this Settlement and will remain confidential.*

**If you have any questions, please call  1-855-460-1533**

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

# If Your Farm Produced and Pooled Grade A Milk
# In Federal Milk Marketing Order 1 Since 2002

## You Could Get Money from a Class Action Settlement.

*A court authorized this amended notice. You are not being sued.*

**THIS IS AN AMENDED NOTICE.  CERTAIN DEADLINES HAVE BEEN MODIFIED.  PLEASE DISREGARD THE PRIOR SETTLEMENT NOTICE YOU MAY HAVE RECEIVED.**

- A $50 million Settlement with Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services LLC ("DMS") has been reached.  The Settlement provides financial payment to certain dairy farmers in the Northeast and results in changes to DFA's and DMS's business practices.

- This settlement resolves all claims against DFA and DMS in a lawsuit alleging they engaged in anticompetitive conduct within Federal Milk Marketing Order 1. If this settlement is approved, you will not be able to sue DFA and DMS, as well as their members, partners, and certain related entities, for the claims in this suit or related claims.

- The average payment is estimated to be approximately $4,000, but this depends on the number of valid claims. You may receive a greater or lesser amount depending on how much milk you produced and pooled in Order 1. You must file a claim to get a payment.

- If you received this notice in the mail, records indicate that you produced milk in the Northeast between January 1, 2002 and the present and may be eligible to receive a payment from the settlement.

- Your legal rights are affected whether you act or do not act.  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive a cash payment. |
| **OPT-IN TO THE SETTLEMENT** | If you previously asked to be excluded from the Class, you may now ask the Court to reinstate you as a member of the Class for purposes of the settlement with the Settling Defendants. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment from the settlement. |

- These rights and options – and the deadlines to exercise them – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**................................................................................................**Page 3**

    1.  Why was this notice issued?

    2.  Why is this a class action?

    3.  Who are the Defendants?

    4.  What is this lawsuit about?

    5.  Why is there a Settlement with DFA and DMS?

**WHO IS IN THE SETTLEMENT CLASS**..........................................................................**Page 3**

    6.  How do I know if I'm part of the Settlement?

    7.  Are there any exceptions to being included?

    8.  If I previously asked to be excluded from the Class, can I change my mind now?

    9.  If I previously did not ask to be excluded from the Class, can I change my mind now?

    10. I'm still not sure if I'm included.

**SETTLEMENT BENEFITS**............................................................................................**Page 4**

    11. What does the Settlement Provide?

    12. How much money can I get from the Settlement?

    13. What am I giving up under the Settlement?

**HOW TO GET A PAYMENT**.........................................................................................**Page 6**

    14. How can I get a payment?

    15. When will I get my payment?

    16. Can I submit a claim even if I oppose the Settlement?

**THE LAWYERS REPRESENTING YOU**........................................................................**Page 6**

    17. Do I have a lawyer in the case?

    18. How will the Plaintiffs' lawyers be paid?

    19. What are Incentive Fees for the Subclass Representatives?

**OBJECTING TO THE SETTLEMENT**..........................................................................**Page 7**

    20. How do I tell the Court that I don't like the Settlement?

    21. Can I receive a payment even if I object?

**THE COURT'S FAIRNESS HEARING**..........................................................................**Page 7**

    22. When and where will the Court decide whether to approve the Settlement?

    23. Do I have to come to the hearing?

    24. May I speak at the hearing?

**IF YOU DO NOTHING**................................................................................................**Page 8**

    25. What happens if I do nothing at all?

**GETTING MORE INFORMATION**..............................................................................**Page 8**

    26. How do I get more information?

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this Notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to approve the settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for those benefits, and how to get them.

Judge Christina Reiss, of the United States District Court for the District of Vermont, is currently overseeing this case. The case is known as *Allen v. Dairy Farmers of America, Inc.*, No. 5:09-CV-230. The people who sued are called the Plaintiffs and the people and companies they sued are called the Defendants (*see* Question 3 below).

This settlement is separate from a prior settlement with Dean Foods Company. Even if you previously participated in the Settlement with Dean Foods, you have separate legal rights and options in this settlement with DFA and DMS.

This Notice summarizes the settlement. To view the complete Settlement Agreement, visit www.NortheastDairyClass.com.

### 2. Why is this a class action?

You previously received a notice informing you that this lawsuit has been "certified" as a Class Action. This means that the Court has found that the lawsuit meets the requirements for class actions and may proceed accordingly. The Court has certified two "subclasses" which are described below. If you are included in a Subclass, you have decisions to make now about whether to participate in this Settlement. This notice explains these decisions.

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims. All these people are a class or class members, except for those who exclude themselves from the class.

In this case, the representative dairy farmers for the DFA/DMS subclass include: Jonathan Haar, Claudia Haar and Richard Swantak. The representative dairy farmers for the non-DFA/DMS subclass are Alice H. Allen, Laurence E. Allen, Garrett Sitts and Ralph Sitts.

### 3. Who are the Defendants?

This litigation is proceeding against two remaining Defendants, Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS"), involved in the marketing, sale, purchase, and processing of Grade A milk produced by dairy farmers in the Northeast.

