Dale Cole, Owner/Operator
Cole Farm
2482 Middle Road
Sidney, ME 04330
(207) 547-3106

Clerk
United States District Court for the District of Vermont
NE Dairy Settlement Communication
Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR
11 Elmwood Avenue
Burlington, VT 05401

To the Court:

    I operate Cole Farm in Augusta, Maine, milking 100 head of dairy cattle and shipping my milk to Oakhurst Dairy. I am an independent producer, not affiliated with or belonging to any dairy marketing cooperative. I am also President of the Maine Dairy Industry Association (MDIA), a dairy farm trade organization that represents all 274 dairy farmers producing milk in Maine.

    I am writing to express my opposition to the proposed settlement in <u>Allen v. Dairy Farmers of America, Inc.</u>, No. 5:09-CV-230-CR. As an individual dairy farmer and the President of MDIA, I believe that the settlement does not reflect the true market conditions for milk in the Northeast. We oppose the settlement because it applies only to dairy farmers who produce and ship milk within the geographic boundaries defined as the marketing area of federal Milk Market Order 1, and thereby completely fails to account for all the dairy farms located outside the marketing area who also provide milk for the Order. The majority of the milk produced in Maine in shipped and processed through plants or marketing entities that are subject to the Federal Order and have been negatively impacted in the same way as those farms that are located within Federal Order One's geographic description.

    If nothing else, a settlement intended to resolve such a major lawsuit for the region's dairy industry that excludes thirty per-cent of the Order's milk supply simply defies common sense and ought to be rejected for that reason alone. It is also impossible to square such an "artificial" settlement with your intensive review of this very issue in

the Court's June, 2014 Summary Judgment decision. For these reasons, we ask that you now "reconsider" the settlement Class make-up, and reject any settlement that does not account for the farms that supplied the excluded milk.

Plaintiffs' lawyers[1] have insisted throughout the case that only those farmers physically located within Order 1's geographic boundaries should be included in the case. In your Summary Judgment Decision, last summer, you noted that "Plaintiffs' proposed approach to market definition **would exclude approximately 30% of the raw Grade A milk pooled on Order One**". (my emphasis)

You further observed that this "approach to market definition" was without any evidentiary support, and even contrary to the opinion of the lawyers' own expert:

> Plaintiffs have proffered no evidence that the relevant geographic market includes only class members-i.e., only dairy farmers located within Order 1's geographic boundaries. Plaintiffs' expert witness **Dr. Rausser has specifically and repeatedly testified that Order One, as a relevant geographic market, does not require a dairy farmer supplier to be located within its geographic boundaries**....("[A]t a minimum, my opinion is that the relevant market includes all of those producers and the pricing determination that they receive, that they capture in Order 1, the geographic boundaries. **In addition, the surrounding areas in terms of the geographic scope of the relevant market are in that relevant market as well.**") (my emphasis)

My farm and the other Maine farms provide precise examples of how the expert correctly identified that the market's definition must account for the supplying farms located outside the Order's geographic territory along with those within its territory. Being in Maine, my farm is outside the territory of the Order. Our milk goes to Oakhurst Dairy, located in Portland, Maine, and therefor also located outside the geographic territory of the Order. Yet because Oakhurst ships a large volume of packaged milk into the Order's marketing area, the Order treats Oakhurst the same as plants located within the Order's territory and makes it subject to all of the Order's pricing regulations. As the expert indicated, these regulations in turn make the "pricing determination" for my milk check the same as for producers located within the Order's territory and shipping milk to Order One plants.

---

[1] It is hard not to conclude that everything done is this case is being driven by the lawyers rather than the farmers, since almost all the "Plaintiffs" in the case now oppose the settlement.

This pricing dynamic holds true also for those Maine farms that ship their milk to plants located inside the Order's territory. Even though these farms are outside the Order's territory, the Order's regulated "pricing determinations" for them is again the same as for those producers located within the Order's territory and who ship their milk to Order One plants.

Maine's farmers obviously don't make up all of the thirty percent of the Order's milk supply that Plaintiffs' market definition would exclude. Yet all the other farms that provide this milk supply for Order One, whether in Pennsylvania or elsewhere, are subject to the same Order One regulatory circumstances and "pricing determinations" as us. So our experience, as here described, applies to all of that excluded milk.

I will highlight one other part of your decision. By way of explanation, you described why, tactically, the lawyers' came up with this market definition:

> By **artificially** limiting the definition of sellers to only dairy farmers located in Order One, Plaintiffs apparently seek to correspondingly limit the options available to sellers of milk to Order One processors. This inevitably will heighten the alleged adverse impact of the conspiracy, while **ignoring a sizable percentage of the milk supply purportedly affected by it**. (my emphasis).

I highlight this language for two reasons. First, I wish to emphasize that you correctly described their analysis as "artificial", or thus even worse than simply without evidentiary support. Second, and most important, you make the critical point that this definition serves to "ignore" the impact that the alleged conspiracy might have had on "a sizeable percentage of the milk".

Most appropriately, based on this varied analysis, you concluded that a market definition that excludes 30% of the Order's milk supply is unworkable for the case, and ruled that:

> Defendants' motion for summary judgment with regard to Plaintiffs' relevant geographic market is thus GRANTED IN PART and DENIED IN PART. Plaintiffs may present evidence to the jury in support of Order I as a relevant geographic market. **They may not, however, present to the jury a market definition of Order 1 that requires a dairy farmer to be physically located within Order l's geographic boundaries in order to be considered a supplier of milk to that market.** (my emphasis)

Against these findings and conclusions by the Court, it is incomprehensible to me that the settlement could go forward without consideration of the excluded thirty percent of the Order's milk supply, as you so aptly identified in your prior Order. I can certainly understand why Plaintiffs' lawyers persist with their "artificial" definition of the Class, for all the reasons you described. In view of your apparent understanding, back only in June, of the incomprehensibleness of this approach, I simply cannot understand how you might conclude that "redefinition of the class is not warranted at this point.", as stated in your November Order allowing the Fairness Hearing to go forward.

I would ask that you now reconsider your treatment of the excluded milk supply, and reject any settlement agreement that does not properly account for the farmers who provided that significant milk supply.

Respectfully submitted,

*/s/ Dale Cole*

Dale Cole


cc:

Benjamin D. Brown, Esq.
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005

Robert G. Abrams, Esq.
Baker Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC 20036-5304

Steven R. Kuney, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005