# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| ALICE H. ALLEN, et al., ) | |
| ) | |
|    Plaintiffs, ) | |
| ) | |
|       v. ) | Civil Action No. 5:09–CV–00230–cr |
| ) | |
| DAIRY FARMERS OF AMERICA, INC., and ) | |
| DAIRY MARKETING SERVICES, LLC, ) | |
| ) | |
|    Defendants. ) | |

**SUPPLEMENTAL MEMORANDUM RELATING TO MOTION FOR
FINAL APPROVAL OF PROPOSED SETTLEMENT WITH
DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY
MARKETING SERVICES, LLC**

On January 29, 2015, the Court conducted a final approval hearing relating to final settlement of the litigation against the remaining Defendants, DFA and DMS. Near the end of the hearing the Court raised several questions and asked about related authorities, and during the hearing dairy farmers raised subjects not previously disclosed. This Supplemental Memorandum provides brief responses to certain of those subjects as well as related authority citations for the convenience of the Court.

*First*, the Court asked about the consequence of a marked division between Subclass Counsel and some of the Subclass Representatives in this case. The Court's prior holding that courts may grant "final approval of a settlement of a class action even if the class representatives oppose it" remains fully applicable. 11/25/14 Order at 4, Dkt. 582 (citing *Charron* v. *Wiener,* 731 F.3d 241, 254 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 1941 (2014)). Subclass Counsel are aware of no cases that hold to the contrary. Further, a ruling to the contrary would elevate the opinions of the Representatives over the determination of what is

in the best interests of the Subclasses and discount the experience of counsel recommending the settlement (one of the *Grinnell* factors) based on an assessment of case strengths and weaknesses and the voluminous factual record developed over the past five years.[1] *See, e.g., Kincade v. Gen. Tire & Rubber Co.,* 635 F.2d 501, 508 (5th Cir. 1981).

*Second*, in response to questions raised by the Court and dairy farmers regarding the scope of the Settlement Agreement's release, Subclass Counsel offer the following points:

- Broad releases in class action settlements are common since otherwise defendants would face many related lawsuits and limitless liability and, for this reason, "a class action may release claims that were or could have been pled." *See Wal-Mart Stores, Inc. v. VISA U.S.A.*, 396 F. 3d 96, 106-07 (2d Cir. 2005). Consequently, the Settlement Agreement's release of claims that were asserted or could have been asserted in the Complaint related to the facts or circumstances alleged in the Complaint, *see* Agreement ¶ 1.16, as well as the release of Defendants' related entities, *see id.* ¶ 1.17, is consistent with the Second Circuit's approval of broad class action settlements,[2] *see Davis v. Cent. Vt. Pub. Serv. Corp.*, 2012 U.S. Dist. LEXIS 139186, at \*\*40-44 (D. Vt. Sept. 27, 2012) (Reiss, J.)

---

[1] Counsels' judgment necessarily had to be based on the actual record developed during the extensive discovery in this case. For example, an objector at the hearing stated that Dean has a "70-90%" market share in the Northeast. Discovery in the case (as well as expert analysis for both sides) made clear that Dean's actual market share is much lower. Similarly, while it would have been attractive to present a narrowly-framed, simpler case to the jury, the case that could be presented was necessarily dictated by the actual facts and record. No party or witness involved in this case has ever been able to point to a narrow/simple theory supported on a class basis by evidence in the record and Subclass Counsel have necessarily presented the case to the Court based on the actual record developed through the extensive discovery process.

[2] The proposed release in *Forauer v. Vermont Country Store*, referenced by the Court during the hearing, was much broader than the release here. In *Forauer*, the parties proposed "a general release of all claims relating in any way to [each plaintiff's] employment with [defendant]." 2015 U.S. Dist. LEXIS 5604 at \*2 (D. Vt. Jan. 16, 2015) (Reiss, J.). Here, in contrast, the Settlement Agreement releases only claims that were or could have been asserted in the Complaint against DFA/DMS and relate to the facts or circumstances alleged in the Complaint. *See* Agreement ¶ 1.16.

