EXHIBIT A. Page 1 of 2

S.E. Milk Memorandum Opinion and Order.

ORIGINAL NOTES

the relief, depending on the jury verdict, in an attempt to avoid the conflict among class members. That is simply not the proper approach.

This Court has previously noted that the Eleventh Circuit decision in *Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000) is closely analogous to the situation in the present case. In *Pickett*, the plaintiffs, producers of "fed cattle" sold to Iowa Beef Producers, sued alleging violations of the Packers and Stockyards Act. On appeal from the district court order granting class certification, the Eleventh Circuit reversed because the class certified included "those who claim harm from the very same acts from which other members of the class have benefitted." *Id.* at 1280. Under these circumstances, the Eleventh Circuit found that plaintiffs, whose interests oppose those of other class members, "could not possibly provide adequate representation to a class" including those who benefitted from the acts alleged to have caused harm to the named plaintiffs. *Id.* at 1280-81. *See also Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003). In sum, under Pickett, "a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Pickett*, 209 F.3d at 1280. Thus, either of these circumstances is sufficient to defeat class certification.

DO D.F.A. MEMBERS BENIFIT? SOME FEEL YES SOME FEEL NO

THE ISSUE TO BUILD IS THAT NO ONE HAS BENIFITED FROM DFA'S ANTI COMPETITIVE BEHAVIOR.

Defendants have also called the Court's attention to two other cases that apply the same principles. In *In re Party City Securities Litig.*, 189 F.R.D. 91 (D. N.J. 1999) named plaintiffs sought to represent both current and former shareholders of the defendant company. That case is instructive because the proposed class contained individuals who had an interest in maintaining the "continued commercial viability and financial success of the defendant cooperation" and individuals who had no such on-going interest but had "one focus: maximizing their recovery from the

IS NOT THE POINT OF LAW THAT THIS NEEDS TO BE DECIDED ON DATA JUST

BECAUSE I FEEL AFTER HAVING BEEN TOLD BY THE PEOPLE WHO ARE CONSPIRING TO HARM

ME, THAT IN FACT THEY ARE BENIFITING ME JUST BECAUSE I BELIEVE THEM DOES NOT IN FACT PROVE IN ANYWAY THAT THAT IS THE CASE.

THERE IS COMPELLING PRESSURE ON DFA RANK AND FILE TO NOT STAND UP AND BE COUNTED AS IN OUR AREA DMS AND ITS AFFLIATES IS THE ONLY MILK MARKET.

I NEED TO DISCREDIT THE EVIDENCE W/OUT DISCREDITING THE FARMERS

What has happened to the # of DFA members over the last 5 yrs.?

THERE IS EQUAL PRESSURES ON DFA MEMBERS APROACHED BY THE MANAGEMENT TO COMPLY BY SIGNING AN AFADAVIT.

DFA Management has a conflict of interest - between processing + keeping milk prices high.

People who are traped in a mess tend to want people with them -

the monkey experiment.
Alices comment.

Case 5:09-cv-00230-cr Document 661 Filed 12/09/11 Page 28 of 31

EXHIBIT A. Pge 2. N.E. Milk Class Cert Denied
ORIGINAL NOTES

would fundamentally alter how those entities do business, there is also a potential conflict between those who support and benefit from the activities of DFA and DMS, and those who do not.[19] In support of this claim, DFA and DMS have filed sworn declarations from nearly two dozen dairy farmers who assert that because they use DMS to bring their milk to market and seek to continue to do so, their interests are not aligned with dairy farmers who do not. These dairy farmers oppose both this lawsuit and the relief that it requests.[20] DFA and DMS cite *Pickett* as instructive of how this conflict must be resolved.

I OFFERED TO COUNTER THIS.

I WAS GOING TO ADDRESS PICKET ORIGINALLY @ THE HEARING

In *Pickett*, the trial court certified a class which included all cattle producers who sold fed cattle to the defendants on the spot market, as well as all cattle producers who have or previously had contracts and marketing agreements with the defendants. The plaintiffs in *Pickett* alleged that the contracts and marketing agreements allowed defendants to "depress the market at strategic times in order to force producers to accept artificially low prices[.]" *Id.* at 1278. In reversing the certification decision, the Eleventh Circuit concluded that the adequacy requirement of Rule 23(a)(4) was not satisfied because of a conflict within the class. *See id.* at 1280 ("Thus, a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class."). The Eleventh Circuit further observed that the plaintiffs sought injunctive relief which would have prohibited defendants from using purchasing arrangements in the future, thereby imposing a restriction on the way defendants conducted business. *Id.* The court

---

[19] Plaintiffs assert that the facts before the court are no different than those considered by the court when it certified a settlement class for the purposes of the Dean Settlement. However, no member of the Dean Settlement Class could be said to occupy the status of both plaintiff and quasi-defendant. Here, individual dairy farmers including dairy farmer members of DMS would be pursuing relief against dairy farmer-owned DMS.

[20] With regard to the Dean Settlement, only a few dairy farmers opposed Dean's proposal to pay $30 million in order to settle all claims against it in this lawsuit.