UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 JUN 30  AM 11: 55

CLERK

BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| ALICE H. ALLEN, LAURANCE E. ALLEN, d/b/a Al-lens Farm, GARRET SITTS, RALPH SITTS, JONATHAN HAAR, CLAUDIA HAAR, and RICHARD SWANTAK, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 5:09-cv-230 |
| DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC, | ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER DENYING SUBCLASS REPRESENTATIVES'
MOTION FOR NEW COUNSEL FOR THE DAIRY FARMER SUBCLASSES**
(Doc. 637)

Pending before the court in this antitrust class action is a motion seeking new counsel[1] for Plaintiff dairy farmers ("Dairy Farmers Subclasses"), filed by the current class representatives, with the exception of Alice Allen ("Petitioning Subclass Representatives"). (Doc. 637.) Counsel for the Dairy Farmers Subclasses ("Subclass Counsel") oppose the motion. (Doc. 638.) Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") take no position on the motion.

The court held evidentiary hearings on the motion on April 20, 2015 and June 1, 2015, after which the court took the matter under advisement. Petitioning Subclass Representatives Ralph Sitts and Garret Sitts testified in support of the motion. Subclass Representative Alice Allen testified that she "strongly" opposes it. (Doc. 651 at 162; Tr. 4/20/15 at 162.) Kit Pierson, Esq., Benjamin Brown, Esq., Andrew Manitsky, Esq., and Brent Johnson, Esq. also testified in opposition to the motion.

---

[1] Petitioning Subclass Representatives do not seek the removal of local counsel.

## I.     Procedural Background.

This class action arises out of Plaintiffs' allegations that Defendants and their alleged co-conspirators, including Dean Foods Company ("Dean"), engaged in a wide-ranging conspiracy at the processor and cooperative levels to control the supply of raw Grade A milk in Order 1, which had the effect of suppressing certain premiums paid to dairy farmers for their milk. (Doc. 117.) In August 2011, the court granted final approval of a settlement between Plaintiffs and Dean that required Dean to make a one-time payment of $30 million (the "Dean Settlement"). (Doc. 341.)

In November 2012, the court certified the following subclasses:

1. All dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are members of DFA or otherwise sell milk through DMS ("DFA/DMS Subclass"); and

2. All dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are not members of DFA and do not otherwise sell milk through DMS ("non-DFA/DMS Subclass").

(Doc. 435 at 3-4.) The court approved the appointment of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") to represent the DFA/DMS Subclass and Baker & Hostetler LLP to represent the non-DFA/DMS Subclass. The court also approved the appointment of Jonathan and Claudia Haar and Richard Swantak as Subclass Representatives of the DFA/DMS Subclass and Alice and Laurance Allen and Ralph Sitts and Garret Sitts as Subclass Representatives of the non-DFA/DMS Subclass.

After resolving competing motions to exclude expert opinions and Defendants' motion for summary judgment, the case was set for trial on July 7, 2014 through August 20, 2014. In late June 2014, Subclass Counsel notified the court that a settlement had been reached. This settlement required Defendants to make a payment of $50 million and provided for equitable relief (the "Initial DFA/DMS Settlement"). Subclass Counsel thereafter filed an expedited motion for preliminary approval of the Initial DFA/DMS Settlement, which the court initially denied without prejudice pending a disclosure of why Subclass Representatives unanimously opposed the Initial DFA/DMS Settlement.

(Docs. 568 & 569.)  Subclass Counsel provided this information to the court, which consisted of a letter from Petitioning Subclass Representatives outlining their opposition to the Initial DFA/DMS Settlement on both procedural and substantive grounds.  In this submission, Petitioning Subclass Representatives maintained that Subclass Counsel entered into the Initial DFA/DMS Settlement without prior notice to them and without their consent; that the class should be expanded to include all dairy farmers who pooled their milk on Federal Milk Marketing Order 1; that the Initial DFA/DMS Settlement's provisions governing injunctive relief were inadequate in both scope and duration; and that a payment of $4,000 per each class member dairy farm was insufficient compensation and rendered Subclass Counsel the primary beneficiaries of the Initial DFA/DMS Settlement.  In contesting the injunctive relief provided in the Initial DFA/DMS Settlement, Petitioning Subclass Representatives did not raise concerns regarding the need for independent milk testing.

