UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 AUG 11  PM 12: 21

CLERK

BY_____
DEPUTY CLERK

ALICE H. ALLEN, LAURANCE E. ALLEN,          )
d/b/a Al-lens Farm, GARRET SITTS, RALPH     )
SITTS, JONATHAN HAAR, CLAUDIA HAAR,         )
and RICHARD SWANTAK, on behalf of           )
themselves and all others similarly situated, )
                                            )
                    Plaintiffs,             )
                                            )
            v.                              )   Case No. 5:09-cv-230
                                            )
DAIRY FARMERS OF AMERICA, INC., and         )
DAIRY MARKETING SERVICES, LLC,              )
                                            )
                    Defendants.             )

**OPINION AND ORDER GRANTING MOTION FOR APPOINTMENT OF
ADDITIONAL REPRESENTATIVE PARTY, DENYING MOTION FOR
APPOINTMENT OF ADDITIONAL SUBCLASS COUNSEL, AND GRANTING
IN PART AND DENYING IN PART MOTION TO INTERVENE**
(Docs. 653 & 669)

Pending before the court are motions to intervene (Doc. 669) and to appoint

additional class representatives and additional class counsel (Doc. 653) filed by proposed

class representatives Stephen H. Taylor and Darrel J. Aubertine ("Movants").

The court previously certified two subclasses of Plaintiff dairy farmers

(collectively, "Dairy Farmers Subclasses"), and appointed counsel for each subclass

(collectively, "Subclass Counsel"):

1.  All dairy farmers, whether individuals or entities, who produced and
    pooled raw Grade A milk in Order 1 during any time from January 1,
    2002 to the present, who are members of DFA or otherwise sell milk
    through DMS ("DFA/DMS Subclass"); and

2.  All dairy farmers, whether individuals or entities, who produced and
    pooled raw Grade A milk in Order 1 during any time from January 1,

> 2002 to the present, who are not members of DFA and do not otherwise
> sell milk through DMS ("non-DFA/DMS Subclass").

(Doc. 435 at 3-4.)  Jonathan and Claudia Haar and Richard Swantak currently serve as Subclass Representatives for the DFA/DMS Subclass and Alice and Laurance Allen and Ralph Sitts and Garret Sitts currently serve as Subclass Representatives for the non-DFA/DMS Subclass (collectively, "Subclass Representatives").

Movants seek to intervene and to be joined as additional Subclass Representatives for the non-DFA/DMS Subclass, and their attorneys, Daniel Smith, Esq., and Richard T. Cassidy, Esq., seek to be added as Subclass Counsel for that Subclass.  They do not seek to replace existing Subclass Representatives or existing Subclass Counsel.

The non-DFA/DMS Subclass opposes the motions (Docs. 663 & 672) and relies on the declaration of Subclass Representative Alice Allen (Doc. 672-1) as evidence that intervention is not necessary.[1]  Non-DFA/DMS Subclass Representatives Ralph Sitts and Garret Sitts submitted their own oppositions filed June 19, 2015 (Doc. 665), and June 24, 2015.  (Doc. 666.)[2]

---

[1] In her declaration, Subclass Representative Alice Allen states that she believes Movants lack a full understanding of the case and will be unable to work cooperatively with existing Subclass Counsel.  She notes that she has known Mr. Taylor and Attorney Smith for approximately fifteen years and that since the filing of the pending motions she has had two telephone conversations with Mr. Taylor and one telephone conversation with Attorney Smith regarding this case.  She also attests to an "improved working relationship developing among and between Subclass Counsel and Representatives[,]" (Doc. 672-1 at 3), although she did not describe the factual basis for that conclusion in her declaration.  It is also not clear whether Alice Allen is in communication with her fellow Subclass Representatives.

