# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

---

| | |
|---|---|
| **ALICE H. ALLEN, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 5:09-CV-00230-cr** |
| | ) |
| **DAIRY FARMERS OF AMERICA, INC., and** | ) |
| **DAIRY MARKETING SERVICES, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

**DAIRY FARMER SUBCLASSES' RESPONSE TO NDPO'S *AMICUS
CURIAE* SUBMISSION AND MOTION FOR ORDER PROHIBITING
<u>IMPROPER COMMUNICATIONS</u>**

<u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................... 1

BACKGROUND AND FACTS ............................................................................................... 3

ARGUMENT .......................................................................................................................... 10

I. THE PETITION AND RELATED COMMUNICATIONS ARE MISLEADING, CONFUSING, AND IMPROPER ................................................................................... 10

II. THE PETITION AND INFORMATION GENERATED FROM IMPROPER COMMUNICATIONS SHOULD BE EXCLUDED ........................................................ 15

III. FALSE AND MISLEADING COMMUNICATIONS SHOULD BE PROHIBITED FOR THE PROTECTION OF THE SUBCLASSES .............................................................. 16

IV. NDPO'S LETTER SHOULD NOT BE CONSIDERED BECAUSE IT DOES NOT SATISFY THE REQUIREMENTS FOR *AMICUS CURIAE* SUBMISSIONS .............. 18

CONCLUSION ....................................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Charron v. Pinnacle Group NY LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)......................................................................16

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin*,
    2011 U.S. Dist. LEXIS 59662 (D. Vt. June 2, 2011) ......................................18, 19

*Erhardt v. Prudential Group, Inc.*,
    629 F.2d 843 (2d Cir. 1980)......................................................................................17

*Fleury v. Richemont N.A., Inc.*,
    2007 U.S. Dist. LEXIS 62763 (N.D. Cal. Aug. 15, 2007)...............................14, 18

*Forauer v. Vt. Country Store, Inc.*,
    2013 U.S. Dist. LEXIS 164167 (D. Vt. Nov. 18, 2013)...........................................17

*Georgine v. Amchem Prods., Inc.*,
    160 F.R.D. 478 (E.D. Pa. 1995)........................................................................ *passim*

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)....................................................................................................18

*Hammond v. City of Junction City*,
    167 F. Supp. 2d 1271 (D. Kan. 2001) ......................................................................15

*Impervious Paint Indus., Inc. v. Ashland Oil*,
    508 F. Supp. 720 (W.D. Ky. 1981)..........................................................................15

*Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*,
    238 F. Supp. 2d 151 (D.D.C. 2002) .........................................................................18

*Kleiner v. First. Nat. Bank of Atl.*,
    751 F.2d 1193 (11th Cir. 1985) ..........................................................................13, 15

*McKesson HBOC, Inc Secs. Litig.*, 126 F. Supp. 2d 1239 (N.D. Ca. 2000)...................................17

*Nat'l Org. Women, Inc. v. Scheidler*,
    223 F.3d 615 (7th Cir. 2000) ...................................................................................19

*Roberts v. Electrolux Home Prods., Inc.*,
    2014 U.S. Dist. LEXIS 130163 (C.D. Cal. Sept. 11, 2014).....................................16

*In re School Asbestos Litig.*,
    842 F.2d 671 (3d Cir. 1988)......................................................................................18

*Tedesco v. Mishkin*,
      629 F. Supp. 1474 (S.D.N.Y. 1986)........................................................................18

*U.S. v. Hunter*,
      1998 U.S. Dist. LEXIS 9869 (D. Vt. June 10, 1998) ............................................18

*In re Union Square Assocs. Sec. Litig.*,
      1990 Del. Ch. LEXIS 207 (Del. Ch. Dec. 18, 1990) .......................................12, 16

*Wixon v. Wyndham Resort Dev. Corp.*,
      2011 U.S. Dist. LEXIS 87249 (N.D. Cal. Aug. 8, 2011)........................................16

**Other Authorities**

Fed. Judicial Ctr., *Manual for Complex Litig.* (4th) § 21.33 ..................................11, 19

Fed. R. App. P. 29.............................................................................................18, 19, 20

Fed. R. Civ. P. Rule 23 ............................................................................................2, 17

## INTRODUCTION

On August 7, 2015, the Court received "comments as a friend of the Court (amicus curiae)" from National Dairy Producers Organization ("NDPO") with an attached "Petition for Representation." Dkt. 681. They are the product of the latest effort in a fervent campaign against settlement led by Subclass Representatives Jonathan and Claudia Haar and Ralph and Garret Sitts, now working in close coordination with NDPO and its chairman, Mike Eby.

As evidenced in documents and recorded NDPO conferences posted on its website, the Haars, along with the Sittes, launched a campaign to solicit objections to settlement, and Mr. Eby agreed to utilize the resources of NDPO to help with the campaign. Working together, they have communicated with hundreds (if not thousands) of farmers to induce them to sign a petition and reject any settlement that lacks certain "non-negotiable" terms. Indeed, during one NDPO conference, a participant reported on the strategy of "working on the Amish" to get them to sign the petition, and reported that he "had sent [the petition] out to over 100 of them."

The petition and communications with Subclass members have been loaded with misleading and confusing information. The petition, for example, presents several "non-negotiable" settlement terms and suggests that by rejecting settlement they could be realized. The communications also suggest that by signing the petition and rejecting settlement the Subclasses could make DFA restructure as a publicly-traded corporation and allow farmers to convert equity interests in DFA into tradable shares. But there is no realistic or rational basis – whether in the discovery record, class action antitrust law, or applicable cooperative and corporate laws – to achieve a settlement with these "non-negotiable" terms, or to achieve them at trial and sustain them on appeal. Indeed, Defendants already made clear that they would never agree to these terms. Suggesting to Subclass members that such an enticement might be achieved is both misleading and potentially confusing.

