UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 SEP -1 PM 12: 05

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| ALICE H. ALLEN, LAURANCE E. ALLEN, d/b/a Al-lens Farm, GARRET SITTS, RALPH SITTS, JONATHAN HAAR, CLAUDIA HAAR, and RICHARD SWANTAK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC,<br><br>Defendants. | Case No. 5:09-cv-230 |

**ENTRY ORDER DENYING RENEWED MOTION FOR FINAL APPROVAL,
OR IN THE ALTERNATIVE, PRELIMINARY APPROVAL,
OF AMENDED DFA/DMS SETTLEMENT**
(Doc. 680)

Pending before the court is a motion for final approval, or, alternatively, for preliminary approval, of a renewed settlement agreement ("Revised Settlement") between Plaintiff dairy farmers ("Dairy Farmers Subclasses") and Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS"). (Doc. 680.) The Dairy Farmer Subclasses, through their counsel, ask the court to approve the Revised Settlement without further notice to the class, an opportunity to object, an opportunity to opt out, or a fairness hearing. In the alternative, they request the court to grant preliminary approval of the Revised Settlement; however, they have not included a proposed notice to the class for this purpose.

**I.  Procedural Background.**

This class action arises out of allegations that Defendants and their alleged co-conspirators engaged in a conspiracy at the processor and cooperative levels to control

the supply of raw Grade A milk in Order 1, which had the effect of suppressing certain premiums paid to dairy farmers for their milk. (Doc. 117.)

In June of 2014, the parties reached an initial settlement ("Initial Settlement"), which required Defendants to make a monetary payment of $50 million to the Dairy Farmers Subclasses and provided for certain injunctive relief. After a renewed motion was filed, the court granted preliminary approval, authorized notice to the class, and held a fairness hearing on the Initial Settlement on January 29, 2015 ("Initial Fairness Hearing"). *See Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 6682436, *5-7 (D. Vt. Nov. 25, 2014). Subclass Representatives Jonathan and Claudia Haar, Richard Swantak, Ralph Sitts, and Garret Sitts opposed the Initial Settlement (the "opposing Subclass Representatives"). Subclass Representatives Alice and Laurance Allen initially opposed, but ultimately supported, the Initial Settlement.

On March 31, 2015, after the Initial Fairness Hearing, the court denied without prejudice the motion for final approval of the Initial Settlement on the grounds that the court could not find the Initial Settlement either procedurally or substantively fair, reasonable, and adequate. *See Allen v. Dairy Farmers of Am., Inc.*, 2015 WL 1517400, at *6, *9 (D. Vt. Mar. 31, 2015). Thereafter, the court adjudicated a motion to remove Subclass Counsel which necessitated an evidentiary hearing to address numerous factual disputes between Subclass Counsel and the opposing Subclass Representatives. Notwithstanding the considerable rancor and either a lack of communication or dysfunctional communication, the court determined that the drastic remedy of removal of Subclass Counsel was not warranted because there was no evidence that Subclass Counsel had engaged in actual misconduct. (Doc. 667.)

On August 6, 2015, Subclass Counsel filed the pending motion for final approval, or, alternatively, preliminary approval, of the Revised Settlement. (Doc. 680.) On the same day, Defendants filed a response in support of approval of the proposed Revised Settlement that addresses the scope of the proposed release contained therein, provides "some baseline facts" about milk testing, and sets forth Defendants' "rationale" for rejecting other proposals for injunctive relief raised during settlement negotiations. (Doc.

2

678 at 7, 15-16.) Again, while Subclass Representatives Alice and Laurance Allen support the proposed Revised Settlement, the remaining Subclass Representatives oppose it.

In light of the continuing lack of consensus among Subclass Counsel and Subclass Representatives regarding the best interests of the Dairy Farmers Subclasses, the court agreed that a fresh perspective was appropriate. On August 11, 2015, the court appointed Stephen Taylor and Darrel Aubertine as additional Subclass Representatives for the non-DFA/DMS Subclass, but the court denied their request to appoint two additional attorneys as Subclass Counsel for the non-DFA/DMS Subclass. (Doc. 682.) Stephen Taylor and Darrel Aubertine ask the court for additional time with which to submit their position with regard to the Revised Settlement. They also ask the court to reconsider their request to be assisted by new counsel and propose "a relatively short, collective, renegotiation with Class Counsel and Defendants DFA/DMS of the terms of the [Revised Settlement]." (Doc. 689 at 4.)

