UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 SEP 14  AM 10: 29

CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| ALICE H. ALLEN, LAURANCE E. ALLEN, d/b/a Al-lens Farm, GARRET SITTS, RALPH SITTS, JONATHAN HAAR, CLAUDIA HAAR, and RICHARD SWANTAK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC,<br><br>Defendants. | Case No. 5:09-cv-230 |

**ENTRY ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR ORDER PROHIBITING IMPROPER COMMUNICATIONS**
(Doc. 688)

Pending before the court is a motion for an order prohibiting "false and misleading communications" to Plaintiff dairy farmers ("Dairy Farmers Subclasses") filed by class counsel ("Subclass Counsel"). (Doc. 688 at 7.) Subclass Counsel also request that the court decline to consider "petition information" garnered by Subclass Representatives Jonathan and Claudia Haar, Richard Swantak, Ralph Sitts, and Garret Sitts (the "opposing Subclass Representatives"), who object to the proposed revised settlement ("Revised Settlement") between the Dairy Farmers Subclasses and Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS"). Finally, Subclass Counsel request that the court decline to consider a letter submitted "as a friend of the Court" by Mr. Mike Eby, a dairy farmer and current chairman of the National Dairy Producers Organization, Inc. ("NDPO"). (Doc. 681.)

I.   **Procedural History.**

Over the past few months, certain of the Subclass Representatives have submitted objections and petitions signed by dairy farmers with regard to whether this class action lawsuit should be settled and whether Subclass Counsel should be removed. These filings have not taken place through their Subclass Counsel which is generally required.

Subclass Counsel now seek an order prohibiting these communications because they argue that some members of the Dairy Farmers Subclasses are conducting an "active" and "aggressive" "campaign" against settlement that is based on "inaccurate and inflammatory communications" regarding the status and history of this case, the settlement processes, and the terms of the proposed Revised Settlement. (Doc. 688 at 6, 12, 20.) They further assert that certain Subclass Representatives' communications are misleading because: (1) they advocate for certain terms of injunctive relief as "non-negotiables," when Subclass Counsel contends those terms could not be achieved by settlement or a trial; (2) they fail to disclose and explain the benefits of settlement relative to risks of proceeding at trial; (3) they misrepresent the procedural process regarding the Initial and Revised Settlement; and (4) they contain inflammatory and accusatory language regarding Subclass Counsel, notwithstanding the court's finding that Subclass Counsel has acted in good faith.

II.  **Conclusions of Law and Analysis.**

In light of the "possibility of abuses in class-action litigation," a district court has "the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 104 (1981). Rule 23 of the Federal Rules of Civil Procedure expressly authorizes a district court to "issue orders that . . . impose conditions on the representatives parties or on intervenors[.]" Fed. R. Civ. P. 23(d)(1)(C); *see also In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988) ("Rule 23 specifically empowers district courts to issue orders to prevent abuse of the class action process."). It is also the "the responsibility of the court to direct the best notice practicable to class members and to safeguard them from unauthorized, misleading communications from the parties or

their counsel" because communications "which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice." *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) (citation and internal quotation marks omitted). The court, however, "may not order restraints on speech . . . except when justified by actual or threatened misconduct of a serious nature." *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995) (citing ); *see also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 602 (2d Cir. 1986) (requiring a district court's order "to curb the abuses found by the court," or at least be "a reasonable effort to respond to real and potential problems").

The district court's ability to limit communications with and among class members is thus not "unlimited," and any "order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 100, 101. "[S]uch a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102; *Erhardt*, 629 F.2d at 846 (directing that any order limiting correspondence in order to prevent abusive practices must be "within constitutional parameters"). The court must look for "less burdensome remedies" before imposing "restraints on expression" protected by the First Amendment. *Gulf Oil*, 452 U.S. at 104.

A. **Whether to Limit Future Communications with the Dairy Farmers Subclasses.**

In support of their motion, Subclass Counsel provide two letters published in the February 7, 2015 edition of Lancaster Farming and the February 6, 2015 edition of Farmshine. The Lancaster Farming letter is substantially the same as Mr. Eby's January 12, 2015 written objection to the Initial Settlement (Doc. 611) and as his comments during the Fairness Hearing regarding that settlement. (Doc. 688-1, Ex. 1.) The Farmshine letter summarizes the January 29, 2015 Fairness Hearing and provides Mr.

