# EXHIBIT D

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

# If Your Farm Produced and Pooled Grade A Milk In Federal Milk Marketing Order 1 Between 2002 and 2014

---

## You Could Get Money from a Class Action Settlement.
*A court authorized this notice. You are not being sued.*

**THIS NOTICE PROVIDES INFORMATION REGARDING A NEW PROPOSED SETTLEMENT. YOU MAY HAVE NEW RIGHTS AS A RESULT OF THIS SETTLEMENT. PLEASE READ THIS NOTICE CAREFULLY.**

- A new proposed settlement with Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services LLC ("DMS") has been reached for $50 million and changes to DFA's and DMS's business practices.

- You might have received a similar notice in 2014 regarding a prior settlement with DFA and DMS. The Court did not approve that settlement. This new settlement includes more changes to DFA's and DMS's business practices.

- **IF YOU SUBMITTED A CLAIM FOR THE PREVIOUS DFA/DMS SETTLEMENT, YOU DO NOT NEED TO SUBMIT ONE AGAIN TO RECEIVE COMPENSATION.**

- You have legal rights and options in this proposed settlement. These are summarized on the next page and explained in this Notice.

- This proposed settlement resolves all claims against DFA and DMS in a lawsuit alleging they engaged in anticompetitive conduct within Federal Milk Marketing Order 1. If this settlement is approved, and you do not opt out, you will not be able to sue DFA and DMS, or their predecessors, successors, and certain related parties, for the claims brought, or that could have been brought, in this suit.

- The average settlement payment is estimated to be $4,000 depending on the number of valid claims. You may receive a greater or lesser payment amount depending on how much milk you produced and pooled in Order 1. You must have submitted a claim in 2014 or do so now to get a payment.

- If you received this notice in the mail, records indicate that you produced milk in the Northeast between January 1, 2002 and December 31, 2014 and may be eligible to receive a payment from the proposed settlement.

- The Court in charge of this case still has to decide whether to approve the proposed settlement. The Court will consider the reaction of the Subclass members as one

factor in determining whether to approve the settlement. Payments will only be made if the Court approves the settlement and after any appeals are resolved.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive a cash payment.<br><br>IF YOU SUBMITTED A CLAIM IN 2014, AND WISH TO RECEIVE PAYMENT NOW, YOU DO **NOT** NEED TO SUBMIT ANOTHER CLAIM. |
| **EXCLUDE YOURSELF (OPT OUT)** | Get no payment from the settlement. This is the only option that allows you to start (or remain part of) any other lawsuit against DFA or DMS about the legal claims in this case. |
| **SUPPORT OR OBJECT** | Write to the Court about your opinion of the settlement. The Court will consider the reaction of the Subclass members in deciding whether to approve the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **IF YOU SUBMITTED A CLAIM IN 2014, DO NOTHING NOW** | If the settlement is approved, you will receive a cash payment and give up your rights to sue DFA and DMS about the legal claims in this case. |
| **IF YOU DID NOT SUBMIT A CLAIM IN 2014, DO NOTHING NOW** | Get no payment from the settlement. Give up your rights to sue DFA and DMS about the legal claims in the case. |
| **OPT-IN TO THE SETTLEMENT** | If you previously asked to be excluded from the Subclass, you may now ask the Court to reinstate you as a member of the Subclass for purposes of the settlement with DFA/DMS. |

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**……………………………………………………………………………**Page 5**

    1. Why was this notice issued?
    2. Why is this a class action?
    3. Who are the Defendants?
    4. What is this lawsuit about?
    5. Why is there a settlement with DFA and DMS?
    6. What happened to the prior 2014 settlement with DFA and DMS?

**WHO IS IN THE SETTLEMENT CLASS**………………………………………………………**Page 7**

    7. How do I know if I'm part of the settlement?
    8. Are there any exceptions to being included?
    9. If I previously asked to be excluded from the Subclass, can I change my mind now?
    10. If I previously did not ask to be excluded from the Subclass, can I change my mind now?
    11. I'm still not sure if I'm included.

**SETTLEMENT BENEFITS**……………………………………………………………………**Page 8**

    12. What does the settlement provide?
    13. How much money can I get from the settlement?
    14. How is this settlement different from the one in 2014?
    15. What am I giving up under the settlement?

