UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 FEB -8 PM 4:51

CLERK

BY_____
DEPUTY CLERK

ALICE H. ALLEN, LAURANCE E. ALLEN, )
d/b/a Al-lens Farm, GARRET SITTS, RALPH )
SITTS, JONATHAN HAAR, CLAUDIA HAAR, )
RICHARD SWANTAK, PETER SOUTHWAY, )
MARILYN SOUTHWAY, REYNARD HUNT, )
ROBERT FULPER, STEPHEN H. TAYLOR, )
and DARREL J. AUBERTINE, on behalf of )
themselves and all others similarly situated, )
                                        )
                 Plaintiffs, )
                                        )
              v. )   Case No. 5:09-cv-230
                                        )
DAIRY FARMERS OF AMERICA, INC. and )
DAIRY MARKETING SERVICES, LLC, )
                                        )
                 Defendants. )

**ORDER GRANTING DAIRY FARMER SUBCLASSES' MOTION FOR
PRELIMINARY APPROVAL OF DECEMBER 2015 SETTLEMENT WITH
DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND
DAIRY MARKETING SERVICES, LLC**
(Doc. 712)

Pending before the court is Dairy Farmer Subclasses' Motion for Preliminary Approval of December 2015 Settlement with Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (Doc. 712). The December 2015 Settlement Agreement (the "2015 Settlement Agreement"), if approved, will resolve litigation that has been pending for over six years.

This class action arises out of Plaintiffs' allegations that Defendants DFA and DMS engaged in a wide-ranging conspiracy to control the supply of raw Grade A milk in Order 1, which had the effect of suppressing certain premiums paid to dairy farmers for

their milk.[1] The court has certified a class consisting of all dairy farmers, whether individuals, entities, or members of cooperatives, who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present. This class is comprised of two certified Subclasses.[2] After an adjudication of Defendants' motion for summary judgment, which the court granted in part and denied in part, the parties reached a settlement agreement on July 1, 2014 (the "2014 Settlement"). On March 31, 2015, the court denied final approval of the 2014 Settlement. The parties subsequently continued negotiations, which have resulted in the 2015 Settlement Agreement now before the court.

In determining whether to grant preliminary approval, the court starts with the proposition that "there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). Preliminary approval is the first step in a multi-step process during which the 2015 Settlement Agreement will be scrutinized by both the court and class members. *See* Fed. R. Civ. P. 23(e). "Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (quoting *In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d

---

[1] At the outset of this case, Dean Foods Company was an additional defendant. However, Plaintiffs and Dean Foods Company reached a settlement, for which the court granted final approval on August 3, 2011.

[2] The court has certified the following two Subclasses:

1. All dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are members of DFA or otherwise sell milk through DMS ("DFA/DMS [S]ubclass"); and

2. All dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are not members of DFA and do not otherwise sell milk through DMS ("non-DFA/DMS [S]ubclass").

(Doc. 435 at 3-4).

Cir. 1980)). After granting preliminary approval, the court may still reject a settlement in the event it determines that the settlement is not "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

For purposes of preliminary approval, the court finds that the 2015 Settlement Agreement was reached as a result of non-collusive, arms-length negotiations that involved experienced attorneys and thirteen Subclass Representatives, all of whom are familiar with the facts and legal theories at issue in this complex litigation. *See, e.g., Davis v. Cent. Vt. Pub. Serv. Corp.*, 2012 WL 1202135, at *3 (D. Vt. Apr. 10, 2012) ("Preliminary approval is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies[,] . . . and where the settlement appears to fall within the range of possible approval.") (internal quotation marks omitted).

The 2015 Settlement Agreement proposes injunctive relief that is more extensive than the injunctive relief proposed in the parties' 2014 Settlement. Among other things, the 2015 Settlement Agreement provides for:

- the establishment of a Farmer Ombudsperson position within DFA and DMS for five years;
- the establishment of an Advisory Council position within DFA and DMS for four years;
- certain safeguards for milk testing and adulterated milk testing for five years;
- limits on DFA's and DMS's ability to acquire a controlling interest in DairyOne, a milk testing company, for ten years;
- restrictions on the entry and renewal of full-supply agreements;
- the ability for cooperatives to terminate their relationship with DFA or DMS during the next four years;
- limits on DFA's and DMS's ability to terminate Subclass members' milk contracts;
- the prohibition of DFA and DMS from entering into any agreement that restricts the solicitation of raw Grade A milk from farmers;

