# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

ALICE H. ALLEN, et al.,                              )
                                                     )
                    Plaintiffs,                      )
                                                     )
          v.                                         )  Case No. 5:09-cv-230
                                                     )
DAIRY FARMERS OF AMERICA, INC., and                  )
DAIRY MARKETING SERVICES, LLC,                       )
                                                     )
                    Defendants.                      )
_____)

**DECLARATION OF MATTHEW B. POTTER
REGARDING SETTLEMENT ADMINISTRATION**

I, Matthew B. Potter, declare as follows:

1.       I am an Executive Vice President for Rust Consulting, Inc. ("Rust Consulting") which serves as the Claims Administrator for the above-captioned action.  I was responsible for supervising the services provided by Rust Consulting for this matter.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would testify competently to the following facts.  My business address is 201 South Lyndale, Faribault, Minnesota 55021.  I am over twenty-one years of age, I have never been convicted of a felony and I am authorized to make this Affidavit on behalf of Rust Consulting and myself.

2.       Rust Consulting specializes in Class Action notification and claims administration, including telephone support and web-based support, direct mail services, claims processing, and settlement fund distribution.  Founded in 1976, Rust Consulting began its claims administration practice in 1989 and has extensive experience in Class Action matters, having provided services in Class Actions ranging in size from 100 to 100 million class members and has provided notification and/or claims administration services in more than 3,500 class action cases.

Declaration of Matthew B. Potter Regarding Settlement Administration

# ADMINISTRATION OF 2014 SETTLEMENT

## I. ENGAGEMENT

3. Rust Consulting was engaged by Cohen Milstein Sellers & Toll, PLLC and Baker Hostetler LLP to serve as the administrator for both the proposed 2014 settlement and the 2015 settlement now before the Court.

4. As Settlement Administrator for both settlements, Rust Consulting's responsibilities have included:

    i. Preparation and design of the claim form for the notice mailing, and design of the notification notice mailing.

    ii. Preparation, design and placement of the publish notice.

    iii. Preparation and hosting of a website (www.northeastdairyclass.com), which includes a summary of the Settlement, notice and claims documents, Settlement Court Documents, important dates and deadlines and answers to frequently asked questions.

    iv. Establishing a toll-free number (1-855-460-1533) for class members to call with questions. This number has included an introductory message including a short settlement summary, with an option to speak with a customer service representative for additional questions.

    v. Establishing an email address (info@northeastdairyclass.com) for potential class members to submit questions, and responding to questions submitted.

    vi. Receiving claim forms and other correspondence, including renting a post office box for this purpose.

    vii. Processing documents received, including sorting, date-stamping, and bar-coding into categories (claim forms, change-of-address notification, and general correspondence).

    viii. Scanning claim forms with supporting documentation for further review and processing.

Declaration of Matthew B. Potter Regarding Settlement Administration

ix.    Data-capture of information included in each claim form submission, including name, address, farm address, phone numbers, email addresses and total claim amount.

x.    Review and comparison of claim forms documentation with total claim amount submitted.

xi.    Curing deficient claims by mailing letters to potential class members requesting additional information needed (for example, signatures on claim forms, supporting documentation, etc.).

xii.    Project management, including communications with counsel throughout the administration, preparation of statistics, updating website information, and updating call center scripting for both automated messages and customer service representative scripts.

5.    On January 31, 2013, Rust Consulting obtained a mailing address of PO Box 2958, Faribault, MN 55021-2958 to receive claim forms and other correspondence.

6.    On or about December 12, 2014, Notice Packets containing the Notice, Claim Form, Cover Letter, and Envelope were sent to 8,859 prospective class members.

7.    In connection with the 2014 settlement, during 2015 and through February 8, 2016, at the direction of Class Counsel, Rust Consulting continued to provide administrative services to class members (answering questions, providing updates, etc.) and also continued to process claims after the 2014 Settlement was not approved, under the expectation that the claims provided by potential class members may be used for a future settlement.

## II.    INCOMING MAIL

8.    Rust performed the following activities:

a)    Sorted, date-stamped, and bar-coded incoming mail, separating it into Claim Forms and supporting documentation, administrative mail (including mail such as

3

Declaration of Matthew B. Potter Regarding Settlement Administration

requests for Claim Forms, change-of-address notification, or questions regarding the administration process);

b) Electronically scanned and appropriately flagged each Claim Form, cover letter, and supporting documentation, if provided, into the segregated claims database;

c) Entered the information from each Claim Form, including the names, addresses, farm addresses, phone numbers, email addresses and total claim amount, if applicable, for each claim into the segregated claims database; and

d) Stored all original Claim Forms and administrative mail in a secure location.

9. As of February 6, 2016, Rust Consulting had received 7,596 claim forms, which is an additional 46 claim forms since July 11, 2015, as reported in Rust Consulting's declaration dated August 3, 2015.

10. Between the initial mailing of notice for the 2014 settlement and February 6, 2016, Rust Consulting received 84 pieces of correspondence.

## III.   TOLL-FREE NUMBER

11. On January 31, 2013, Rust Consulting established a toll-free number, ("TFN") 1-855-460-1533 to receive calls regarding the class notice process and then used that number again for the 2014 settlement process. Beginning December 11, 2014, an automated Integrated Voice Response ("IVR") platform was setup for incoming callers to hear a brief summary of the 2014 settlement with an opportunity to speak with a customer service representative ("CSR") during the open hours of Monday through Friday from 8:00 am to 6:00 pm Eastern Standard Time.

12. Between the initial mailing of notice for the 2014 settlement and February 6, 2016, there were a total of 3,361 calls  made to the TFN with 2,235 connecting with a CSR and 668 requesting settlement documents be mailed.

Declaration of Matthew B. Potter Regarding Settlement Administration

## IV.    EMAIL ADDRESS

13.    On January 31, 2013, Rust Consulting established an email address info@northeastdairyclass.com for potential class members to make inquiries regarding the class notice process and then used that email address again for the 2014 settlement process.

14.    Between the initial mailing of notice for the 2014 settlement and February 6, 2016, there have been a total of 190 emails received with 45 requesting settlement documents be mailed.

15.    As of February 6, 2016, a total of 713 settlement documents have been mailed to fulfill requests received through telephone calls and emails.

## V.    WEBSITE

16.    On January 31, 2013, Rust Consulting reserved the website address, www.northeastdairyclass.com, to provide information to those seeking information about the Subclass certification and then used it again for the 2014 settlement process. The website was made available to the public for the settlement process on December 11, 2014.

17.    The website includes: (i) a summary of the Settlement; (ii) DFA/DMS Settlement Notice and Claims Documents (iii); DFA/DMS Settlement Court Documents; (iv) Other Court Documents; (v) Order 1 Farm Locations; (vi) Important Dates and Deadlines; (vii) Frequently asked Questions and other information related to the class action settlement.

18.    Between December 11, 2014 and February 6, 2016, there have been 14,037 unique visitors to the website.

## VI.    ADMINISTRATIVE COSTS

19.    Through January 31, 2016, Rust Consulting expended a total of approximately 950 hours on and incurred a total of $173,791.46 in fees and expenses for the above activities.

Declaration of Matthew B. Potter Regarding Settlement Administration

# ADMINISTRATION OF 2015 SETTLEMENT

## Forward from February 8, 2016 Order of Preliminary Approval of Settlement

20.     Rust Consulting communicated with Class Counsel after preliminary approval was received on February 8, 2016 for the December 2015 Settlement, and has continued with the responsibilities noted in paragraph 4 above for Settlement Administration.

## I.     NOTICE

21.     Attached as Exhibit A is the electronic document Rust Consulting prepared for the notification mailing for the 2015 Settlement. It was mailed to the Subclasses through a vendor for the Northeast Milk Market Administrator.

22.     The 2015 Settlement Long Form Notice and Claim Form were published to the Settlement website at www.northeastdairyclass.com on February 19, 2016.

23.     Rust Consulting caused the Short Form Notice to be published in the following publications on the following dates:

a)      *American Agriculturalist*, April 1, 2016;

b)      *Country Folks*, March 28, 2016;

c)      *Farming: The Journal of Northeast Agriculture,* April 1, 2016; and

d)      *Progressive Dairyman-East Region-All Herds,* March 12, 2016.

24.     The print publication implementation report is attached as Exhibit B and contains the publication name, unit type or size, the issue date, the date of the ad, the page number of the ad, and the image of the ad from the publication.

## II.     INCOMING MAIL AND CORRESPONDENCE

25.     PO Box 2958 continues to be open and available to receive claim forms and other correspondence from class members in connection with the 2015 settlement.

Declaration of Matthew B. Potter Regarding Settlement Administration

26.     As of May 5, 2016, Rust Consulting has processed and reviewed 425 claim forms from prospective class members since the notification mailing for the 2015 Settlement. These claim forms include duplicative and amended claims. Claim forms postmarked after April 29, 2016, will continue to be processed and marked as submitted after the deadline.

27.     As of May 5, 2016, one request to reinstate a claim and opt-in to the 2015 Settlement, which was postmarked by the April 22, 2016, deadline, has been received and processed.  In connection with the class certification notice provided to the litigation Subclasses, Rust Consulting had already received 936 requests to be excluded from the Subclasses prior to the 2015 settlement process.

28.     As of May 5, 2016, one timely request to withdraw an amended claim and retain the previous claim, which was postmarked by the April 22, 2016, deadline, has been received and processed.

29.     As of May 5, 2016, Rust Consulting has received 172 requests for exclusion from the 2015 Settlement postmarked on or before the April 22, 2016, deadline.

30.     Correspondence requesting an exclusion or reinstatement that is postmarked after the April 22, 2016, deadline will continue to be processed, reviewed and escalated as appropriate to Class Counsel.

## III.     TOLL-FREE NUMBER

31.     The toll-free number, ("TFN") 1-855-460-1533, continues to receive calls regarding the 2015 settlement, providing a brief summary of the settlement and the opportunity to speak with a customer service representative ("CSR") during the open hours of Monday through Friday from 8:00 am to 6:00 pm Eastern Standard Time.

32.     The scripts used in telephone recording prompts and information used by CSR's were revised with new information about the 2015 Settlement, such as the submission deadline for filing a claim, an exclusion, a letter of objection or support, or opting-in to the 2015 Settlement.

Declaration of Matthew B. Potter Regarding Settlement Administration

## IV.   EMAIL ADDRESS

33.    Inquiries about the 2015 Settlement via email at info@northeastdairyclass.com continue to be monitored and responded to in accordance with prepared responses to commonly asked questions and escalated to the Rust Consulting project team and Class Counsel, as needed.

34.    As of May 5, 2016, 84 email inquiries have been received and responded to by Rust Consulting regarding the 2015 Settlement.

