```
                   UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT

ALICE H. ALLEN, et al.        *
                              *
         V                    *
                              *
DAIRY FARMERS OF AMERICA,     *
INC., et al.                  *   CIVIL FILE NO. 09-230




                        TELEPHONE CONFERENCE
                        Thursday, May 5, 2016
                         Burlington, Vermont




BEFORE:

     THE HONORABLE CHRISTINA R. REISS
        Chief District Judge


APPEARANCES:

     BRENT W. JOHNSON, ESQ., EMMY L. LEVENS, ESQ., and
        KIT A. PIERSON, ESQ., Cohen Milstein Sellers &
        Toll PLLC, 1100 New York Avenue, N.W.,
        Washington, D.C.; Attorneys for the Plaintiffs

     ROBERT G. ABRAMS, ESQ., DANYLL W. FOIX, ESQ.,
        BakerHostetler LLP, Washington Square, Suite
        1100, 1050 Connecticut Avenue, NW, Washington,
        D.C.; Attorney for the Plaintiffs

                                     Appearances Cont'd...



                       ANNE NICHOLS PIERCE
                 Registered Professional Reporter
                   United States District Court
                       Post Office Box 5633
                    Burlington, Vermont  05402
                         (802) 860-2227
```

APPEARANCES CONTINUED:

    STEVEN R. KUNEY, ESQ. Williams & Connolly LLP,
       725 Twelfth Street, N.W., Washington, D.C.;
       Attorney for Defendant Dairy Farmers of America,
       Inc.

    DANIEL J. SMITH, ESQ., Northeast Dairy Compact
       Commission Executive Director, 16 State Street,
       Montpelier, Vermont; Attorney for the
       Intervenors

    RICHARD T. CASSIDY, ESQ. and MATTHEW M. SHAGAM,
       ESQ., Hoff Curtis, 100 Main Street, Burlington,
       Vermont; Attorneys for the Intervenors

                    *** ** ***

ANNE NICHOLS PIERCE
Registered Professional Reporter
United States District Court
Post Office Box 5633
Burlington, Vermont  05402
(802) 860-2227

```
 1    THURSDAY, MAY 5, 2016
 2    (The following was held in open court at 3:35 p.m.)
 3              COURTROOM DEPUTY:  Your Honor, the matter
 4    before the Court is civil case number 09-CV-230, Alice
 5    H. Allen, et al. versus Dairy Farmers of America, et al.
 6    Present for the plaintiffs on the telephone are Robert
 7    Abrams, Emmy Levens, Brent Johnson, Danyll Foix, Kit
 8    Pierson, Daniel Smith, Richard Cassidy and Matthew
 9    Shagam.  Present for defendant is Steven Kuney via
10    telephone.
11              THE COURT:  Good afternoon.  So you wanted to
12    speak to me, and that's fine.  We don't have great luck
13    with the telephone, but one thing that makes it easier
14    is that if you identify yourself each time you speak,
15    even if I know your voice it's not guaranteed that the
16    court reporter's going to know your voice.  So tell me
17    what you would like me to hear.
18              MR. PIERSON:  Thank you, your Honor.  This is
19    Kit Pierson.  And personally, thank you very much for
20    doing this on short notice.
21        You know, we, as you can imagine, the lawyers, have
22    been talking about the logistical issues presented by
23    sort of the flood of letters and the number of people
24    that have indicated they would like to speak at the
25    hearing, and we wanted to really contact you about two
```

```
 1    things.  One was to let you know some information that
 2    we're pulling together in pretty short order that will
 3    be provided to the Court that I think will help with the
 4    logistics, and I will explain what that information is.
 5         And then we wanted to -- we have got some questions
 6    that we are being asked about how the fairness hearing
 7    will be handled, and we have discussed among ourselves
 8    our own thoughts about -- or suggestions on some of the
 9    issues that occurred to us, but recognizing that, you
10    know, it's a hundred percent up to the Court, and
11    we're -- will offer our thoughts about issues we flagged
12    and our thoughts on those, but understanding it will be
13    handled however the Court wants to handle it.
14         The information that we're providing -- that we are
15    going to provide, which I would anticipate being filed
16    with final approval papers probably late in the day
17    Monday, so probably after close of business -- but there
18    are two charts that we're pulling together.  One is a
19    list of the people that have, consistent with the
20    Court's -- with the procedures the Court provided in the
21    notice, have indicated -- have provided notice that they
22    would like to speak at the hearing, and I can tell you
23    there -- our current understanding is that there are --
24    there are six, I guess what I would say, class
25    representative farms that are planning to speak, but
```

