U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 JUL 26 PM 12: 23

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ALICE H. ALLEN, et al., )
)
Plaintiffs, )
)
v. ) Case No. 5:09-cv-230
)
DAIRY FARMERS OF AMERICA, INC. and )
DAIRY MARKETING SERVICES, LLC, )
)
Defendants. )

## ENTRY ORDER DENYING THE MOTION
## TO EXTEND THE PERIOD TO OPT OUT OF
## THE DECEMBER 2015 SETTLEMENT
(Doc. 2132)

On June 7, 2016, the court approved a settlement (the "December 2015 Settlement") between Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") and the DFA/DMS and non-DFA/DMS subclasses (collectively, "Plaintiffs" or the "Dairy Farmers Class"). Pending before the court is the March 1, 2017 motion filed by Andrew and Matthew Toms (the "Toms") (Doc. 2132) to extend the time period to opt out of the December 2015 Settlement. Defendants oppose the motion, arguing that it is both untimely and made without justification. The Toms did not file a reply in support of their motion. The court took the pending motion under advisement on March 29, 2017.

The Toms are represented by Gary L. Franklin, Esq. Defendants are represented by Ian P. Carleton, Esq., Margaret M. Zwisler, Esq., Jennifer L. Giordano, Esq., Alfred C. Pfeiffer, Jr., Esq., and W. Todd Miller, Esq.

## I. Factual and Procedural Background.

In this lawsuit, Plaintiffs alleged that Defendants[1] violated the Sherman Act, 15 U.S.C. §§ 1-2 by conspiring to control the supply of raw Grade A milk in Federal Milk Market Order 1, which had the effect of suppressing certain premiums paid to dairy farmers for their milk.

The court certified the Dairy Farmers Class, which consisted of all dairy farmers, whether individuals, entities, or members of cooperatives, who produced and pooled raw Grade A milk in Order 1 during any time after January 1, 2002. The Dairy Farmers Class is comprised of two certified Subclasses:

1. All dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are members of DFA or otherwise sell milk through DMS ("DFA/DMS [S]ubclass"); and

2. All dairy farmers, whether individuals or entities, who produced and pooled raw Grade A milk in Order 1 during any time from January 1, 2002 to the present, who are not members of DFA and do not otherwise sell milk through DMS ("non-DFA/DMS [S]ubclass").

(Doc. 435 at 3-4.)

### A. The December 2015 Settlement.

After the court granted in part and denied in part Defendants' motion for summary judgment, this case was set for trial. Defendants and Plaintiffs thereafter entered into a series of settlement agreements which the court rejected until the parties entered into the December 2015 Settlement, which included an opt-out provision. On February 8, 2016, the court preliminarily approved the December 2015 Settlement, ordering that:

> 11. Any member of the Subclass who did not previously opt out of a Subclass but wishes to be excluded from the 2015 Settlement Agreement, may opt out of it by submitting a letter expressing such intent to the Claims Administrator at least twenty-one (21) days prior to the Fairness Hearing. This letter must be entitled "Opt-Out Letter." It must include the date, the caption of this case, as well as the Subclass member's

---

[1] Defendant DFA is a dairy cooperative that produces, processes, and distributes raw Grade A milk. Defendant DMS is a milk-marketing agency that was formed in 1999 by DFA and Dairylea Cooperative, Inc.

name, address, and signature. It must also clearly state that the Subclass member is opting out of the 2015 Settlement Agreement, with language such as, "I am opting out of the 2015 Settlement Agreement."

(Doc. 718 at 8-9, ¶ 11.)

These directions were also reflected in a Notice of Proposed Settlement (the "Notice") that was subsequently disseminated pursuant to a notice program approved by the court. The court found that the Notice was:

> written in plain language and clearly and conspicuously notif[ies] Subclass members of the nature of the litigation, the definition of the class certified, the class claims and issues, the contents of the 2015 Settlement Agreement, and the class members' rights to object, appear before the court, and be represented by counsel.
>
> [It] advise[s] Subclass members how they may obtain additional information, what they must do to exercise their rights, how to opt out of the 2015 Settlement Agreement, and what will happen if they do nothing.

*Id.* at 5-6, ¶¶ 3-4. Specifically, the Notice advised that Plaintiffs' "legal rights and options in this settlement" included opting out, in which event a Plaintiff electing to opt out would "[g]et no payment from the settlement. This is the only option that allows you to start (or remain part of) any other lawsuit against DFA or DMS about the legal claims in this case." (Doc. 718-1 at 1.) The Notice also contained the following information in question-and-answer format:

> 25. If I do not exclude myself, can I sue later?
>
> No. Unless you exclude yourself, you give up the right to sue DFA or DMS for all of the claims that this proposed settlement resolves and others that could have been asserted based on the conduct in the Complaint in this case. You must exclude yourself from the Subclass to start your own lawsuit, continue with a lawsuit, or be part of any other lawsuit against DFA or DMS relating to the "Released Claims" described in Section 1.16 of the Settlement Agreement.