### 4. What is this lawsuit about?

The lawsuit claims that Defendants (including previous Defendant Dean Foods and other co-conspirators) unlawfully conspired to monopolize and to eliminate competition for the marketing, sale, and purchase of raw Grade A milk in the Northeast and thereby suppressed prices lower than they would have been in a competitive market. This lawsuit seeks to stop Defendants from engaging in the alleged unlawful conduct, to prohibit practices found to be unlawful, and to recover damages for the illegally suppressed prices for raw Grade A milk. The Defendants deny that they did anything wrong or that they acted in a manner that harmed dairy farmers. There has not yet been a determination as to whether Plaintiffs' claims are correct or Defendants have done anything wrong.

### 5. Why is there a Settlement with DFA and DMS?

The Court has not decided in favor of Plaintiffs or DFA and DMS. The Plaintiffs think they would win against DFA and DMS at a trial. DFA and DMS thinks the Plaintiffs would not win. But there will be no trial against DFA and DMS. Instead, Plaintiffs and DFA and DMS agreed to a settlement. That way, they avoid the cost of a trial, and Class Members will get the benefits of this Settlement.

The Court previously appointed Counsel to represent each Subclass in this case. Based on an extensive investigation of the facts and the law relevant to the lawsuit, Counsel think the Settlement is best for all Class Members. The Subclass Representatives oppose the Settlement. A copy of the Court's Opinion and Order preliminarily approving the Settlement is attached to this Notice and available at the settlement website. That Opinion contains a summary of the Subclass Representatives' reasons for opposing the Settlement. The Subclass Representatives – as well as any other members of the Subclasses – will have an opportunity to explain why they oppose the Settlement at the Fairness Hearing, see questions 22-24.

## WHO IS IN THE SETTLEMENT CLASS

### 6. How do I know if I'm part of the Settlement?

If you are a member of either of the two Subclasses certified by the Court – and have not excluded yourself – then you are a part of the Settlement. The Court has certified two groups or Subclasses:

**DFA/DMS Member Subclass**

- All dairy farmers (individuals or entities) who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are members of DFA or otherwise sell milk through DMS.

**Non-DFA/DMS Member Subclass**

- All dairy farmers (individuals or entities), who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, and who are <u>not</u> members of DFA and do <u>not</u> sell milk through DMS.

If there are multiple owners of your dairy farm, please forward this Notice to all of the owners. If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please send your correct address to the Notice Administrator at the address in Question 26.

## 7. Are there any exceptions to being included?

You are **not** part of the Settlement if you excluded yourself from the Class in this litigation.

The following persons and entities are also excluded from the Settlement: the current and former officers and directors of DFA, DMS, Dean Foods, HP Hood LLC, National Dairy Holdings, Farmland Dairies LLC, Kraft, Dairylea Cooperative, Inc., St. Albans Cooperative Creamery, Inc., Agri-Mark, Inc., Land O'Lakes, Inc., and Maryland and Virginia Milk Producers Cooperative Association, Inc. These entities are alleged to have conspired with Defendants with regards to some of the alleged unlawful acts, but are not themselves Defendants in the lawsuit. If you sold milk to or were a member of one or more of these entities, you are still eligible to participate in the lawsuit unless you were an officer or director of the entity. If you hold some other position with any of these entities, but are not an officer or director, you are still eligible to participate in this lawsuit.

## 8. If I previously asked to be excluded from the Class, can I change my mind now?

If you previously asked to be excluded from the Class in response to the Court's notice of class certification dated November 19, 2012, you may ask the Court to reinstate you as part of the Class for purposes of the settlement with the Settling Defendants. You must deliver an application to Northeast Dairy Farmer Class Reinstatements, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958 explaining your reasons for seeking reinstatement for purposes of the settlement with the Settling Defendants, so that it is **postmarked** no later than January 15, 2015.

If you are reinstated, you may be eligible for a payment from the settlement with Settling Defendants, provided you file a claim form as described below in Question 14. Note that reinstatement for this settlement will not make you a part of any class for purposes of any claims you may have against any other Defendants. If you previously asked to be excluded from the Class and wish to pursue claims against any other Defendants, you must do so in a separate lawsuit. In evaluating whether to pursue any individual claim, you should consult your own attorney.

## 9. If I previously did not ask to be excluded from the Class, can I change my mind now?

You cannot exclude yourself from the Class at this time.

## 10. I'm still not sure if I'm included.

If you are still not sure whether you are included in the Settlement Class, you can ask for free help.

For more information, visit www.NortheastDairyClass.com, or call 1-855-460-1533, or write to Northeast Dairy Farmer Settlement, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958.

## SETTLEMENT BENEFITS

## 11. What does the Settlement provide?

DFA and DMS have agreed to pay $50,000,000 into a Settlement Fund. After deducting attorneys' fees, plus costs, expenses, and incentive fees for the dairy farmers who brought the lawsuit (*see* Questions 18 and 19), the net Settlement Fund will be distributed to members of the Subclasses who file valid claims.