(approving class settlement release of "any and all manner of claims," including "unknown claims," that "were, could have been, or in the future can or might be alleged" in the lawsuit against released parties or their "past, present or future predecessors…affiliates, parents, subsidiaries, officers, directors, employees…").

- A question was raised at the hearing as to whether the "including but not limited to" language in Paragraph 1.16 of the Settlement Agreement releases Defendants from liability for acts beyond those alleged in the Complaint.  As all parties agreed on the record at the hearing, the release is limited to claims arising out of, associated with, or related to the facts or circumstances alleged in the Complaint.  This is consistent with New York cases interpreting contracts,[3] which generally hold that "including but not limited to" phrases are illustrative and do not exceed the scope of the prefatory language that precedes them.  *See Rather v. CBS Corp.*, 68 A.D.3d 49, 54-55 (N.Y. App. Div. 1st Dep't 2009) (interpreting contractual term as limited by preceding prefatory language); *Rivera v. New York City Hous. Auth.*, 143 Misc. 2d 135 (N.Y. Sup. Ct. 1989) (same with respect to settlement agreement).

- A question was raised as to whether the term "Complaint" in a "whereas" clause of the Settlement Agreement includes all documents submitted to the Court during the litigation.  In that clause, "Complaint" is defined to include the complaints along "with any other pleading filed in this matter or any consolidated matter."  Agreement at 1. Consistent with Rules 7(a) and 8 of the Federal Rules of Civil Procedure, "pleading" includes only the complaints and answers filed in the proceeding (not other documents filed in the course of the litigation).

---

[3] New York law applies to the Settlement Agreement.  *See* Agreement ¶ 13.12.

- A question was raised as to whether Paragraph 1.16 releases future claims of Subclass members against Defendants DFA/DMS. By the Settlement Agreement's express terms, "Released Claims" are limited to claims that "were asserted or that could have been asserted in the Complaint as to the Released Parties" and that arose "through and including the Effective Date." Agreement ¶ 1.16. The Settlement Agreement does not release claims based on future conduct.

- The Settlement Agreement's release language is identical to the DFA/DMS release in the settlement of the *Southeastern Milk Antitrust Litigation*, which was determined to be fair, reasonable, and adequate. In the two years since that settlement, the terms of the release have not raised any disputes or concerns. Similarly, although thousands of farmers were given Court-approved Notice of the settlement here, 99.8% of the Subclass members made no objection to its terms and there were virtually no objections to the release language.

*Third*, the Court asked whether a jury finding of unlawful conduct by Defendants would result in injunctive relief offered by the Settlement Agreement. Subclass Counsel submit that the Agreement offers relief beyond that which would result from a jury verdict in Plaintiffs' favor, including provisions increasing transparency of ongoing DFA/DMS operations, *see* Agreement ¶¶ 7.3(c) & (f), allowing cooperative members, affiliates, or associates of DFA/DMS to terminate their relationships without contractual penalties that would otherwise apply, *see id*. ¶ 7.3(d), and commitments as to DFA financial audit and reporting processes applicable to farmers in Order 1, *see id*. ¶ 7.3(g). As the Court noted at the hearing, none of these provisions would be imposed by the Court. And, none would be required by a jury verdict in Plaintiffs' favor.

*Fourth*, in response to certain Subclass Representatives' argument, the Court raised questions about whether the Settlement Agreement should have included requirements for independent milk testing. The negotiated scope of relief in the class action settlement necessarily is based on the facts discovered in the case (and an assessment of those facts based on more than 100 depositions in the Northeast and Southeast cases) that support class-wide claims. Despite the limited individual allegations on this issue at the hearing, the discovery record did not provide a basis for this relief on a class wide basis and such terms are not required in a class settlement in order for it to be a fair, reasonable and adequate resolution of the class-based claims that were asserted in this action.

*Fifth*, the Court raised a question about whether a second opportunity to opt out of the Subclasses was appropriate given the Court's view that circumstances have changed. The Court's prior ruling that this was not required was fully within the Court's discretion and, as the Court previously recognized, in accordance with applicable law. *See* 11/25/14 Order at 7, Dkt. 582. Moreover, the fact that none of the Subclass members opposing the settlement objected on the basis that they wanted another opportunity to opt out – and more than 99.8% of the Subclass members raised no objection to the settlement or requested to opt out – provides further support for the prior ruling on that issue.