After the court granted a renewed motion for preliminary approval and authorized notice to the class, on January 29, 2015, the court held the DFA/DMS Fairness Hearing regarding final approval of the Initial DFA/DMS Settlement.  (Docs. 580, 582, & 631.) At the time, all Subclass Representatives, except Alice Allen, opposed final approval.  At the DFA/DMS Fairness Hearing, Petitioning Subclass Representatives represented that independent milk testing was essential to meaningful injunctive relief as, in its absence, Defendants had the ability to control their livelihoods and retaliate against them.  The court received twenty-five objections from dairy farmers to the Initial DFA/DMS Settlement, in addition to the written objections of Petitioning Subclass Representatives Richard Swantak, Garret Sitts, Ralph Sitts, Jonathan Haar, Claudia Haar, and their son Joshua Haar.[2]

---

[2] Post-hearing, the court received additional objections to the Initial DFA/DMS Settlement.  On April 6, 2015, sixteen farmers submitted a petition to the court indicating that they did not support the Initial DFA/DMS Settlement, regardless of whether they had submitted a claim, because they believed it "should not be an option for [Defendants DFA and DMS] to pay a relatively small settlement fee for the privilege of continuing business as usual." (Doc. 644 at 1.)

On March 11, 2015, Petitioning Subclass Representatives filed the pending motion to remove Subclass Counsel.[3] (Doc. 637.) They represent that they can secure new counsel to take the case. Subclass Counsel oppose the motion to remove, arguing that the allegations of Petitioning Subclass Representatives are without merit. (Doc. 638.) They emphasize that, after six years of litigation, they have expended approximately 60,600 hours on this complicated antitrust case and have successfully litigated numerous complex factual and legal issues at every phase of the litigation. As a result, they contend the drastic remedy of removal is not warranted.

On March 31, 2015, the court denied without prejudice the motion for final approval of the Initial DFA/DMS Settlement. (Docs. 625 & 642.) In doing so, the court identified both procedural and substantive obstacles to final approval. *See Allen v. Dairy Farmers of Am., Inc.*, 2015 WL 1517400, at *5-9 (D. Vt. Mar. 31, 2015).

## II.     Petitioning Subclass Representatives' Grounds for New Subclass Counsel.

Petitioning Subclass Representatives have asserted an array of concerns and complaints regarding Subclass Counsel, which include an allegation that one of the attorneys representing the DFA/DMS Subclass colluded with Defendants DFA and DMS and agreed to settlements that benefitted Defendants and Subclass Counsel over the interests of class members. Although Petitioning Subclass Representatives made arguments regarding this allegation, no evidence was proffered to support it.

---

This petition requested that the court not "confuse" the filing of claims as "proof" of support of the Initial DFA/DMS Settlement. *Id.*

[3] At the hearings on the pending motion, Petitioning Subclass Representatives presented a petition containing the signatures of thirty-three dairy farmers indicating those farmers believed that "current counsel does not see" that this case is "not about the money" and requesting that the court grant the motion to remove and "allow[] the class to seek [its] own counsel." (Ex. 20 at 1.) Petitioning Subclass Representatives filed on May 21, 2015 a similar petition with the signatures of forty-nine dairy farmers requesting that the court grant the motion to remove Subclass Counsel and allow the class to seek new counsel. (Doc. 648-4.) Some dairy farmers signed both petitions. Petitioning Subclass Representatives also submitted individual signed letters from eight dairy farmers in support of the motion to remove. (Docs. 648-1, 648-2, & 648-3; Exs. 20 & 21.)

Petitioning Subclass Representatives also raised concerns regarding how Subclass Counsel handled the Dean Settlement, mediation, and the Initial DFA/DMS Settlement. They presented evidence that one member of Subclass Counsel used profanity on a single occasion and that they felt pressured to enter into the Dean Settlement by Subclass Counsel. Ultimately, however, the Subclass Representatives did not oppose the Dean Settlement or raise their concerns about their counsel at the Dean Fairness Hearing. The Dean Settlement was therefore approved without their objection. *See Allen v. Dairy Farmers of Am., Inc.*, 2011 WL 3361233, at *5-8 (D. Vt. Aug. 3, 2011).