[2] Subclass Representatives Ralph Sitts and Garret Sitts challenge Movants' motives for seeking to join the class action, and they argue that they have fully discharged their duties as fiduciaries to the class by actively participating in every stage of the case, communicating through various methods with the class as well as with Subclass Counsel, and raising substantive and procedural issues with the Initial Settlement, including arguing and testifying at several hearings.  They submit that they will continue to serve as "[c]ommitted and [c]onscientious" Subclass Representatives (Doc. 665 at 3), and that, contrary to the representations of Subclass Counsel, the Subclass Representatives are not wholly opposed to a settlement over trial.  (Doc. 666 at 1-2.)  They, however, disagree with Subclass Counsel's representations that there was frequent and sufficient communication between Subclass Counsel and Subclass Representatives throughout this case.  They made no claim that they are engaged in ongoing communication with Subclass

The DFA/DMS Subclass takes no position on the motions, although Subclass Representatives for the DFA/DMS Subclass, Jonathan and Claudia Haar and Richard Swantak, have filed oppositions to the pending motions without doing so through Subclass Counsel. (Docs. 665, 666, & 671.) Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") also take no position on the motions.

## I.   Procedural Background.

This class action arises out of Plaintiffs' allegations that Defendants and their alleged co-conspirators engaged in a wide-ranging conspiracy at the processor and cooperative levels to control the supply of raw Grade A milk in Order 1, which had the effect of suppressing certain premiums paid to dairy farmers for their milk. (Doc. 117.)

Shortly prior to the trial scheduled to commence on July 7, 2014 through August 22, 2014, Subclass Counsel notified the court that a settlement had been reached with Defendants. Thereafter, Subclass Counsel sought preliminary approval of this settlement (the "Initial Settlement"). *See Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 3900324, at *6 (D. Vt. July 9, 2014). After granting a renewed motion for preliminary approval, *see Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 6682436, at *5, *7 (D. Vt. Nov. 25, 2014), the court held a Fairness Hearing on January 29, 2015, at which time all Subclass Representatives (the "opposing Subclass Representatives"), with the exception of Alice and Laurance Allen, opposed the Initial Settlement. The court subsequently denied without prejudice the motion for final approval. *See Allen v. Dairy Farmers of Am., Inc.*, 2015 WL 1517400, at *9 (D. Vt. Mar. 31, 2015) (concluding that the court could neither find the Initial Settlement procedurally nor substantively fair in light of the objections raised by opposing Subclass Representatives that it provided only "modest" monetary recovery and lacked "meaningful injunctive relief").

On March 11, 2015, opposing Subclass Representatives filed a motion to remove Subclass Counsel, which Subclass Counsel opposed. After two days of evidentiary

---

Counsel or with their fellow Subclass Representatives Alice and Laurance Allen.

hearings, the court denied the motion to remove Subclass Counsel on June 30, 2015. (Doc. 667.)  In denying the motion, the court found no evidence that Subclass Counsel had engaged in actual misconduct or collusion and further found that all Subclass Representatives and their Subclass Counsel had acted in the best interests of the class consistent with their respective fiduciary duties.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077 (2d Cir. 1995) (directing that both "class representatives and class counsel have responsibilities to absent members of the class"). The hearings were nonetheless contentious, the participants appeared entrenched in their positions and mutually distrustful, and it appeared that no meaningful communications to either move the case towards trial or resolve it had occurred in several months.  In finding that the drastic remedy of removal was not warranted, the court nonetheless noted that "the disagreements between [opposing] Subclass Representatives and Subclass Counsel may have been avoidable" and that "the relationship between [opposing] Subclass Representatives and Subclass Counsel is not ideal[.]"  (Doc. 667 at 9.)

While the motion to remove Subclass Counsel was pending, on May 29, 2015, Movants filed their motion to join this action as additional Subclass Representatives. (Doc. 653.)  On July 1, 2015, they filed the motion to intervene.  (Doc. 669.)  Movants' pending motion to intervene is premised on the same factual basis as their motion to join.