In addition to exaggerating the upside of rejecting settlement, the petition and related communications completely fail to disclose any of the substantial benefits secured by a settlement that is possible, the enormous impediments and risks to Subclass members in demanding "non-negotiable" terms that could never be secured in settlement, or the inevitable years of delay pursuing unrealistic relief through the trial and appellate process.

This one-sided rhetoric serves no purpose other than soliciting opposition to settlement based on incomplete and inaccurate information, and it is improper as a matter of law.  The recent gambit of challenging settlement by denigrating the lawyers who negotiated it only adds to the confusion, and it also has been condemned as improper by courts.  These communication tactics also are inconsistent with the process this Court followed in previously reviewing the notices sent by Subclass Counsel to Subclass members to ensure that information was provided in an accurate and balanced manner.  Further, these tactics are inconsistent, and interfere, with this Court's efforts to ascertain the Subclasses' untainted reaction to settlement when considering the *Grinnell* factors for evaluating settlements.

Subclass Counsel fully support providing accurate and balanced information to the Subclasses.  But an active campaign in which some Subclass Representatives and an aligned organization repeatedly spread misleading and inflammatory information to Subclass members is contrary to the interests of the Subclasses, Rule 23, and the Court's responsibilities (and prior efforts) to ensure information about this case is provided in an accurate and balanced manner.  For this reason, the petition information should be excluded (or, if permitted, should be understood in the context of a misinformation campaign).  Likewise, NDPO's so-called *amicus curiae* letter should not be accepted because it does not meet the requirements for *amicus* submissions.  Counsel seek this relief to best protect the Subclasses, even though the improper

petition campaign so far garnered only 88 signatures out of a class of 8,859 members.

These improper communication tactics by the Haars, Sittes, NDPO, and Mr. Eby, documented below, have reached the point of undermining the best interests of the Subclass members, the overall fairness of the class process, and this Court's efforts to ensure that information is provided to Subclass members in an accurate and balanced manner.  This danger is heightened with their recently unveiled plan to launch another, even more aggressive, petition campaign.  The Dairy Farmer Subclasses therefore respectfully move the Court to exercise its broad discretion, as other courts have done, to prohibit false or misleading communications to Subclass members relating to the litigation.

## BACKGROUND AND FACTS

**NDPO.**  NDPO is a nationwide organization of some dairy producers.[1]  Its chairman is Mike Eby.[2]  NDPO circulates newsletters to approximately 10,000 recipients,[3] advocating for its positions regarding the dairy industry.[4]  NDPO has been a vocal critic of Defendants in this litigation; NDPO generally blames DFA for causing problems and issues faced by dairy farmers; and NDPO has been advocating for the elimination of DFA nationally as it exists today.[5]

***The Amicus Curiae letter.***  On August 7, 2015, the Court received "comments as a friend of the Court (amicus curiae)" letter from NDPO.  *See* Dkt. 681.  The letter did not address any of

---

[1] *See, e.g.*, http://nationaldairyproducersorganization.com/wp-content/uploads/NDPO_Newsletter_July2015.pdf.

[2] *See* http://nationaldairyproducersorganization.com/.

[3] *See* audio recording of 8/18/14 NDPO "National Call" at 25:50-26:02, *available at* http://nationaldairyproducersorganization.com/tuesday-national-call (Mr. Eby referring to NDPO sending 10,000 newsletters).

[4] *See* http://nationaldairyproducersorganization.com/newsletters (collection of newsletters).

[5] *See, e.g.,* NDPO May 2015 newsletter, *available at* http://nationaldairyproducersorganization.com/wp-content/uploads/NDPO-MAY-Newsletter_Final-Proof.pdf (advocating for placing DFA in a Court-supervised "receivership").

the non-monetary terms of the proposed settlement, but instead argued that a $50 million settlement would be "insufficient," and "all U.S. dairy farm families" should instead have a "trial on the merits of DFA's management wrong doing" rather than settlement. *Id* at 2.

NDPO and Mr. Eby have been advocating these positions all year. On January 20, 2015, Mr. Eby submitted a letter objecting to the proposed DFA/DMS settlement and arguing that its payment was too little because the "same defendants" in *Southeastern Milk* paid $300 million for "the same anticompetitive behavior," and Plaintiffs' expert here had estimated bigger damages. Dkt. 611. (The "same defendants" actually paid only half that amount in *Southeastern Milk* and this Court previously recognized that case is not comparable to this litigation, *see* 4/20/15 Hearing Tr. at 14:5-19.) Mr. Eby's letter further argued farmers need a trial so information "would come out," there would be "accountability," and farmers would have "confidence." Dkt. 611. Mr. Eby repeated the same points at the January 29, 2015 fairness hearing. *See* Hearing Tr. at 47:5-49:4. At the April 20, 2015 hearing, the Haars offered a letter from NDPO, which argued that the Court should reject a monetary settlement and instead "plac[e] Defendant organizations into some type of temporary court supervised receivership." Plaintiffs' 4/20/15 Hr. Ex. G.[6] After that hearing, on May 21, 2015, Mr. Eby submitted another letter to the Court (via the Haars) which again argued for trial instead of settling. Dkt. 648-2.[7]

Outside the courtroom, Mr. Eby has continued to campaign against settlement. Mr. Eby, for example, placed the full text of his misleading January 20 letter in an issue of *Lancaster*

---

[6] The May 21 letter is published on NDPO's website. *See* http://nationaldairyproducersorganization.com/wp-content/uploads/11_apr_08_2015_LetterToTheCourtFromNDPO.pdf.