At this time, there appears to be no cessation in the hostility between Subclass Counsel and the opposing Subclass Representatives. Subclass Counsel has asked the court to prohibit the Subclass Representatives and others from engaging in certain communications and filings (Doc. 688), and the opposing Subclass Representatives have renewed their motion for removal of existing Subclass Counsel. (Doc. 683.) Subclass Counsel continue to conflate the filing of a proof of claim with approval of the Revised Settlement,[1] and the majority of Subclass Representatives are openly soliciting opposition to both the Revised Settlement and their Subclass Counsel. It is against this procedural backdrop that Subclass Counsel asks the court to forego the procedural mechanisms required for settlement of a class action lawsuit, *see* Fed. R. Civ. P. 23(e), and grant final approval.

---

[1] The court's orders make it clear that by filing a proof of claim, a dairy farmer does not signify approval of a proposed settlement and retains the right to object to it.

## II. Conclusions of Law and Analysis.

The Revised Settlement proposes monetary relief for class members of $50 million with an average recovery of $4,000 per dairy farm in the class. The scope of the proposed Release has been altered in several respects including the definitions of "released claims" and "released parties." The Revised Settlement clarifies the duration of some provisions for injunctive relief; modifies the anti-retaliation provision; extends the deadline for filing claims; and provides an opportunity for dairy farmers to opt back in to the class for settlement purposes. (Doc. 680-1 at 17-18.) Subclass Counsel maintain their request for an attorney's fee award of $16.6 million.

Subclass Counsel do not argue the changes to the Revised Settlement are minor; rather, they contend that the Revised Settlement is sufficiently altered in terms of its injunctive relief and the scope of the proposed release that it is clearly "favorable to class members." (Doc. 680-1 at 52.) On this basis, they urge the court to find the Revised Settlement fair, reasonable, and adequate without further notice to the class, an opportunity to object, or a fairness hearing.

Prior to approving the settlement of a class action lawsuit, Fed. R. Civ. P. 23(e) requires the court to "direct notice in a reasonable manner to all class members who would be bound by [a settlement] proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(e) further provides that a court may approve a binding settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Notice and an opportunity to be heard allow a court to properly consider "the reaction of the class to the settlement," *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and whether there is "substantial opposition" to it. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118-19 (2d Cir. 2005) (noting the reaction of class members "is perhaps the most significant factor"); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.") (internal quotation marks omitted).

There is some authority for bypassing these procedural safeguards where "*de*

*minimis* changes made to the settlement in response to the district court's initial disapproval d[o] not require sending a new notice to the class, or holding another fairness hearing." *In re Groupon Mktg. & Sales Practices Litig.*, 593 F. App'x 699, 701 (9th Cir. 2015); *see Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 631 (9th Cir. 2010) (noting the only changes made after potential class members received notice included changes that "narrowed the scope of the release"); *see also In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (holding "the district court did not abuse its discretion by failing to notify class members of their opt-out rights prior to conducting a fairness hearing of the settlement's terms"). Accordingly, had the court found the Initial Settlement substantively fair, reasonable, and adequate, and the class members' reaction to it positive, and if the Revised Settlement made only modest alterations to the Initial settlement, Subclass Counsel's request might be appropriate. *See In re Groupon Mktg. & Sales Practices Litig.*, 593 F. App'x at 701; *Harris v. Graddick*, 615 F. Supp. 239, 244 (M.D. Ala. 1985) (declining to provide additional notice when the "amendment to the proposed consent decree is extremely narrow" and "the interests of the plaintiff class are in no way impaired by the amendment").