3

Eby's impressions of it. (Doc. 688-2, Ex. 2.)  Subclass Counsel refers to the NDPO's webpage on this class action and the NDPO's March 2015 newsletter, both of which provide links that republish Mr. Eby's January 12, 2015 written objection.  Subclass Counsel also provide a letter from the opposing Subclass Representatives in the January 2, 2015 edition of Farmshine that encouraged dairy farmers to "oppose" the Initial Settlement and to submit "an amicus brief" to this court and that advised farmers of the opportunity to object to the Initial Settlement and to attend the Fairness Hearing. (Doc. 688-3 at 3, Ex. 3.)

Subclass Counsel ask the court to examine communications from the NDPO relating to the progress of this case and settlement, including the NDPO's website, which includes a webpage devoted to this case that provides links to Orders of this court; news articles; certain filings primarily by the opposing Subclass Representatives, as well as an undated letter from the opposing Subclass Representatives to Subclass Counsel; and letters from the NDPO and Mr. Eby directed to the court.  These letters generally advocate for a reorganization of Defendants' corporate structures and the election of new leadership.  Subclass Counsel also point to several recordings provided on the NDPO's website that include a March 30, 2015 "Dairy Line" interview with Mr. Eby and at least two recordings of weekly "Tuesday National Calls" conducted by NPDO on August 18, 2014[1] and July 14, 2015.

Many of the communications referenced by Subclass Counsel pose little risk of providing misleading or confusing information to the Dairy Farmers Subclasses regarding this case beyond the expression of the author's opinion.  To the extent they purport to state facts about the progress of the case, Subclass Counsel, and the risks and benefits of settlement or trial, they do not purport to be an official source of such information or claim they are sanctioned by the court.  Subclass Representatives' communications to the class, in contrast, pose some potential to confuse and mislead to the extent they purport to have special information about the case derived from the attorney-client relationship.

---

[1] Presumably, Subclass Counsel is referring to a Tuesday National Call from August 18, 2015.

An order that prohibits all allegedly "false and misleading" communications from parties and non-parties provides little guidance and is impermissibly overbroad with regard to the non-parties' rights to engage in free expression and communications pertaining to the merits and settlement of pending litigation. *Cf. United States v. Williams*, 553 U.S. 285, 292, 304 (2008) (directing that under the First Amendment overbreadth doctrine, a statute is invalid when it prohibits "a substantial amount of protected speech" and that under the vagueness doctrine, a statute is invalid if it is standardless). Moreover, at least one circuit court has concluded that Rule 23 does not authorize a district court to issue an order that would impose conditions on individuals other than "the representative parties" or "intervenors," as expressly authorized in Rule 23(d). *See Cobell v. Kempthorne*, 455 F.3d 317, 323 (D.C. Cir. 2006) ("Hardly a technicality, the limitation to representative parties and intervenors stems from Rule 23(d)(3)'s purpose: ensuring proper representation of class interests."); *but see In re Sch. Asbestos Litig.*, 842 F.2d 671, 674 (3d Cir. 1988) (regulating the communications of an association that, although not a party to the litigation, was funded "almost exclusively" by the defendants and its membership consisted "entirely" of the defendants).

Many of the cases cited by Subclass Counsel in which a district court prohibited communications with class members involved violations of the Rules of Professional Conduct, which apply once a class is certified and "apply as though each class member is a client of the class counsel." Manual for Complex Litigation § 21.33 (4th ed.) ("Defendants' attorneys, and defendants acting in collaboration with their attorneys, may only communicate through class counsel with class members on matters regarding the litigation."); *see also Hammond v. City of Junction City, Kan.*, 167 F. Supp. 2d 1271, 1274 (D. Kan. 2001) (excluding evidence gathered during ex parte contact when plaintiff's attorney interviewed an employee of defendant). These cases generally impose limitations on *a defendant's* communications with class members, or putative class members. *See Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 722 (W.D. Ky. 1981) (granting plaintiffs' motion for an injunction to prevent one defendant from contacting class members and encouraging them to opt out and finding that defendant and


its attorneys were not entitled to First Amendment protection for communications that violated the Rules of Professional Conduct); *see also Tedesco v. Mishkin*, 629 F. Supp. 1474, 1487 (S.D.N.Y. 1986) (concluding defendant's attorney violated the Rules of Professional Conduct by communicating with class members after certification of the class and prohibiting defendant from "further communications with class members so as to discourage their participation in th[e] action or to induce class members to 'opt out' of the class").