**HOW TO GET A PAYMENT**…………………………………………………………………**Page 14**

    16. How can I get a payment?
    17. If I submitted a claim last year, do I need to submit another one now?
    18. When will I get my payment?
    19. Can I submit a claim even if I oppose the settlement?
    20. Can I submit a claim even if I exclude myself (or opt out) from the settlement?

**THE LAWYERS REPRESENTING YOU**……………………………………………………**Page 15**

    21. Do I have a lawyer in the case?
    22. How will the Plaintiffs' lawyers be paid?
    23. What are Incentive Fees for the Subclass Representatives?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**………………………………………**Page 16**

    24. If I exclude myself, can I get anything from the settlement?
    25. If I do not exclude myself, can I sue later?
    26. How do I get out of the settlement?

**SUPPORTING OR OBJECTING TO THE SETTLEMENT**....................................................**Page 17**

    27. How do I tell the Court that I like or support the settlement?
    28. How do I tell the Court that I don't like or object to the settlement?
    29. Can I receive a payment even if I object?

**THE COURT'S FAIRNESS HEARING**.......................................................................**Page 19**

    30. When and where will the Court decide whether to approve the settlement?
    31. Do I have to come to the hearing?
    32. May I speak at the hearing?

**IF YOU DO NOTHING**.............................................................................................**Page 20**

    33. What happens if I do nothing at all?

**GETTING MORE INFORMATION**...............................................................................**Page 20**

    34. How do I get more information?

## BASIC INFORMATION

| 1.  Why was this notice issued? |
|---|

A Court authorized this Notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to approve the settlement.  This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for those benefits, and how to get them.

Judge Christina Reiss, of the United States District Court for the District of Vermont, is currently overseeing this case.   The case is known as *Allen v. Dairy Farmers of America, Inc.*, No. 5:09-CV-230.  The people who sued are called the Plaintiffs and the people and companies they sued are called the Defendants (*see* Question 3 below).

A new settlement between the Plaintiffs and Defendants DFA and DMS has been reached since you received notice of a previous settlement in December 2014.  The new settlement includes changes that are described in more detail below.

This settlement is separate from a prior settlement with Dean Foods Company.  Even if you previously participated in the settlement with Dean Foods, you have separate legal rights and options in this settlement with DFA and DMS.

This Notice summarizes the new settlement.   To view the complete Settlement Agreement, visit www.NortheastDairyClass.com.

| 2.  Why is this a class action? |
|---|

You previously received a notice informing you that this lawsuit has been "certified" as a Class Action.   This means that the Court has found that the lawsuit meets the requirements for class actions and may proceed accordingly.   The Court has certified two "subclasses" which are described below.  If you are included in a Subclass, you have decisions to make now about whether to participate in this settlement.  This notice explains these decisions.

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims.  All these people are a class or class members, except for those who exclude themselves from the class.

In this case, the representative dairy farmers for the DFA/DMS subclass are Jonathan Haar, Claudia Haar Richard Swantak, Peter Southway, Marion Southway, Robert Fulper and Reynard Hunt.   The representative dairy farmers for the non-DFA/DMS subclass are Alice H. Allen, Laurence E. Allen, Garrett Sitts, Ralph Sitts, Stephen Taylor and Darrel Aubertine.

## 3.  Who are the Defendants?

This litigation is proceeding against two Defendants, Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS").   They are involved in the marketing, sale, purchase, and processing of Grade A milk produced by dairy farmers in the Northeast.

## 4.  What is this lawsuit about?

The lawsuit claims that Defendants and other co-conspirators (including previous Defendant Dean Foods) unlawfully conspired to monopolize and to eliminate competition for the marketing, sale, and purchase of raw Grade A milk in the Northeast and thereby suppressed prices lower than they would have been in a competitive market.   This lawsuit seeks to stop Defendants from engaging in the alleged unlawful conduct, to prohibit practices found to be unlawful, and to recover damages for the illegally suppressed prices for raw Grade A milk.   The Defendants deny that they did anything wrong or that they acted in a manner that harmed dairy farmers.   There has not yet been a determination as to whether Plaintiffs' claims are correct or Defendants have done anything wrong.