3

- the ability of Subclass Counsel to seek, without opposition, the unsealing and release of previously confidential documents that were submitted to the court during this case;
- certain required financial and management disclosures by DFA and DMS;
- notice and procedure requirements if DFA decides to vote its members as a block;
- a milk check review by DFA's Northeast Area Council;
- the maintenance of DFA's and DMS's ongoing antitrust compliance programs;
- protections against retaliation and discrimination for Subclass members;
- a procedure for monitoring compliance with the 2015 Settlement Agreement; and
- the opportunity for Subclass members to opt out of the 2015 Settlement Agreement, which will permit them to be excluded from the release of claims against DFA, DMS, and certain related entities, and will entitle them to pursue independent claims against DFA and DMS if they so choose.

The 2015 Settlement Agreement contemplates monetary relief in the form of a settlement payment of $50 million. Subclass Counsel has requested an attorney's fees award of approximately $16.6 million, plus expenses, to be deducted from the settlement payment. The 2015 Settlement Agreement requests incentive payments to Subclass Representatives. Subclass Counsel proposes to request up to $20,000 in incentive payments for each Subclass Representative dairy farm.

The 2015 Settlement Agreement provides for the release of certain claims. Subclass members who do not opt out will be prohibited from continuing this lawsuit against DFA or DMS and from initiating litigation that "aris[es] out of the conduct" alleged in the instant action. (Doc. 712-2 at 5, ¶ 1.16.) In contrast to 2014 Settlement, the 2015 Settlement Agreement narrows the category of "Released Parties" to "Settling Defendants, their predecessors, successors, subsidiaries, insurers, members, owners, attorneys, and any and all past and present officers, directors, employees, managing agents, and controlling persons of such entities, but not any other Defendant." *Id.* at 6, ¶ 1.17.

Upon consideration of the pending motion, it is hereby ORDERED as follows:

4

## PRELIMINARY APPROVAL

1. The Motion is GRANTED, and the 2015 Settlement Agreement between the DFA/DMS and Non-DFA/DMS Subclass, and Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC ("Settling Defendants") (Doc. 712-2) is PRELIMINARILY APPROVED. Final approval is subject to proper notice and a Fairness Hearing where any objections will be heard.

## NOTICE AND SUMMARY NOTICE

2. The court ORDERS the following changes to the proposed Notice of Proposed Settlement ("Notice") (Doc. 712-5) and Summary Notice of Proposed Settlement ("Summary Notice") (Doc. 712-6):

   a. On the second page of the Notice, (Doc. 712-5 at 3), the Notice must clarify that an application for reinstatement is not submitted to the court, and that reinstated Subclass members must submit a claim if they wish to receive payment. *See* Appendix to this Order at 1.

   b. On the seventh and eighth pages of the Notice (Doc. 712-5 at 8-9), the Notice must explain the process for opting back in to the 2015 Settlement Agreement. *See* Appendix to this Order at 2-3.

   c. On the eighth and ninth pages of the Notice, (Doc. 712-5 at 9-10), the Notice must provide that the Farmer Ombudsperson position will exist for five years, and that the Advisory Council Member position will exist for four years. *See* Appendix to this Order at 3-4.

   d. On the seventeenth, eighteenth, and nineteenth pages of the Notice, (Doc. 712-5 at 18-20), the Notice must require Subclass members to submit a signed letter bearing the case caption, their name and address, and the date when seeking to opt out, submit written objections or support, or appear at the Fairness Hearing. *See* Appendix to this Order at 5-7.

   e. The Summary Notice, (Doc. 712-6 at 2), must explain that if the 2015 Settlement Agreement is approved by the court, Subclass members who opt out will not be bound by the release of claims or precluded from initiating lawsuits against DFA, DMS, or certain related entities. *See* Appendix to this Order at 8.

3. With the modifications required herein, the court APPROVES the proposed form, content, and method of delivery of the Notice (Doc. 712-5) and Summary Notice (Doc. 712-6). The Notice and Summary Notice are written in plain language and clearly

5

and conspicuously notify Subclass members of the nature of the litigation, the definition of the class certified, the class claims and issues, the contents of the 2015 Settlement Agreement, and the class members' rights to object, appear before the court, and be represented by counsel.

4. The Notice and Summary Notice advise Subclass members how they may obtain additional information, what they must do to exercise their rights, how to opt out of the 2015 Settlement Agreement, and what will happen if they do nothing. The Notice and Summary Notice also advise them of further court proceedings with regards to the 2015 Settlement Agreement, including the date, time, and location of the court's Fairness Hearing, and how they may participate in those proceedings.