## V.   WEBSITE

35.    The website, www.northeastdairyclass.com, was updated on February 19, 2016 and again on April 12, 2016, with 2015 Settlement updates and documents including: (i) a summary of the Settlement; (ii); DFA/DMS Settlement Notice and Claims Documents (iii); DFA/DMS Settlement Court Documents; (iv) Other Court Documents; (v) Order 1 Farm Locations; (vi) Important Dates and Deadlines; (vii) Frequently asked Questions; (viii) and other information related to the class action settlement.

36.    Prior 2014 Settlement documents are also still posted on the website.

37.    Between February 6, 2016 and May 5, 2016, there have been 9,380 unique visitors to the website.

## VI.   CLAIMS PROCESSING

38.    For the claims process:

   i.    Class Counsel informed Rust Consulting that claims submitted for the 2014 Settlement by class members would not need to be re-submitted by class members, and the notice provided to class members with the 2015 Settlement informed class members of this.  Rust Consulting confirmed to Class Counsel that claim forms already processed in 2015 would be able to be used for the 2015 Settlement.

   ii.    Rust Consulting has continued to receive, scan, process and review claim forms submitted subsequent to February 8, 2016.  Rust Consulting will categorize claims

Declaration of Matthew B. Potter Regarding Settlement Administration

as: 1) new claims (claims from potential class members that had not previously been received prior to February 8, 2016, or 2) duplicate claims.  New claims have been processed in the same manner claims received in 2015 were processed. Duplicate claims will be reviewed to determine if any differences in pounds of milk are reported, and at the direction of Class Counsel and if appropriate, Rust Consulting will use the higher reported amount for purposes of calculating an award for valid claims.

39.     Following the claims deadline and prior to an order of distribution, an audit will be conducted to:

iii.     Review "outlier" claims where the pounds of milk are significantly higher than the average claim;

iv.     Ensure each Claim that has been deemed ineligible in whole or in part was sent a Notice of Ineligibility and each Claim that has been deemed deficient was sent a Notice of Deficiency;

v.      Review all settlement documents to ensure that the claims administrative process was in compliance with the Settlement Agreements and Court orders; and

vi.     Run a series of programmatic reports and audits throughout the claims administration process to check the reasonableness and consistency of the data submitted and processed.

vii.    Find anyone who has opted out of the litigation, but has filed a claim, to ensure that they do not receive payment from the Settlement fund unless they have opted back into the Subclasses.

40.     Rust Consulting will distribute benefits to Class Members with valid claims after Final Approval is received.

Declaration of Matthew B. Potter Regarding Settlement Administration

VII.    **ADMINISTRATIVE COSTS**

41.    Rust Consulting has incurred $49,365.88 in February through April 2016 in fees and expenses. Approximately $9,000 of this amount directly relates to the placement of the publication notice.

## 2014 AND 2015 SETTLEMENTADMINISTRATIVE COSTS

42.    Rust has incurred a total of $223,157.34 in fees and expenses from inception through April 30, 2016.

43.    The Settlement Agreement allows up to $250,000 for settlement administration costs.

44.    Rust Consulting requests payment of the fees and expenses incurred through April 30, 2016. The amount is reasonable based on my experience, my personal knowledge of the services provided, and the factors involved in this administration process, including the amended settlement process and need to continue to provide information to potential class members throughout the settlements.

45.    Additionally, Rust Consulting requests approval be granted to Counsel to pay reasonable administration fees and expenses above $223,157.34 but not exceeding $250,000 overall for services yet to be incurred as Rust Consulting continues to provide administration services in connection with the 2015 Settlement.


I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Matthew B. Potter

---

10

Declaration of Matthew B. Potter Regarding Settlement Administration

# EXHIBIT A

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

**If Your Farm Produced and Pooled Grade A Milk In Federal Milk Marketing Order 1 Between 2002 and 2014**
**You Could Get Money from a Class Action Settlement.**

*A court authorized this notice. You are not being sued.*

**THIS NOTICE PROVIDES INFORMATION REGARDING A NEW PROPOSED SETTLEMENT.**
**YOU MAY HAVE NEW RIGHTS AS A RESULT OF THIS SETTLEMENT.**
**PLEASE READ THIS NOTICE CAREFULLY.**

- A new proposed settlement with Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services LLC ("DMS") has been reached for $50 million and changes to DFA's and DMS's business practices.

- You might have received a similar notice in 2014 regarding a prior settlement with DFA and DMS. The Court did not approve that settlement. This new settlement includes more changes to DFA's and DMS's business practices.

- **IF YOU SUBMITTED A CLAIM FOR THE PREVIOUS DFA/DMS SETTLEMENT, YOU DO NOT NEED TO SUBMIT ONE AGAIN TO RECEIVE COMPENSATION.**

- You have legal rights and options in this proposed settlement. These are summarized below and explained in this Notice.

- This proposed settlement resolves all claims against DFA and DMS in a lawsuit alleging they engaged in anticompetitive conduct within Federal Milk Marketing Order 1. If this settlement is approved, and you do not opt out, you will not be able to sue DFA and DMS, or their predecessors, successors, and certain related parties, for the claims brought, or that could have been brought, in this suit.

- The average settlement payment is estimated to be $4,000 depending on the number of valid claims. You may receive a greater or lesser payment amount depending on how much milk you produced and pooled in Order 1. You must have submitted a claim last year or do so now to get a payment.

- If you received this notice in the mail, records indicate that you produced milk in the Northeast between January 1, 2002 and December 31, 2014 and may be eligible to receive a payment from the proposed settlement.

- The Court in charge of this case still has to decide whether to approve the proposed settlement. The Court will consider the reaction of the Subclass members as one factor in determining whether to approve the settlement. Payments will only be made if the Court approves the settlement and after any appeals are resolved.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to receive a cash payment.<br><br>IF YOU SUBMITTED A CLAIM LAST YEAR IN CONNECTION WITH THE PREVIOUS DFA/DMS SETTLEMENT, AND WISH TO RECEIVE PAYMENT NOW, YOU DO **NOT** NEED TO SUBMIT ANOTHER CLAIM. |
| EXCLUDE YOURSELF (OPT OUT) | Get no payment from the settlement. This is the only option that allows you to start (or remain part of) any other lawsuit against DFA or DMS about the legal claims in this case. |
| SUPPORT OR OBJECT | Write to the Court about your opinion of the settlement. The Court will consider the reaction of the Subclass members in deciding whether to approve the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| IF YOU SUBMITTED A CLAIM IN 2014, DO NOTHING NOW | If the settlement is approved, you will receive a cash payment and give up your rights to sue DFA and DMS about the legal claims in this case. |
| IF YOU DID NOT SUBMIT A CLAIM IN 2014, DO NOTHING NOW | Get no payment from the settlement. Give up your rights to sue DFA and DMS about the legal claims in the case. |
| OPT-IN TO THE SETTLEMENT | If you previously asked to be excluded from the Subclass, you may now ask to be reinstated as a member of the Subclass for purposes of the settlement with DFA/DMS. To receive payment from the settlement, you must also submit a claim after you are reinstated. |

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ............................................................................................................ **Page 3**

    1. Why was this Notice issued?
    2. Why is this a class action?
    3. Who are the Defendants?
    4. What is this lawsuit about?
    5. Why is there a settlement with DFA and DMS?
    6. What happened to the prior 2014 settlement with DFA and DMS?

**WHO IS IN THE SETTLEMENT CLASS** .......................................................................... **Page 4**

    7. How do I know if I'm part of the settlement?
    8. Are there any exceptions to being included?
    9. If I previously asked to be excluded from the Subclass, can I change my mind now?
    10. If I previously did not ask to be excluded from the Subclass, can I change my mind now?
    11. I'm still not sure if I'm included.

**SETTLEMENT BENEFITS** .......................................................................................... **Page 5**

    12. What does the settlement provide?
    13. How much money can I get from the settlement?
    14. How is this settlement different from the one in 2014?
    15. What am I giving up under the settlement?

**HOW TO GET A PAYMENT** ...................................................................................... **Page 8**

    16. How can I get a payment?
    17. If I submitted a claim last year, do I need to submit another one now?
    18. When will I get my payment?
    19. Can I submit a claim even if I oppose the settlement?
    20. Can I submit a claim even if I exclude myself (or opt out) from the settlement?

**THE LAWYERS REPRESENTING YOU** ...................................................................... **Page 9**

    21. Do I have a lawyer in the case?
    22. How will the Plaintiffs' lawyers be paid?
    23. What are Incentive Fees for the Subclass Representatives?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................ **Page 10**

    24. If I exclude myself, can I get anything from the settlement?
    25. If I do not exclude myself, can I sue later?
    26. How do I get out of the settlement?

**SUPPORTING OR OBJECTING TO THE SETTLEMENT** ............................................ **Page 11**

    27. How do I tell the Court that I like or support the settlement?
    28. How do I tell the Court that I don't like or object to the settlement?
    29. Can I receive a payment even if I object?

**THE COURT'S FAIRNESS HEARING** ...................................................................... **Page 12**

    30. When and where will the Court decide whether to approve the settlement?
    31. Do I have to come to the hearing?
    32. May I speak at the hearing?

**IF YOU DO NOTHING** .......................................................................................... **Page 12**

    33. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ............................................................................ **Page 12**

    34. How do I get more information?

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this Notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to approve the settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for those benefits, and how to get them.

Judge Christina Reiss, of the United States District Court for the District of Vermont, is currently overseeing this case. The case is known as *Allen v. Dairy Farmers of America, Inc.*, No. 5:09-CV-230. The people who sued are called the Plaintiffs and the people and companies they sued are called the Defendants (*see* Question 3 below).

A new settlement between the Plaintiffs and Defendants DFA and DMS has been reached since you received notice of a previous settlement in December 2014. The new settlement includes changes that are described in more detail below.

This settlement is separate from a prior settlement with Dean Foods Company. Even if you previously participated in the settlement with Dean Foods, you have separate legal rights and options in this settlement with DFA and DMS.

This Notice summarizes the new settlement. The complete Settlement Agreement is attached and available at www.NortheastDairyClass.com.

### 2. Why is this a class action?

You previously received a notice informing you that this lawsuit has been "certified" as a Class Action. This means that the Court has found that the lawsuit meets the requirements for class actions and may proceed accordingly. The Court has certified two "subclasses" which are described below. If you are included in a Subclass, you have decisions to make now about whether to participate in this settlement. This Notice explains these decisions.

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims. All these people are a class or class members, except for those who exclude themselves from the class.

In this case, the representative dairy farmers for the DFA/DMS subclass are Jonathan Haar, Claudia Haar, Richard Swantak, Peter Southway, Marion Southway, Robert Fulper and Reynard Hunt. The representative dairy farmers for the non-DFA/DMS subclass are Alice H. Allen, Laurence E. Allen, Garrett Sitts, Ralph Sitts, Stephen Taylor and Darrel Aubertine.

### 3. Who are the Defendants?

This litigation is proceeding against two Defendants, Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS"). They are involved in the marketing, sale, purchase, and processing of Grade A milk produced by dairy farmers in the Northeast.