1          that includes -- one of those farms are the Haars, as
2          you will remember from the last hearing, three of the
3          Haars spoke at the hearing, so, you know, depending on
4          how one wants to look at it, you can either look at it
5          as eight people speaking or six farms, but -- so that's
6          one cluster.
7               The other cluster are people who have indicated
8          they intend to speak who are not class representatives,
9          and our current count is that that is -- there are an
10         additional 23 people, although I think -- my
11         understanding is that there are letters that have been
12         received that have not yet been docketed, so I think the
13         number may actually be closer to about 30, but we will
14         try to have that all figured out by Monday and get that
15         information to the Court.  We will file it as a pleading
16         with the list of who falls into these two groups.  You
17         will have a list in front of you, part of our thinking
18         on that.
19              The second thing we are pulling together is just --
20         is a chart that has all -- that will list all the
21         letters.  I don't know the sequence they are listed in.
22         It may be by docket number.  I don't know.  But it will
23         list them all, and it will indicate -- you know, it will
24         have a column that identifies whether someone supports
25         the settlement, whether someone is objecting to the

1      settlement, or whether someone has opted out of the
2      class.  So we will provide that information, I think, in
3      a granular way in the chart and we will also give you an
4      aggregate so you will know the totals.
5           So that -- is there any questions about that?
6      That's the information we will submit, and then I can
7      talk about the issues that have occurred to us.
8               THE COURT:  Okay.  So you can continue to
9      provide information if you want.  I can tell you how I
10     think it should unfold.  Whatever you want to do next.
11              MR. PIERSON:  All right.  Well, maybe I should
12     go ahead and give you our sort of preliminary -- well,
13     the issues that occurred to us, and I will just flag
14     them and then we will listen to how you want to handle
15     it.
16          So, you know, the biggest concern that we have been
17     talking through is just the number of people and how the
18     mix -- we understand from the prior proceedings, you
19     know, the Court has been very generous with people,
20     letting people speak at these hearings, and so that sort
21     of is our going-in assumption.  And we're trying to
22     figure out how to get that done.
23          There's one other consideration which I know is
24     important to -- that a number of farmers have
25     communicated with -- and some other lawyers can speak to

1   this if they need to, but the number of farmers that
2   have expressed, you know, strong feelings to us that
3   it's important to them that -- if that it's possible,
4   that we get this done -- that we get at least their part
5   of it done in one day.  So that has been -- so we
6   thought about how that could be accomplished.  And the
7   concern on the part of the farmers is that some of them
8   are traveling a good distance, it's the planting season,
9   and so we are hoping when they show up they will have
10  the chance to speak.
11               THE COURT:  But it isn't Rutland Dairy Days or
12  anything, is it?  It's not Rutland Dairy Day?
13               MR. PIERSON:  Excuse me?
14               THE COURT:  It's not Rutland Dairy Day or
15  Vermont Dairy Day or anything that we are going to have
16  this hearing?  Remember that came up last time?
17               MR. PIERSON:  Your Honor, I think that -- oh,
18  go ahead, Danny.
19               MR. SMITH:  Yeah, this is Danny Smith.  I
20  think you are safe this time, your Honor.
21               THE COURT:  Okay.  Thank you.
22               MR. PIERSON:  No, the issue is just they are
23  in the planting season, and so we are trying to do the
24  best we can to accommodate them.  But here are what we
25  talked about, and I do want to just reiterate that we