*Id.* at 5.

The court ordered that the Notice be mailed by first class U.S. Mail to all potential members of the Subclasses whose identities and locations were reasonably ascertainable, and that it be published as soon as practicable in at least two publications with circulations that were reasonably likely to reach Subclass members. The court further

3

ordered that the December 2015 Settlement, the Notice, and its February 8, 2016 Order be posted on the class action website for this lawsuit maintained by the Claims Administrator. The same information was also available on the court's docket. After the approved notice program was effectuated, pursuant to Fed. R. Civ. P. 23 the court held a fairness hearing on May 13, 2016 at which class members were entitled to voice their opinions as to whether the December 2015 Settlement should be approved.

In a June 7, 2016 Opinion and Order, the court granted the parties' motion for final approval of the December 2015 Settlement (the "June 7, 2016 Opinion and Order"). On August 19, 2016, the court entered an Order Identifying Subclass Exclusions and Opt-Ins, Dismissing the Class Action Claims as to Defendants, Directing Entry of Final Judgment, and Approving the Settlement Allocation Plan (the "August 19, 2016 Order"). The August 19, 2016 Order provided in relevant part that:

> 5. Any person who timely submitted a request to be excluded from the class certified for litigation against DFA and DMS in accordance with the procedures outlined in the Court-approved notice of certification shall be excluded from the Subclasses, shall not receive any monetary payments that may result from the December 2015 Settlement, shall not be bound by any Court orders or jury verdicts in this case, and shall retain their individual right to sue Defendants on their own regarding the issues in this case, or not to pursue these legal claims if that is their choice. The names of farmers who timely submitted a request for exclusion from the class are listed in Appendix 1 to this Order.
>
> 6. Any person who timely submitted a Request for Exclusion from the December 2015 Settlement in accordance with the procedures outlined in the Court-approved notice of settlement shall be excluded from the Subclasses, shall have no rights with respect to the Settlement, and shall receive no payments as provided in the Settlement. The names of farmers who timely submitted a Request for Exclusion are listed in Appendix 2 to this Order.
>
> . . .
>
> 8. Those Subclass Members who failed to object to the December 2015 Settlement in accordance with the procedures outlined in the Court-approved notice are hereby deemed to have waived any objections to the Settlement or the Settlement Agreement and are barred from making such objections in the future.

4

(Doc. 2118 at 3, ¶¶ 5-6, 8.) The court "retain[ed] jurisdiction over the implementation, enforcement, and performance of the December 2015 Settlement," including "exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to the Settlement or the applicability of the Settlement Agreement." *Id.* at 5, ¶ 15.

On June 15, 2016, Subclass Representatives Jonathan and Claudia Haar (the "Haars") filed a Notice of Appeal (Doc. 2098), seeking appellate review of the court's approval of the December 2015 Settlement. On April 18, 2017, the Second Circuit held that the court did not err in finding the December 2015 Settlement fair, reasonable, and adequate under Rule 23. In light of the Second Circuit's decision, Defendants' contention that the Haars' appeal divested this court of jurisdiction to adjudicate the pending motion is moot.

### B. The Motion to Extend the Opt-Out Deadline.

In support of their motion, the Toms have submitted substantively identical affidavits wherein they aver that they operate a dairy farm in Walkersville, Maryland and are members of the Dairy Farmers Class, although they do not indicate their membership in a Subclass. They acknowledge that they received notice of the December 2015 Settlement, but do not specify when or how they received such notice. The Toms "understood there was a period during which [they] could 'opt-out' of the December 2015 Proposed Settlement[.]" (Doc. 2132-1 at 1, ¶ 2; Doc. 2132-2 at 1, ¶ 2.) Although they were "not happy" with the terms of the settlement, they did not consider opting out to be a "viable option" as they did not believe they would be able to hire counsel to represent them on an individual basis. *Id.* at 1, ¶ 3.

The Toms further aver that they did not know that other individuals who had opted out of the December 2015 Settlement had filed an action styled *Sitts, et al. v. Dairy Farmers of America, Inc., et al.*, 16-cv-287 (complaint filed Oct. 26, 2016), which is currently pending in this court (the "Opt-Out Litigation"). They represent that had they been aware of the Opt-Out Litigation, they would have opted out of the December 2015 Settlement.

## II. Conclusions of Law and Analysis.

Federal Rule of Civil Procedure 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). Because the court has entered final judgment in this action, the Toms' motion must be evaluated pursuant to Rule 60(b). *See* Fed. R. Civ. P. 60(b), advisory committee's note to 1946 amendment ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief[.]").

Rule 60(b) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case[.]" *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) (citations and internal quotation marks omitted). "In extraordinary circumstances, Rule 60(b) may be invoked to override the finality of judgments in the interests of justice." *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir. 1994). However, Rule 60(b) "does not allow district courts to indulge a party's discontent over the effects of its bargain." *Id.* (internal quotation marks omitted). Thus, "[a]bsent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011). The Toms neither dispute that their request is untimely, nor argue that they were denied due process. Rather, they contend that their untimely motion is justified by excusable neglect.