In addition to the $50 million Settlement Fund, DFA and DMS have agreed to change their business practices in the following ways:

- DFA and DMS will not enter any agreement to restrict solicitation of raw Grade A milk from farmers including any agreement that would limit the ability of any cooperative to approach farmers and offer them more favorable prices, services, or other terms.
- DFA and DMS agree not to oppose a request by Subclass Counsel to unseal and release certain of their previously confidential materials that were submitted to the Court during this case.

- DFA and DMS will not enter into any new full-supply agreements for the supply or sale of raw Grade A milk in Order 1 during the Settlement Term, although existing agreements may be renewed; and any new supply agreements of any type, or the renewal of existing full supply or other agreements, shall be presented, reviewed, and approved by the DFA and/or DMS Board of Directors prior to entering or renewing the agreements.

- Upon written request by any of their respective members in Order 1, DFA and DMS agree to disclose to that member a summary of the terms of any DFA or DMS agreement for the supply or sale of raw Grade A milk to customers in Order 1, to the extent the contracts so permit.

- Any cooperative member, affiliate, or associate of DFA or DMS in Order 1 may, during the Settlement Term, terminate its relationship with DFA or DMS upon no more than ninety (90) days written notice without penalty.

- DFA will prepare financial reports in accordance with generally accepted accounting principles and DFA will be audited by a nationally-recognized accounting firm.

- DFA senior management and Audit Committee members will affirmatively represent they are responsible for the preparation, integrity and accuracy of DFA's annual financial report.

- DFA will post on its member-only website an annual disclosure of all material related-party transactions, specifically broken out and identified by transaction.

- At its annual meeting, DFA will disclose to its delegates all material related-party transactions as well as DFA's financial results from its participation in joint ventures and off-balance sheet transactions, specifically broken out and identified by transaction.

- DFA will disclose the identity of the members of its board of directors and its committees and their generally applicable *per diem* payment rate compensation.

- DFA senior executive management and board members will execute annual conflict of interest certifications, which will be subject to review by DFA's Audit Committee and a report by the Committee at DFA's annual meeting.

- DFA's Northeast Area Council ("NEAC") will undertake a careful review of: (1) members' milk checks in order to determine whether changes in the milk checks are warranted to improve their clarity or transparency and (2) the election procedure by which Area Council members and delegates are chosen, including specifically whether the membership should be able to cast ballots by mail. Changes recommended by the NEAC will be implemented.

The Settlement Term expires on December 31, 2016. The Settlement Agreement, available at the website, contains more details about the settlement with DFA and DMS.

---

### 12. How much money can I get from the Settlement?

The amount of money you may receive cannot be calculated at this time. Your share will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to **December 31, 2014** as well as the number of valid claims that are received and the attorneys' fees, incentive fees for the Subclass Representatives, costs, and expenses approved by the Court.

We don't know how many people will file claims. However, if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be $4,000. Your payment could be more or less than $4,000 depending on the amount of raw Grade A milk you produced and pooled on Order 1.

---

### 13. What am I giving up under the Settlement?

In exchange for the Settlement Benefits explained above, you and other members of the Subclasses give up the right to continue this lawsuit against DFA or DMS.

You also give up the right to sue DFA and DMS, as well as their members and partners and certain related entities, for legal claims that are related to the facts or circumstances of this case including any lawsuit against DFA, DMS, or their related entities regarding the sale, marketing, or purchase, of raw Grade A Milk produced in and pooled on Federal Milk Marketing Order 1.

Giving up the right to sue DFA, DMS, their members and partners and certain related entities is called a "Release of Claims." The "Release of Claims" is described more fully in the Settlement Agreement. The Settlement Agreement is available at www.NortheastDairyClass.com.

You should carefully review a full copy of the Release of Claims to make sure you understand what you are giving up. As stated above, the Release extends beyond DFA and DMS to certain related entities and extends beyond the legal claims in this lawsuit. You may seek legal advice if you have any questions regarding the Release of Claims.

## HOW TO GET A PAYMENT

**14. How can I get a payment?**

To ask for a payment, complete and submit a Claim Form. A Claim Form is enclosed with this Notice.  Claim Forms are also available at www.NortheastDairyClass.com or by calling 1-855-460-1533. Please read the instructions carefully, fill out the Claim Form, provide the required documentation and mail it postmarked no later than **May 30, 2015**, to:

Northeast Dairy Farmer Settlement with DFA/DMS

c/o Rust Consulting, Inc.

PO Box 2958

Faribault, MN 55021-2958

**15. When will I get my payment?**

Payments will be mailed to Class Members who send in valid Claim Forms on time, after the Court grants "final approval" to the Settlement and after any appeals are resolved. If the Court approves the Settlement after a hearing on January 29, 2015, there may be appeals. It's always uncertain when any appeals will be resolved, and resolving them can take time.

**16. Can I submit a claim even if I oppose the Proposed Settlement?**

Yes.  You have the right to oppose the Settlement or any part of the Settlement even if you submit a claim.  To learn more about your right to object to the Settlement, see questions 20 and 21.