*Sixth*, the Court asked about the merit of certain Class Representatives' statement that they would rather go to trial and lose than have a settlement that includes the proposed release. Subclass Counsel and Subclass Representative Alice Allen both described the issue not as whether a particular person would be willing to gamble their stake in the settlement at a trial, but rather whether it is in the best interest of the Subclasses as a whole to risk losing the settlement benefits by going to trial. A loss at trial would not only prevent farmers from receiving the

substantial financial benefits and equitable relief accomplished by the settlement, it also would result in a class-wide judgment in Defendants' favor, a binding determination that the conduct challenged in the case did not violate the law, raise *res judicata* issues for any further litigation on behalf of all Subclass members, and publically vindicate Defendants.

In addition, during the course of the hearing, the Court and dairy farmers raised related issues, including those concerning counsel, which Subclass Counsel briefly address.  The Court asked whether the virtual absence of objections can be interpreted as reflecting approval of the proposed settlement.  Courts generally presume that class members who do not object support the proposed settlements.  *See, e.g., Carpenters & Joiners Welfare Fund v. Smithkline Beecham Corp.*, 2008 U.S. Dist. LEXIS 90927, at *10 (W.D. Mich. Sept. 30, 2008) ("to the extent Class members have not made objections, it can be presumed that they support the settlement"); *Mulroy v. Nat'l Water Main Cleaning Co.*, 2014 U.S. Dist. LEXIS 171904, at *7 (D.N.J. Dec. 12, 2014) (explaining silence is presumed consent to settlement).[4]  This presumption is particularly applicable here, where Subclass Representatives opposed to the settlement publically solicited settlement objections, *see* 1/22/15 Motion for Final Approval at 15, n.17, Dkt. 645, but obtained only a very small number of objections, *see Alves v. Main*, 2012 U.S. Dist. LEXIS 171773, at **33-35 (D.N.J. Dec. 4, 2012) (explaining objections to settlement by one-third of class was a "very positive" reaction in support of settlement when there had been a campaign to "gather support for opposition to the settlement").

The Court and dairy farmers raised questions about whether some DFA/DMS farmers might not have objected because of fear of retaliation.  The discovery record on the past

---

[4] Courts sometimes do not presume silence equates to approval of settlements, but usually for reasons not present in this case.  *See, e.g., Rowe v. E.I. du Pont De Nemours & Co.*, 2011 U.S. Dist. LEXIS 96450, at *48 (D.N.J. Aug. 26, 2011) (concern that objection period was too short).

allegations of retaliation is, at best, mixed, and the Settlement Agreement includes an express term designed to protect dairy farmers from future acts of retaliation based upon their participation in any aspect of the litigation.  *See* Agreement ¶ 7.3(i).  In any event, this fear of retaliation would not be present for many Non-DFA/DMS Subclass members, and cannot account for the tiny fraction of farmers – approximately 0.2% – who objected *whether or not* they market milk through DFA/DMS.  The fact that 99.8% of farmers have no objection to the settlement, regardless of whether they sold milk through DFA/DMS, or would have any basis to fear retaliation, provides further indication of the substantial benefits of, and overwhelming support for, the settlement.

Many of the objections at the hearing were based on subjects outside the scope of the litigation, such as government price support, milk hauling charges, and milk export policies.  *See Lane v. Lombardi*, 2014 U.S. Dist. LEXIS 149823, at \*4 (W.D. Mo. Oct. 22, 2014) (overruling as irrelevant objections relating to matters outside scope of litigation); *Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, at \*\*30-31 (C.D. Cal. Sept. 11, 2014) (same); *In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at \*\*26-27 (D.N.J. May 14, 2012) (same).  Likewise, the only objection received since the hearing is from a non-member of the Subclasses and, therefore, lacks standing.[5]  *See* 5/4/11 Order at 9, Dkt. 297.