As the case neared a scheduled trial date of July 7, 2014, Subclass Counsel informed the court on June 20, 2014, that a tentative settlement had been reached with Defendants DFA and DMS. The court took the case off the trial calendar based on this representation. In fact, however, only a monetary settlement had been agreed to contingent upon the negotiation of mutually-acceptable injunctive relief.

Thereafter, Subclass Counsel conferred with Subclass Representatives regarding the Initial DFA/DMS Settlement and discussed potential injunctive relief in approximately five conference calls. This process resulted in a divergence of opinion between Petitioning Subclass Representatives and Subclass Counsel regarding the scope and terms of injunctive relief. Petitioning Subclass Representatives maintain that Subclass Counsel improperly focused on monetary relief, thereby diminishing the importance of injunctive relief. Subclass Counsel counter that they pursued the same injunctive relief obtained in the settlement of the Southeastern Milk Antitrust Litigation which Petitioning Subclass Representatives initially agreed would be sufficient.

Petitioning Subclass Representatives' remaining allegations consist of conflicts with Subclass Counsel regarding the arguments raised before the court, the proper definition of the class, the advisability of proceeding to trial rather than settlement, disagreements with lead counsel for the DFA/DMS Subclass, and objections to the manner in which, at times, they have been treated by Subclass Counsel.[4] The vast

---

[4] Petitioning Subclass Representatives concede that until the Initial DFA/DMS Settlement, they had no complaint about Baker & Hostetler and enjoyed a productive attorney-client relationship

majority of the disputes between Petitioning Subclass Representatives and Subclass Counsel thus appear to arise out of the litigation strategy for this case. *See Allen v. Dairy Farmers of Am., Inc.*, 2015 WL 1517400, at *6 n.13 (D. Vt. Mar. 31, 2015) (noting Subclass Counsel and Petitioning Subclass Representatives "have a fundamental difference of opinion regarding what this case is about, what would be proved at trial, and what is a fair, reasonable, and adequate response to Defendants' alleged antitrust violations").

### III.    Conclusions of Law and Analysis.

Class counsel in a class action may be removed if they have "engaged in any improper conduct" or if they have "undermined the rights of the class at large." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).  They may also be removed if a conflict of interest arises in the representation of the class or sub-classes, but "traditional principles governing disqualification of attorneys on grounds of conflict of interest . . . should not be mechanically applied to the problems that arise in the settlement of class action litigation." *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986); *see also* Model Rules of Prof'l Conduct R. 1.7-1.9 (outlining conflicts of interest between an attorney and current or former clients).

In considering whether to remove class counsel for any reason, the district court "must consider as well the costs to the class members of requiring that they obtain new counsel, taking into account such factors as the nature and value of the claim they are presenting, the ease with which they could obtain new counsel, the factual and legal complexity of the litigation, and the time that would be needed for new counsel to familiarize himself [or herself] with all that has gone before." *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d at 19.  The Second Circuit further directs that "there must be a balancing of the interests of the various groups of class members and of the interest of the public and the court in achieving a just and expeditious resolution of the dispute." *Id.*

---

with that firm.  Indeed, it was their hope that this firm would take the lead in the litigation.  They further acknowledged that they previously enjoyed a good relationship with at least two of the attorneys at Cohen Milstein.

"Inherent in any class action is the potential for conflicting interests among the class representatives, class counsel, and absent class members." *Maywalt*, 67 F.3d at 1077. However, such conflicts do not necessitate removal as long as class representatives and class counsel faithfully discharge their "responsibilities to absent members of the class." *Id.* (noting both class representatives and class counsel have responsibilities to the class). Both Subclass Counsel and Petitioning Subclass Representatives assert that they are acting in the best interests of the class consistent with their fiduciary duties. *See Maywalt*, 67 F.3d at 1077 ("Both class representatives and class counsel have responsibilities to absent members of the class."); *see also Martens v. Thomann*, 273 F.3d 159, 173 n.10 (2d Cir. 2001) (noting that class representatives have "fiduciary duties towards the other members of the class"). The court has no reason to doubt those representations.