Movants represent that they have "closely" followed this case, and they are "fully aware" of their responsibilities and obligations if appointed as class representatives. (Doc. 653 at 4, 10.)  They further represent that they have "long-time, first hand dairy farming experience" combined with "senior governmental service" that makes them both well-suited to serve as Subclass Representatives for the non-DFA/DMS Subclass.[3]  *Id.* at

---

[3] Mr. Taylor began a dairy operation on his farm in Meriden, New Hampshire, in 1976 that he continues to operate with his sons and grandchildren.  Since 1980, his farm has and continues to produce and ship milk to Agrimark, Inc., a cooperative that markets milk in the Northeast. Because Mr. Taylor is a member of Agrimark, Inc., he is not a member of DFA, and he does not otherwise sell milk through DMS.  From 1982 to 2007, Mr. Taylor served as the Commissioner of Agriculture for the State of New Hampshire and was involved in governmental oversight of the dairy marketplace and in the development of dairy policy in the Northeast, including the establishment and implementation of the Northeast Interstate Dairy Compact.  He represents that

4. Finally, they represent that their counsel are experienced litigators who are capable of discharging their obligations to the non-DFA/DMS Subclass.[4]

 Movants seek to join as additional Subclass Representatives because they believe the "fractured relationship" between current Subclass Representatives and current Subclass Counsel is compromising the interests of the non-DFA/DMS Subclass and any opportunity to settle for "substantial remedial relief [that] enable[s] the long-term economic sustainability for the region's dairy farmers." *Id.* at 5, 8. They point to the court's denial of final approval of the Initial Settlement, the respective positions of Subclass Counsel and Subclass Representatives regarding that rejected settlement, and the "degree of the rift" which reveals Subclass Counsel and Subclass Representatives "are far apart in their respective positions" and are either "talking past each other" or "no longer talking at all, and are at [a] stalemate." *Id.* at 5-6.

---

he has "first-hand knowledge of and experience with the additional consolidation of dairy cooperatives and processing firms regionally and nationally, which has resulted in the current market structure, conduct[,] and performance of the Northeast dairy industry at issue in the instant litigation." (Doc. 653 at 3.)

Mr. Aubertine operated his family's multi-generational dairy farm in Cape Vincent, New York, from 1971 to 2002, during which time he was a member of the Cape Vincent Milk Producers Cooperative that was affiliated with Northco and Allied Cooperatives. He sold his dairy herd in October of 2002. Mr. Aubertine was not a member of DFA and did not otherwise sell milk through DMS. In 2002, Mr. Aubertine was elected to the New York State Assembly, where he served until his election to the New York State Senate in 2008. From 2009 to 2010, he served as Chair of the Senate's Agriculture Committee. From 2011 to 2013, Mr. Aubertine also served as the Commissioner of the New York Department of Agriculture and Markets. Noting that New York is one of the top dairy states in the country, he represents that he has "substantial experience in the development of governmental dairy policy and regulatory oversight of the Northeast dairy industry, at issue in this litigation." *Id.* at 4.

[4] Attorney Cassidy has practiced for thirty-five years, and Attorney Smith for twenty-eight years. Attorney Smith has specialized experience in milk market regulation, having practiced in federal regulatory hearings across the country, represented states in promulgating single-state milk pricing regulations, led a nine-year effort for Congressional authorization of the Northeast Interstate Dairy Compact, and served as the Compact Commission's founding Executive Director. (Doc. 653 at 10.) In seeking to join as Subclass Counsel, they represent that they have "the necessary seasoning to respond to the needs of this case without undue burden or expense" because they will provide the "concentrated devotion of experienced expertise" and will not impose "additional massive resources" on the Dairy Farmers Subclasses. (Doc. 668 at 9-10.)

Movants "agree" with opposing Subclass Representatives that "monetary relief is of secondary import" and that the Initial Settlement provided "inadequate remedial relief," had "too broad a release," and "needs to be revised." (Doc. 668 at 1-2; *see also* Doc. 676 at 2 (emphasizing "the need for material non-monetary relief")). They argue that their "participation would provide fresh yet experienced voices and perspective for further pre-trial settlement discussions, and trial, if necessary" because they are "veterans" of "dispute resolution in the dairy industry" who can help "restore effective communications" between Subclass Counsel and Subclass Representatives.[5] (Doc. 653 at 8.) They believe they can "break" the "logjam" that exists and that will remain "without change." (Doc. 676 at 8.) Because they do not seek to replace the existing parties, Movants argue that their participation will cause neither delay nor prejudice, but will instead facilitate a resolution because of their "dual professional expertise[]" as dairy farmers and top-level agricultural commissioners and because they are "seasoned participants in the complex negotiations" involving "contentious disagreements" within the dairy industry. (Doc. 669 at 7-8.)