[7] In the same filing by the Haars, Mr. Eby signed another anti-settlement letter claiming that "This is about the 'books' being opened in a trial. DFA can keep the money." Dkt. 648-4. It is inherently inconsistent and confusing for NDPO and Mr. Eby to represent that the money is irrelevant, but settlement should be rejected because the money is insufficient.

*Farming*,[8] and he published a letter in *Farmshine* (a newspaper widely-circulated among farms) which misleadingly argued that this "billion dollar" case must go to trial so DFA's "books" will be opened and "manipulation" stopped.[9]  Mr. Eby also has given at least one anti-settlement speech on a radio broadcast, in which he misstated the Court's Subclass definition, asserted "the class" is opposed to settlement, and that farmers want a trial so the "truth [is] revealed."[10]

NDPO also has participated in the lobbying effort against settlement.  NDPO's public website has published Mr. Eby's various misleading letters and speeches against settlement.[11] NDPO also has published selected settlement-related documents on its website.  For example, it presents all of the filings by certain Subclass Representatives opposing settlement by challenging the integrity and actions of Subclass Counsel[12] – including allegations such as the following:

- "Class counsel must be replaced because [of] their lack of integrity."

- Class counsel "knowingly and willfully undermined the class's ability to recover."

- Class counsel is "suspected" of "collusion with DFA" and has been suspected of "working for DFA."

---

[8] *See* Mike Eby, "Proposed NE Dairy Settlement Does Farmers Little Justice," *Lancaster Farming* (Feb. 7, 2015) (attached as Exhibit A).

[9] *See* Mike Eby, "Attending DFA/DMS Trial was Most Interesting," *Farmshine* (Feb. 6, 2015) (attached as Exhibit B).

[10] *See* audio recording of 3/30/15 "Dairy Line" radio broadcast at 1:28 ("we as class and plaintiffs are saying that's, first of all, not enough…"), 2:10 ("if it does go to trial and the settlement is denied then at that point the books are opened up and at that point the truth is then revealed"), 2:20 (stating that class members include "anybody that has shipped milk into the northeast, into the federal order"), 3:17 ("the class as well as plaintiffs for the majority are opposed to it"), *available at* http://nationaldairyproducersorganization.com/tuesday-national-call.

[11] *See, e.g.*, 4/11/15 NDPO Letter to Court, *available at* http://nationaldairyproducersorganization.com/wp-content/uploads/11_apr_08_2015_LetterToTheCourtFromNDPO.pdf; 1/20/15 Eby Letter to Court, *available at* http://nationaldairy producersorganization.com/wp-content/uploads/5_jan12_2015_MikeEby_DairySettlement Letter-1.pdf.

[12] *See* http://nationaldairyproducersorganization.com/ne-dairy-farmers-vs-dfadms/page/3.

- "Both of the firms that allege to represent us have obstructed justice in consistently working against our case and our subclasses."

- The interests of the class "have been willfully undermined by class counsel."

- Subclass counsel have engaged in "outright collusion."[13]

Despite publishing these allegations on its website, NDPO chose to *omit* the pleadings refuting the allegations,[14] as well as the testimony and contemporaneous documents actually disproving the allegations at the two-day evidentiary hearing.[15]

    ***The "Petition for Representation."***   NDPO's letter includes a so-called "Petition for Representation" with signatures of individuals who purportedly oppose any settlement that does not include several "non-negotiable" forms of relief.  *See* Dkt. 681 at 3-11.  The Haars led this petition campaign, with assistance from Mr. Eby and NDPO, as acknowledged by Mr. Eby in a recorded July 14, 2015 telephone conference on NDPO's website.  He explained that Mr. Haar "put forth the petition where this all started," Mr. Haar wanted to circulate the petition "the whole way across the class" and "get a petition to everyone who is in the Federal Order 1," and Mr. Eby and NDPO were helping with this effort.[16]  This also is reflected in the petition, which

---

[13] *See* Dkt. 637-1 at 2, 9-10, 17-18, *available at* http://nationaldairyproducersorganization.com/ne-dairy-farmers-vs-dfadms.

[14] *See* http://nationaldairyproducersorganization.com/ne-dairy-farmers-vs-dfadms/page/3 (omitting responsive filings).  NDPO's website offers a link to the Court's recent decision denying the motion for new counsel, but the link does not work as of August 24, 2015 and the opinion cannot be accessed.  Also, the renewed motion for approval of settlement was added to the website only after the August 1, 2015 deadline for signing the petition.

[15] *See id*.  NDPO also omits the fact, established at the two-day evidentiary hearing, that Subclass Representatives, including the Haars, strongly *supported* achieving the non-monetary relief secured in *Southeastern Milk* when settlement negotiations resumed in January 2013, strongly urged counsel to pursue those benefits, and reversed their position only after it became apparent in late June 2014 that such a settlement with DFA/DMS could be achieved.

[16] *See* audio recording of 7/14/15 NDPO "National Call" at 61:30-62:10, *available at* http://nationaldairyproducersorganization.com/tuesday-national-call/page/2.

instructs signers to return it to the Haars and directs people to the NDPO website for additional information. *See* Dkt. 681 at 3.