 Here, however, the changes to the Revised Settlement are represented to be substantive and material; the majority of Subclass Representatives are still opposed to the Revised Settlement; and the scope of monetary and injunctive relief offered by the Revised Settlement remains modest in light of the Dairy Farmers Subclasses' claims. In such circumstances, the court should provide notice to class members "materially affect[ed]" by changes to a proposed settlement, *Keepseagle v. Vilsack*, 2015 WL 1969814, at *5 n.1 (D.D.C. May 4, 2015), and alert them that Subclass Counsel claim that "substantive changes" to the settlement have been made. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1082 (C.D. Cal. 2010).[2] This will assist both class members

---

[2] Generally, in the cases in which a district court has declined to authorize notice regarding changes to a proposed class action settlement, the revised settlement was clearly more favorable to the class than the original settlement, providing, for example, increased compensation to class members. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 2013 WL 3224585, at *6 n.15 (C.D. Cal. June 17, 2013) (noting "changes

5

and the court in evaluating whether the Revised Settlement provides "tangible and valuable" benefits to the class or "illusory" relief. *Joel A. v. Giuliani*, 218 F.3d 132, 140-41 (2d Cir. 2000).

Because the court concludes that it is not appropriate to forego the procedural protections of Fed. R. Civ. P. 23(e), the request for final approval is DENIED.

The only remaining question is whether the court should grant preliminary approval of the Revised Settlement. Preliminary approval is "the first step in the settlement of a class action whereby the court must preliminarily determine whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (alteration in original) (internal quotation marks omitted). It "requires only an initial evaluation of the fairness of the proposed settlement[,]" *id.*, and "[i]f the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (internal quotation marks omitted).

In this case, the Revised Settlement reflects some of the concerns the court expressed regarding the terms and conditions of the proposed release in the Initial Settlement. However, because the monetary settlement amount remains unchanged and the injunctive relief remains limited, it is anticipated that the Revised Settlement will engender the same or similar reaction from the class as the Initial Settlement: a minority of dairy farmers expressing modest support, a minority of dairy farmers expressing vehement opposition, and silence from the remainder of the class. *See* Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 90-91 (2007) (concluding that "courts have

---

to the Allocation Plan will either increase amounts paid to class members who filed claims [or will] provide benefits to non-claimants even though they failed to comply with the requirements of filing a claim"); *Trombley v. Bank of Am. Corp.*, 2013 WL 5153503, at *6 (D.R.I. Sept. 12, 2013) (concluding notice was not necessary when revised settlement increased per class member compensation from $28 to $40).

6

systematically misinterpreted the silence of the class by ignoring more plausible explanations for class members' failure to object to a proposed settlement"). In such circumstances, the opinions of the new Subclass Representatives may be especially enlightening as they are not yet entrenched in an adversarial relationship with Subclass Counsel. They may also prevail in persuading Subclass Counsel to engage in additional negotiations.

Even if the court concluded that preliminary approval was warranted, the court could not grant it based upon the pending motion. The "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *accord Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness[,]" and "[n]otice is adequate if it may be understood by the average class member." *Wal-Mart Stores, Inc.*, 396 F.3d at 113 (internal quotation marks omitted).

Subclass Counsel have not submitted a proposed notice to the Dairy Farmers Subclasses or a proposed plan for the method and manner of its dissemination. They do not explain how they will apprise the Dairy Farmers Subclasses of the differences between the Initial Settlement and the Revised Settlement and the process for filing claims, opting in, and objecting. They also propose no schedule for the fairness hearing and for the determination of their expected renewed attorney's fees request. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (directing that notice "must be of such nature as reasonably to convey the required information") (internal quotation marks omitted). Finally, they do not address how they will accommodate the opinions of the new Subclass Representatives who were appointed after their request was filed. Because the court has not concluded that the Revised Settlement is fair, reasonable, and adequate and that the proposed notice is adequate, preliminary approval must be

DENIED.

## CONCLUSION

For the foregoing reasons, the court DENIES the motion for final approval or, in the alternative, preliminary approval of the proposed Revised Settlement. (Doc. 680.) SO ORDERED.

Dated at Burlington, in the District of Vermont, this 1st day of September, 2015.

Christina Reiss, Chief Judge
United States District Court