In this case, there is neither a factual nor legal basis for an order restraining class members from freely discussing the case with their fellow class members, the media, and the general public. *See Great Rivers Co-op. of Se. Iowa*, 59 F.3d at 766. However, because there is at least a potential for confusion and misleading information when those communications emanate from Subclass Representatives, the court directs that any communications between Subclass Representatives and the Dairy Farmers Subclasses accurately represent the court's Orders, the progress of this case, and the terms of any proposed settlement. *See Erhardt*, 629 F.2d at 846 (noting communications with class members must not be "factually or legally incomplete, lack objectivity and neutrality, or contain untruths"); *see also* Manual for Complex Litigation § 21.33 (4th ed.) ("Objectors to a class settlement or their attorneys may not communicate misleading or inaccurate statements to class members about the terms of a settlement to induce them to file objections or to opt out."). Subclass Representatives are reminded that they must adequately represent *all* members of their Subclasses and that it is not in the interests of the class as a whole to waive the attorney-client privilege or to undermine Subclass Counsel's litigation strategies and representation of the class.

**B.     Whether to Strike Communications Previously Submitted to the Court.**

Subclass Counsel further ask the court to strike certain filed communications which they contend are false, misleading, and/or confusing. This includes a letter from Mr. Eby that was provided to the court by the opposing Subclass Representatives as part of their motion to remove Subclass Counsel (Doc. 648-2); a letter from the NDPO to the court dated April 11, 2015 advocating for, in part, the reorganization of Defendants'

corporate structure; another letter filed August 7, 2015 from the NDPO and Mr. Eby submitted "as a friend of the court" and advocating for a trial (Doc. 681 at 1-2); and a "Petition for Representation" signed by approximately eighty-three farmers that states that those farmers believe there are certain "non-negotiables" that must be included in any settlement and that requests that they be allowed to file an amended "Prayer for Relief" to force Defendants to "restructure as a publicly-traded corporation." (Doc. 681 at 3-11.) Subclass Counsel request that the court refrain from considering the NDPO's August 7, 2015 filing as a friend of the court and the attached petition, which they contend is potentially "unreliable." (Doc. 688 at 19-20.)

While the Local Rules do not provide for the filing of briefs as amicus curiae, this court has authorized such filings when the individual or entity seeking to file the brief requests the leave of the court to do so in accordance with Rule 29 of the Federal Rules of Appellate Procedure. *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 2011 WL 1883040, at *3-4 (D. Vt. May 17, 2011) (explaining further that an amicus curiae brief is supplemental, it should address matters not adequately addressed by a party, and it is of considerable help to the court if it brings to the court's attention relevant matters that the parties have not already addressed). The motion for leave to file must include the person's proposed brief and must explain "(1) the [person's] interest" in submitting a brief relative to the case or motion before the court and "(2) the reason why an amicus memorandum is desirable and why matters asserted are relevant to the disposition" of the case or motion before the court. *Id.*; *see also* Fed. R. App. P. 29 (directing that "amicus curiae may file a brief only by leave of court or if the brief states that all parties have consented to its filing" and that the motion for leave to file "must be accompanied by the proposed brief and state: (1) the movant's interest; and (2) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case").

Although Mr. Eby and the NDPO did not request the court's leave to file their August 7, 2015 submission or obtain the parties' consent, the court will excuse their

failure to request the permission of the court before doing so once.[2] However, any future filings must be accompanied with a motion seeking the leave of the court prior to filing or indicate that all parties consent to the filing. The motion to strike the August 7, 2015 submission from the NDPO and Mr. Eby that also includes the "Petition for Representation" (Doc. 681) is therefore DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the motion for an order prohibiting false and misleading communications with the Dairy Farmers Subclasses and DENIES the request to exclude consideration of a recent petition and other submissions from non-parties. (Doc. 688.) The court ORDERS that any communications between Subclass Representatives and the Dairy Farmers Subclasses must accurately represent the court's Orders, the progress of this case, and the terms of any proposed settlement. The court ORDERS that any future submissions from non-parties will not be allowed or considered by the court without seeking the leave of the court before filing or obtaining the consent of the parties.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 14th day of September, 2015.

_____
Christina Reiss, Chief Judge
United States District Court

---

[2] The court does not intend to rely on these filings without the parties' consent.