## 5.  Why is there a settlement with DFA and DMS?

The Court has not decided in favor of Plaintiffs or DFA and DMS.  The Plaintiffs think they could win against DFA and DMS at a trial.  DFA and DMS thinks the Plaintiffs would not win.  But there will be no trial against DFA and DMS.  Instead, Plaintiffs and DFA and DMS agreed to a settlement.  That way, they avoid the cost and delay of a trial and appeals, and Class Members will get the benefits of this settlement soon.

The Court previously appointed Counsel to represent each Subclass in this case. Based on an extensive investigation of the facts and the law relevant to the lawsuit, Counsel thinks the settlement is best for all Class Members.   Six of the Nine Subclass Representatives support the settlement.   Three of the Nine Subclass Representatives oppose the settlement.  The Subclass Representatives – as well as any other members of the Subclasses – will have an opportunity to explain why they support or oppose the settlement at the Fairness Hearing (*see* Questions 30-32 below).

## 6.  What happened to the prior 2014 settlement with DFA and DMS?

To take effect, class action settlements must be approved by the Court.  The Court did not approve the 2014 settlement with DFA and DMS.  A copy of the Court's Opinion and Order denying approval of that settlement is available at the settlement website.

WHO IS IN THE SETTLEMENT CLASS

**7.  How do I know if I'm part of the settlement?**

If you are a member of either of the two Subclasses certified by the Court – and have not excluded yourself – then you are a part of the settlement.  The Court has certified two groups or Subclasses:

**DFA/DMS Member Subclass**

- All dairy farmers (individuals or entities) who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are members of DFA or otherwise sell milk through DMS.

**Non-DFA/DMS Member Subclass**

- All dairy farmers (individuals or entities), who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, and who are not members of DFA and do not sell milk through DMS.

If there are multiple owners of your dairy farm, please forward this Notice to all of the owners.  If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please send your correct address to the Notice Administrator at the address in Question 34.

**8.  Are there any exceptions to being included?**

You are **not** part of the settlement if you excluded yourself from the Class in this litigation.

The following persons and entities are also excluded from the Settlement: the current and former officers and directors of DFA, DMS, Dean Foods, HP Hood LLC, National Dairy Holdings, Farmland Dairies LLC, Kraft, Dairylea Cooperative, Inc., St. Albans Cooperative Creamery, Inc., Agri-Mark, Inc., Land O'Lakes, Inc., and Maryland and Virginia Milk Producers Cooperative Association, Inc.  If you sold milk to or were a member of one or more of these entities, you are still eligible to participate in the lawsuit unless you were an officer or director of the entity.  If you hold some other position with any of these entities, but are not an officer or director, you are still eligible to participate in this lawsuit.

**9.  If I previously asked to be excluded from a Subclass, can I change my mind now?**

If you previously asked to be excluded from a Subclass in response to the Court's notice of class certification dated November 19, 2012, you may ask the Court to reinstate you as part of a Subclass for purposes of the settlement with the Settling Defendants.   You must deliver an application to Northeast Dairy Farmer Class

Reinstatements, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958 explaining your reasons for seeking reinstatement for purposes of the settlement with the Settling Defendants, so that it is **postmarked** no later than DATE.

If you are reinstated, you may be eligible for a payment from the settlement with Settling Defendants, provided you file a claim form as described below in Question 16.   In evaluating whether to pursue any individual claim, you should consult your own attorney.

**10.  If I previously did not ask to be excluded from the Subclass, can I change my mind now?**

Yes.  See Questions 24-26 regarding how to exclude yourself and how exclusion affects your rights.

**11.  I'm still not sure if I'm included.**

If you are still not sure whether you are included in the settlement class, you can ask for free help.

For more information, visit www.NortheastDairyClass.com, or call 1-855-460-1533, or write to Northeast Dairy Farmer Settlement, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958.

### SETTLEMENT BENEFITS

**12.  What does the Settlement provide?**

DFA and DMS have agreed to pay $50,000,000 into a Settlement Fund.   After deducting attorneys' fees, plus costs, expenses, and incentive fees for the dairy farmers who brought the lawsuit (*see* Questions 22 and 23), the net Settlement Fund will be distributed to members of the Subclasses who file valid claims.

In addition to the $50 million Settlement Fund, DFA and DMS have agreed to change their business practices in the following ways:

- **Farmer Ombudsperson:** a Farmer Ombudsperson will be created to advocate for farmers and promote fairness within DFA and DMS.

  - The Farmer Ombudsperson will listen to and investigate farmers' complaints and concerns.