5. For the foregoing reasons, the proposed Notice and Summary Notice satisfy Fed. R. Civ. P. 23 and the Due Process Clause of the United States Constitution. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005) ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. . . . [T]he settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member.") (citation and internal quotation marks omitted).

6. As soon as practicable after the date of this Order, the Notice shall be mailed by first class U.S. Mail, postage prepaid, to all potential members of the Subclasses whose identities and locations are reasonably ascertainable, which may be satisfied by sending the Notice to the addresses of potential Subclass members as maintained by the Federal Milk Market Administrator, plus any additional identified potential Subclass members. In addition, the Summary Notice shall be published as soon as practicable in at least two publications with circulations that are reasonably likely to include Subclass members. Subclass Counsel shall post the Motion, the 2015 Settlement Agreement, the Notice, and this Order on the class action website for this lawsuit maintained by the Claims Administrator.

6

## THE FAIRNESS HEARING

7. The court will convene a hearing (the "Fairness Hearing") ninety (90) days or more after entry of this Order, on Friday, May 13, 2016 at 10:00 a.m. for the court to consider (a) whether the 2015 Settlement Agreement should be finally approved as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23, and whether judgment should be entered dismissing the claims released in the 2015 Settlement Agreement on the merits and with prejudice; and (b) whether to approve any application by Subclass Counsel for awards of attorneys' fees, costs, and expenses, and/or for incentive awards for the Subclass Representatives. The Fairness Hearing may be continued without further notice to the Subclasses, however, notice of such continued hearing shall be made public through the court's website and docket entries in this case. Any Subclass member experiencing difficulty obtaining that information is directed to contact the clerk's office:

United States District Court for the District of Vermont
11 Elmwood Avenue, Room 506
Burlington, VT 05401
(802) 951-6301
www.vtd.uscourts.gov

## EXPRESSING OBJECTIONS TO OR SUPPORT FOR THE 2015 SETTLEMENT AGREEMENT

8. Any member of the Subclass who objects to or supports the 2015 Settlement Agreement may file a letter of objection or support, and/or appear and be heard at the Fairness Hearing. To express an opinion regarding the 2015 Settlement Agreement, the Subclass member must comply with the procedures set forth below.

## SPEAKING AT THE FAIRNESS HEARING

9. **Any Subclass member who follows the procedure set forth herein may appear and be heard at the Fairness Hearing. Failure to comply with this procedure will mean the Subclass member will not be permitted to speak at the Fairness Hearing.** A Subclass Member who wishes to be heard at the Fairness Hearing must send a letter requesting to appear at the Fairness Hearing to the clerk of the court, Subclass Counsel, and counsel for Settling Defendants at the addresses set forth in the

Notice at least fourteen (14) days prior to the Fairness Hearing. The letter must comply with the following requirements:

   a. It must provide the caption of this case: <u>Allen v. Dairy Farmers of America, Inc.</u>, No. 5:09-CV-230-CR.
   b. It must be entitled "Notice of Intent to Appear at the Fairness Hearing."
   c. It must identify the Subclass Member's name, address, and telephone number.
   d. It must identify the topics that the Subclass member intends to discuss.
   e. It must include the Subclass member's signature and the date.

### SUBMITTING WRITTEN OBJECTIONS OR SUPPORT FOR THE 2015 SETTLEMENT AGREEMENT

10. **Any Subclass member who follows the procedure set forth herein may submit written objection or support for the 2015 Settlement Agreement. Failure to comply with this procedure may preclude the court and the parties from considering the Subclass Member's opinion.** A Subclass member who wishes to submit their written opinion, whether against or in favor of the 2015 Settlement Agreement, must explain their opinion in a letter sent to the clerk of the court, Subclass Counsel, and counsel for Settling Defendants at the addresses provided in the Notice at least fourteen (14) days prior to the Fairness Hearing. The letter must comply with the following requirements:

   a. It must provide the caption of this case: <u>Allen v. Dairy Farmers of America, Inc.</u>, No. 5:09-CV-230-CR.
   b. It must be entitled either "Letter of Objection" or "Letter of Support."
   c. It must identify the Subclass Member's name, address, and telephone number.
   d. It must briefly explain the Subclass Member's opposition or support for the 2015 Settlement Agreement.
   e. It must include the Subclass member's signature and the date.