### 4. What is this lawsuit about?

The lawsuit claims that Defendants and other co-conspirators (including previous Defendant Dean Foods) unlawfully conspired to monopolize and to eliminate competition for the marketing, sale, and purchase of raw Grade A milk in the Northeast and thereby suppressed prices lower than they would have been in a competitive market. This lawsuit seeks to stop Defendants from engaging in the alleged unlawful conduct, to prohibit practices found to be unlawful, and to recover damages for the illegally suppressed prices for raw Grade A milk. The Defendants deny that they did anything wrong or that they acted in a manner that harmed dairy farmers. There has not yet been a determination as to whether Plaintiffs' claims are correct or Defendants have done anything wrong.

### 5. Why is there a settlement with DFA and DMS?

The Court has not decided in favor of Plaintiffs or DFA and DMS. The Plaintiffs think they could win against DFA and DMS at a trial. DFA and DMS thinks the Plaintiffs would not win. But there will be no trial against DFA and DMS. Instead, Plaintiffs and DFA and DMS agreed to a settlement. That way, they avoid the cost and delay of a trial and appeals, and Class Members will get the benefits of this settlement soon.

The Court previously appointed Counsel to represent each Subclass in this case. Based on an extensive investigation of the facts and the law relevant to the lawsuit, Counsel thinks the settlement is best for all Class Members. Six of the Nine Subclass Representatives support the settlement. Three of the Nine Subclass Representatives oppose the settlement. The Subclass Representatives – as well as any other members of the Subclasses – will have an opportunity to explain why they support or oppose the settlement at the Fairness Hearing (*see* Questions 30-32 below).

**6. What happened to the prior 2014 settlement with DFA and DMS?**

To take effect, class action settlements must be approved by the Court. The Court did not approve the 2014 settlement with DFA and DMS. A copy of the Court's Opinion and Order denying approval of that settlement is available at the settlement website.

## WHO IS IN THE SETTLEMENT CLASS

**7. How do I know if I'm part of the settlement?**

If you are a member of either of the two Subclasses certified by the Court – and have not excluded yourself – then you are a part of the settlement. The Court has certified two groups or Subclasses:

**DFA/DMS Member Subclass**

- All dairy farmers (individuals or entities) who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are members of DFA or otherwise sell milk through DMS.

**Non-DFA/DMS Member Subclass**

- All dairy farmers (individuals or entities), who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, and who are not members of DFA and do not sell milk through DMS.

If there are multiple owners of your dairy farm, please forward this Notice to all of the owners. If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please send your correct address to the Notice Administrator at the address in Question 34.

**8. Are there any exceptions to being included?**

You are **not** part of the settlement if you excluded yourself from the Class in this litigation.

The following persons and entities are also excluded from the Settlement: the current and former officers and directors of DFA, DMS, Dean Foods, HP Hood LLC, National Dairy Holdings, Farmland Dairies LLC, Kraft, Dairylea Cooperative, Inc., St. Albans Cooperative Creamery, Inc., Agri-Mark, Inc., Land O'Lakes, Inc., and Maryland and Virginia Milk Producers Cooperative Association, Inc. If you sold milk to or were a member of one or more of these entities, you are still eligible to participate in the lawsuit unless you were an officer or director of the entity. If you hold some other position with any of these entities, but are not an officer or director, you are still eligible to participate in this lawsuit.

**9. If I previously asked to be excluded from a Subclass, can I change my mind now?**

If you previously asked to be excluded from a Subclass in response to the Court's notice of class certification dated November 19, 2012, you may ask to be reinstated as part of a Subclass for purposes of the settlement with the Settling Defendants. You must deliver an application to Northeast Dairy Farmer Class Reinstatements, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958, so that it is **postmarked** no later than April 22, 2016. Your application must be entitled "Opt-In Letter." It must include your name, address, and telephone number; the name of the case; a clear statement that you are opting back in; and your signature and the date.

If you are reinstated, you may be eligible for a payment from the settlement with Settling Defendants. You must file a claim form as described below in Question 16 to receive payment. In evaluating whether to pursue any individual claim, you should consult your own attorney.

**10. If I previously did not ask to be excluded from the Subclass, can I change my mind now?**

Yes. See Questions 24-26 regarding how to exclude yourself and how exclusion affects your rights.

**11. I'm still not sure if I'm included.**

If you are still not sure whether you are included in the settlement class, you can ask for free help.

For more information, visit www.NortheastDairyClass.com, or call 1-855-460-1533, or write to Northeast Dairy Farmer Settlement, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958.

| **12. What does the Settlement provide?** |
| --- |

DFA and DMS have agreed to pay $50,000,000 into a Settlement Fund.  After deducting attorneys' fees, plus costs, expenses, and incentive fees for the dairy farmers who brought the lawsuit (*see* Questions 22 and 23), the net Settlement Fund will be distributed to members of the Subclasses who file valid claims.

In addition to the $50 million Settlement Fund, DFA and DMS have agreed to change their business practices in the following ways:

- **Farmer Ombudsperson:** For the next five years, a Farmer Ombudsperson will be created to advocate for farmers and promote fairness within DFA and DMS.
  - The Farmer Ombudsperson will listen to and investigate farmers' complaints and concerns.
  - The Farmer Ombudsperson will mediate disputes between farmers and DFA and DMS.
  - The Farmer Ombudsperson will have access to relevant records within DFA and DMS, will meet with a representative from the DFA and DMS management team, and will be allowed to attend and participate in DFA Northeast Area Council Meetings.
  - The Farmer Ombudsperson will report on their activities to Subclass Members every six months.
  - DFA/DMS is required to pay the Farmer Ombudsperson an hourly fee, not to exceed a pre-determined amount identified in the settlement.

- **Advisory Council Member:** For the next four years, an Advisory Council Member position will be created to advocate for farmers within DFA and DMS and promote better pay prices, net income and enhanced equity for them.
  - The Advisory Council Member can request a third-party review of DFA's and DMS's financial statements to be paid for by DFA and DMS, and hire experts. He or she shall have access to all DFA Northeast Area Council and DMS books and financial records
  - The Advisory Council Member will be a non-voting member of DFA's Northeast Area Council, and shall be allowed to attend and participate in DFA Northeast Area Council and other key DFA meetings.
  - The Advisory Council Member will report on their activities to Subclass Members every six months.
  - DFA/DMS is required to pay the Advisory Council Member an hourly fee, not to exceed a pre-determined amount identified in the settlement.

- **Milk Testing:** DFA and DMS will adopt safeguards to increase fairness and transparency in milk testing.
  - For the next ten years, DFA and DMS will not acquire a controlling interest in the milk testing company its farmers use, DairyOne, nor will DFA members hold a majority of seats on its board.
  - For the next five years, any farmer in Order 1 whose milk is tested by DairyOne and who disputes the accuracy of the test result may require a split sample procedure three times a year at no cost to the farmer and in which the dairy farmer observes the collection and sealing of a sample to be tested at two independent, certified labs selected by the farmer in addition to DairyOne.  If the split sample fails to confirm the original test result within a reasonable level of error, the appropriate adjustments to the farmer's milk check will be made and information regarding the labs' differing results submitted to the Market Administrator.
  - Additional farmer concerns regarding milk testing accuracy may be raised with the Farmer Ombudsperson who shall attempt to mediate any disputes.
  - DFA/DMS shall provide the Farmer Ombudsperson with an annual report identifying any discrepancies found between milk test results at DairyOne and those from other certified laboratories.

- **Adulterated Milk:** DFA and DMS will adopt safeguards to ensure accurate reporting of adulterated milk testing results.
  - For the next five years, any farmer in Order 1 whose milk is found to be adulterated by a processing plant, DFA/DMS will notify the affected farmer within 3 hours of receiving the result.  DFA/DMS will request that the processing plant keep any remaining milk samples and, at the farmer's request, have the remaining samples tested at an independent laboratory.
  - If an independent laboratory confirms the processing plant's testing results, then the farmer will be responsible for covering the costs of the adulterated milk.  If the independent laboratory cannot confirm the processing plant's testing results, then the farmer will not be required to cover the costs of the adulterated milk.

- ○ Farmers may bring any concerns related to adulterated milk to the Farmer Ombudsperson who shall attempt to mediate any dispute.

- **Limits on Full-Supply Agreements:**

  - ○ DFA and DMS will not enter into any new full-supply agreements for the sale of raw Grade A milk in Order 1 for four years after final approval of the settlement, except in limited circumstances and that certain existing agreements may be renewed.

  - ○ Any new supply agreements of any type, or the renewal of existing full supply or other agreements, shall be presented, reviewed, and approved by the DFA and/or DMS Board of Directors prior to entering or renewing the agreements.

  - ○ Upon written request by any of their respective farmers in Order 1, DFA and DMS agree to disclose to that member a summary of the terms of any DFA or DMS agreement for the supply or sale of raw Grade A milk to customers in Order 1, to the extent the contracts so permit.

- **Farmers', Affiliates', and Cooperatives' Right to Terminate:** Any cooperative member, affiliate, or associate of DFA or DMS in Order 1 may, during the four years following final approval of the settlement, terminate its relationship with DFA or DMS upon no more than ninety (90) days written notice without penalty.

- **Protections Against Termination:** DFA's and DMS's ability to end Subclass members' milk contracts will be limited in the following ways:

  - ○ If DFA/DMS decide not to renew a Subclass Member's milk marketing arrangement due to lack of demand for milk, DFA/DMS will provide the Subclass Member 30 days' advanced notice, and, at the terminated Subclass member's request, continue to market their milk for a period of six months.

  - ○ If DFA/DMS terminates a Subclass member's marketing arrangement for cause, DFA/DMS will provide at least 30 days' advanced written notice of the decision along with a reasonable opportunity to cure the reason for termination. The terminated Subclass member may dispute the reason for termination. If the Subclass member disputes the basis for termination, the Northeast Area Counsel or DMS Board of Directors will review the decision and, at the farmer's discretion, the Farmer Ombudsperson may be asked to mediate the dispute.

- **Farmer Solicitation:** DFA and DMS will not enter any agreement to restrict solicitation of raw Grade A milk from farmers including any agreement that would limit the ability of any cooperative to approach farmers and offer them more favorable prices, services, or other terms.

- **Unsealing and Release of DFA and DMS Documents:** DFA and DMS agree not to oppose a request by Subclass Counsel to unseal and release certain of their previously confidential materials that were submitted to the Court during this case.

- **Required Financial Disclosures:**

  - ○ DFA will prepare financial reports in accordance with generally accepted accounting principles and DFA will be audited by a nationally-recognized accounting firm.

  - ○ DFA senior management and Audit Committee members will affirmatively represent they are responsible for the preparation, integrity, and accuracy of DFA's annual financial report.