1     understand -- we're really honoring this in the spirit
2     of take it for what it's worth, and we will do -- do
3     whatever the Court wants us to.
4         You know, we talked about whether it might make
5     sense to start the hearing at nine a.m. instead of 10,
6     and if we -- and how we could provide notice if we do
7     that, which we think we are able to do.
8         One of the things we had talked about is -- the
9     possibility would be to have the class representatives
10    speak in the morning, and, you know, how much time they
11    would all have would be obviously up to the Court, but
12    we thought that if we had the class reps speak in the
13    morning, and then had all the other farmers that had
14    provided notice -- you know, had provided notice they
15    intend to speak, speak in the afternoon, and our
16    understanding is that with those farmers in general, I
17    think our expectation would be that they're planning to
18    speak, you know, relatively short duration most of them,
19    five or 10 minutes.  It's not probably true of all the
20    class reps, but it's probably true of the rest of the
21    farmers.
22        But our thought was that if we broke it down that
23    way, that -- that all the farmers that had indicated an
24    intention to speak ought to be able to speak in that
25    day.  Our assumption, again up to the Court, was that --

1     I mean, there are a number of groups of lawyers here.
2     There's the -- you know, the DFA/DMS subclass.  There's
3     the non-DFA/DMS subclass.  There's the defendants.  That
4     probably for the lawyers to do what we ought to do and
5     to answer all the Court's questions, that that --
6     probably two hours is reasonable for that.  But it
7     obviously does not have to occur on Friday.  I think
8     from our point of view it's more important to let the
9     farmers who want to speak, speak.
10         And I think the only other issue that we had --
11    there are sort of two other issues that we had talked
12    about that I should flag.  One is, you know, there's
13    some concern -- because we know there're organized
14    efforts to get farmers there, and if we -- you know,
15    we're told there's, you know, like a bus load of farmers
16    that may come.  We wanted to be sure that the people
17    that have provided notice to speak actually are able to
18    get into the courtroom, because there is some
19    possibility of crowd -- of a crowd.
20         And the one other issue, which I will just flag and
21    then I will stop, is we have received questions from
22    individuals, and I know other attorneys have received
23    questions from individuals who are not class members
24    either because they were never class members or they
25    have opted out, but they are not class members, and they

```
 1    haven't provided notice of an intention to speak, and
 2    basically the question was -- what was raised was should
 3    they show up, are they going to be able to speak anyway?
 4    And we just wanted to know if there's any guidance about
 5    what we ought to tell them on that.
 6         So that's kind of our list, your Honor, and thanks
 7    for your patience.
 8              THE COURT:  Okay.  I don't think we should
 9    start early.  I think that we are going to need to get
10    people through security, and it's just not going to work
11    to move it up.  And I want to avoid any conspiracy
12    theory that the hearing is engineered to prevent people
13    from X, Y or Z.  I am just not going to go there.  So we
14    are going to start when we are going to start.
15         This is their fairness hearing, so I don't think I
16    need two hours from the attorneys.  Judges don't see
17    that as the focus of a fairness hearing.  This -- I have
18    heard from you, you know.  I will be very conversant
19    with your papers, and if there's time, that's one thing,
20    but this is for the purpose of class members to either
21    support or object to the settlement, and that's really
22    what I want to hear.
23         I am not really thinking that I would need another
24    day, and I think that would feed into the conspiracy
25    theory, to hear from the attorneys.  So if something is
```

1    so disturbing that you need to respond in writing
2    thereafter, that's fine.  I don't plan on that
3    happening, but, you know, if it happens, it happens.
4         I was going to limit the speakers to who actually
5    followed the rules.  Most of these people have already
6    been through a fairness hearing, so they can't claim "I
7    didn't know that, you know, this is how it went" and "I
8    didn't understand what was going to happen."
9         This is -- we have had a dress rehearsal, and I am
10   going to be less amenable to having people speak because
11   they do understand what the process is, and there's just
12   too many of them.
13        I was planning on limiting everybody, including
14   class representatives because they really shouldn't have
15   a different status than class members, to five minutes
16   and keeping fairly religiously to that number.  And so I
17   didn't expect -- I mean, they have got an opportunity
18   for written objections, and it's just not conceivable
19   that we would have long diatribes or explanations, but
20   we will see how that works.
21        And with that as the number, I thought we could
22   probably get it in on one day, and if we can't, people
23   are going to have to come back.  But five minutes is
24   actually a fair amount of time to say this is what I
25   like, this is what I don't like, and I will provide