"[A] class member seeking permission to opt out late must first demonstrate 'excusable neglect' for his or her failure to comply with a fixed deadline." *In re Painewebber Ltd. P'ships Litig.*, 147 F.3d 132, 135 (2d Cir. 1998). The court considers four factors to determine whether neglect is excusable: "(1) 'the danger of prejudice' to the party opposing the extension; (2) 'the length of the delay and its potential impact on judicial proceedings'; (3) 'the reason for the delay, including whether it was within the reasonable control' of the party seeking the extension; and (4) whether the party seeking

6

the extension 'acted in good faith.'" *In re Am. Express*, 672 F.3d at 129 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Because the first, second, and fourth factors "usually" weigh in favor of the party seeking such relief, the Second Circuit has "focused" on the third factor, noting that "the equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule[.]'" *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003).

Regarding the third factor, the Toms aver that their delay was the product of their belief that they would be unable to secure counsel to represent them individually and their lack of notice of the Opt-Out Litigation. As Defendants point out, however, the Toms do not identify any efforts they undertook prior to the opt-out deadline to secure counsel or determine whether there was opt-out litigation pending. They also do not explain why they filed the instant motion four months after the Opt-Out Litigation commenced. Most significantly, the Toms received notice of the December 2015 Settlement, which clearly set forth the consequences of not opting out. They nonetheless failed to follow the court-ordered procedure for doing so. *See In re Am. Express*, 672 F.3d at 130 (affirming finding of no "excusable neglect" and observing that the "Class Notice is a reasonably straightforward document that contains a list of readable questions and answers discussing the content of the Class Action and the consequences of taking, or not taking, action in response"); *see also Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997) (articulating the "principle that failure to follow the clear dictates of a court rule will generally not constitute . . . excusable neglect"). In such circumstances, the Toms fail to provide a "reasonable basis" for their delay in bringing this motion. *See In re Painewebber*, 147 F.3d at 135-36 (affirming a finding of no excusable neglect where, although movant was hospitalized during the opt-out period, his "professed need to speak with his attorney is not a reasonable basis for his nine months of inaction" thereafter).

The first factor weighs in favor of Defendants, albeit not without countervailing considerations. While it is unlikely that Defendants will be forced to expend significant additional resources if the Toms are granted leave to opt out and join the Opt-Out

Litigation, Defendants persuasively assert that permitting the Toms to opt out at this time could prompt other class members to seek permission for an untimely opt out. In large enough numbers, an expansion of the opt-out class would be prejudicial. *See Massey v. On-Site Manager, Inc.*, 2013 WL 3149452, at *3 (E.D.N.Y. June 19, 2013) (concluding that defendant "would be prejudiced if the Court were to grant Perez's exclusion request as it would set a precedent for other class members to seek late exclusion").

The second factor, the length of the delay, weighs in Defendants' favor. The deadline to opt out was twenty-one days prior to the May 13, 2016 fairness hearing—approximately ten months before the Toms filed this motion. Significantly less substantial delays have precluded a finding of excusable neglect. *See, e.g., In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) (holding that "Elkmont did not demonstrate excusable neglect because, despite the fact it was aware of the settlement only one day after the opt out deadline, it still waited a full month to file its motion for an extension of time"); *Anwar v. Fairfield Greenwich Ltd.*, 315 F.R.D. 638, 640 (S.D.N.Y. 2016) (finding that the length of delay counseled against finding excusable neglect where movant submitted its opt-out notice two months after the deadline). Courts have also observed that belated requests to opt out threaten to "'undermine the finality of judgments . . . and would discourage settlements of such actions.'" *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 371-72 (S.D.N.Y. 1996) (commenting that "Defendants would be loath to offer substantial sums of money in compromise settlements of class actions unless they can rely on the notice provisions of Rule 23 to bind class members") (internal quotation marks omitted).

Regarding the fourth factor, the court is satisfied that the Toms have acted in good faith and Defendants do not argue to the contrary. The Toms nonetheless "made a conscious and informed choice of litigation strategy and cannot in hindsight seek extraordinary relief." *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994).

On balance, the relevant factors that must be considered in determining excusable neglect weigh against such a finding in the facts and circumstances of this case. *See In re*

*Painewebber*, 147 F.3d at 136 (holding that the district court "reached the right conclusion when it declined to grant plaintiff an enlargement of the deadline date to opt out" and did not abuse its discretion by denying plaintiff's "motion to exclude himself from the Class nearly a year after the deadline to do so had expired"). As a result, the Toms remain bound by the December 2015 Settlement, and their motion to extend the opt-out deadline must be DENIED.

## CONCLUSION

For the foregoing reasons, the motion to extend the period to opt out of the December 2015 Settlement is DENIED. (Doc. 2132.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of July, 2017.

Christina Reiss, Chief Judge
United States District Court