## THE LAWYERS REPRESENTING YOU

**17. Do I have a lawyer in the case?**

Yes.  The Court has appointed the following firms as counsel for the Subclasses:

| DFA/DMS MEMBER SUBCLASS | NON-DFA/DMS MEMBER SUBCLASS |
|---|---|
| Kit A. Pierson, Esq.<br>Benjamin D. Brown, Esq.<br>Brent W. Johnson, Esq.<br>Emmy L. Levens, Esq.<br>Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue, NW<br>Suite 500, West Tower<br>Washington, DC 20005<br>Tel: (202) 408-4600<br><br>Andrew D. Manitsky, Esq.<br>Gravel and Shea PC<br>76 St. Paul Street, 7th Floor,<br>PO Box 369<br>Burlington, VT 05402-0369<br>Tel: (802) 658-0220<br><br>Ian McGloughlin, Esq.<br>Shapiro Haber & Urmy LLP<br>53 State Street<br>Boston, MA 02109-2802<br>Tel: (617) 439-3939<br><br>David A. Balto<br>The Law Offices of David A, Balto<br>1350 I Street, N.W., Suite 850<br>Washington, DC 20005<br>Tel: (202)-789-5424 | Robert G. Abrams, Esq.<br>Gregory J. Commins, Jr., Esq.<br>Robert J. Brookhiser, Esq.<br>Baker Hostetler LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Avenue, NW<br>Washington, DC  20036-5304<br>Tel: (202) 861-1500<br><br>Emily J. Joselson, Esq.<br>Lisa B. Shelkrot, Esq.<br>Langrock Sperry & Wool, LLP<br>210 College Street,<br>PO Box 721<br>Burlington, VT 05402-0721<br>Tel: (802) 864-0217 |

You will not be charged for these lawyers.  If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

### 18.  How will the Plaintiffs' lawyers be paid?

Subclass Counsel will ask the Court for attorneys' fees of $16.66 million or one-third the Settlement Fund plus the payment of costs and expenses incurred in connection with the case.  Subclass Counsel's applications for attorneys' fees, costs, and expenses will be filed with the Court by January 1, 2015, and posted on the settlement website.

The Court may award less than these amounts. Payments approved by the Court will be made from the Settlement Fund.

### 19.  What are Incentive Fees for the Subclass Representatives?

Incentive fees provide money to the dairy farmers who brought this suit and have served as Subclass Representatives.  These fees (sometimes referred to as plaintiff incentive awards) provide payments to the Subclass Representatives for their work in representing the interests of the Subclasses throughout the course of this litigation.  The representatives for the DFA/DMS subclass are Jonathan Haar, Claudia Haar and Richard Swantak.  The representatives for the non-DFA/DMS subclass are Alice H. Allen, Laurence E. Allen, Garrett Sitts and Ralph Sitts.

Subclass counsel will request incentive fees of $20,000 to each of the Subclass Representatives' farms.  Applications for incentive payments will be filed along with Subclass Counsel's application for fees and expenses on January 1, 2015, and posted on the settlement website.

The Court may award less than these amounts. Payments approved by the Court will be made from the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

### 20.  How do I tell the Court that I don't like the Settlement?

If you are a Subclass Member, you can object to the Settlement or to Subclass Counsel's requests for fees, expenses, and incentive fees for the Subclass Representatives. To object, you must send a letter saying that you object. Your letter must also include the following:

- •   Your name, address, and telephone number,
- •   The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- •   A brief statement regarding your milk sales and any cooperative status or affiliation,
- •   The specific reasons you object to the Settlement, and
- •   Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than January 15, 2015, to the following four addresses:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| United States District Court for the District of Vermont<br>*Allen v. Dairy Farmers of America, Inc.*<br>No. 5:09-CV-230<br>NE Dairy Settlement Communication<br>11 Elmwood Avenue<br>Burlington, VT 05401 | Benjamin D. Brown, Esq.<br>Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue, NW<br>Suite 500, West Tower<br>Washington, DC 20005<br><br>Robert G. Abrams, Esq.<br>Baker Hostetler LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Avenue, NW<br>Washington, DC  20036-5304 | Steven R. Kuney, Esq.<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005 |

### 21.  Can I receive a payment even if I object?

Yes.  You can submit a claim and receive your share of the Proposed Settlement even if you oppose the Settlement.  If you want to receive your share of the Proposed Settlement you must submit a claim by **May 30, 2015**.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for attorneys' fees, expenses, and incentive payments for the Subclass Representatives. You may attend and you may ask to speak, but you don't have to.

**22.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a hearing beginning at 9:30 a.m. on January 29, 2015, at the United States District Court for the District of Vermont, 11 Elmwood Avenue, Burlington, VT 05401, in Courtroom 542.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NortheastDairyClass.com.  At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who asked to speak at the hearing. The Court may also decide how much to pay the lawyers for Plaintiffs and the Class.  After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**23.  Do I have to come to the hearing?**

No.  Plaintiffs' lawyers will answer any questions Judge Reiss may have.  But you are welcome to attend the hearing at your own expense.  If you send a written objection, you do not have to come to the Court to discuss it.  As long as you mailed your written objection on time, following the instructions in this Notice, the Court will consider it. You may also pay your own lawyer to attend, if you wish, but it's not necessary.