There was brief discussion of claims that already have been submitted by farmers to receive the financial compensation provided by the settlement.  These claims are not due until

---

[5] On February 9, 2015 – weeks after the deadline for objections set by the Court – an objection was filed by the President of the Maine Dairy Industry Association.  *See* Dkt. 632.  Almost four years ago, this Court held that "[n]onparties to a settlement generally do not have standing to object to the settlement of a class action,'" explained that "[t]he proper procedural vehicle for non-class members to interject their opposing views is 'via intervention under Rule 24,'" and denied the MDIA's request to intervene as both untimely and prejudicial.  5/4/11 Order at 9, Dkt. 297 (citations omitted).  These conclusions apply with equal, or even greater, force today.

May 30, 2015 (because of the time required for farms to obtain necessary information from the Federal Milk Market Administrator). As of this date, approximately 700 claims already have been received and additional claims are arriving on a daily basis.

Objectors who opposed the settlement (including some Subclass Representatives) made other claims at the hearing that are not germane to final approval of the settlement. These included statements relating to the Dean settlement, which was approved several years ago as fair, reasonable, and adequate, and other matters.[6] At the hearing, counsel did not specifically address these issues because they were extraneous to the issue before the Court. In the time available at the hearing, it was necessary and appropriate to focus on application of the *Grinnell* factors to final approval of the DFA/DMS settlement. If the Court were to regard any of the other issues raised as germane to the issues pending before the Court, however, Subclass Counsel would respectfully request the opportunity to submit briefing addressing any such issues.

Finally, the hearing ended before the Court called the pending motion for award of attorneys' fees, reimbursement of costs, and incentive awards. *See* Dkt. 588. While none of the objectors articulated a rationale for denying this motion, Subclass Counsel are prepared to argue the motion and respond to any questions of the Court.

Dated: February 12, 2015

---

[6] As was the case with the DFA/DMS settlement, at the time of the Dean settlement there was extensive discussion with the class representatives about the issues (including pros and cons) presented by the Dean settlement, and there was ample opportunity to raise objections, if any, to the settlement. Although it is unnecessary to revisit that now, if it were germane, Subclass Counsel can submit declarations addressing that earlier history fully (as Counsel has done in connection with the DFA/DMS settlement).

                                Respectfully Submitted,

| | |
|---|---|
| */s/ Robert G. Abrams* | /s/ *Kit A. Pierson* |
| Robert G. Abrams, Esq. | Kit A. Pierson, Esq. |
| Robert J. Brookhiser, Esq. | Benjamin D. Brown, Esq. |
| Gregory J. Commins, Jr., Esq. | Brent W. Johnson, Esq. |
| Terry L. Sullivan, Esq. | Emmy L. Levens, Esq. |
| Danyll W. Foix, Esq. | Cohen Milstein Sellers & Toll, PLLC |
| Baker & Hostetler LLP | 1100 New York Ave., N.W. |
| Washington Square, Suite 1100 | Suite 500, West Tower |
| 1050 Connecticut Ave., N.W. | Washington, DC  20005 |
| Washington, DC  20036 | (202) 408-4600 |
| (202) 862-1500 | kpierson@cohenmilstein.com |
| rabrams@bakerlaw.com | bbrown@cohenmilstein.com |
| rbrookhiser@bakerlaw.com | bjohnson@cohenmilstein.com |
| gcommins@bakerlaw.com | elevens@cohenmilstein.com |
| tsullivan@bakerlaw.com | |
| dfoix@bakerlaw.com | David A. Balto, Esq. |
| | The Law Offices of David A. Balto |
| Emily J. Joselson, Esq. | 1350 I St., N.W., Suite 850 |
| Lisa B. Shelkrot, Esq. | Washington, DC 20005 |
| Langrock Sperry & Wool, LLP | (202) 789-5424 |
| 210 College St. | david.balto@yahoo.com |
| P.O. Box 721 | |
| Burlington, VT 05402-0721 | Andrew D. Manitsky, Esq. |
| (802) 864-0217 | Gravel and Shea PC |
| ejoselson@langrock.com | 76 St. Paul St., 7th Floor, |
| lshelkrot@langrock.com | P.O. Box 369 |
| | Burlington, VT  05402 |
| *Counsel for the Non-DFA/DMS Subclass* | (802) 658-0220 |
| | amanitsky@gravelshea.com |
| | |
| | *Counsel for the DFA/DMS Subclass* |