Although Petitioning Subclass Representatives identify numerous concerns regarding Subclass Counsel's performance, these conflicts arise out of strategic and tactical decisions which Subclass Counsel are entitled to make on the class's behalf and do not constitute actual misconduct.[5] Similarly, although Petitioning Subclass Representatives have established that they sought to be more involved in the Dean Settlement, mediation, and the Initial DFA/DMS Settlement, their partial exclusion from these events does not constitute actual misconduct by Subclass Counsel because class representatives typically do not have a right to "be directly involved in settlement

---

[5] *See Banyai v. Mazur*, 2004 WL 1948755, at *1 (S.D.N.Y. Sept. 1, 2004) (finding disagreements over settlement options between class representatives and class counsel "embod[ied] reasonable differences in evaluating alternative courses of action" but did not "evidence any conflict of interest or wrongdoing"); *see also Malchman v. Davis*, 588 F. Supp. 1047, 1058 (S.D.N.Y. 1984) (noting "[i]t is almost always the attorneys [in class actions] who make the litigation decisions, determine strategy, and negotiate settlement terms"); *C.I.R. v. Banks*, 543 U.S. 427, 436 (2005) (noting an "attorney can make tactical decisions without consulting the client," but remains "obligated to act solely on behalf of, and for the exclusive benefit of, the client-principal"); *Alaimo v. Cohen*, 2008 WL 4202267, at *6 n.6 (S.D.N.Y. Sept. 10, 2008) (noting that "the decision of what arguments to pursue are typically the domain of the attorney, not the client" and that "'[c]lients normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to accomplish their objectives, particularly with respect to technical, legal and tactical matters'") (quoting Model Rules of Prof'l Conduct R. 1.2 cmt. 2).

negotiations[.]" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 802 (2d Cir. 2009) (explaining a named plaintiff must provide "compelling reasons" for direct involvement in settlement negotiations); *see also In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1365 (2d Cir. 1991) (noting that "lead counsel are likely to be in the best position to conduct settlement discussions for the class" and delineating the "responsibilities" of lead counsel, which include "to keep other counsel for subclasses or members of the classes informed about negotiations and to consult with them regarding appropriate settlement terms"). To the extent that Petitioning Subclass Representatives challenge the chronology of the Initial DFA/DMS Settlement, "the perceived inadequacy of communication between Class Counsel and the Moving Representative Plaintiffs, an event which is perhaps unbecoming, . . . does not constitute a level of impropriety necessitating the drastic remedy of a Court ordered discharge of Class Counsel." *Maywalt v. Parker & Parsley Petroleum Co.*, 155 F.R.D. 494, 497 (S.D.N.Y. 1994), *aff'd*, 67 F.3d 1072 (2d Cir. 1995).

Finally, the factors for determining whether to remove class counsel weigh against granting the pending motion. Because of "the factual and legal complexity" and advanced stage of this case, "the time that would be needed for new counsel to familiarize himself [or herself] with all that has gone before" would be significant. *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d at 19. This, in turn, would impose significant additional costs on the class to obtain new counsel and for new counsel to move forward with the case. Further delay and additional costs could impact the ability of the class to recover meaningful monetary relief and could impact the ability of the class to negotiate with Defendants for meaningful injunctive relief. The removal of class counsel at this late stage in the proceedings and in this complicated case would constitute an extraordinary remedy reserved for actual misconduct for which no alternative remedy is either feasible or prudent. *See Maywalt*, 67 F.3d at 1079 (affirming denial of motion to remove class counsel filed "at the eleventh hour" because removal "would be a disservice to the class at large"); *cf. United States v. Jafari*, 24 F. Supp. 3d 291, 293 (W.D.N.Y. 2014) (noting courts are "hesitant to grant motions to withdraw made on the eve of trial"

8

as the timeliness of the motion is one factor the Second Circuit requires courts to consider) (citing, in part, *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001)).

On balance, the interests of the class and the court "in achieving a just and expeditious resolution" will not be served by removal of Subclass Counsel at this time. *Id.* Although the disagreements between Petitioning Subclass Representatives and Subclass Counsel may have been avoidable and although the relationship between Petitioning Subclass Representatives and Subclass Counsel is not ideal, both Subclass Counsel and Subclass Representatives have attempted in good faith to discharge their fiduciary duties and responsibilities to the class such that the "drastic remedy" of removal is not appropriate. *Maywalt*, 67 F.3d at 1076-77 (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Petitioning Subclass Representatives' motion for new counsel is DENIED. (Doc. 637.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _30_ day of June, 2015.

Christina Reiss, Chief Judge
United States District Court