The non-DFA/DMS Subclass, through their counsel, opposes the motions, raising a number of procedural challenges to the motions that are moot.[6] They argue that class

---

[5] Movants further "suggest[] that the miscommunication underlying this combined inadequacy of representation is likely mutual rather than attributable to Subclass Counsel or [Subclass Representatives] alone" and that "the failure of communication must be understood as a combined failure in adequate representation" by both Subclass Representatives and Subclass Counsel. (Doc. 669 at 2-3; *see also* Doc. 668 at 2.) They point out that Subclass Counsel "vigorously insists the monetary relief the [Initial Settlement] would provide is 'historic' and refuses to acknowledge, if not disparages, the possibility of obtaining additional remedial relief[,]" while Subclass Representatives "vociferously dispute the value of the monetary relief to the point of condemnation of Subclass Counsel's efforts." (Doc. 669 at 2.) Movants also reiterate their agreement with Subclass Representatives that "remedial relief is the controlling concern and must be enhanced to the degree possible[.]" *Id.*

[6] The non-DFA/DMS Subclass argues the motions should be denied as either premature or moot because the Initial Settlement "has not been finally denied" and because the motion for new counsel, if granted, would have required the appointment of additional class counsel. (Doc. 663 at 4-5.) There is no basis for denying these motions on either ground because the case remains pending in light of the court's denial of final approval of the Initial Settlement and because the court has since denied the motion to remove Subclass Counsel. The non-DFA/DMS Subclass

representation remains adequate and that they are still in communication with non-DFA/DMS Subclass Representatives, Alice and Laurance Allen.  They do not claim to have an adequate working relationship and appropriate communication with the other two non-DFA/DMS Subclass Representatives, Ralph Sitts and Garret Sitts.[7]

On August 6, 2015, Subclass Counsel filed a renewed motion for final approval, or, alternatively, preliminary approval, of a revised settlement (the "Revised Settlement") between Defendants and the Dairy Farmers Subclasses.  (Doc. 680.)  In this motion, Subclass Counsel notes that opposing Subclass Representatives remain in opposition to the Revised Settlement and "want to reconfigure the litigation by amending the complaint, reopening discovery, and submitting new expert damage calculations" and request "that DFA/DMS turn over all voting to a remote third party, divest all milk testing facilities, [and] restructure as a publicly traded company[.]"  (Doc. 680-1 at 9.)  They represent that they contacted all Subclass Representatives multiple times in order to discuss settlement and that the opposing Subclass Representatives made it clear that they would only communicate by e-mail or by other recorded means.[8]  With the exception of Alice and Laurance Allen, the opposing Subclass Representatives contend the Revised Settlement is "not eligible for either preliminary or final approval."  (Doc. 679.)

When the Revised Settlement was filed, the parties requested the court cancel a

---

also argues Movants failed to properly file their request to join as a motion to intervene; however, Movants have since filed a motion to intervene pursuant to Rule 24.  (Doc. 669.)

[7] Subclass Counsel claims that "there is no evidence of any communication breakdown between the Sittses and the [n]on-DFA/DMS Subclass Counsel prior to the DFA/DMS settlement submission."  (Doc. 663 at 8.)  In support, they cite to a portion of a hearing on April 20, 2015, on the motion to remove, which attributes to Ralph Sitts and Garret Sitts, who are non-DFA/DMS Subclass Representatives, a statement by Jonathan Haar, a DFA/DMS Subclass Representative, about an attorney at Baker & Hostetler LLP that Jonathan Haar had an "excellent working relationship with Miss Sullivan" and "just could not say enough good things."  (Doc. 651 at 77:2-4; Tr. 4/20/15 at 77:2-4.)

[8] This position by opposing Subclass Representatives is unworkable, untenable, and not in the best interest of the Dairy Farmers Subclass.  Subclass representatives may adopt a practice of confirming oral communications with a written communication, but they may not refuse to engage in any verbal communications with their counsel either in trial preparation, at trial, or in negotiating a resolution.

scheduled pre-trial conference—a relatively routine request. (Doc. 677.) The opposing Subclass Representatives, who at this point routinely file separate submissions from those filed by Subclass Counsel,[9] opposed this request. (Doc. 679.) They asked the court to go forward with its plans to schedule this matter for trial.