Working with the Haars, Mr. Eby and other NDPO participants actively solicited signatures and encouraged people to seek signatures, as reflected in recorded NDPO meetings.[17] During one meeting, a participant reported on the strategy of "***working on the Amish***" to get them to sign the petition.[18]  He also reported that he "had sent [the petition] out to over 100 of them," and that he had discussed the petition campaign strategy with Claudia Haar.[19]

The petition itself entices signatures by stating, without citing any facts, that the *Southeastern Milk* settlement made farmers worse off. *See* Dkt. 681 at 3.  The petition goes on to list several "non-negotiable" terms for any settlement of this litigation, including:   (1) DFA/DMS divest all milk testing facilities; (2) all DFA elections be handled by third parties; (3) DFA/DMS discontinue use of full-supply agreements; and (4) DFA/DMS must divest all milk processing interests.  *See id.*  The petition further entices signatures by contending that DFA could be restructured as a publicly-traded entity with no Capper-Volstead protection (which would destroy DFA's ability to continue to operate as a cooperative or participate in activities such as GNEMMA that this Court has found to be lawful), and offering the wholly-unrealistic opportunity for farmers to convert equity interests in DFA into immediately cashable assets in the form of publicly-traded shares.  *See id.*  The petition provides no explanation of the

---

[17] *See, e.g.,* audio recording of 8/18/14 NDPO "National Call" at 24:15-25:22 (Mr. Eby explaining he and Jonathan Haar worked together on the petition), *available at* http://nationaldairyproducersorganization.com/tuesday-national-call; audio recording of 7/14/15 NDPO "National Call" at 67:56-67:59 ("we're asking you to sign that [petition]"), *available at* http://nationaldairyproducersorganization.com/tuesday-national-call/page/2.

[18] *See* audio recording of 7/14/15 NDPO "National Call" at 60:07-61:29 *available at* http://nationaldairyproducersorganization.com/tuesday-national-call/page/2.

[19] *See id*. at 77:10-77:53.

feasibility or attainability of the "non-negotiable" terms, or the strengths or weaknesses of the case.

After months of vigorous solicitation, only 88 petition signatures were obtained out of a class of 8,859 Subclass members. *See id.*

*Certain Subclass Representatives' Related Campaign*.   In addition to leading and coordinating the NDPO's campaign efforts, certain Subclass Representatives have been conducting a parallel campaign against settlement based on the same sort of inaccurate and inflammatory communications.  To illustrate, the Haars, Sittes, and Richard Swantak published a letter in *Farmshine* which exhorted farmers to object to settlement.[20]  To induce objections, the published letter alleged that settlement was the product of collusion in which attorneys "working closely with their fellow Washington, D.C. attorneys representing DFA/DMS, came up with the sell-out settlement that is currently in the works."[21]  They also alleged that the Court "has agreed to allow us to proceed to trial seeking $350 million in damages"[22] – a statement contrary to the Court's summary judgment opinion (excluding umbrella damages) and which fails to disclose that a substantial portion of the remaining damages depend on a showing of fraudulent concealment.  *See* Dkt. 525 at 33-37, 43-44 (opinion and order addressing damages).

The Subclass Representatives have continued to press this misleading campaign in the media.  For example, in an August 10, 2015 newspaper interview, Garret Sitts labeled the settlement "insulting" and reportedly claimed that Subclass Representatives "didn't have any input" on the revised DFA/DMS agreement and "were pretty much excluded during the

---

[20] *See* Ralph & Garret Sitts, Jonathan & Claudia Haar, and Richard Swantak, "Producers Urging Opposition to DFA/DMS Settlement," *Farmshine* (Jan. 2, 2015) (attached as Exhibit C).  This article also was an exhibit during the evidentiary hearing.  *See* Plaintiffs' 6/1/2015 Hr. Ex. 26.

[21] *Id.*

[22] *Id.*

process"[23] – allegations disproved by the attorney-client communications these Representatives disclosed in a recent filing which confirm Subclass Counsel repeatedly requested to discuss settlement issues, but these Representatives repeatedly declined to do so. *See* Dkt. 683 at Exs. 4 (requesting conferences), 6 (reviewing requested conferences), 7 (same), 9 (inviting communications), 13 (same), 14 (same). Demonstrating their intent to keep making such assertions, in their recent filing, these Representatives rely on unidentified Southeastern farmers to state that "'Bob Abrams is a snake and a liar' and 'Hang him. Hang them all.'" *Id.* at 20. These statements have no place in a judicial pleading, but like other prior baseless and incendiary charges, will undoubtedly be published on NPDO's website and repeated to Subclass members.

*NDPO and Certain Subclass Representatives Plan to Launch Another Campaign*. Recent recorded NDPO conferences reveal its plan to work with the Haars and Sittes on launching another anti-settlement campaign. As recently as last week, Mr. Eby, during a recorded call, stated that he is "in conversation with Jonathan [Haar] all the time requesting how soon should we come out with another [petition]" and explaining that NDPO will help "as soon as [Mr. Haar] wants to come out with another one…."[24] Another participant referred to a related meeting with the Sittes.[25]

NDPO's recent communications suggest the planned campaign will focus on spreading misleading information about the revised DFA/DMS settlement and denigrating Subclass

---

[23] Mark Boshnack, "Two Area Farmers: Settlement Isn't Fair," The Daily Star (Aug. 10, 2015), available at http://www.thedailystar.com/news/local_news/two-area-farmers-settlement-isn-t-fair/article_3839bddc-ada4-5832-a1c2-dceabd1e7283.html (attached as Exhibit D).

[24] *See* audio recording of 8/18/14 NDPO "National Call" at 25:01-25:10, *available at* http://nationaldairyproducersorganization.com/tuesday-national-call.