  - The Farmer Ombudsperson will mediate disputes between farmers and DFA and DMS.

  - The Farmer Ombudsperson will have access to relevant records within DFA and DMS, will meet with a representative from the DFA and DMS

management team, and will be allowed to attend and participate in DFA Northeast Area Council Meetings.

- o The Farmer Ombudsperson will report on their activities to Subclass Members every six months.

- o DFA/DMS is required to pay the Farmer Ombudsperson an hourly fee, not to exceed a pre-determined amount identified in the settlement.

- **Advisory Council Member:** an Advisory Council Member position will be created to advocate for farmers within DFA and DMS and promote better pay prices, net income and enhanced equity for them.

  - o The Advisory Council Member can request a third-party review of DFA's and DMS's financial statements to be paid for by DFA and DMS, and hire experts. He or she shall have access to all DFA Northeast Area Council and DMS books and financial records

  - o The Advisory Council Member will be a non-voting member of DFA's Northeast Area Council, and shall be allowed to attend and participate in DFA Northeast Area Council and other key DFA meetings.

  - o The Advisory Council Member will report on their activities to Subclass Members every six months.

  - o DFA/DMS is required to pay the Advisory Council Member an hourly fee, not to exceed a pre-determined amount identified in the settlement.

- **Milk Testing:** DFA and DMS will adopt safeguards to increase fairness and transparency in milk testing.

  - o For the next ten years, DFA and DMS will not acquire a controlling interest in the milk testing company its farmers use, DairyOne, nor will DFA members hold a majority of seats on its board.

  - o For the next five years, any farmer in Order 1 whose milk is tested by DairyOne and who disputes the accuracy of the test result may require a split sample procedure three times a year at no cost to the farmer and in which the dairy farmer observes the collection and sealing of a sample to be tested at two independent, certified labs selected by the farmer in addition to DairyOne. If the split sample fails to confirm the original test result within a reasonable level of error, the appropriate adjustments to the farmer's milk check will be made and information regarding the labs' differing results submitted to the Market Administrator.

  - o Additional farmer concerns regarding milk testing accuracy may be raised with the Farmer Ombudsperson who shall attempt to mediate any disputes.

  - o DFA/DMS shall provide the Farmer Ombudsperson with an annual report identifying any discrepancies found between milk test results at DairyOne and those from other certified laboratories.

- **Adulterated Milk:** DFA and DMS will adopt safeguards to ensure accurate reporting of adulterated milk testing results.

  - For the next five years, any farmer in Order 1 whose milk is found to be adulterated by a processing plant, DFA/DMS will notify the affected farmer within 3 hours of receiving the result.  DFA/DMS will request that the processing plant keep any remaining milk samples and, at the farmer's request, have the remaining samples tested at an independent laboratory.

  - If an independent laboratory confirms the processing plant's testing results, then the farmer will be responsible for covering the costs of the adulterated milk.  If the independent laboratory cannot confirm the processing plant's testing results, then the farmer will not be required to cover the costs of the adulterated milk.

  - Farmers may bring any concerns related to adulterated milk to the Farmer Ombudsperson who can attempt to mediate any dispute.

- **Limits on Full-Supply Agreements:**

  - DFA and DMS will not enter into any new full-supply agreements for the sale of raw Grade A milk in Order 1 for four years after final approval of the settlement, except in limited circumstances and that certain existing agreements may be renewed.

  - Any new supply agreements of any type, or the renewal of existing full supply or other agreements, shall be presented, reviewed, and approved by the DFA and/or DMS Board of Directors prior to entering or renewing the agreements.

  - Upon written request by any of their respective farmers in Order 1, DFA and DMS agree to disclose to that member a summary of the terms of any DFA or DMS agreement for the supply or sale of raw Grade A milk to customers in Order 1, to the extent the contracts so permit.

- **Farmers', Affiliates' and Cooperatives' Right to Terminate:** Any cooperative member, affiliate, or associate of DFA or DMS in Order 1 may, during the four years following final approval of the settlement, terminate its relationship with DFA or DMS upon no more than ninety (90) days written notice without penalty.

- **Protections Against Termination:** DFA's and DMS's ability to end Subclass members' milk contracts will be limited in the following ways:

  - If DFA/DMS decide not to renew a Subclass Member's milk marketing arrangement due to lack of demand for milk, DFA/DMS will provide the Subclass Member 30 days' advanced notice, and, at the terminated Subclass member's request, continue to market their milk for a period of six months.