### OPTING OUT OF THE 2015 SETTLEMENT AGREEMENT

11. Any member of the Subclass who did not previously opt out of a Subclass, but wishes to be excluded from the 2015 Settlement Agreement, may opt out of it by

submitting a letter expressing such intent to the Claims Administrator at least twenty-one (21) days prior to the Fairness Hearing. This letter must be entitled "Opt-Out Letter." It must include the date, the caption of this case, as well as the Subclass member's name, address, and signature. It must also clearly state that the Subclass member is opting out of the 2015 Settlement Agreement, with language such as, "I am opting out of the 2015 Settlement Agreement."

## OPTING BACK IN TO THE SUBCLASSES

12.  Any person who timely requested exclusion from a Subclass may opt back in to that Subclass by submitting a letter indicating his or her request to be reinstated as a Subclass member for the purpose of participating in the 2015 Settlement Agreement. The letter must be sent to the Claims Administrator at the address provided in the Notice at least twenty-one (21) days prior to the Fairness Hearing. This letter must be entitled "Opt-In Letter." It must include the date, the caption of this case, as well as the Subclass member's name, address, and signature. It must also clearly state that the Subclass member is opting back in to the Subclass, with language such as, "I am opting back in to the Subclass." After applying for reinstatement, if the reinstated Subclass member seeks payment pursuant to the 2015 Settlement Agreement, they must also submit a claim form in accordance with the Submission of Claims provision herein.

## SUBMISSION OF CLAIMS

13.  **Subclass members who timely submitted an eligible claim in relation to the 2014 Settlement with DFA and DMS, and who wish to receive payment from the 2015 Settlement Agreement, do not need to submit a new claim form. Any Subclass member who did not timely submit an eligible claim in relation to the 2014 Settlement, and who wishes to be eligible for a payment as a result of the 2015 Settlement Agreement, must file a claim no later than fourteen (14) days before the Fairness Hearing.**

## SUBCLASS COUNSEL'S OBLIGATIONS

14. No later than forty-five (45) days after entry of this Order, Subclass Counsel shall file any motion for attorneys' fees, reimbursement of expenses, and incentive payments for Subclass Representatives.

15. No later than seven (7) business days prior to the Fairness Hearing, Subclass Counsel shall file with the court, and serve upon counsel for Settling Defendants, affidavits or declarations of the person under whose general direction the mailing of the Notice and the publication of the Summary Notice were made, showing that mailing and publication were made in accordance with this Order. Subclass Counsel shall also identify all requests to be reinstated to either of the Subclasses in this filing.

## THE SETTLEMENT FUND

16. The court APPROVES the establishment of the Settlement Fund, as set forth in Section 7 of the 2015 Settlement Agreement, as a "Qualified Settlement Fund" pursuant to Treas. Reg. § 1.468B-1. The court retains continuing jurisdiction over any issues regarding the formation or administration of the Settlement Fund. Subclass Counsel and their designees are authorized to use (i) up to $100,000 of the Settlement Fund to give notice of the 2015 Settlement Agreement to Subclass members and for settlement administration costs,[3] (ii) up to $10,000 for escrow agent costs, and (iii) any amount as is required to pay taxes on income earned on the Settlement Fund, with prior notice to Settling Defendants. No other disbursements shall be made from the Settlement Fund prior to the Effective Date, as defined in the 2015 Settlement Agreement, and thereafter only upon approval and order of the court.

17. Rust Consulting, Inc. is APPOINTED as Claims Administrator for purposes of notice and administration of the 2015 Settlement Agreement. JPMorgan

---

[3] The 2015 Settlement Agreement provides that "up to $250,000 of the Settlement Fund may be used to give notice of the Settlement to Subclass members and for settlement administration costs[.]" (Doc. 712-2 at 39, ¶ 8.6.) The Proposed Order, however, provides that "up to $100,000 of the Settlement Fund [may be used] to give notice of the Settlement to Subclass members and for settlement administration costs[.]" (Doc. 712-7 at 4-5, ¶ 15.)

10

Chase Bank, National Association shall serve as the escrow agent in connection with the Settlement Fund described in Section 7 of the 2015 Settlement Agreement.

## PROCEEDINGS ARE STAYED

18. All proceedings against Settling Defendants, except those proceedings provided for or required by the 2015 Settlement Agreement, are STAYED until further order of the court.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of February, 2016.

Christina Reiss, Chief Judge
United States District Court