  - ○ DFA will post on its member-only website an annual disclosure of all material related-party transactions, specifically broken out and identified by transaction.

  - ○ At its annual meeting, DFA will disclose to its delegates all material related-party transactions as well as DFA's financial results from its participation in joint ventures and off-balance sheet transactions, specifically broken out and identified by transaction.

  - ○ DFA will disclose the identity of the members of its board of directors and its committees and their generally applicable *per diem* payment rate compensation.

  - ○ DFA senior executive management and board members will execute annual conflict of interest certifications, which will be subject to review by DFA's Audit Committee and a report by the Committee at DFA's annual meeting.

- **Block Voting:** If DFA decides to vote its cooperative as a block, it will tell DFA members about this decision and provide DFA members with an individual ballot so that they may vote against the block.

- **Milk Check Review:** DFA's Northeast Area Council ("NEAC") will undertake a careful review of:

  - ○ (1) members' milk checks in order to determine whether changes in the milk checks are warranted to improve their clarity or transparency; and

- ○ (2) the election procedure by which Area Council members and delegates are chosen, including specifically whether the membership should be able to cast ballots by mail.
- ○ Changes recommended by the NEAC will be implemented.
- **Retaliation:** DFA/DMS will not discriminate or retaliate against Subclass Representatives or Subclass Members for participation in the litigation, expressing support or opposition to the settlement or ceasing marketing their milk with DFA/DMS.
- **Monitoring Compliance:** an Audit Committee of seven DFA members plus two independent advisors with expertise in accounting, financial reporting, and auditing matters will be charged with monitoring compliance with the settlement and reporting its views to the delegates at the DFA annual meeting.

The Settlement Agreement, which is attached to this notice and also available at the website, contains more details about the settlement with DFA and DMS.

| **13. How much money can I get from the settlement?** |
|---|

The amount of money you may receive cannot be calculated at this time. Your share will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to December 31, 2014 as well as the number of valid claims that are received and the attorneys' fees, incentive fees for the Subclass Representatives, costs, and expenses approved by the Court.

We don't know how many people will file claims. However, if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be $4,000. Your payment could be more or less than $4,000 depending on the amount of raw Grade A milk you produced and pooled on Order 1.

| **14. How is this new settlement different from the one in 2014?** |
|---|

Some parts of this new settlement are the same as the previous settlement in 2014. For example, the monetary payment for the settlement is the same. Other parts of this settlement are different from the previous settlement.

DFA and DMS have agreed to change additional business practices. The following changes were not included in the 2014 settlement:

- Farmer Ombudsperson
- Advisory Council Member
- Milk Testing Provisions
- Adulterated Milk Provisions
- Protections Against Termination
- Block Voting Limitations

Some of the changes to DFA's and DMS's business practices that were included in the previous settlement have been enhanced:

- The period during which DFA/DMS is limited from entering new full supply agreements has been extended to four years following final approval of the settlement.
- Protections for Subclass members and the Subclass Representatives have been supplemented.
- The Audit Committee created to monitor DFA's and DMS's compliance with the settlement will include at least two independent advisors with expertise in accounting, financial reporting, and auditing.

Additional procedural protections have been included for Subclass Members:

- Subclass members who wish to continue or bring their own suit against DFA or DMS based on the legal claims in this case will have the opportunity to exclude themselves (or "opt out") from this settlement so that they may do so;
- The release of claims has been revised to make clear that it is limited to claims that were or could have been asserted "arising out of the conduct" alleged in the complaint. The release is described more fully in Question 15.
- "Released Parties" has been narrowed to exclude, for example, Defendants' affiliates, partners, certain representatives, and those entities in which they have an ownership interest.

**15. What am I giving up under the settlement?**

In exchange for the Settlement Benefits explained above, you and other members of the Subclasses give up the right to continue this lawsuit against DFA or DMS.

You also give up the right to sue DFA and DMS, as well as their predecessors, successors, and certain related parties, for legal claims that are related to the facts or circumstances of this case including any lawsuit against DFA, DMS, or their related entities regarding the sale, marketing, or purchase, of raw Grade A Milk produced in and pooled on Federal Milk Marketing Order 1.

Giving up the right to sue DFA, DMS, and their predecessors, successors, and certain related entities is called a "Release of Claims." The "Release of Claims" is described more fully in the Settlement Agreement. The Settlement Agreement is attached here and available at www.NortheastDairyClass.com.

You should carefully review a full copy of the Release of Claims to make sure you understand what you are giving up. As stated above, the Release extends beyond DFA and DMS to certain related entities and extends beyond the legal claims in this lawsuit. You may seek legal advice if you have any questions regarding the Release of Claims.

## How to Get a Payment

**16. How can I get a payment?**

**If you already submitted a claim last year in connection with the previous DFA/DMS settlement, and wish to receive payment from this settlement, you do not need to submit a new claim.**

If you did not submit a claim in the previous DFA/DMS settlement, and wish to ask for a payment now, complete and submit a Claim Form. A Claim Form is enclosed with this Notice. Claim Forms are also available at www.NortheastDairyClass.com or by calling 1-855-460-1533. Please read the instructions carefully, fill out the Claim Form and provide the required information. Your handler or cooperative will likely be able to provide information on the total number of pounds of raw Grade A milk that your farm produced and pooled in Order from January 1, 2002 until December 31, 2014.

You must mail the Claim Form postmarked no later than April 29, 2016, to:

Northeast Dairy Farmer Settlement with DFA/DMS
c/o Rust Consulting, Inc.
PO Box 2958
Faribault, MN 55021-2958

**17. If I submitted a claim last year, do I need to submit another one now?**

No. If you already submitted a claim in the previous DFA/DMS settlement, and wish to receive payment from this settlement, you do not need to submit a new claim.

**18. When will I get my payment?**

Payments will be mailed to Subclass Members who send in valid Claim Forms on time, after the Court grants "final approval" to the settlement and after any appeals are resolved. If the Court approves the settlement after a hearing on May 13, 2016, there may be appeals. It's always uncertain when any appeals will be resolved, and resolving them can take time.

**19. Can I submit a claim even if I oppose the proposed settlement?**

Yes. You have the right to oppose the settlement or any part of the settlement even if you submit a claim. To learn more about your right to object to the settlement, see Questions 28 and 29.

**20. Can I submit a claim even if I exclude myself (or opt out) from the proposed settlement?**

No. If you exclude yourself (or opt out) from the Subclasses you cannot submit a claim and receive payment as part of this settlement.

THE LAWYERS REPRESENTING YOU

### 21. Do I have a lawyer in the case?

Yes. The Court has appointed the following firms as counsel for the Subclasses:

| DFA/DMS MEMBER SUBCLASS | NON-DFA/DMS MEMBER SUBCLASS |
|---|---|
| Kit A. Pierson, Esq.<br>Benjamin D. Brown, Esq.<br>Brent W. Johnson, Esq.<br>Emmy L. Levens, Esq.<br>Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue, NW<br>Suite 500<br>Washington, DC 20005<br>Tel: (202) 408-4600 | Robert G. Abrams, Esq.<br>Gregory J. Commins, Jr., Esq.<br>Robert J. Brookhiser, Esq.<br>Danyll W. Foix, Esq.<br>Baker Hostetler LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Avenue, NW<br>Washington, DC  20036-5304<br>Tel: (202) 861-1500 |
| Andrew D. Manitsky, Esq.<br>Lynn, Lynn, Blackman & Manitsky, P.C.<br>76 St. Paul Street, Suite 400<br>Burlington, VT 05401<br>Tel: (802) 860-1500 | Daniel Smith, Esq.<br>16 State St.<br>PO Box 801<br>Montpelier, VT 05601<br>Tel:  (802) 229-6661 |
| David A. Balto<br>The Law Offices of David A, Balto<br>1350 I Street, N.W., Suite 850<br>Washington, DC 20005<br>Tel: (202)-789-5424 | Richard T. Cassidy, Esq.,<br>Hoff Curtis, P.C.<br>100 Main St,<br>Burlington, VT 05401<br>Tel:  (802) 316-4962 |
| | Emily J. Joselson, Esq.<br>Lisa B. Shelkrot, Esq.<br>Langrock Sperry & Wool, LLP<br>210 College Street,<br>PO Box 721<br>Burlington, VT 05402-0721<br>Tel: (802) 864-0217 |

You will not be charged for these lawyers.  If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

### 22. How will the Plaintiffs' lawyers be paid?

Subclass Counsel will ask the Court for attorneys' fees of $16.66 million or one-third the Settlement Fund plus the payment of costs and expenses incurred in connection with the case.  Subclass Counsel's applications for attorneys' fees, costs, and expenses will be filed with the Court by March 24, 2016, and posted on the settlement website.

The Court may award less than these amounts. Payments approved by the Court will be made from the Settlement Fund.

### 23. What are Incentive Fees for the Subclass Representatives?

Incentive fees provide money to the dairy farmers who brought this suit and have served as Subclass Representatives. These fees (sometimes referred to as plaintiff incentive awards) provide payments to the Subclass Representatives for their work in representing the interests of the Subclasses throughout the course of this litigation.  The representatives for the DFA/DMS subclass are Jonathan and Claudia Haar, Richard Swantak, Peter and Marion Southway, Robert Fulper, and Reynard Hunt. The representative dairy farmers for the non-DFA/DMS subclass are Alice and Laurence Allen, Garrett and Ralph Sitts, Stephen Taylor, and Darrel Aubertine.

Subclass Counsel will request incentive fees of up to $20,000 to each of the Subclass Representatives' farms.  Applications for incentive payments will be filed along with Subclass Counsel's application for fees and expenses by March 24, 2016, and posted on the settlement website.

The Court may award less than these amounts. Payments approved by the Court will be made from the Settlement Fund.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to participate in this settlement and you want to keep the right to sue DFA and DMS about the legal issues in this case, then you must take steps to get out of the settlement. This is called asking to be excluded from or sometimes called "opting out" of the Subclasses.

**24. If I exclude myself, can I get anything from the settlement?**

No. If you exclude yourself, you may not apply for any benefits under the settlement and you cannot object to the proposed settlement. However, if you ask to be excluded, you may sue, or continue to sue, DFA and DMS about the claims in this lawsuit.

**25. If I do not exclude myself, can I sue later?**

No. Unless you exclude yourself, you give up the right to sue DFA or DMS for all of the claims that this proposed settlement resolves and others that could have been asserted based on the conduct in the Complaint in this case. You must exclude yourself from the Subclass to start your own lawsuit, continue with a lawsuit, or be part of any other lawsuit against DFA or DMS relating to the "Released Claims" described in Section 1.16 of the Settlement Agreement.

**26. How do I get out of the settlement?**

To exclude yourself from the proposed settlement, you must send a letter by mail clearly stating the following:

- The title "Opt-Out Letter,"
- Your name, address, and telephone number,
- The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- A clear statement that you would like to be excluded with language such as "I am opting out of the 2015 Settlement Agreement," and
- Your signature and the date.