1   guidance.  I'm good at redirecting people, as you know,
2   when I think somebody is going off track and talking
3   about things that the Court can't resolve.  I will try
4   to direct it to the settlement.  So that's kind of what
5   I was thinking.
6        In terms of if we have a class representative and
7   they are husband and wife or father and son, I would
8   expect that each of them could speak.  I don't think
9   people's children should be able to speak, so I don't
10  want class members to get bumped out by nonclass
11  members.  And so, for example, I think the Haars should
12  be able to speak.  I don't know that we need to hear
13  from their son.  You know, I don't know that we are
14  going to have enough time for that.
15       So I am going to be fairly mindful that the purpose
16  is to give class members an opportunity to speak, and
17  it's less about the lawyers and the class
18  representatives because you have already told me what
19  their positions are.
20            MR. PIERSON:  That all seems fine to me,
21  your Honor.  I will let other counsel weigh in, but that
22  all seems quite workable to me.
23            THE COURT:  Anybody think that's not going to
24  be workable or would be -- and you should be candid
25  because we are still in the forming stage -- unfair,

```
 1    arbitrary, capricious, any of those things?
 2              MR. ABRAMS:  Your Honor, this is Bob Abrams.
 3    And I -- I was happy to hear all your comments and
 4    proceed in the manner that you said.  And I think it's
 5    helpful to us in answering questions as well that we're
 6    getting.
 7              THE COURT:  Okay.
 8              MR. SMITH:  Your Honor, this is Danny Smith.
 9    If I could just ask two questions --
10              THE COURT:  Sure.
11              MR. SMITH:  -- along that line.
12        So if I understand, the basic point is, we get a
13    call, somebody says, "I didn't get my notice in in
14    time," the answer is that only folks who did get their
15    notices in in time will be authorized to speak?
16              THE COURT:  Yes.
17              MR. SMITH:  And second question, more mundane,
18    recommendation as to what time folks should show up with
19    that anticipated number of participants given the
20    security based on your experience?
21              THE COURT:  So our court security starts
22    screening at eight, so it won't happen any earlier than
23    that, but that's probably -- if you are here at eight,
24    you will have a seat in the courtroom.
25              MR. SMITH:  Okay, very helpful.  Thank you.
```

```
 1            MR. KUNEY:  Your Honor, this is Steve Kuney.
 2    I have one question, if I may?
 3            THE COURT:  Sure.
 4            MR. KUNEY:  I know it's been -- I know it's
 5    been an ordeal for the clerk's office to post all these
 6    filings.  Where we find ourselves right now is that, you
 7    know, pursuant to the notice, people who intended to
 8    speak at the hearing were supposed to provide counsel
 9    with, you know, a cc. of their letter.  We have a number
10    of letters that we received that were mailed late last
11    week that have not yet appeared on the court's docket.
12    I don't know whether there's anything that we can or
13    need or should do about that, but we believe they were
14    timely filed and don't know whether the clerk has not
15    completely caught up yet or whether there's something we
16    should do to ensure that they don't lose out.
17            THE COURT:  So the whole thing is a
18    predicament in that we're getting lots and lots of
19    paper, and rather than making a judicial determination
20    as to is this a class member, is it timely, what should
21    I do about it, we have just been -- and some of them
22    aren't signed -- we have been docketing them as they --
23    as the clerk's office can come -- you know, through the
24    package, and they are going to show up on the docket.
25    That's just the easiest way to do it.  It's consistent
```

```
 1    with my policy of openness.
 2         We have had a couple requests for in camera
 3    inspection.  I have explained that's not the way we are
 4    going to proceed.  So that's the best I can do with the
 5    paper coming in is it will show up on the docket.
 6              MR. KUNEY:  Very well.  Thank you, your Honor.
 7              THE COURT:  Anything else?
 8              MR. PIERSON:  I don't think so, your Honor.
 9    Again, thank you for hearing us on short notice.
10              THE COURT:  Okay.  No problem.  We'll see you
11    soon.
12              (Court was in recess at 3:55 p.m.)
13                         *** ** ***
14
15
16
17              C E R T I F I C A T I O N
18       I certify that the foregoing is a correct
      transcript from the record of proceedings in the
19    above-entitled matter.
20                                 [signature: Anne Nichols Pierce]
21    June 5, 2016              _____
      Date                       Anne Nichols Pierce
22
23
24
25
```