**24.  May I speak at the hearing?**

Yes.  You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear at the Fairness Hearing."  Be sure to include all of the information listed in Question 19.  You must mail your Notice of Intention to Appear, postmarked no later than January 15, 2015, to the four addresses in question 20.

## IF YOU DO NOTHING

**25.  What happens if I do nothing at all?**

If you do nothing, you will not get a payment from the Settlement.

In addition, your rights will be affected.  As fully explained in the Release of Claims, under the terms of the Settlement all Subclass Members – regardless of whether you submit a claim, object, or do nothing – give up the right to sue DFA and DMS, as well as their members, partners, and certain related entities, for the claims in this suit or related claims.

## GETTING MORE INFORMATION

**26.  How do I get more information?**

This notice summarizes the lawsuit.  You can get more information and important court documents at www. NortheastDairyClass.com or by calling 1-855-460-1533.  You may also write with questions to: Northeast Dairy Farmer Settlement, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN  55021-2958.

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2014 NOV 25  PM 4: 30

CLERK

BY_____
DEPUTY CLERK

ALICE H. ALLEN, LAURANCE E. ALLEN,      )
d/b/a Al-lens Farm, GARRET SITTS, RALPH )
SITTS, JONATHAN HAAR, CLAUDIA HAAR,     )
and RICHARD SWANTAK, on behalf of       )
themselves and all others similarly situated, )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )   Case No. 5:09-cv-230
                                        )
DAIRY FARMERS OF AMERICA, INC., and     )
DAIRY MARKETING SERVICES, LLC,          )
                                        )
            Defendants.                 )

**OPINION AND ORDER GRANTING IN PART RENEWED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN DAIRY FARMERS
OF AMERICA, INC., DAIRY MARKETING SERVICES, LLC, AND DAIRY
FARMER SUBCLASSES AND SETTING A FAIRNESS HEARING**
(Doc. 580)

This matter came before the court on the renewed motion of the DFA/DMS and

non-DFA/DMS subclasses (collectively, the "Dairy Farmers Subclasses") for preliminary

approval of a proposed settlement between the Dairy Farmers Subclasses and Defendants

Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS")

(the "Proposed Settlement"). (Doc. 580.) The Dairy Farmer Subclasses, through their

attorneys ("Subclass Counsel"), ask that in conjunction with preliminary approval, the

court approve their proposed notices to class members and set this matter for a hearing to

determine whether the Proposed Settlement is "fair, reasonable, and adequate" as

required by Fed. R. Civ. P. 23(e) (the "Fairness Hearing").

I.     **Factual and Procedural Background.**

The Proposed Settlement requires Defendants DFA and DMS to make a payment

of $50 million dollars to class members in two installments, authorizes certain injunctive relief, provides for incentive payments to Class Representatives in the amount of $20,000 per farm, and seeks a proposed attorney's fees award of $16.6 million, plus expenses, which Defendants have agreed not to oppose. Based on the number of claims that may be filed, the average payment per class member farm is estimated to be approximately $4,000. In exchange, class members must agree to a broad release, releasing any claims they have in this action, any claims which may have been brought in this action, and any claims which in certain respects are related to this action against Defendants and other entities with whom Defendants have a relationship.[1] The parties propose no further opt-out period and oppose an expanded opportunity to opt in and join the class as beneficiaries of the Proposed Settlement.

The court initially denied preliminary approval without prejudice because the proposed notices to class members required clarifications and because the court was advised that the Class Representatives unanimously opposed the Proposed Settlement but was not informed of the grounds for their opposition. (Doc. 569.) The court has since reviewed *in camera* the Class Representatives' letter to the court which sets forth the grounds for their opposition.

The Class Representatives oppose the Proposed Settlement on procedural grounds, asserting that Subclass Counsel entered into the Proposed Settlement without their authority and without their consent. They oppose the Proposed Settlement on substantive grounds, arguing that: (1) the class should be expanded to include all dairy farmers who pooled their milk on Federal Milk Marketing Order 1; (2) the Proposed Settlement's provisions governing injunctive relief are inadequate in both scope and duration; and (3) a payment of $4,000 to each class member dairy farm does not approximate the Dairy Farmer Subclasses' damages in this case and renders Subclass Counsel the primary beneficiaries of this lawsuit. In this respect, they appear to contest the proposed attorney's fee award for Subclass Counsel as excessive. Class Representatives will have

---

[1] The court directs class members attention to the proposed Release, itself, for the full extent of the "Released Claims." (Doc. 580-2 at 6-7, ¶¶ 1.16–1.18.)

2

an opportunity to more fully voice the grounds for their opposition at a Fairness Hearing.

Subclass Counsel counter that they conferred with and obtained authority from the Class Representatives prior to entering into the Proposed Settlement and that, in any event, no authority was necessary. They contend that no Class Representative objected to the Proposed Settlement prior to its finalization and that, again, approval of the Proposed Settlement by Class Representatives was not and is not required. They argue that the monetary amount of the Proposed Settlement is sizable and properly reflects the strengths and weaknesses of class members' claims and the risks of proceeding to trial. They contend that the Proposed Settlement's injunctive relief is broader than the relief that would have been available had class members prevailed at trial. Subclass Counsel point out that approval of their proposed attorney's fees award is not part of their request for preliminary approval.