At this juncture, the opposing Subclass Representatives and Subclass Counsel are failing to present a united front on behalf of the Dairy Farmer Subclasses and, in this respect, are undermining the interests of absent class members. As the case progresses towards either trial or to a final settlement, the stalemate and the lack of communication between Subclass Counsel and all but two of the Subclass Representatives is and will continue to be unacceptable. Without a significant change in circumstances, removal of either Subclass Representatives or Subclass Counsel or both may be warranted.

## II.      Conclusions of Law and Analysis.

### A.      Joinder as Class Representatives.

Movants seek to join this class action pursuant to Rules 23 and 24 of the Federal Rules of Civil Procedure, the provisions of which "should be construed so that the rules are applied harmoniously." 7B Fed. Prac. & Proc. Civ. § 1799 (3d ed.). A court may certify a class action "only if," *inter alia*, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4) (dictating additional requirements for certification). Pursuant to Rule 23, a district court "may" provide "appropriate notice to some or all class members of . . . the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action[.]" Fed. R. Civ. P. 23(d)(1)(B)(iii). Rule 23 does not specifically address intervention in a class action, although the Second Circuit has intimated that a district court should consider and determine whether the movant will fairly and adequately represent the class. *See Baffa v.*

---

[9] When a party is represented, all filings are generally submitted through counsel with a motion to remove counsel and objections to approval of a settlement recognized as exceptions to this rule. *See O'Reilly v. N.Y. Times Co.*, 692 F.2d 863, 868 (2d Cir. 1982) (noting that "the rights of self-representation and representation by counsel cannot be both exercised at the same time.") (internal quotation marks omitted).

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (affirming denial of motion to join as class representative when district court found the movant's claims "were atypical and she was not an adequate representative").

Movants focus on their ability to adequately represent the class in light of their combined experiences as dairy farmers and government officials. In addition to their experience in the dairy industry, they have kept abreast of recent developments in this case. The court sees no reason to doubt that representation as Movants have accurately described the progress of the case and the issues it presents. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 42 (2d Cir. 2009) (noting class representatives should have a "basic familiarity," or be sufficiently knowledgeable, regarding the case). They are also class members, having operated their own dairy farms for over thirty years each, and they represent that they seek market relief that will ensure the long-term viability of dairy farms in the Northeast. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (alteration in original) (internal quotation marks omitted). Movants therefore satisfy the "twofold" adequacy inquiry in that they "have an interest in vigorously pursuing the claims of the class," and there is no evidence they have "interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

Based upon the foregoing, Movants have adequately demonstrated that they will be able to "fairly and adequately protect the interests of the class" pursuant to Rule 23(a). *See Norman v. Conn. State Bd. of Parole*, 458 F.2d 497, 499 (2d Cir. 1972). The court thus turns to whether Movants' intervention in this lawsuit at this late stage in the proceedings is appropriate and whether it will enhance or impair the "just, speedy, and inexpensive determination of [this] action and [the pending settlement] proceeding[s]." Fed. R. Civ. P. 1.

### B.     Standards for Intervention.

Movants argue they are entitled to intervene as of right pursuant to Rule 24(a), which directs that "the court must permit anyone to intervene who . . . claims an interest

relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To intervene as of right, the moving party must "'(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (quoting *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).

### 1. Whether to Grant Intervention as of Right.

The court "may order the joinder of additional representatives to ensure the adequate representation of the entire class." 7A Fed. Prac. & Proc. Civ. § 1765 (3d ed.). However, if "the absent class members are adequately represented," a court should not grant intervention as of right. 7B Fed. Prac. & Proc. Civ. § 1799 (3d ed.) (footnotes omitted); *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (allowing intervention as of right when named party had settled individual claims and could therefore "no longer adequately represent the interests" of the class to be certified). Therefore, although Movants are qualified to serve as Subclass Representatives under Rule 23, they are entitled to intervene as of right under Rule 24(a) only if their interest in the case "is not protected adequately by the parties to the action." *Floyd*, 770 F.3d at 1057 (internal quotation marks omitted).