[25] *See* audio recording of 8/18/14 NDPO "National Call" at 23:10-26 (referencing meeting with Garret Sitts about "what to do next"), *available at* http://nationaldairyproducersorganization.com/tuesday-national-call.

Counsel, notwithstanding this Court's finding that Subclass Counsel acted in good faith on behalf of the Subclasses.  *See* Dkt. 667 at 9.  For example, Mr. Eby recently broadcast via NDPO's website that the revised DFA/DMS settlement is exactly the same as the prior settlement,[26] Subclass Counsel told DFA "don't bother" to pay more than $50 million to settle,[27] Counsel refuse to communicate with the Subclasses and the Representatives,[28] and Counsel somehow made the Associated Press publish false information about settlement.[29]  All of these assertions are untrue and misleading to the Subclass members.

## ARGUMENT

I.     **THE PETITION AND RELATED COMMUNICATIONS ARE MISLEADING, CONFUSING, AND IMPROPER**

Basic class action law prohibits the communication of misleading or confusing information to the class, particularly when done to induce rejection of settlement.  *See, e.g.,* Fed. Judicial Ctr., *Manual for Complex Litig*. (4th) at § 21.33 ("Objectors to a class settlement or their attorneys may not communicate misleading or inaccurate statements to class members about the terms of a settlement to induce them to file objections or opt out.") (citing cases).  The petition campaign and related communications presented here violate this requirement.

NDPO and Mr. Eby, in close coordination with the Haars, have disseminated misleading

---

[26] *See* audio recording of 8/11/14 NDPO "National Call" at 64:00-64:05, *available at* http://nationaldairyproducersorganization.com/tuesday-national-call ("it is the exact same settlement").

[27] *Id*. at 68:4-68:57 ("they truly are in it for the dollars…basically when they told DFA don't bother to come to a settlement offer to pay more… they basically told DFA how much they're willing to cash out").

[28] *See* audio recording of 8/18/14 NDPO "National Call" at 14:20-14:50 ("they pretty much said they have no intention of reaching out to the class…they had no intention of really truly reaching out to us"), *available at* http://nationaldairyproducersorganization.com/tuesday-national-call.

[29] *See* audio recording of 8/18/14 NDPO "National Call" at 10:25-11:45 ('it's the lawyers calling the news press release and putting [false information] out"), *available at* http://nationaldairyproducersorganization.com/tuesday-national-call.

and confusing information to induce objections to and rejection of settlement, most recently in the context of their petition campaign. The petition itself, circulated to hundreds, if not thousands of Subclass members, and published on NDPO's website, contains information that is misleading and confusing as a matter of law.

The petition presents several "non-negotiables" that purportedly will address the "corrupt system." Dkt. 681 at 3. But the petition and related communications omit the information necessary to understand that these "non-negotiables" are unlikely to be achieved even if Plaintiffs were successful at trial and prevailed on appeal following years of continued litigation, as has been previously explained. *See* Dkts. 678 at 14-21, 680-1 at 2-3, 12-13, & 42 n.78. Continued promotion by NDPO of these "non-negotiables" as possible settlement terms serves no purpose but to create unreasonable expectations and incite objection to and rejection of any settlement lacking these unrealistic terms. Such communications are misleading, confusing, and improper. *See Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 490-97 (E.D. Pa. 1995) (condemning as misleading and confusing objectors' communication campaign that created "false impressions" of potential settlement terms).

The petition also presents a new "Prayer for Relief" that purportedly ensures the "non-negotiable" terms can be achieved at trial. *See* Dkt. 681 at 3. It includes eliminating DFA's Capper-Volstead immunity and re-structuring DFA as a publicly-traded corporation. *See* Dkt. 681 at 3. But the petition and related communications fail to acknowledge that these prayers for relief could not happen, inasmuch as they distort the basic application of Capper-Volstead in antitrust litigation (it is an affirmative defense), exaggerate the injunctive relief reasonably expected to be obtained at trial (re-structuring DFA as a public company would violate the law and eliminate DFA on a nationwide basis), and would preclude DFA/DMS from engaging in

activities that the Court has already found lawful (such as GNEMMA), as has been previously explained.  *See* Dkts. 678 at 14-21, 680-1 at 2-3, 12-13, & 42 n.78.  Moreover, the petition explicitly suggests to farmers that by signing the petition and rejecting settlement they would be able to convert "farmer equity" in DFA into "marketable shares."  Dkt. 681 at 3.  In other words, farmers are being led to believe that if they support the petition, their equity in DFA can become an immediately cashable benefit – a financial inducement that is entirely unrealistic either in settlement or at trial.  But this also could never occur.  Promoting relief (including immediate financial incentives) that has no realistic prospect as a reason for rejecting any proposed settlement is patently confusing, misleading, and improper.  *See, e.g., Georgine*, 160 F.R.D. at 490-98 (explaining communications about settlement that are not "balanced" will "surely result in confusion and adversely affect the administration of justice") (citation omitted); *In re Union Square Assocs. Sec. Litig.*, 1990 Del. Ch. LEXIS 207, *17-18 (Del. Ch. Dec. 18, 1990) (explaining that class member's unfounded assertions that defendant would offer terms better than proposed settlement constituted improper campaign to solicit objections).