  - If DFA/DMS terminates a Subclass member's marketing arrangement for cause, DFA/DMS will provide at least 30 days' advanced written notice of the decision along with a reasonable opportunity to cure the reason for termination.  The terminated Subclass member may dispute the reason for termination.  If the Subclass member disputes the basis for termination, the

Northeast Area Counsel or DMS Board of Directors will review the decision and, at the farmer's discretion, the Farmer Ombudsperson may be asked to mediate the dispute.

- **Farmer Solicitation:** DFA and DMS will not enter any agreement to restrict solicitation of raw Grade A milk from farmers including any agreement that would limit the ability of any cooperative to approach farmers and offer them more favorable prices, services, or other terms.

- **Unsealing and Release of DFA and DMS Documents:** DFA and DMS agree not to oppose a request by Subclass Counsel to unseal and release certain of their previously confidential materials that were submitted to the Court during this case.

- **Required Financial Disclosures:**

    - DFA will prepare financial reports in accordance with generally accepted accounting principles and DFA will be audited by a nationally-recognized accounting firm.

    - DFA senior management and Audit Committee members will affirmatively represent they are responsible for the preparation, integrity and accuracy of DFA's annual financial report.

    - DFA will post on its member-only website an annual disclosure of all material related-party transactions, specifically broken out and identified by transaction.

    - At its annual meeting, DFA will disclose to its delegates all material related-party transactions as well as DFA's financial results from its participation in joint ventures and off-balance sheet transactions, specifically broken out and identified by transaction.

    - DFA will disclose the identity of the members of its board of directors and its committees and their generally applicable *per diem* payment rate compensation.

    - DFA senior executive management and board members will execute annual conflict of interest certifications, which will be subject to review by DFA's Audit Committee and a report by the Committee at DFA's annual meeting.

- **Block Voting:** if DFA decides to vote its cooperative as a vote, it will tell DFA members about this decision and provide DFA members with an individual ballot so that they may vote against the block.

- **Milk Check Review:** DFA's Northeast Area Council ("NEAC") will undertake a careful review of:

    - (1) members' milk checks in order to determine whether changes in the milk checks are warranted to improve their clarity or transparency; and

    - (2) the election procedure by which Area Council members and delegates are chosen, including specifically whether the membership should be able to cast ballots by mail.

- o   Changes recommended by the NEAC will be implemented.
- **Retaliation:** DFA/DMS will not discriminate or retaliate against Subclass Representatives or Subclass Members for participation in the litigation, expressing support or opposition to the settlement or ceasing marketing their milk with DFA/DMS.
- **Monitoring Compliance:** an Audit Committee of seven DFA members plus two independent advisors with expertise in accounting, financial reporting, and auditing matters will be charged with monitoring compliance with the settlement and reporting its views to the delegates at the DFA annual meeting.

The Settlement Agreement, which is attached to this notice and also available at the website, contains more details about the settlement with DFA and DMS.

## 13.  How much money can I get from the settlement?

The amount of money you may receive cannot be calculated at this time.  Your share will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to December 31, 2014 as well as the number of valid claims that are received and the attorneys' fees, incentive fees for the Subclass Representatives, costs, and expenses approved by the Court.

We don't know how many people will file claims.  However, if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be $4,000.  Your payment could be more or less than $4,000 depending on the amount of raw Grade A milk you produced and pooled on Order 1.

## 14.  How is this new settlement different from the one in 2014?

Some parts of this new settlement are the same as the previous settlement in 2014. For example, the monetary payment for the settlement is the same.  Other parts of this settlement are different from the previous settlement.

DFA and DMS have agreed to change additional business practices.  The following changes were not included in the 2014 settlement:

- Farmer Ombudsperson
- Advisory Council Member
- Milk Testing Provisions
- Adulterated Milk Provisions
- Protections Against Termination
- Block Voting Limitations

Some of the changes to DFA's and DMS's business practices that were included in the previous settlement have been enhanced:

- The period during which DFA/DMS is limited from entering new full supply agreements has been extended to four years following final approval of the settlement.

- Protections for Subclass members and the Subclass Representatives have been supplemented.