You must mail your request for exclusion postmarked by April 22, 2016, to:

Northeast Dairy Farmer Settlement with DFA/DMS
c/o Rust Consulting, Inc.
PO Box 2958
Faribault, MN 55021-2958

You cannot ask to be excluded on the phone, by email, or at the website.

### SUPPORTING OR OBJECTING TO THE SETTLEMENT

You may express support for or objection to the settlement, and the Court will take into account the views of Subclass Members in deciding whether to approve the settlement.

**27. How do I tell the Court that I like or support the settlement?**

If you are a Subclass Member, you can send a letter to the Court expressing your support of the settlement. Your letter must also include the following:

- The title "Letter of Support,"
- Your name, address, and telephone number,
- The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- The specific reasons you support to the settlement, and
- Your signature and the date.

Your letter of support, along with any supporting material you wish to submit, must be mailed and postmarked no later than April 29, 2016, to the following four addresses:

| Court | Subclass Counsel | Defense Counsel |
|---|---|---|
| United States District Court for the District of Vermont<br>11 Elmwood Avenue<br>Burlington, VT  05401 | Brent W. Johnson<br>Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue, NW<br>Suite 500<br>Washington, DC 20005<br><br>Robert G. Abrams, Esq.<br>Baker Hostetler LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Avenue, NW<br>Washington, DC  20036-5304 | Steven R. Kuney, Esq.<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005 |

**28. How do I tell the Court that I don't like or object to the settlement?**

If you are a Subclass Member, you can object to the settlement or to Subclass Counsel's requests for fees, expenses, and incentive fees for the Subclass Representatives. To object, you must send a letter saying that you object. Your letter must also include the following:

- The title "Letter of Objection,"
- Your name, address, and telephone number,
- The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- The specific reasons you object to the settlement, and
- Your signature and the date.

Your letter of objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than April 29, 2016, to the four addresses in Question 27.

**29. Can I receive a payment even if I object?**

Yes.  You can submit a claim and receive your share of the settlement even if you object to the settlement.  If you want to receive your share of the settlement (and you have not already submitted a claim for the 2014 settlement), you must submit a claim by April 29, 2016.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement and any requests for attorneys' fees, expenses, and incentive payments for the Subclass Representatives. You may attend and you may ask to speak, but you don't have to.

**30. When and where will the Court decide whether to approve the settlement?**

The Court will hold a hearing beginning at 10:00 a.m. on May 13, 2016, at the United States District Court for the District of Vermont, 11 Elmwood Avenue, Burlington, VT 05401, in Courtroom 542. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NortheastDairyClass.com. At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will consider both support for and objections to the Settlement. The Court may listen to people who asked to speak at the hearing.

After the hearing, the Court will decide whether to approve the Settlement, and if so, how much to pay the attorneys for the Subclasses and whether to provide incentive payments for the Subclass Representatives. We do not know how long these decisions will take.

**31. Do I have to come to the hearing?**

No. Subclass Counsel will answer any questions Judge Reiss may have. But you are welcome to attend the hearing at your own expense. If you send a written letter of support or objection, you do not have to come to the Court to discuss it. As long as you mailed your letter on time, following the instructions in this Notice, the Court will consider it. You may also pay your own lawyer to attend, if you wish, but it's not necessary.

**32. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear at the Fairness Hearing." Be sure to include the following information:

- The title "Notice of Intent to Appear at the Fairness Hearing,"
- Your name, address, and telephone number,
- The name of the case (Allen v. Dairy Farmers of America, Inc., No. 5:09-CV-230-CR),
- The specific topics you wish to discuss regarding the settlement, and
- Your signature and the date.

You must mail your Notice of Intent to Appear at the Fairness Hearing, postmarked no later than April 29, 2016, to the four addresses in Question 27.

### IF YOU DO NOTHING

**33. What happens if I do nothing at all?**

If you submitted a claim in the previous 2014 DFA/DMS settlement, and do nothing now, you will receive a payment. You will give up the right to sue DFA or DMS for all of the claims that this proposed settlement resolves and others that could have been asserted based on the conduct in the Complaint in this case.

If you did not submit a claim in the previous 2014 DFA/DMS Settlement, and do nothing now, you will not get a payment from the settlement. You will give up the right to sue DFA or DMS for all of the claims that this proposed settlement resolves and others that could have been asserted based on the conduct in the Complaint in this case.

### GETTING MORE INFORMATION

**34. How do I get more information?**

This notice summarizes the lawsuit. You can get more information and important court documents at www.NortheastDairyClass.com or by calling 1-855-460-1533. You may also write with questions to: Northeast Dairy Farmer Settlement, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958.

Northeast Dairy Farmer Settlement
PO Box 2958
Faribault MN 55021-2958

## IMPORTANT LEGAL MATERIALS

|||||||||||| BARCODE39 |||||||||||| - <<SequenceNo>>

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

FOR OFFICIAL USE ONLY

01

Page 1 of 3

☐ If the pre-printed information to the left is not correct or if there is no pre-printed information, please check the box and complete the information below:

Name: _____

Address: _____

City: _____

State: _____ Zip Code: ___ ___ ___ ___ ___

## CLAIM FORM

**If you <u>submitted a claim last year</u> in the prior DFA/DMS settlement, and wish to receive payment from this settlement, you <u>do not need to submit</u> a new claim.**

**If you did not submit a claim in the 2014 DFA/DMS settlement, and wish to ask for a payment now, complete and submit a Claim Form.**

**Claims must be postmarked no later than April 29, 2016.**

*Allen v. Dairy Farmers of America, Inc.,*
No. 5:09-CV-230

You may be eligible to receive a payment from a settlement reached with Dairy Farmers of America, Inc. ("DFA"), and Dairy Marketing Services, LLC ("DMS") if your farm produced and pooled raw Grade A milk in Federal Milk Market Order 1 ("Northeast").

### GENERAL INSTRUCTIONS

A. If you did not previously submit a claim and wish to receive a payment from the Settlement with DFA and DMS, you must complete and return this Claim Form so that it is postmarked no later than April 29, 2016 to the following address:

**Northeast Dairy Farmer Settlement**
**PO Box 2958**
**Faribault MN 55021-2958**

B. In Section 2 you must provide the total amount of raw Grade A milk that your farm produced and pooled in Order 1 at any time from January 1, 2002 to December 31, 2014. Order 1 includes the states of Connecticut, Delaware, Massachusetts, New Hampshire, New Jersey, Rhode Island, Vermont and the District of Columbia and certain counties, cities and townships within the states of Maryland, New York, Pennsylvania and Virginia. For specific information on whether your farm is located in Order 1, please visit the website: www.NortheastDairyClass.com.

C. Unless you already submitted a Claim Form in connection with the prior DFA/DMS Settlement, you must complete and sign your Claim Form.

D. For those Class Members who have not already submitted a claim, but wish to do so now, Claim Forms must be postmarked by April 29, 2016; late forms may be rejected and you may not receive a payment.

E. Submission of a Claim Form does not guarantee you will receive a payment from the Settlement.

| 1. CLASS MEMBER INFORMATION – Please type or neatly print all information. |
|---|

Last Name: _____  First Name: _____

Address Number or P.O. Box: _____  Street or Road: _____

City: _____  State: _____ Zip Code: ___ ___ ___ ___ ___





## FARM INFORMATION

Farm Name: _____

Specify ownership info:   ☐ Individual(s)   ☐ Corporation   ☐ Cooperative   ☐ Other: _____

Name of County in which Farm is located: _____

FARM ADDRESS - Check if Farm Address is the same as address above.   ☐

Farm Address Number or P.O. Box: _____   Farm Street or Road: _____

City: _____   State: ____   Zip Code: ___ ___ ___ ___ ___

### 2. TOTAL AMOUNT OF RAW GRADE A MILK

Below, please indicate the total number of pounds of Raw Grade A Milk your farm produced and pooled in Federal Milk Market Order 1 from January 1, 2002 until December 31, 2014.

Note: Amount of Raw Grade A Milk should be claimed in pounds <u>not in hundredweight.</u> (Example: 12,345/cwt. of raw Grade A milk should be entered as 1,234,500 pounds below.)

Total Number of Pounds of Raw Grade A Milk: _____ , _____ , _____ , _____

Note:  You can obtain information on the total number of Pounds of Raw Grade A Milk from your milk checks, year-end statements, or by contacting your handler or cooperative.  Many farmers received the relevant information from their handlers and cooperatives last year.  If you have any questions regarding how to obtain information for completing your claim form, please visit www.NortheastDairyClass.com or call 1-855-460-1533.

### 3. REQUEST FOR FEDERAL TAXPAYER IDENTIFICATION NUMBER ("TIN")

**If your payment  is over $600.00 and you do not provide  a valid TIN for the person or entity  to which the check will be issued, you will be subject  to a withholding of taxes of 28% of the amount  of your payment.**

Enter Taxpayer Identification Number "TIN" on the appropriate line.

For individuals, this is your Social Security  Number ("SSN")

For sole proprietors, you must show your individual  name, but you may also enter your business  or "doing business as" name. You may enter either your SSN or your Employer Identification Number ("EIN")

For other entities, it is your EIN.

Social Security  Number (for individuals)                    Employer Identification Number

**OR**

___ ___ ___ - ___ ___ - ___ ___ ___ ___                    ___ ___ - ___ ___ ___ ___ ___ ___ ___

**If you are exempt from backup withholding, enter your current TIN above and write "exempt" on the following line:**

_____

**UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:**

1.  The number shown on this form is my current TIN; and

2.  I (We) certify  that  I am (we are) NOT subject  to  backup withholding under the provisions  of Section  3406(a)(1)(C) of the Internal Revenue Service (IRS) because: (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the IRS that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the IRS has notified me (us) that I am (we are) no longer subject to backup withholding.

Note:  If you have been notified by the IRS that you are subject to backup withholding, please strike out the language that you are not subject to back up withholding in the certification above.  The IRS does not require your consent to any provision other than the certification required to avoid backup withholding.

## 4. RELEASE OF CLAIMS AND COVENANT NOT TO SUE

If this settlement is approved by the Court, you will not be able to sue DFA and DMS, as well as their members, partners, and certain related entities, for the claims in this suit or related claims. You should carefully review a full copy of the Release of Claims to make sure you understand what you are giving up. The "Release of Claims" is described more fully in the Settlement Agreement. The Settlement Agreement is available at www.NortheastDairyClass.com.

## 5. CERTIFICATION

I certify under penalty of perjury that the information above is true and correct and the submission of false information may subject me to civil and/or criminal penalties.