For the following reasons, the court concludes that the Proposed Settlement satisfies the standards for preliminary approval and renders a Fairness Hearing appropriate. The court further rules that an opt-out period and a re-definition of the class are not warranted at this time, but that an expanded opportunity to opt in to the class should be available. As Subclass Counsel advise that they do not seek preliminary approval of their proposed attorney's fees award, the court does not address that request at this time.

## II.    Conclusions of Law and Analysis.

### A.    Authority to Settle and Opposition to the Proposed Settlement.

As a threshold matter, Subclass Counsel are correct in pointing out that the case law appears to permit them to settle a class action suit without authorization from class representatives. *See Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) (concluding cases "holding that an attorney cannot settle his individual client's case without the authorization of the client are simply inapplicable" in a class action "[b]ecause of the unique nature of the attorney-client relationship in a class action" and "because . . . it may be impossible for the class attorney to do more than act in what he believes to be the best interests of the class as a whole") (internal quotation marks and

3

citations omitted).  In addition, Subclass Counsel persuasively argue that a court may grant preliminary and final approval of a settlement of a class action even if the class representatives oppose it.  *See Charron v. Wiener*, 731 F.3d 241, 254 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1941 (2014) (holding that "the assent of class representatives is not essential to the settlement, as long as the Rule 23 requirements are met") (citing, *inter alia, Kincade*, 635 F.2d at 508 ("[T]he assent of named plaintiffs is not a prerequisite to the approval of a settlement.") (internal quotation marks omitted)).  This does not mean, however, that the Class Representatives' opinions regarding the fairness, reasonableness, and adequacy of the Proposed Settlement are irrelevant.  To the contrary, the reaction of the class to the Proposed Settlement remains an important consideration in determining whether the Proposed Settlement should be approved.  *See Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000) (noting one of the factors to evaluate whether a class action settlement is fair, reasonable, and adequate is "the reaction of the class to the settlement"); *see also Kincade*, 635 F.2d at 508 (noting that "the unanimous disapproval of [a] settlement by the active named plaintiffs [is] a significant factor" in evaluating whether to approve a settlement).  This conclusion is underscored in the instant case where the Class Representatives have actively participated in every stage of the litigation and have a commendable understanding of both the facts and the law underpinning their claims.

### B.    Preliminary Approval.

"Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness.'"  *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (quoting *In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)).  It is appropriate where the settlement "is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval."  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006) (citations omitted).

4

In making this determination, the court focusses on the "negotiating process" by which the settlement was reached and on the reasonableness and "fairness" of its "substantive" terms. *Charron*, 731 F.3d at 247. With regard to the latter, the court considers the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted) (abrogated on other grounds by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)).

In this case, the Proposed Settlement resulted from arms-length, non-collusive negotiations on the eve of trial between experienced and fully-informed counsel. The Proposed Settlement was preceded by years of discovery and motion practice, including motions that addressed the merits of the parties' claims and defenses and the admissibility of evidence at trial. Accordingly, the negotiations between Subclass Counsel and Defendants' counsel satisfy the standards for preliminary approval with regard to the procedure by which the Proposed Settlement was reached. As Subclass Counsel point out, they did not require authority from or approval of the Class Representatives before they agreed to the Proposed Settlement.[2]

The substantive terms of the Proposed Settlement present a closer question. As the Class Representatives observe, a payment of $4,000 per dairy farm and limited injunctive relief does not appear to approximate the full value of their antitrust claims. However, the potential value of those claims must be juxtaposed against the legitimate

---

[2] For this reason, the court need not resolve the factual dispute between the Class Representatives and Subclass Counsel regarding the circumstances that gave rise to the Proposed Settlement.

risk of a defense verdict at trial. At the summary judgment stage, the court concluded
that the documentary proof of antitrust violations was not as compelling as Subclass
Counsel represented and in some respects did not provide evidence of a conspiracy. *See
Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2610613, at *10-15 (D. Vt. June 11, 2014)
(reviewing evidence in support of Plaintiffs' monopsony conspiracy claims; noting "the
difficulty of accepting Plaintiffs' characterizations of the conspiracy's alleged
anticompetitive conduct at face value"; and observing that "several of Plaintiffs'
representations regarding the factual record are either problematic or unreliable" and
"may not support the full breadth of Plaintiffs' extensive conspiracy claims"). The court
therefore dismissed some claims and limited others. *See id.* at *7, *16, *20, *26-28
(granting, among other things, Defendants' motion for summary judgment on Plaintiffs'
price-fixing claim and Plaintiffs' proffered geographic market definition which conflicted
with their expert's definition).

Correspondingly, Defendants requested the court to exclude at trial the opinions of
Gordon Rausser, Ph.D., the class members' sole expert witness, and the court agreed that
certain aspects of Dr. Rausser's testimony were inadmissible. *See Allen v. Dairy Mktg.
Servs., LLC*, 2013 WL 6909953, at *13-15 (D. Vt. Dec. 31, 2013) (excluding certain
damages calculations offered by Plaintiffs' expert witness), and *Allen v. Dairy Farmers
of Am., Inc.*, 2014 WL 2040133, at *4, *8 (D. Vt. May 16, 2014) (granting motion to
strike expert's revision of damages).