While "the burden to demonstrate inadequacy of representation is generally speaking 'minimal'" under Rule 24(a), *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)), the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Id.* (citing *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)). Where "there is an identity of interest," then "the movant to intervene must

rebut the presumption of adequate representation by the party already in the action." *Id.*
at 179-80. Evidence of collusion, adversity of interest, nonfeasance, or incompetence
"may suffice to overcome the presumption of adequacy." *Id.* Although it is a close
question, the persistent communication problems between the Subclass Representatives
and Subclass Counsel do not, at this point, appear to satisfy this rigorous standard.

Movants agree with the opposing Subclass Representatives that "monetary relief is
of secondary import" and that the Initial Settlement "need[ed] to be revised because it
provided "inadequate remedial relief" and had "too broad a release[.]" (Doc. 668 at 1-2.)
Accordingly, they share "similar" interests and the same ultimate objective as the existing
Subclass Representatives such that "adequacy of representation" remains "assured" by
those existing Subclass Representatives. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123,
132-33 (2d Cir. 2001). On this basis alone, Movants' request to intervene as of right
must be denied as the Second Circuit has "underscored that a '[f]ailure to satisfy *any one*
of the[] four requirements is a sufficient ground to deny the application'" to intervene as
of right. *Floyd*, 770 F.3d at 1057 (quoting *R Best Produce, Inc.*, 467 F.3d at 241).
Because Movants do not "rebut the presumption of adequate representation" by existing
Subclass Representatives, *Butler, Fitzgerald & Potter*, 250 F.3d at 179-80, they have
failed to demonstrate that their interests are "not protected adequately by the parties to the
action." *Floyd*, 770 F.3d at 1057 (internal quotation marks omitted). The motion for
intervention as of right is DENIED WITHOUT PREJUDICE. (Doc. 669.)

### 2.     Whether to Grant Permissive Intervention.

Alternatively, Movants seek permissive intervention pursuant to Rule 24(b)(1)(B).
Rule 24(b) allows for intervention if the moving parties have "a claim or defense that
shares with the main action a common question of law or fact." Fed. R. Civ. P.
24(b)(1)(B); *see also DeJulius v. New England Health Care Emps. Pension Fund*, 429
F.3d 935, 942-43 (10th Cir. 2005) (concluding that a district court could exercise its
discretion to allow movants to intervene in a class action pursuant to Rule 24(b)).

Rule 24(b)(3) directs that a district court must consider whether permissive
intervention would "unduly delay or prejudice the adjudication of the original parties'

rights." Fed. R. Civ. P. 24(b)(3). Otherwise, a district court "has broad discretion to [grant or] deny an applicant's motion for [permissive] intervention[.]" *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992). The court "considers substantially the same factors" for intervention as of right or permissive intervention. *R Best Produce, Inc.*, 467 F.3d at 240 (citations and internal quotation marks omitted). This includes "the nature and extent of the intervenors' interests" and "the degree to which those interests are adequately represented by other parties[.]" *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (internal quotation marks omitted). This also includes "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.* (internal quotation marks omitted).

In this case, Movants are experienced dairy farmers who pooled milk within Order 1 during the relevant time period and share an identity of interests with the non-DFA/DMS Subclass. They offer experience in regulatory and governmental oversight of the dairy industry; appear conversant with market structure, conduct, and challenges; and seek meaningful market relief and the continued viability of Northeast dairy farmers. Movants properly waited until a need for joinder became apparent in light of the troubled relationship between existing Subclass Representatives and Subclass Counsel. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394-95 (1977) (noting movant properly sought to promptly intervene to protect the interests of the class "as soon as it became clear . . . that the interests of the unnamed class members would no longer be protected by the named class representatives").

As the factual record is largely developed and as many of the pre-trial legal issues were resolved in adjudicating Defendants' summary judgment motion, there is no reason to believe Movants' participation in this action would cause undue delay. To the contrary, any delay is likely to be attributable to the continuing rift between Subclass Counsel and the opposing Subclass Representatives. Subclass Counsel's concern that the addition of Subclass Representatives will be disruptive or undermine the class action device thus fails to acknowledge the significant disruption that presently exists and that is

12

likely to persist in the absence of renewed and meaningful communication.