On top of promoting unrealistic relief, the petition and related communications omit the benefits of a $50 million settlement and non-monetary relief that Subclass members are urged to reject, the numerous risks inherent in going to trial instead of settlement, and the years of delay that would inevitably result.  Indeed, the petition does not inform Subclass members of *any* risks, including this Court's finding of a "legitimate risk of a defense verdict at trial," 11/25/14 Opinion and Order at 5-6, Dkt. 582 – crucial information for members considering a petition rejecting settlement.  This one-sided communication is misleading and threatens confusion.  *See, e.g., Georgine*, 160 F.R.D. at 490-97 (finding one-sided presentation of settlement benefits is misleading, confusing, and improper); *Kleiner v. First. Nat. Bank of Atl.,* 751 F.2d 1193, 1202-

03 (11th Cir. 1985) (explaining class must "receive accurate and impartial information" and "misstatements" and "one-sided presentation of the facts" can cause "irreparable damage" to a class proceeding).[30]

In addition to the petition itself, NDPO and Mr. Eby have communicated misleading and confusing statements to the Subclass to induce settlement rejection.  He published a letter in *Farmshine* and on NDPO's website which falsely claims this is a "billion dollar" case, as a reason for rejecting a $50 million settlement.  This statement significantly exaggerates the damages the Court has allowed to be presented at a trial.  *See* Dkt. 525 at 33-37, 43-44 (summary judgment opinion and order on damages).  Further, Mr. Eby has given at least one anti-settlement speech on a radio broadcast, also published on NDPO's website, in which he misstates the Subclass definition to make it appear bigger (and the settlement correspondingly smaller), and falsely asserts the entire class is opposed to settlement and farmers want a trial (even though many farmers have voiced strong support of settlement, including at hearings attended by Mr. Eby).[31]  More recently, Mr. Eby, following the lead of the Haars, has begun attacking Subclass Counsel by falsely claiming, among other things, that settlement was improperly negotiated and Counsel refuses to communicate with Subclass members.  This misinformation and trumped up charges against Counsel inherently misleads and confuses Subclass members and, by design, inflames them against Counsel and incites them to reject any settlement proposed by Counsel.

---

[30] The petition also references a purported disgruntled Southeast farmer and states that the situation there is worse than before settlement.  *See* Dkt. 681 at 3.  However, the referenced farmer is *not* in the database of class claimants in the Southeast.  Further, the petition provides no support, and is contradicted by the many Southeastern farmers who have praised the settlement.

[31] Such statements also conveniently ignore the fact that after being given a Court-approved notice that provided a neutral description of the settlement, and being given instructions about how to submit claims and how to submit any objections and concerns – farmers in the Subclasses overwhelmingly elected to submit claims and fewer than one percent raised any objection (notwithstanding substantial efforts to solicit objections).

Communications of this kind are improper.  *See Fleury v. Richemont N.A., Inc.*, 2007 U.S. Dist. LEXIS 62763, *5-6 (N.D. Cal. Aug. 15, 2007) (explaining class plaintiff's inaccurate communications disparaging class counsel and a proposed class settlement were improper because they "pose a real threat to integrity of litigation").

Certain Subclass Representatives, namely the Haars with assistance from the Sittes, also have communicated misleading and confusing statements to the Subclasses to induce settlement rejection.  They published a letter in *Farmshine* which exhorted farmers to object to the settlement based on a number of misleading and erroneous assertions, including allegations that Subclass Counsel have colluded with Defendants and the Court has agreed to allow a trial seeking damages of $350 million.[32]  The collusion allegations were disproven at the evidentiary hearing, *see* Dkt. 667 at 9 (finding that Subclass Counsel have acted in good faith), and, as these Representatives know (because they have been repeatedly informed) the Court has not agreed to allow a trial on damages of $350 million.  Their misleading statements have continued, however. For example, Garret Sitts recently told the media that Subclass Representatives were "excluded" from the settlement negotiation process, a statement flat contradicted by the attorney-client communications he and other Representatives recently chose to file on the public record.  *See* Dkt. 683 at Exs. 4, 6-9, and 13-14.

This submission necessarily presents only a sample of the misleading and confusing statements being disseminated to the Subclasses.  Indeed, neither the Court nor Subclass Counsel can know what additional inflammatory and inaccurate information is being spread in direct contacts with Subclass members, although the tenor of published and filed statements provides a strong indication of the nature of those communications.  In any event, there is presented here

---

[32] *See* Exhibit C.

evidence sufficient to establish misleading, confusing, and reckless rhetoric by certain Subclass Representatives, NDPO, and Mr. Eby.

## II.   THE PETITION AND INFORMATION GENERATED FROM IMPROPER COMMUNICATIONS SHOULD BE EXCLUDED

The recent petition campaign by certain Subclass Representatives, NDPO, and Mr. Eby garnered only 88 signatures out of a class of 8,859 members.  This is in stark contrast to only a handful of objections, and 7,550 requests to participate in settlement, received in response to the Court's neutral and balanced settlement notice.  Nonetheless, the petition information should be excluded for three reasons.

*First*, information obtained through improper means should be excluded from use in the litigation to deter repetition of such means for the protection of the class.  *See, e.g., Hammond v. City of Junction City*, 167 F. Supp. 2d 1271, 1293 (D. Kan. 2001) (granting request to exclude evidence obtained through improper communications); *Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 724 (W.D. Ky. 1981) (explaining that party engaged in improper communications "should not be permitted to profit" from its "impropriety").  This is particularly true here, where the Haars and NDPO are actively planning to launch another petition campaign that evidently will be focused once again on leveling allegations about Subclass Counsel rather engaging in a sober assessment of the case and the actual risks and benefits with settlement.