- The Audit Committee created to monitor DFA's and DMS's compliance with the settlement will include at least two independent advisors with expertise in accounting, financial reporting, and auditing.

Additional procedural protections have been included for Subclass Members:

- Subclass members who wish to continue or bring their own suit against DFA or DMS based on the legal claims in this case will have the opportunity to exclude themselves (or "opt out") from this settlement so that they may do so;

- The release of claims has been revised to make clear that it is limited to claims that were or could have been asserted "arising out of the conduct" alleged in the complaint.  The release is described more fully in Question 15.

- "Released Parties" has been narrowed to exclude, for example, Defendants' affiliates, partners, certain representatives, and those entities in which they have an ownership interest.

## 15.  What am I giving up under the settlement?

In exchange for the Settlement Benefits explained above, you and other members of the Subclasses give up the right to continue this lawsuit against DFA or DMS.

You also give up the right to sue DFA and DMS, as well as their predecessors, successors, and certain related parties, for legal claims that are related to the facts or circumstances of this case including any lawsuit against DFA, DMS, or their related entities regarding the sale, marketing, or purchase, of raw Grade A Milk produced in and pooled on Federal Milk Marketing Order 1.

Giving up the right to sue DFA, DMS, and their predecessors, successors, and certain related entities is called a "Release of Claims."  The "Release of Claims" is described more fully in the Settlement Agreement.  The Settlement Agreement is attached here and available at www.NortheastDairyClass.com.

You should carefully review a full copy of the Release of Claims to make sure you understand what you are giving up.  As stated above, the Release extends beyond DFA and DMS to certain related entities and extends beyond the legal claims in this lawsuit. You may seek legal advice if you have any questions regarding the Release of Claims.

**HOW TO GET A PAYMENT**

| **16.  How can I get a payment?** |
|---|

**If you already submitted a claim in the 2014 DFA/DMS settlement, and wish to receive payment from this settlement, you do not need to submit a new claim.**

If you did not submit a claim in the 2014 DFA/DMS settlement, and wish to ask for a payment now, complete and submit a Claim Form.  A Claim Form is enclosed with this Notice.  Claim Forms are also available at www.NortheastDairyClass.com or by calling 1-855-460-1533. Please read the instructions carefully, fill out the Claim Form and provide the required information.  Your handler or cooperative will likely be able to provide information on the total number of pounds of raw Grade A milk that your farm produced and pooled in Order from January 1, 2002 until December 31, 2014.

You must mail the Claim Form postmarked no later than DATE, to:

Northeast Dairy Farmer Settlement with DFA/DMS
c/o Rust Consulting, Inc.
PO Box 2958
Faribault, MN 55021-2958

| **17.  If I submitted a claim last year, do I need to submit another one now?** |
|---|

No.  If you already submitted a claim in the 2014 DFA/DMS settlement, and wish to receive payment from this settlement, you do not need to submit a new claim.

| **18.  When will I get my payment?** |
|---|

Payments will be mailed to Subclass Members who send in valid Claim Forms on time, after the Court grants "final approval" to the settlement and after any appeals are resolved. If the Court approves the settlement after a hearing on DATE, there may be appeals. It's always uncertain when any appeals will be resolved, and resolving them can take time.

| **19.  Can I submit a claim even if I oppose the proposed settlement?** |
|---|

Yes.  You have the right to oppose the settlement or any part of the settlement even if you submit a claim.  To learn more about your right to object to the settlement, see Questions 28 and 29.

**20.  Can I submit a claim even if I exclude myself (or opt out) from the proposed settlement?**

No.  If you exclude yourself (or opt out) from the Subclasses you cannot submit a claim and receive payment as part of this settlement.


THE LAWYERS REPRESENTING YOU

**21.  Do I have a lawyer in the case?**

Yes.  The Court has appointed the following firms as counsel for the Subclasses:

| DFA/DMS MEMBER SUBCLASS | NON-DFA/DMS MEMBER SUBCLASS |
|---|---|
| Kit A. Pierson, Esq.<br>Benjamin D. Brown, Esq.<br>Brent W. Johnson, Esq.<br>Emmy L. Levens, Esq.<br>Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue, NW<br>Suite 500<br>Washington, DC 20005<br>Tel: (202) 408-4600 | Robert G. Abrams, Esq.<br>Gregory J. Commins, Jr., Esq.<br>Robert J. Brookhiser, Esq.<br>Danyll W. Foix, Esq.<br>Baker Hostetler LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Avenue, NW<br>Washington, DC  20036-5304<br>Tel: (202) 861-1500 |
| Andrew D. Manitsky, Esq.<br>Lynn, Lynn, Blackman & Manitsky, P.C.<br>76 St. Paul Street, Suite 400<br>Burlington, VT 05401<br>Tel: (802) 860-1500 | Daniel Smith, Esq.<br>16 State St.<br>PO Box 801<br>Montpelier, VT 05601<br>Tel:  (802) 229-6661 |
| David A. Balto<br>The Law Offices of David A, Balto<br>1350 I Street, N.W., Suite 850<br>Washington, DC 20005<br>Tel: (202)-789-5424 | Richard T. Cassidy, Esq.,<br>Hoff Curtis, P.C.<br>100 Main St,<br>Burlington, VT 05401<br>Tel:  (802) 316-4962 |
|  | Emily J. Joselson, Esq.<br>Lisa B. Shelkrot, Esq.<br>Langrock Sperry & Wool, LLP<br>210 College Street,<br>PO Box 721<br>Burlington, VT 05402-0721<br>Tel: (802) 864-0217 |

You will not be charged for these lawyers.  If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

### 22.  How will the Plaintiffs' lawyers be paid?

Subclass Counsel will ask the Court for attorneys' fees of $16.66 million or one-third the Settlement Fund plus the payment of costs and expenses incurred in connection with the case.  Subclass Counsel's applications for attorneys' fees, costs, and expenses will be filed with the Court by DATE, and posted on the settlement website.

The Court may award less than these amounts. Payments approved by the Court will be made from the Settlement Fund.

### 23.  What are Incentive Fees for the Subclass Representatives?

Incentive fees provide money to the dairy farmers who brought this suit and have served as Subclass Representatives.  These fees (sometimes referred to as plaintiff incentive awards) provide payments to the Subclass Representatives for their work in representing the interests of the Subclasses throughout the course of this litigation.  The representatives for the DFA/DMS subclass are Jonathan and Claudia Haar, Richard Swantak, Peter and Marion Southway, Robert Fulper, and Reynard Hunt.   The representative dairy farmers for the non-DFA/DMS subclass are Alice and Laurence Allen, Garrett and Ralph Sitts, Stephen Taylor, and Darrel Aubertine.

Subclass Counsel will request incentive fees of up to $20,000 to each of the Subclass Representatives' farms.  Applications for incentive payments will be filed along with Subclass Counsel's application for fees and expenses by DATE, and posted on the settlement website.

The Court may award less than these amounts. Payments approved by the Court will be made from the Settlement Fund.

#### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to participate in this settlement and you want to keep the right to sue DFA and DMS about the legal issues in this case, then you must take steps to get out of the settlement. This is called asking to be excluded from or sometimes called "opting out" of the Subclasses.

### 24.  If I exclude myself, can I get anything from the settlement?

No. If you exclude yourself, you may not apply for any benefits under the settlement and you cannot object to the proposed settlement. However, if you ask to be excluded, you may sue, or continue to sue, DFA and DMS about the claims in this lawsuit.

## 25.  If I do not exclude myself, can I sue later?

No. Unless you exclude yourself, you give up the right to sue DFA or DMS for all of the claims that this proposed settlement resolves and others that could have been asserted based on the conduct in the Complaint in this case. You must exclude yourself from the Subclass to start your own lawsuit, continue with a lawsuit, or be part of any other lawsuit against DFA or DMS relating to the "Released Claims" described in Section 1.16 of the Settlement Agreement.

## 26.  How do I get out of the settlement?

To exclude yourself from the proposed settlement, you must send a letter by mail clearly stating the following:

- Your name, address, and telephone number,
- The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- A clear statement that you would like to be excluded, and
- Your signature.

You must mail your request for exclusion postmarked by **DATE** to:

Northeast Dairy Farmer Settlement with DFA/DMS
c/o Rust Consulting, Inc.
PO Box 2958
Faribault, MN 55021-2958

You cannot ask to be excluded on the phone, by email, or at the website.

SUPPORTING OR OBJECTING TO THE SETTLEMENT

You may express support for or objection to the settlement, and the Court will take into account the views of Subclass Members in deciding whether to approve the settlement.