Signature: _____   Print Name/Capacity of person signing: _____

Farm Name: _____   Date: ____ ____ / ____ ____ / ____ ____ ____ ____

***PLEASE NOTE:*** *All information provided on this Claim Form will be used solely for the administration of this Settlement and will remain confidential.*

**If you have any questions, please call  1-855-460-1533**

# EXHIBIT B

# Media Buy Report

## Allen v Dairy Farmers (NE Milk 2016)-FINAL

April 19, 2016



## Media

### Print Media

| | Unit Type/Size | Issue Date | Date Ad(s) Ran | Page # of Ad | Tearsheet Received |
|---|---|---|---|---|---|
| **Magazine(s)** | | | | | |
| *American Agriculturist* | 1/2 Page (4.62" x11.125") | April | April 1, 2016 | 12 | Yes |
| *Country Folks* | 1/2 Page (5" x 13") | March 28, 2016 | March 28, 2016 | B20/A12 | Yes |
| *Farming: The Journal of Northeast Agriculture* | 1/2 Page Island (4.5" x 7.3125") | April | April 1, 2016 | 49 | Yes |
| *Progressive Dairyman - East Region - All Herds (Trade Publication)* | 1/2 Page (4.660" x 13.33") | March 12, 2016 | March 12, 2016 | 7 | Yes |

Legal Notice

# If Your Farm Produced and Pooled Grade A Milk In Federal Milk Marketing Order 1 Between 2002 and 2014

## You Could Get Money
## from a Class Action Settlement

A $50 million Settlement with Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (the "Defendants") has been reached in a class action involving the price of raw Grade A milk that was produced and sold in the Northeast. If approved by the Court, the Settlement will provide payments to dairy farmers who submit valid claim forms and you may be eligible. The Settlement will also result in certain changes to the way DFA and DMS operate their businesses.

**What is the case about?**

The lawsuit claims that Defendants unlawfully agreed and conspired with themselves and others to restrict competition in, and monopolize the market for, the marketing, sale, and purchase of raw Grade A milk in Federal Milk Marketing Order 1 ("Northeast"). The lawsuit seeks to recover money damages from DFA and DMS for allegedly suppressing the price of raw Grade A milk received by farmers, and to stop Defendants from engaging in any conduct the Court determines has unlawfully prevented competition for the sale and purchase of raw Grade A milk. Defendants deny that they did anything wrong.

**Are you included?**

In general, all dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 at any time from January 1, 2002 to the present are included in the class action. The Court has certified two subclasses of Plaintiffs in this case: a subclass of farmers who sell their milk through DFA or DMS, and a subclass of farmers who do not sell through DFA/DMS. This Settlement provides money to both Subclasses. See the detailed notice at the website for any exceptions to Subclass Membership.

**What Does the Settlement Provide?**

Defendants have agreed to pay $50 million into a Settlement Fund. After deducting attorneys' fees, costs, incentive fees for the dairy farmers who brought the lawsuit, and other fees, the net Settlement Fund will be distributed to Class Members who file valid claims. The Settlement will also result in certain changes to Defendants' business practices. If the Court approves this settlement, you will be bound by the Release and you will not be able to sue DFA and DMS, as well certain related entities, for the claims in this suit or related claims, unless you opt out.

**How to Get a Payment?**

<u>If you previously submitted a Claim in the previous 2014 DFA/DMS Settlement, and wish to receive payment here, you do NOT need to submit another Claim.</u> If you did not submit a Claim, but wish to receive payment here, you must submit a Claim. You can get a Claim Form at www.NortheastDairyClass.com or by calling 1-855-460-1533. The deadline to submit a Claim Form is April 29, 2016. The amount of money you may receive will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to December 12, 2014 as well as the number of valid claims that are received, and the fees, costs and expenses the Court approves. We don't know how many people will file claims; if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be approximately $4,000. Your payment could be more or less.

**Your Other Rights**

If you do nothing, you will not be able to sue DFA or DMS for any claim relating to the lawsuit. If you want to be able to sue DFA or DMS for any claim relating to this suit, you must exclude yourself from this Settlement. You may support or object to the Settlement by April 29, 2016. The Court will hold a hearing on May 13, 2016, to consider whether to approve the Settlement and a request by the Class lawyers for one-third of the settlement amount ($16.66 million) in attorneys' fees, plus costs, expenses, and incentive fees of up to $20,000 for each of the dairy farms that brought the lawsuit. You do not need to attend the hearing. If you wish, you or your own lawyer may ask to appear and speak at the hearing at your own cost.

---

**You can get more information at**
**www.NortheastDairyClass.com; by calling 1-855-460-1533;**
**or by writing to: Northeast Dairy Farmer Class,**
**c/o Rust Consulting, Inc.,**
**PO Box 2958, Faribault, MN 55021-2958.**

## 12     Crops



**AUTOMATED, REAL-TIME SPRAY CONTROL:** New, automated spraying systems can detect the presence, size, shape and foliage density of trees and apply optimum pesticide amounts on the go.

# New sprayer tech cuts spray 68%

BY JOHN VOGEL

SPECIALTY crop industry researchers have been working on plumbing, wiring and computerizing "smart" spraying systems for years. It's finally bearing fruit — the sort that goes into the bank account, not just the packing shed.

Spray cost savings on specialty crops such as fruit orchard, grape and nursery crops may be $230 or more per acre with sensor-based smart systems. It's likely to warrant equipment changes by producers hesitant to replace or upgrade older sprayers.

A USDA Agricultural Research Service team has field-tested laser-guided spraying systems with intelligent decision control systems to match spray outputs to targeted tree structures with greater precision and less waste. "Conventional spray application technology requires excessive amounts of pesticide to achieve effective pest control in floral, nursery, orchard and other specialty crops," explains Heping Zhu, ARS ag engineer at Ohio State University's Wooster research center.

"This challenge is now overcome by an automated, variable-rate, air-assisted, precision sprayer. The new system is able to characterize the presence, size, shape and foliage density of target trees and apply the optimum amount of pesticide in real time."

The research team included other colleagues at Ohio State, Oregon State University and University of Tennessee. They conducted field trials to assess the technology's performance in six commercial nurseries in all three states, plus an apple orchard.

**How precision intelligence pays**

The system has many parts that have to work together, notes Zhu. It integrates a high-speed, laser-scanning sensor with a Doppler radar travel-speed sensor; an automatic nozzle-flow-rate controller; an embedded computer; a touch screen and a manual switch box; and four five-port nozzle manifolds on each side of an air-assist sprayer. The sprayer can treat two rows of trees at a time.

"Pest control with the new sprayer was comparable to that of conventional sprayers," says Zhu. "But the new sprayer reduced average pesticide use between 46% and 68%, with an average pesticide cost savings of $230 per acre for ornamental nurseries."

Cost savings can be much higher for orchards and other fruit crop productions. An apple orchard test, for example, demonstrated that the new sprayer reduced spray loss beyond tree canopies between 40% and 87%, airborne spray drift by up to 87%, and spray loss on the ground between 68% and 93%.

"This new precision spraying system significantly advances the technology for efficient, variable-rate pesticide applications," Zhu says. "It offers an environmentally responsible approach to controlling insects and diseases."

## Sheep from B19

that if all goes as anticipated, lamb markets to Japan could be open by July or August. There will likely be an export verification program required that includes a "specified risk materials" (SRM) ban that is consistent with EU protocols.

"The goal in opening the Japanese market for lamb is to get the U.S. system approved, not just one processor," stated Dawson, "and it looks like that will be the outcome."

The Taiwan market is also very close to being open and FAS is hoping the agreement will be finalized in the first half of 2016.

Korea is in the early stages with the United States entertaining a questionnaire.

"Every sheep producer in the United States is impacted by scrapie," began Alan Huddleston, DVM, Associate National Scrapie Program Coordinator with USDA's Animal and Plant Health Inspection Service. "Several years ago, scrapie cost sheep producers between $10 and $20 million annually in profit because of market access limitations."

Key elements to the scrapie eradication program that have helped in its success are the provision of free ear tags to build compliance and the creation of a slaughter surveillance program where 40-45,000 animals are tested each year.

With a flat budget in fiscal year 2017, it will be difficult to reach all the corners of the industry for surveillance and eradicate scrapie in a timely manner.

"Therefore, I would suggest increased identification to assist with surveillance to reduce prevalence as the way to identify the last remaining cases of scrapie and be able to eventually certify the United States as scrapie free," concluded Huddleston.

## The NY Spring Holstein Sale
## Saturday, April 9th, 2016 * 4:00 P.M. *
### Syracuse, NY

Held in conjunction with the great New York Spring Dairy Carousel

Fresh cows, Fabulous bred heifers, heifers that will show all year and high GTPI calves & yearlings!

The New York Spring Sale has been a perennial source of big money makers and successful show stoppers! This year's line-up will offer the best of the best!

The Colored Breed Sales will be held on Friday, April 8th starting at 6:00PM!
Ayrshire's, Brown Swiss, Guernsey's & Milking Shorthorns will be offered!
Fabulous show age heifers that will win all year from tremendous maternal lines!
Catalogs will be online 2 days prior to the sale!

The NY Spring Holstein Sale & Colored Breed Sales will be held in the Poultry Barn.

The sale will be broadcast live via Cowbuyer.com with real time bidding to pre-registered, pre-approved bidders! If you need assistance, contact Aaron Ray Tompkins @ 336-363-4639

Sponsored By

NEW YORK HOLSTEIN ASSOCIATION INC. EST. 1920

Sale Managed By/Catalogs
The CATTLE EXCHANGE
Dave & Merry Rama
4236 Co. Hwy. 18, Delhi, NY 13753
Phone: 607-746-2226 • Fax: 607-746-2911
E-mail: daveramasr@cattlexchange.com
Website: www.cattlexchange.com

Terms of sale:
Cash or good check sale day!

## 5TH ANNUAL FARM BUREAU DISTRICT 4 YOUNG FARMERS AUCTION
### SATURDAY, APRIL 2ND @ 10:00 AM
AT CHEMUNG COUNTY FARM GROUNDS
Use gate 3 next to Byrne Dairy on Fairview Avenue off Grand Central Avenue
Horseheads, New York 14845

You are invited to this Consignment Auction to sell your items of farm equipment
**Already consigned:** 1947 Case VA tractor – older restoration, WFE, wgts, new rubber, PTO & belt pulley; **Bobcat 727** Skid Steer, propane, new motor; **Int 986** 2 wheel; 5 ton grain bin; single axle manure sprd. 1000 gallon; **Little Giant** 40ft hay and grain elevator; **Gehl BU55** self unloading wagon and gear; 3pt concrete mixer (like new); lawn mowers, etc. plus more by sale time

**Merchandise will be accepted at the fair grounds and tagged in**
**On Wednesday March 30th thru Friday April 1st (note change of date)**
**From 9:30 AM till 4:30 PM**

## HOWARD W. VISSCHER & SON
### SALES MANAGERS AND AUCTIONEER
### NICHOLS, NY • 607-699-7250
**Continue to check Auctionzip #7884 as we get closer to the sale date or to inquire wvisscher1@stny.rr.com**
Farm Bureau Young Farmers: Jeff Benjamin 607-426-1882
Alan Hughson 607-857-4930
Nichole Rawleigh 607-664-7245

Legal Notice

# If Your Farm Produced and Pooled Grade A Milk In Federal Milk Marketing Order 1 Between 2002 and 2014

## You Could Get Money from a Class Action Settlement

A $50 million Settlement with Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (the "Defendants") has been reached in a class action involving the price of raw Grade A milk that was produced and sold in the Northeast. If approved by the Court, the Settlement will provide payments to dairy farmers who submit valid claim forms and you may be eligible. The Settlement will also result in certain changes to the way DFA and DMS operate their businesses.