Finally, as some of the alleged conspiracy's conduct took place outside the statute
of limitations period, class members' ability to present this conduct to the jury faced
almost certain challenges from Defendants at trial and required a strong factual record
before a jury could impose liability and award damages for conduct beyond the
limitations period. *See Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2610613, at *21-
28 (D. Vt. June 11, 2014) (addressing theories on which Plaintiffs rely in arguing they
could recover damages beyond the limitations period provided in 15 U.S.C. § 15b; noting
that it may prove difficult for certain Plaintiffs to establish at trial that they were unaware
of the nature and existence of their potential claims during the pre-limitations time

period; and granting in part Defendants' motion for summary judgment with regard to certain damages theories).

On balance, a total monetary payment of $50 million falls within a reasonable range of potential outcomes when considered in the context of the legitimate risk of a defense verdict. Moreover, because class members have limited their request for injunctive relief to only "conduct found by the Court or jury to be illegal," the equitable relief set forth in the Proposed Settlement is broader than the scope of the equitable relief that may have been ordered by the court.

The parties' joint request that there be no period to opt out of the class for purposes of the Proposed Settlement reflects the late stage in the case in which the settlement was reached and the ample opportunity that class members had to opt out of the class before that stage was reached. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (rejecting argument that class "was denied due process because class members were not given the opportunity to opt out after the settlement notice was issued," and relying on *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992), which held, "[s]ince the parties had been given notice of the action, the opportunity to opt out, notice of the proposed settlement, and the opportunity to object, . . . [the district court] was not required to grant those who objected to the proposed settlement a second opportunity to opt out"); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778-79 (2d Cir. 1996) (affirming denial of motion to opt out of proposed settlement because movants "received the protections accorded by Fed. R. Civ. P. 23," and concluding that, "[i]f the procedural requirements of that Rule were satisfied, the [district courts] would be entitled to approve a settlement over the objection of those who were denied the opportunity to opt out of the class") (internal quotation marks omitted). While re-definition of the class is not warranted at this late juncture, the court agrees with the parties' joint request that individuals who previously have opted out be permitted to opt back in to the class for purposes of settlement. (Doc. 580-1 at 15.)

Although the Class Representatives assert that the proposed attorney's fees award is excessive in light of class members' modest recovery, the parties have properly

committed the issue of the appropriate attorney's fees award to the court's discretion. (*See* Doc. 580-1 at 26.) *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) ("[T]he fees awarded in common fund cases may not exceed what is reasonable under the circumstances. What constitutes a reasonable fee is properly committed to the sound discretion of the district court[.]") (internal quotation marks and citations omitted); *accord Wal-Mart Stores, Inc.*, 396 F.3d at 121 (2d Cir. 2005) (addressing attorney's fees sought in a class action settlement in an antitrust case and noting that the "'*Goldberger* factors' ultimately determine the reasonableness of a common fund fee").

Because preliminary approval is only "the first step in the settlement of a class action" to "preliminarily determine" whether to authorize notice and schedule a hearing, *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (internal quotation marks omitted), this step "requires only an initial evaluation of the fairness of the proposed settlement." At a Fairness Hearing, in contrast, the court must conduct a full "evidentiary hearing . . . to determine the fairness and adequacy of settlement," at which time the Class Representatives and class members will have the opportunity to fully voice their opinions regarding whether the Proposed Settlement is fair, reasonable, and adequate. *Id.* (internal quotation marks and citations omitted); *see also Authors Guild v. Google, Inc.*, 2009 WL 4434586, at *1 (S.D.N.Y. Dec. 1, 2009) (noting "nuances" are to be considered at and after the fairness hearing and after all interested parties "have had the opportunity to make their views known"). For these reasons, the court GRANTS the motion for preliminary approval.

### C. The Proposed Notices.

As part of preliminary approval of a proposed settlement of a class action lawsuit, a "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice "must express no opinion on the merits of the settlement," *Handschu v. Special Servs. Div.*, 787 F.2d 828,

833 (2d Cir. 1986), and "need not include the entire text of the proposed settlement but may describe it in general terms." *Id.*

Subclass Counsel has submitted a draft "Notice of Proposed Settlement" (the "draft Notice") and a "Summary Notice of Proposed Settlement" (the "draft Summary Notice") which contain most of the clarifications the court sought in previously denying preliminary approval. However, the draft Notice attached to the renewed motion differs in some respects from the proposed notices attached to Subclass Counsel's earlier submission in response to the court's denial without prejudice of their motion for preliminary approval. (Doc. 570.) Two issues require further clarification. First, Subclass Counsel's initial submission explained that the proposed notice had been revised to clarify that the settlement excludes, *inter alia*, "current and former" officers and directors of DFA, DMS, and other entities. (Doc. 570 at 6.) The draft Notice attached to the renewed motion, however, provides that only "the current officers and directors of" DFA, DMS, and other entities are excluded from the Settlement. (Doc. 580-4 at 5.) It is therefore unclear whether the draft Notice is meant to exclude current and former officers and directors of Defendants and related entities. Second, because the draft Notice attached to the pending motion explains only that "Subclass Representatives oppose the Settlement" (Doc. 580-4 at 5), a copy of this Opinion and Order shall be attached to the Notice and posted on the class action website to advise class members of the grounds for that opposition.