Although all Subclass Representatives contend that Movants' participation is unnecessary, none of them identify any material prejudice they or their class members will suffer if additional voices and perspectives are offered either in settlement or at trial. The only potential prejudice lies in the possibility that the intervention of additional class representatives may jeopardize the proposed Revised Settlement. In most class actions, this concern would be all but dispositive. *See, e.g.*, *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (affirming when "intervention would prejudice the adjudication of the rights of the existing parties by destroying their [existing] Settlement"); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73-74 (2d Cir. 1994) (concluding district court did not abuse its discretion in denying permissive intervention because "intervention would require renegotiation, and delay the cleanup efforts," in an environmental lawsuit); *cf. D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (noting joinder is not warranted if it would "derail" ongoing settlement negotiations between existing parties).

In this case, however, intervention will not disturb a proposed settlement that is otherwise unchallenged,[10] but will instead interject a fresh perspective and new expertise that is likely to assist the court in fulfilling its "duty to act as a fiduciary who must serve as a guardian of the rights of absent class members[.]" *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014) (internal quotation marks omitted). Movants' intervention may thus "in fact help to facilitate a resolution in this case[,]" *Comer v. Cisneros*, 37 F.3d 775, 801 (2d Cir. 1994), and assist in "the adjudication of the rights of either the original parties or the class members[,]" *id.*, which is the "principal guide in deciding whether to grant permissive intervention" pursuant to Rule 24(b)(3). *Pitney Bowes, Inc.*, 25 F.3d at 73.

---

[10] The opposing Subclass Representatives have already voiced opposition to the Revised Settlement and indicated that, from their perspective, it is nothing more that the Initial Settlement with modest changes. As the court noted, the reaction of the class to the Initial Settlement could not fairly be characterized as "positive." *Allen v. Dairy Farmers of Am., Inc.*, 2015 WL 1517400, at *9 (D. Vt. Mar. 31, 2015).

The motion for permissive intervention is therefore GRANTED (Doc. 669), and the motion for joinder of additional class representatives is likewise GRANTED. (Doc. 653.)

### C.    Whether to Add Proposed Counsel.

Attorneys Smith and Cassidy seek to be added as Subclass Counsel for the non-DFA/DMS Subclass. When a court certifies a class, the court "must appoint class counsel," and it is the "duty" of counsel to also "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1), (4). Prior to granting approval to add class counsel in the midst of a class action, the court must likewise consider "the adequacy of representation by counsel." *See Baffa*, 222 F.3d at 60-61.

The addition of Movants as Subclass Representatives does not require the addition of Attorneys Smith and Cassidy at this time. Although these attorneys would undoubtedly lend additional expertise to the representation of the Dairy Farmer Subclasses, their addition to this lawsuit would inevitably cause the Dairy Farmers Subclasses to incur additional attorney's fees and costs in litigating this case. In addition, it would effectively force Subclass Counsel to work with new attorneys at the court's direction. Although the communication between Subclass Counsel and the opposing Subclass Representatives remains far from ideal, this drastic step is not warranted. Because existing Subclass Counsel remain adequate to represent the non-DFA/DMS Subclass, the request for additional counsel is DENIED. (Doc. 653.)

### CONCLUSION

For the foregoing reasons, the court GRANTS the motion for appointment of additional representative parties (Doc. 653), GRANTS the motion for permissive intervention pursuant to Rule 24(b) (Doc. 669), and ORDERS that Stephen H. Taylor and Darrel J. Aubertine be added as Subclass Representatives for the non-DFA/DMS Subclass. The court DENIES the motion for appointment of additional counsel. (Doc. 653.) The court DENIES WITHOUT PREJUDICE the motion to intervene as a right pursuant to Rule 24(a). (Doc. 669.) Subclass Representatives Stephen H. Taylor and Darrel J. Aubertine are hereby ORDERED to advise the court within twenty (20) days whether they support or oppose the Revised Settlement and the grounds for doing so.

Before they do so, they must engage in adequate communications with their fellow Subclass Representatives and Subclass Counsel.

SO ORDERED.

     Dated at Burlington, in the District of Vermont, this 11 day of August, 2015.

Christina Reiss, Chief Judge
United States District Court