*Second*, the petition information should be excluded as potentially unreliable because Subclass members were or could have been induced to sign based on misleading and confusing information, including the suggestion that by rejecting settlement and signing the petition they could, if successful, convert their equity interests in DFA into marketable shares.  In this situation, courts routinely disregard or give little weight to the solicited settlement objections. *See Roberts v. Electrolux Home Prods., Inc.*, 2014 U.S. Dist. LEXIS 130163, *30-31 (C.D. Cal.

Sept. 11, 2014) (disregarding settlement objections that result from misunderstanding about the settlement); *Wixon v. Wyndham Resort Dev. Corp.*, 2011 U.S. Dist. LEXIS 87249, *9 (N.D. Cal. Aug. 8, 2011) (same); *Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179, 205 (S.D.N.Y. 2012) (same); *see also Union Sq. Assocs.*, 1990 Del. Ch. LEXIS 207 at *20-21 (applying "heavy discount" to settlement objections garnered with class member's misleading communications about potential settlement).

*Third*, the information should be excluded because it would be misleading and confusing for the petition to be exhibited to the Subclasses as reflecting members' independent assessment of settlement, when the evidence actually shows that NDPO obtained signatures through an aggressive and misleading campaign, which included "working on the Amish" to get them to sign.[33] The use of information obtained through over-zealous and misleading communications would cause confusion that could ultimately "defeat the policies behind rule 23 class actions." *Georgine*, 160 F.R.D. at 497 (citation omitted).

## III. FALSE AND MISLEADING COMMUNICATIONS SHOULD BE PROHIBITED FOR THE PROTECTION OF THE SUBCLASSES

This Court previously recognized its "duty and authority" to protect the integrity of a class extends to "communications that mislead or otherwise threaten to create confusion." *Forauer v. Vt. Country Store, Inc.*, 2013 U.S. Dist. LEXIS 164167, *17-19 (D. Vt. Nov. 18, 2013) (Reiss, J.) (quoting *Hinds County, Miss. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011)). Federal Rule 23 thus makes district courts responsible for "safeguarding"

---

[33] *See* audio recording of 7/14/15 NDPO "National Call" at 60:07-61:29 *available at* http://nationaldairyproducersorganization.com/tuesday-national-call/page/2. Not surprisingly, an overwhelming majority of the signatures appear to be of members of the Amish community in Pennsylvania that NDPO "worked on." Of these signatures, several are duplicates, *see, e.g.*, signatures for Melvin Zook, David Blanz (sp) Jonas Stoltzfus (sp), and some appear to be on behalf of individuals outside of Order 1 according to USDA information, *see, e.g.*, John King, Daniel King, and Melvin King.

class members from misleading or confusing communications.  *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980).  For that reason, the Court carefully reviewed the notices earlier sent to Subclass members to ensure that they would be neutral and balanced.

The communication tactics by certain Subclass Representatives, NDPO, and Mr. Eby, outlined above, have reached the point of undermining the best interests of the Subclass members and the overall fairness of the class action process.  And this danger is heightened with their plan to launch another, even more aggressive, petition campaign attacking anyone supportive of settlement.  Just as the Court acted previously to regulate and ensure balance in the notices sent to Subclass members, the Dairy Farmer Subclasses submit that the Court should put a stop to improper communications by issuing an Order prohibiting false or misleading communications concerning this litigation by Subclass Representatives, NDPO, or Mr. Eby.[34] This would be consistent with decisions by other courts confronting similar situations.  *See, e.g., Fleury*, 2007 U.S. Dist. LEXIS 62763, at *13 (ordering class plaintiff who made misleading statements about counsel and settlement to provide copies of future messages about litigation to counsel and court prior to being communicated to class); *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.,* 238 F. Supp. 2d 151, 159 (D.D.C. 2002) (prohibiting misleading communications); *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1487 (S.D.N.Y. 1986) (prohibiting future

---

[34] NDPO's status as a third party does not excuse it from being accountable for misleading communications.  The Court's authority under Fed. R. Civ. P. 23(d) to protect the Subclass encompasses oversight of communications by class members and non-parties alike that risk disruption of the class action process.  *See, e.g., McKesson HBOC, Inc Secs. Litig.*, 126 F. Supp. 2d 1239, 1244 (N.D. Ca. 2000) (limiting non-party communications with putative class members when those communications are "unnecessarily disruptive to the class action process."); *In re School Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) (court regulating communications of third party association).  That conclusion is particularly apt here where NDPO is not acting simply as a third party and instead is acting in close coordination with Subclass Representatives who are parties to the case. This coordination in made clear in recorded admissions during a July 14, 2015 NDPO meeting, as well as the petition on NDPO's website which instructs farmers to return it to the Haars no later than August 1, 2015.

communications about participation in settlement of litigation).[35]

## IV.   NDPO'S LETTER SHOULD NOT BE CONSIDERED BECAUSE IT DOES NOT SATISFY THE REQUIREMENTS FOR *AMICUS CURIAE* SUBMISSIONS

Courts in this District have applied Fed. R. App. P. 29 when determining whether to accept *amicus curiae* submissions, in the absence of relevant local rules  *See, e.g., U.S. v. Hunter*, 1998 U.S. Dist. LEXIS 9869, *1 (D. Vt. June 10, 1998).  NDPO's letter does not satisfy the requirements for *amicus curiae* briefs.