## 27.  How do I tell the Court that I like or support the settlement?

If you are a Subclass Member, you can send a letter to the Court expressing your support of the settlement. Your letter must also include the following:

- Your name, address, and telephone number,
- The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- A brief statement regarding your milk sales and any cooperative status or affiliation,
- The specific reasons you support to the settlement, and
- Your signature.

Your letter of support, along with any supporting material you wish to submit, must be mailed and postmarked no later than DATE, to the following four addresses:

| Court | Subclass Counsel | Defense Counsel |
|---|---|---|
| United States District Court for the District of Vermont 11 Elmwood Avenue, Burlington, VT 05401, | Brent W. Johnson Cohen Milstein Sellers & Toll PLLC 1100 New York Avenue, NW Suite 500 Washington, DC 20005 Robert G. Abrams, Esq. Baker Hostetler LLP Washington Square, Suite 1100 1050 Connecticut Avenue, NW Washington, DC  20036-5304 | Steven R. Kuney, Esq. Williams & Connolly LLP 725 Twelfth Street, N.W. Washington, DC 20005 |

## 28.  How do I tell the Court that I don't like or object to the settlement?

If you are a Subclass Member, you can object to the settlement or to Subclass Counsel's requests for fees, expenses, and incentive fees for the Subclass Representatives. To object, you must send a letter saying that you object. Your letter must also include the following:

- Your name, address, and telephone number,
- The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- A brief statement regarding your milk sales and any cooperative status or affiliation,
- The specific reasons you object to the settlement, and
- Your signature.

Your letter of objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than DATE, to the four addresses in Question 27.

## 29.  Can I receive a payment even if I object?

Yes.  You can submit a claim and receive your share of the settlement even if you object to the settlement.  If you want to receive your share of the settlement (and you have not already submitted a claim for the 2014 settlement), you must submit a claim by DATE.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement and any requests for attorneys' fees, expenses, and incentive payments for the Subclass Representatives. You may attend and you may ask to speak, but you don't have to.

### 30.  When and where will the Court decide whether to approve the settlement?

The Court will hold a hearing beginning at TIME on DATE, at the United States District Court for the District of Vermont, 11 Elmwood Avenue, Burlington, VT 05401, in Courtroom 542.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NortheastDairyClass.com.  At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will consider both support for and objections to the Settlement. The Court may listen to people who asked to speak at the hearing.

After the hearing, the Court will decide whether to approve the Settlement, and if so, how much to pay the attorneys for the Subclasses and whether to provide incentive payments for the Subclass Representatives.  We do not know how long these decisions will take.

### 31.  Do I have to come to the hearing?

No.  Subclass Counsel will answer any questions Judge Reiss may have.  But you are welcome to attend the hearing at your own expense.  If you send a written letter or support or objection, you do not have to come to the Court to discuss it.  As long as you mailed your letter on time, following the instructions in this Notice, the Court will consider it. You may also pay your own lawyer to attend, if you wish, but it's not necessary.

### 32.  May I speak at the hearing?

Yes.  You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear at the Fairness Hearing."  Be sure to include the following information:

- Your name, address, and telephone number,
- The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- A brief statement regarding your milk sales and any cooperative status or affiliation,
- The specific reasons you wish to speak regarding the settlement; and
- Your signature.

You must mail your Notice of Intention to Appear, postmarked no later than DATE, to the four addresses in Question 27.

**IF YOU DO NOTHING**

| 33.  What happens if I do nothing at all? |
|---|

If you underlined submitted a claim in the previous 2014 DFA/DMS settlement, and do nothing now, you will receive a payment.  You will give up the right to sue DFA or DMS for all of the claims that this proposed settlement resolves and others that could have been asserted based on the conduct in the Complaint in this case.

If you did not submit a claim in the previous 2014 DFA/DMS Settlement, and do nothing now, you will not get a payment from the settlement.  You will give up the right to sue DFA or DMS for all of the claims that this proposed settlement resolves and others that could have been asserted based on the conduct in the Complaint in this case.

**GETTING MORE INFORMATION**

| 34.  How do I get more information? |
|---|

This notice summarizes the lawsuit.  You can get more information and important court documents at www.NortheastDairyClass.com or by calling 1-855-460-1533.  You may also write with questions to: Northeast Dairy Farmer Settlement, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN  55021-2958.