### What is the case about?

The lawsuit claims that Defendants unlawfully agreed and conspired with themselves and others to restrict competition in, and monopolize the market for, the marketing, sale, and purchase of raw Grade A milk in Federal Milk Market Order 1 ("Northeast"). The lawsuit seeks to recover money damages from DFA and DMS for allegedly suppressing the price of raw Grade A milk received by farmers, and to stop Defendants from engaging in any conduct the Court determines has unlawfully prevented competition for the sale and purchase of raw Grade A milk. Defendants deny that they did anything wrong.

### Are you included?

In general, all dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 at any time from January 1, 2002 to the present are included in the class action. The Court has certified two subclasses of Plaintiffs in this case: a subclass of farmers who sell their milk through DFA or DMS, and a subclass of farmers who do not sell through DFA/DMS. This Settlement provides money to both Subclasses. See the detailed notice at the website for any exceptions to Subclass Membership.

### What Does the Settlement Provide?

Defendants have agreed to pay $50 million into a Settlement Fund. After deducting attorneys' fees, costs, incentive fees for the dairy farmers who brought the lawsuit, and other fees, the net Settlement Fund will be distributed to Class Members who file valid claims. The Settlement will also result in certain changes to Defendants' business practices. If the Court approves this settlement, you will be bound by the Release and you will not be able to sue DFA and DMS, as well certain related entities, for the claims in this suit or related claims, unless you opt out.

### How to Get a Payment?

**If you previously submitted a Claim in the previous 2014 DFA/DMS Settlement, and wish to receive payment here, you do NOT need to submit another Claim.** If you did not submit a Claim, but wish to receive payment here, you must submit a Claim. You can get a Claim Form at www.NortheastDairyClass.com or by calling 1-855-460-1533. The deadline to submit a Claim Form is April 29, 2016. The amount of money you may receive will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to December 12, 2014 as well as the number of valid claims that are received, and the fees, costs and expenses the Court approves. We don't know how many people will file claims; if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be approximately $4,000. Your payment could be more or less.

### Your Other Rights

If you do nothing, you will not be able to sue DFA or DMS for any claim relating to the lawsuit. If you want to be able to sue DFA or DMS for any claim relating to this suit, you must exclude yourself from this Settlement. You may support or object to the Settlement by April 29, 2016. The Court will hold a hearing on May 13, 2016, to consider whether to approve the Settlement and a request by the Class lawyers for one-third of the settlement amount ($16.66 million) in attorneys' fees, plus costs, expenses, and incentive fees of up to $20,000 for each of the dairy farms that brought the lawsuit. You do not need to attend the hearing. If you wish, you or your own lawyer may ask to appear and speak at the hearing at your own cost.

## You can get more information at www.NortheastDairyClass.com; by calling 1-855-460-1533; or by writing to: Northeast Dairy Farmer Class, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958.

# Learn how to use a grazing chart for profitable decision making

Want to improve your grazing management decision-making? Are you ready to take a step towards improving your bottom line? Do you need to work on planning, monitoring and verifying your actions?

If you said yes to any of these questions, The Madison County Cornell Cooperative Extension will be hosting a grazing planning get-together on a Thursday evening, April 7, 2016 from 7 p.m.-9 p.m. at their newly renovated event center on 100 Eaton Street Morrisville, NY.

Putting some pre-planning time into creating what you want to happen for your farm by using a daily grazing chart tool is an approach that is gaining in popularity among serious grazing managers to keep track of where you were, where you are and where you are going throughout the grazing season. Highly recognized grazing practitioners such as Joel Salatin, Jim Gerrish, Allan Savory and Greg Judy all use grazing system monitoring tools to create the land they want and improve profit.

"It has been said the initial grazing plan itself is of little value as it will change considerably from the first draft, but it is the thought process of

creating a strategic grazing plan that is important. Having experienced the process of developing a strategic grazing plan, a grazier is better prepared to make adjustments which allows the grazier to make timely, more informed, strategic grazing management decisions," says Hugh Aljoe, Noble Foundation Producer Relations Manager.

The team of Troy Bishopp, Grazing Specialist from Madison County SWCD and The Upper Susquehanna Coalition and Madison County beef farmer, Jubel Caudell, from The Late Friday Farm in Lebanon, NY will lead a lively conversation and demonstration in teaching the forward planning decisions of using the grazing chart that will be put into practice this season.

If you want to get a jump on your grass production, reduce stress and enjoy some ice-cream, please consider joining us for this fun, hands-on, reality-based meeting. Paper grazing charts will be available for a nominal fee.

To register for this meeting contact Katherine Brosnan of Madison County CCE at 315-684-3001 ext.100 and kmb279@cornell.edu or Troy Bishopp at Madison Co. SWCD at 315-824-9849 Ext. 110.



*Grazing chart is a useful tool.*

## Making from A11

penetrate, and the heat in the bale will not mitigate to as low a temperature as it would when there are enough layers to exclude all oxygen, reducing quality.

Inline wrapping of multiple bales is acceptable. It's important to seal the ends of the rows. Bales have to be of uniform density and diameter. This method will save about 40 percent on plastic costs, but works

best if at least three or four bales per day are being used.

Undersander emphasized the importance of applying sulfur to forage fields. With the decrease in acid rain seen over the past 15 years, sulfur is needed. He advised farmers that all forage crops remove about five pounds of sulphur per ton of dry matter, and need to be supplemented accordingly. Yellow leaves and stunted growth are symptoms of

sulfur deficiency. Deficiency is measured via tissue sample, not soil tests, which are not accurate for sulfur.

Following best practices from seed to feed means higher quality forages can be produced. Producing and feeding the best quality hay and haylage reduces the return on investment, decreases the need for supplemental feed, and keeps livestock, fields and the farm's finances in good health.

**Legal Notice**

# If Your Farm Produced and Pooled Grade A Milk In Federal Milk Marketing Order 1 Between 2002 and 2014

## You Could Get Money from a Class Action Settlement

A $50 million Settlement with Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (the "Defendants") has been reached in a class action involving the price of raw Grade A milk that was produced and sold in the Northeast. If approved by the Court, the Settlement will provide payments to dairy farmers who submit valid claim forms and you may be eligible. The Settlement will also result in certain changes to the way DFA and DMS operate their businesses.

**What is the case about?**

The lawsuit claims that Defendants unlawfully agreed and conspired with themselves and others to restrict competition in, and monopolize the market for, the marketing, sale, and purchase of raw Grade A milk in Federal Milk Market Order 1 ("Northeast"). The lawsuit seeks to recover money damages from DFA and DMS for allegedly suppressing the price of raw Grade A milk received by farmers, and to stop Defendants from engaging in any conduct the Court determines has unlawfully prevented competition for the sale and purchase of raw Grade A milk. Defendants deny that they did anything wrong.

**Are you included?**

In general, all dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 at any time from January 1, 2002 to the present are included in the class action. The Court has certified two subclasses of Plaintiffs in this case: a subclass of farmers who sell their milk through DFA or DMS, and a subclass of farmers who do not sell through DFA/DMS. This Settlement provides money to both Subclasses. See the detailed notice at the website for any exceptions to Subclass Membership.

**What Does the Settlement Provide?**

Defendants have agreed to pay $50 million into a Settlement Fund. After deducting attorneys' fees, costs, incentive fees for the dairy farmers who brought the lawsuit, and other fees, the net Settlement Fund will be distributed to Class Members who file valid claims. The Settlement will also result in certain changes to Defendants' business practices. If the Court approves this settlement, you will be bound by the Release and you will not be able to sue DFA and DMS, as well certain related entities, for the claims in this suit or related claims, unless you opt out.

**How to Get a Payment?**

If you previously submitted a Claim in the previous 2014 DFA/DMS Settlement, and wish to receive payment here, you do NOT need to submit another Claim. If you did not submit a Claim, but wish to receive payment here, you must submit a Claim. You can get a Claim Form at www.NortheastDairyClass.com or by calling 1-855-460-1533. The deadline to submit a Claim Form is April 29, 2016. The amount of money you may receive will depend on the amount of raw Grade A milk you produced and pooled on Order 1 from January 1, 2002 to December 12, 2014 as well as the number of valid claims that are received, and the fees, costs and expenses the Court approves. We don't know how many people will file claims; if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be approximately $4,000. Your payment could be more or less.

**Your Other Rights**

If you do nothing, you will not be able to sue DFA and DMS for any claim relating to the lawsuit. If you want to be able to sue DFA or DMS for any claim relating to this suit, you must exclude yourself from this Settlement. You may support or object to the Settlement by April 29, 2016. The Court will hold a hearing on May 13, 2016, to consider whether to approve the Settlement and a request by the Class lawyers for one-third of the settlement amount ($16.66 million) in attorneys' fees, plus costs, expenses, and incentive fees of up to $20,000 for each of the dairy farms that brought the lawsuit. You do not need to attend the hearing. If you wish, you or your own lawyer may ask to appear and speak at the hearing at your own cost.

## You can get more information at www.NortheastDairyClass.com; by calling 1-855-460-1533; or by writing to: Northeast Dairy Farmer Class, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958.



Robert_Ford/istock

# Preserving Connecticut Land

## The Northeastern state's tax program saves dollars and farmland

By David Weinstock & Curt Harler

**F**armland preservation in Connecticut is the very definition of being stuck between a rock and a hard place. But for the conservation ethic of the state's residents, it would be almost impossible to preserve farmland against its very imposing development pressure.

And yet the state has been successfully preserving farmland since 1978 despite urbanizing pressure from its neighbors. Connecticut is in the shadow of New York City to the southwest and Springfield and Boston, Massachusetts, to the north. The engine that runs the effort is a partnership between state government, local municipalities and local land trusts.

The tax savings to state farmers are considerable. As each property tax filing deadline approaches, operations that are enrolled in one of the many programs realize the short-term financial benefits of preservation programs. Those farmers' grandchildren will reap the long-term benefits.

Using agricultural conservation easements, the Connecticut Department of Agriculture Farmland Preservation Program, along with its partners, has permanently preserved 42,000 acres on 322 farms. In addition, they have

two large agricultural preserves—owned outright by the state—portions of which it leases to area farmers.