With these minor clarifications, the draft Notice and Summary Notice provide class members "with a fair understanding of the action, the parties, and the nature of the settlement, by asking and answering questions that putative settlement class members might have." *Allen v. Dairy Farmers of Am., Inc.*, 2011 WL 1706778, at *11 (D. Vt. May 4, 2011). The draft Notice and Summary Notice are therefore reasonable and "adequate" to apprise class members of the Proposed Settlement and "the consequences of taking, or not taking, action in response." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 130 (2d Cir. 2011) (concluding notice was sufficient when "contain[ed] a list of readable questions and answers discussing the content of the Class Action and the

consequences of taking, or not taking, action in response" and "offered advice from class counsel, provid[ed] lawyers' contact information and instruct[ed] class members to contact them should the content of the Class Notice be unclear"); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 113 ("The standard for the adequacy of a settlement notice in a class action . . . is measured by reasonableness. . . . Notice is adequate if it may be understood by the average class member.") (internal quotation marks and citations omitted).

Accordingly, the court GRANTS approval of the draft Notice and Summary Notice to class members and ORDERS that this Opinion and Order must accompany the draft Notice and be posted on the class action website to more fully apprise the class members of the nature and extent of the court's approval and the position of their Class Representatives.

**D.    Method of Disseminating Notice and Deadlines.**

Subclass Counsel propose that notice to the class be provided in three ways.  First, the Notice will be mailed to each member "whose identities and locations are reasonably ascertainable, which may be satisfied by sending the Notice to the addresses of potential Subclass members compiled in the course of the Dean settlement and class notice, plus any additional identified potential Subclass members." (Doc. 580-3 at 3.)  Second, the Summary Notice will be published in the next available issues of *American Agriculturalist*, *Country Folks* (Eastern edition), *Farming: The Journal of Northeast Agriculture*, and *Progressive Dairyman* (Northeast edition).  Third, the Proposed Settlement Agreement, Notice, and the court's Opinion and Order will be posted on the class action website maintained by the Claims Administrator.

Subclass Counsel further propose the following deadlines for dissemination of notice, settlement administration, and the Fairness Hearing: (1) Notice and Summary Notice must be mailed and published, respectively, as soon as practicable following the issuance of this Opinion and Order; (2) requests for permission to opt back in to the class must be filed 14 days before the Fairness Hearing; (3) claims forms and/or objections must be filed 14 days before the Fairness Hearing; (4) requests to be heard at the Fairness

Hearing must be filed 14 days before the Fairness Hearing; (5) any motion for final approval and responses to objections must be filed 7 days before the Fairness Hearing; and (6) the court set a Fairness Hearing.  The procedures for submitting requests to opt back in to the class, claims forms, objections, and requests to be heard are explained in the draft Notice.

In light of these proposals, the court finds that the manner and method for dissemination of Notice and Summary Notice and the deadlines for responses are reasonable and sufficient to both apprise the class of the pendency of the Proposed Settlement and the Fairness Hearing and to afford class members an opportunity to present their objections. *See Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (directing that "the notice provided to absent class members" is "measured by reasonableness" and "must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action") (internal quotation marks and citations omitted).

The court therefore AUTHORIZES dissemination of notice and deadlines in accordance with the proposals set forth above. **The Fairness Hearing is set for January 29, 2015.**

## CONCLUSION

For the foregoing reasons, the court GRANTS preliminary approval of the Proposed Settlement, but DECLINES to grant preliminary approval of the attorney's fees request.  The court ORDERS that no further opt out period and a re-definition of the class are warranted at this time; however, the court ORDERS that class members who previously opted out of the class may seek to opt back in to the class for purposes of settlement.

With the corrections noted herein, the court GRANTS approval of the draft Notice and Summary Notice and ORDERS that this Opinion and Order accompany the draft Notice.  The court further AUTHORIZES dissemination of Notice and publication of Summary Notice in accordance with this Opinion and Order, and the court ORDERS that Notice and Summary Notice be mailed and published, respectively, as soon as practicable

following the issuance of this Opinion and Order. The court ORDERS that requests for permission to opt back in to the class be filed 14 days before the Fairness Hearing; that claims forms and/or objections be filed 14 days before the Fairness Hearing; that requests to be heard at the Fairness Hearing be filed 14 days before the Hearing; and that any motion for final approval and responses to objections be filed 7 days before the Fairness Hearing.

**The court SCHEDULES the Fairness Hearing for January 29, 2015 to determine whether the Proposed Settlement is fair, reasonable, and adequate.**

Because the remainder of the relief sought in the renewed motion is more appropriately addressed following the Fairness Hearing, the court DENIES all remaining requests in the renewed motion WITHOUT PREJUDICE.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 25th day of November, 2014.

Christina Reiss, Chief Judge
United States District Court