An *amicus* brief, to be accepted, must be of help to the Court.  *See* Fed. R. App. P. 29(b); *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 2011 U.S. Dist. LEXIS 59662, *1 (D. Vt. June 2, 2011).  NDPO's letter is of no help because it merely repeats all the same assertions previously presented to the Court by Mr. Eby and NDPO.  The letter argues that a $50 million settlement is insufficient and that farmers deserve a trial on DFA's actions, *see* Dkt. 681 at 2, which are the same arguments made in Mr. Eby's letter submitted to the Court on January 12, *see* Dkt. 611, repeated by Mr. Eby during the January 29 hearing, *see* Hearing Tr. at 47:5-49:4, repeated in NDPO's letter offered to the Court on April 20, *see* Plaintiffs' Hr. Ex. G, and repeated in another letter from Mr. Eby submitted to the Court on May 21, *see* Dkt. 648-2.  Because repetition of these same arguments presents nothing new for the Court to consider, NPDO's letter is of no help.  *See Entergy Nuclear*, 2011 U.S. Dist. LEXIS 59662, at *16 (explaining *amicus* briefs may be helpful when they bring matters not already addressed to the Court's attention).

Also, among other defects,[36] NDPO's letter does not identify NDPO's members, source of funding, or interests (or conflicts) with respect to this litigation, which is required by Fed. R.

---

[35] The Court also has discretion to order curative measures as appropriate to protect the Subclasses from the effects of misleading communications.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981) (explaining district courts have the "duty and broad authority…to enter appropriate orders governing the conduct of counsel and parties" in class actions).

App. P. 29(c) and applied by Courts in this District.  *See, e.g., Entergy Nuclear*, 2011 U.S. Dist. LEXIS 59662, *16 (explaining proposed *amicus* submissions must identify sources and funding). NDPO's failure to make these required disclosures is not an unimportant technicality – indeed, the risk of *amici* seeking to influence litigation to further their own undisclosed interests is cause for judicial skepticism and can be grounds for rejection of *amicus* submissions.  *See, e.g., Nat'l Org. Women, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000).

Absent disclosure of this information, the Court and Subclass members cannot be in good position to appreciate NPDO's *amicus* submission.  Courts have long recognized that communications targeted at a class are a major concern because of their potential disruption of a fair and just process.  *See, e.g., Manual for Complex Litig*. at § 21.33 (collecting cases). Consequently, Subclass members targeted by NDPO's communications in particular deserve the information about NDPO required by Fed. R. App. P. 29 to help them understand and weigh the letter and petition.  *See, e.g., Georgine*, 160 F.R.D. at 490-92 (explaining the "most disturbing aspect" of a one-sided class communication about settlement is it concealing "the personal interests of the drafters" and failing to disclose that they are "not neutral observers").

<u>**CONCLUSION**</u>

For the foregoing reasons, the Dairy Farmer Subclasses respectfully request that NDPO's *amicus curiae* letter and petition not be accepted by the Court.  In addition, the Dairy Farmer Subclasses respectfully request that the Court issue an Order prohibiting false or misleading communications concerning this litigation by Subclass Representatives, NDPO, Mr. Eby, or anyone communicating on their behalf.

---

[36] Parties seeking to submit *amicus curiae* briefs must file motions for leave to do, *see* Fed. R. App. P. 29(b) & (e), something NPDO failed to do.

Dated:  August 24, 2015

Respectfully submitted,

/s/ *Robert G. Abrams*

Robert G. Abrams, Esq.
Robert J. Brookhiser, Esq.
Gregory J. Commins, Jr., Esq.
Terry L. Sullivan, Esq.
Danyll W. Foix, Esq.
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, DC  20036
(202) 862-1500
rabrams@bakerlaw.com
rbrookhiser@bakerlaw.com
gcommins@bakerlaw.com
tsullivan@bakerlaw.com
dfoix@bakerlaw.com

Emily J. Joselson, Esq.
Lisa B. Shelkrot, Esq.
Langrock Sperry & Wool, LLP
210 College St.
P.O. Box 721
Burlington, VT 05402
(802) 864-0217
ejoselson@langrock.com
lshelkrot@langrock.com

*Counsel for the Non-DFA/DMS*
*Subclass*

/s/ *Kit A. Pierson*

Kit A. Pierson, Esq.
Benjamin D. Brown, Esq.
Brent W. Johnson, Esq.
Emmy L. Levens, Esq.
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave., N.W.
Suite 500, West Tower
Washington, DC  20005
(202) 408-4600
kpierson@cohenmilstein.com
bbrown@cohenmilstein.com
bjohnson@cohenmilstein.com
elevens@cohenmilstein.com

David A. Balto, Esq.
The Law Offices of David A. Balto
1350 I St., N.W., Suite 850
Washington, DC 20005
(202) 789-5424
david.balto@yahoo.com

Andrew D. Manitsky, Esq.
Gravel and Shea PC
76 St. Paul St., 7th Floor,
P.O. Box 369
Burlington, VT  05402
(802) 658-0220
amanitsky@gravelshea.com

*Counsel for the DFA/DMS Subclass*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 24th day of August, 2015, a true and correct copy of the foregoing ***DAIRY FARMER SUBCLASSES' RESPONSE TO NDPO'S AMICUS CURIAE SUBMISSION AND MOTION FOR ORDER PROHIBITING IMPROPER COMMUNICATIONS*** was served by operation of the electronic filing system of the U.S. District Court for the District of Vermont upon all counsel who have consented to receive notice of filings in the matters styled *Allen, et al. v. Dairy Farmers of America, et al.*, Case No. 5:09-cv-00230-cr.  Additionally, true and correct copies were sent via U.S. Mail to:

Mike Eby
National Dairy Producers Organization
459 Queen Rd.
Gordonville, PA 17529

Mike Eby
National Dairy Producers Organization
1835 Newport Blvd., D-263
Costa Mesa, CA 92627


/s/ Robert G. Abrams
Robert G. Abrams