The larger of the two, Southbury Farms, is a 920-acre parcel, 400 acres of which are open fields. "It used to be unprotected state land," said Cameron Weimar, director of Connecticut's Farmland Preservation Program. "We are in the process of granting a permanent easement on the property to a land trust."

Land trusts are local, nonprofit organizations that have the purpose of either holding easements to preserve land or assisting in acquiring easements. In 1986, the Connecticut Legislature created the Joint State-Town Farmland Preservation Program, enabling towns to partner with the state to purchase farm development rights.

That's a pricey venture in Connecticut. Highly developable land in western Connecticut sells in the $25,000- to $35,000-per-acre range. Land restricted to farming in the same region costs $4,000 to $5,000 an acre.

Connecticut towns have a tool to take the sting out of best-use values. The law allows farms to be assessed according to their current usage values.

## Easements

Held by the state, local governments or land trusts, Connecticut's conservation easements are funded by state and federal grants as well as bonds.

"They are the bread-and-butter of our program," Weimar said. "We [the state] hold the easements to allow farmers to stay on the land, actively farming."

Farmers who apply to the original state program must be actively farming and the farm's soils must consist of a high percentage of prime or important agricultural soils. Which soils are prime or important is determined by the USDA's Natural Resources and Conservation Service's Web Soil Survey.

Then the state performs a title search. "Any land taken into our program must have a clear title," Weimar said. "If it is owned by a corporation, it must provide a current operating agreement saying all owners agree to the easement."

Should there be any liens, the banks that hold them must subordinate them. "Most of the time, banks are accommodating because farmers will receive considerable compensation, which can be used as debt service or to otherwise improve the farm's profitability," he said.

In the event of the property changing hands as a result of the landowner's death or retirement, easements follow the land title. "Our easements are permanent," Weimar said.

*Public Act 490 is a tool ag commissions can use to aid in local farmland preservation.*

## Land trusts

Even when farms are being farmed and they have the necessary soils, they still may not qualify for the original state program because they are too small. That's where Connecticut's towns and land trusts tend to enter the game.

For example, a group of state citizens who were concerned with the state's inability to save farms too small to be listed under its farmland preservation program created the Connecticut Farmland Trust (CFT). "Sixty-four

percent of the Connecticut farms are 49 acres or less," said Elisabeth Moore, CFT's executive director.

CFT is a private, nonprofit dedicated to preserving small farms from development. "Farms ranging in size from 30 to 40 acres are our sweet spot," she said.

The bulk of the trust's easement holdings are located near Lebanon in New London County, one of the state's northernmost counties, where much of its remaining agriculture lies. Most of the easements it holds are for "dairy support" farms, where hay and feed grains are grown.

Other enterprises in the trust's portfolio include several orchards, a Christmas tree farm, a greenhouse operation producing vegetables and bedding plants, and a 20-acre,

Continued on page 50

Legal Notice

## If Your Farm Produced and Pooled Grade A Milk In Federal Milk Marketing Order 1 Between 2002 and 2014
### You Could Get Money from a Class Action Settlement

A $50 million Settlement with Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (the "Defendants") has been reached in a class action involving the price of raw Grade A milk that was produced and sold in the Northeast. If approved by the Court, the Settlement will provide payments to dairy farmers who submit valid claim forms and you may be eligible. The Settlement will also result in certain changes to the way DFA and DMS operate their businesses.

#### What is the case about?
The lawsuit claims that Defendants unlawfully agreed and conspired with themselves and others to restrict competition in, and monopolize the market for, the marketing, sale, and purchase of raw Grade A milk in Federal Milk Market Order 1 ("Northeast"). The lawsuit seeks to recover money damages from DFA and DMS for allegedly suppressing the price of raw Grade A milk received by farmers, and to stop Defendants from engaging in any conduct the Court determines has unlawfully prevented competition for the sale and purchase of raw Grade A milk. Defendants deny that they did anything wrong.

#### Are you included?
In general, all dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 at any time from January 1, 2002 to the present are included in the class action. The Court has certified two subclasses of Plaintiffs in this case: a subclass of farmers who sell their milk through DFA or DMS, and a subclass of farmers who do not sell through DFA/DMS. This Settlement provides money to both Subclasses. See the detailed notice at the website for any exceptions to Subclass Membership.

#### What Does the Settlement Provide?
Defendants have agreed to pay $50 million into a Settlement Fund. After deducting attorneys' fees, costs, incentive fees for the dairy farmers who brought the lawsuit, and other fees, the net Settlement Fund will be distributed to

Class Members who file valid claims. The Settlement will also result in certain changes to Defendants' business practices. If the Court approves this settlement, you will be bound by the Release and you will not be able to sue DFA and DMS, as well certain related entities, for the claims in this suit or related claims, unless you opt out.

#### How to Get a Payment?
**If you previously submitted a Claim in the previous 2014 DFA/DMS Settlement, and wish to receive payment here, you do NOT need to submit another Claim.** If you did not submit a Claim, but wish to receive payment here, you must submit a Claim. You can get a Claim Form at www.NortheastDairyClass.com or by calling 1-855-460-1533. The deadline to submit a Claim Form is April 29, 2016. The amount of money you may receive will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to December 12, 2014 as well as the number of valid claims that are received, and the fees, costs and expenses the Court approves. We don't know how many people will file claims; if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be approximately $4,000. Your payment could be more or less.

#### Your Other Rights
If you do nothing, you will not be able to sue DFA or DMS for any claim relating to the lawsuit. If you want to be able to sue DFA or DMS for any claim relating to this suit, you must exclude yourself from this Settlement. You may support or object to the Settlement by April 29, 2016. The Court will hold a hearing on May 13, 2016, to consider whether to approve the Settlement and a request by the Class lawyers for one-third of the settlement amount ($16.66 million) in attorneys' fees, plus costs, expenses, and incentive fees of up to $20,000 for each of the dairy farms that brought the lawsuit. You do not need to attend the hearing. If you wish, you or your own lawyer may ask to appear and speak at the hearing at your own cost.

**You can get more information at www.NortheastDairyClass.com; by calling 1-855-460-1533; or by writing to: Northeast Dairy Farmer Class, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN  55021-2958.**

PD EAST MAIN PG

# Do You Know? ??

## Exporting Dairy Not Foreign Concept




# 10
### INTERNATIONAL OFFICES

The U.S. Dairy Export Council, primarily supported by dairy farmers through their checkoff investment, collaborates with more than 100 cooperative, processor and trading companies to build global demand of U.S. dairy products and ingredients. USDEC has 10 international offices that serve as the organization's eyes and ears in foreign markets to identify opportunities, chart the business climate and monitor regulatory activity.

## So what does this mean to America's dairy farmers? Consider these results:


625%


# $5.2 BILLION

Our nation has gone from exporting dairy products valued at less than $1 billion in 2000 to exporting $5.2 billion in 2015, an increase of 625 percent.

Sixteen years ago we were exporting roughly 5 percent of our milk production. Now, we're nearly three times that level, even as overall U.S. milk production continues to grow.



# 1 DAY'S MILK

The equivalent of one day's milk production each week from the entire U.S. dairy industry ultimately ends up overseas, making exports integral to the health of the industry at large.




Fresh Milk

Visit www.usdec.org to learn more about how the U.S. Dairy Export Council is making a difference for dairy farmers across the globe.

Information provided by Dairy Management Inc.

---

Legal Notice

## If Your Farm Produced and Pooled Grade A Milk In Federal Milk Marketing Order 1 Between 2002 and 2014

### You Could Get Money from a Class Action Settlement

A $50 million Settlement with Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (the "Defendants") has been reached in a class action involving the price of raw Grade A milk that was produced and sold in the Northeast. If approved by the Court, the Settlement will provide payments to dairy farmers who submit valid claim forms and you may be eligible. The Settlement will also result in certain changes to the way DFA and DMS operate their businesses.

**What is the case about?**

The lawsuit claims that Defendants unlawfully agreed and conspired with themselves and others to restrict competition in, and monopolize the market for, the marketing, sale, and purchase of raw Grade A milk in Federal Milk Market Order 1 ("Northeast"). The lawsuit seeks to recover money damages from DFA and DMS for allegedly suppressing the price of raw Grade A milk received by farmers, and to stop Defendants from engaging in any conduct the Court determines has unlawfully prevented competition for the sale and purchase of raw Grade A milk. Defendants deny that they did anything wrong.

**Are you included?**

In general, all dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 at any time from January 1, 2002 to the present are included in the class. The Court has certified two subclasses of Plaintiffs in this case: a subclass of farmers who sell their milk through DFA or DMS, and a subclass of farmers who do not sell through DFA/DMS. This Settlement provides money to both Subclasses. See the detailed notice at the website for any exceptions to Subclass Membership.

**What Does the Settlement Provide?**

Defendants have agreed to pay $50 million into a Settlement Fund. After deducting attorneys' fees, costs, incentive fees for the dairy farmers who brought the lawsuit, and other fees, the net Settlement Fund will be distributed to Class Members who file valid claims. The Settlement will also result in certain changes to Defendants' business practices. If the Court approves this settlement, you will be bound by the Release and you will not be able to sue DFA and DMS, as well as certain related entities, for the claims in this suit or related claims, unless you opt out.

**How to Get a Payment?**

__If you previously submitted a Claim in the previous 2014 DFA/DMS Settlement, and wish to receive payment here, you do NOT need to submit another Claim.__ If you did not submit a Claim, but wish to receive payment here, you must submit a Claim. You can get a Claim Form at www.NortheastDairyClass.com or by calling 1-855-460-1533. The deadline to submit a Claim Form is April 29, 2016. The amount of money you may receive will depend on the amount of raw Grade A milk you produced in and pooled on Order 1 from January 1, 2002 to December 12, 2014 as well as the number of valid claims that are received, and the fees, costs and expenses the Court approves. We don't know how many people will file claims; if 8,000 dairy farmers file a valid claim, the average payment per farmer is estimated to be approximately $4,000. Your payment could be more or less.

**Your Other Rights**

If you do nothing, you will not be able to sue DFA or DMS for any claim relating to the lawsuit. If you want to be able to sue DFA or DMS for any claim relating to this suit, you must exclude yourself from this Settlement. You may support or object to the Settlement by April 29, 2016. The Court will hold a hearing on May 13, 2016, to consider whether to approve the Settlement and a request by the Class lawyers for one-third of the settlement amount ($16.66 million) in attorneys' fees, plus costs, expenses, and incentive fees of up to $20,000 for each of the dairy farms that brought the lawsuit. You do not need to attend the hearing. If you wish, you or your own lawyer may ask to appear and speak at the hearing at your own cost.

---

### You can get more information at
**www.NortheastDairyClass.com;**
**by calling 1-855-460-1533;**
### or by writing to: Northeast Dairy Farmer Class, c/o Rust Consulting, Inc., PO Box 2958, Faribault, MN 55021-2958.