U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 DEC 18 PM 12: 58

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ALICE H. ALLEN, LAURANCE E. ALLEN, )
d/b/a Al-lens Farm, GARRET SITTS, RALPH )
SITTS, JONATHAN HAAR, CLAUDIA HAAR, )
RICHARD SWANTAK, PETER SOUTHWAY, )
MARILYN SOUTHWAY, REYNARD HUNT, )
ROBERT FULPER, STEPHEN H. TAYLOR, )
and DARREL J. AUBERTINE, on behalf of )
themselves and all others similarly situated, )
)
Plaintiffs, )
)
v. ) Case No. 5:09-cv-230
)
DAIRY FARMERS OF AMERICA, INC. and )
DAIRY MARKETING SERVICES, LLC, )
)
Defendants. )

**ENTRY ORDER GRANTING IN PART AND DENYING IN PART
SUBCLASS COUNSEL'S MOTION FOR APPROVAL OF PROPOSED
ALLOCATION OF ATTORNEYS' FEES
AND GRANTING IN PART AND DENYING IN PART
INTERVENOR COUNSEL'S CROSS-MOTION FOR ATTORNEYS' FEES**
(Docs. 2174, 2176, & 2177)

Pending before the court is a motion for approval of the proposed allocation of attorneys' fees incurred by Plaintiffs' class counsel ("Subclass Counsel") filed on September 7, 2018 and corrected on September 17, 2018. (Docs. 2174 & 2176.) Intervenor Subclass Counsel ("Intervenor Counsel") oppose that motion. Also pending is Intervenor Counsel's cross-motion for an award of attorneys' fees filed on September 21, 2018. (Doc. 2177.) Subclass Counsel oppose that motion. On September 24, 2018, the court took the pending cross-motions under advisement.

Subclass Counsel ask the court to approve a supplemental attorneys' fee award in the amount of $670,643 and reimbursement of out-of-pocket expenses in the amount of $39,477 as partial compensation for the fees and expenses they incurred in the settlement

of this action, the disbursement of settlement proceeds, and in defending against an appeal. They have resolved the issue of the allocation of the attorneys' fees and expense award with all class counsel except Intervenor Counsel.

Intervenor Counsel oppose Subclass Counsel's request as "unwarranted and excessive[,]" arguing that these fees and expenses were "foreseeable" and would deprive the Dairy Farmer Subclasses of the "lost time value of their money." (Doc. 2164 at 1.) They ask the court to award Subclass Counsel a total fee of $45,000 for defending against the appeal in this matter which they characterize as a "routine service." *Id.* at 2. They assert that the claims service was also part of the court's previous attorneys' fees award and no further fee is warranted in light of what they characterize as Subclass Counsel's undue delay in the claims administration process.

In their cross-motion for attorneys' fees, Intervenor Counsel seek an award of $249,016 in attorneys' fees. They contend that the $47,088.01 Subclass Counsel propose be allocated to them "undervalues Intervenor Counsel's services to the common fund and is not reasonable." (Doc. 2177-1 at 1.) In turn, Subclass Counsel argue that Intervenor Counsel exaggerate their role and should not be compensated substantially in excess of all other counsel who have litigated this case since its inception.

I.  **Factual Background.**

The court has recounted the facts and circumstances that gave rise to this lawsuit and its resolution on numerous occasions,[1] and will not repeat that exercise here. Suffice to say this class action was contentious well beyond the average class action antitrust suit, to the extent such a creature exists. Friction between Subclass Counsel and certain class representatives rendered settlement negotiations problematic and contributed to the court's decision to reject the initial Settlement Agreement and hold an evidentiary

---

[1] *See, e.g.*, Doc. 2096 at 2-6 (Opinion and Order Granting in Part and Denying in Part Motions for Attorneys' Fees and Costs, and Incentive Awards); Doc. 2093 at 1-4 (Opinion and Order Granting Motion for Final Approval of December 2015 Proposed Settlement); Doc. 682 at 1-8 (Opinion and Order Granting Motion for Appointment of Additional Representative Party, Denying Motion for Appointment of Additional Subclass Counsel, and Granting in Part and Denying in Part Motion to Intervene).

hearing regarding certain class representatives' allegations against Subclass Counsel. In the course of these events, the court made the following observations:

> At this juncture, the opposing Subclass Representatives and Subclass Counsel are failing to present a united front on behalf of the Dairy Farmer Subclasses and, in this respect, are undermining the interests of absent class members. As the case progresses towards either trial or to a final settlement, the stalemate and the lack of communication between Subclass Counsel and all but two of the Subclass Representatives is and will continue to be unacceptable. Without a significant change in circumstances, removal of either Subclass Representatives or Subclass Counsel or both may be warranted.

(Doc. 682 at 8.) "In an attempt to remedy this stagnation and to ensure adequate representation of the class, the court [ultimately] appointed additional class representatives and additional class counsel[,]" including the appointment of Intervenor Counsel. (Doc. 2093 at 7.) The court also granted the parties an additional ninety days to negotiate and advised that at the expiration of that period, if no settlement was forthcoming, the case would be set for trial.

On December 23, 2015, the parties advised the court that a revised Settlement Agreement had been reached which expanded the equitable relief afforded the class and provided an opt-out provision for class members who did not wish to be bound by the settlement. Certain class representatives appealed to the Court of Appeals for the Second Circuit on a self-represented basis asserting a number of grounds for rejecting the revised Settlement Agreement (the "Haar appeal"). While Intervenor Counsel characterize the Haar appeal as "close to frivolous," (Doc. 2164 at 7), its dubious merits did nothing to stem either the tide of motions the Haars filed or the scope of the issues they raised on appeal.

Subclass Counsel cross-appealed the court's award of attorneys' fees and costs, seeking a larger portion of the Settlement Fund to be paid to them. Intervenor Counsel opposed this portion of the Haar appeal. Subclass Counsel eventually withdrew its cross-appeal. On April 18, 2017, the Second Circuit affirmed this court's settlement approval and related Orders in a Summary Order. The Haars subsequently petitioned for a writ of

certiorari from the United States Supreme Court which was denied on January 16, 2018. The claims administration process proceeded thereafter with the court holding status conferences and requiring progress reports from Subclass Counsel.

Subclass Counsel assert that they have provided over 2,800 hours of legal services to the Dairy Farmers Subclasses since March 2016. They claim to have incurred more than $1,800,000 in attorneys' fees in gaining final approval of the Settlement Agreement, defending against the Haar appeal, and administering the settlement, but they do not adequately segregate their hours for each of those categories. They assert that they have used discounted hourly rates as well as discounted the number of hours incurred and contend that $670,643 reasonably reflects the services performed on behalf of the class in accordance with the court's prior rulings. They claim a total lodestar amount of $28,790,705.75, which the court has previously found "does not provide a reliable cross check for a reasonable attorneys' fees award" because it does not properly reflect the attorneys' fees award in the Dean Settlement; "should reflect that some of the fees expended . . . could have been avoided by a more cooperative relationship between Lead Counsel and Subclass Representatives[;]" and due to summaries and block billing, the court could not "scrutinize[] the fee petition to ascertain the number of hours reasonably billed to the class[.]" (Doc. 2096 at 9) (internal quotation marks omitted). For these same reasons, the court finds their claimed lodestar of scant assistance in formulating a reasonable supplemental attorneys' fees award.

Intervenor Counsel propose that the court "allocate 13.5% of the $50 million settlement fund to 'Lead Counsel's group' and one-half of one percent" to Intervenor Counsel. (Doc. 2177-2 at 2.) In seeking an award in excess of the $47,088.01 recommended by Subclass Counsel, Intervenor Counsel assert that Subclass Counsel's proposal "reli[es] on an unsound method of valuation and inaccurate characterizations of the respective services that they and Intervenor Counsel provided to the fund and Class." (Doc. 2177-1 at 1-2.) They argue that an award of $249,016 "reduces by half Intervenor Counsel's original proposed allocation to them, more than allowing for the [c]ourt's 40% reduction of Intervenor Counsel's original proposed fee award." (Doc. 2177-2 at 2)

4

(footnote omitted). Intervenor Counsel further assert that their proposed fees are reasonable because "Intervenor Counsel resolved the stalemate and improved the settlement's non-monetary terms enabling the [c]ourt's final approval of the settlement[,]" as well as "acted in direct response to the oft-raised public policy concern about the need for vigorous adversarial review of [Subclass Counsel's] aggressive efforts to grasp excessive fees" from the Settlement Fund. *Id.* at 7, 12.

In seeking a significant attorneys' fee award, Intervenor Counsel also failed to provide billing records. Like Subclass Counsel, they too provide only summaries of their services and indicate the hours attributable to broad categories of services. The court thus has little means of determining whether the fees incurred are reasonable.

Rust Consultants, Inc. ("Rust"), the Claims Administrator for the Settlement Fund, has performed the lion's share of the work with regard to the claims administration process, and has been and will be compensated for that effort. Both Subclass Counsel and Intervenor Counsel ask to be compensated for monitoring the claims administration process. While some compensation is warranted, it should not duplicate the services performed and costs incurred by Rust.

As of June 30, 2018, the $50 million in Settlement Fund has accrued $795,140 in interest. Pursuant to the revised Settlement Agreement, "[a]ll interest earned on the Settlement Fund shall become and remain part of the Settlement Fund." Settlement Agreement, § 8.3. The revised Settlement Agreement further provides that "Subclass Representatives and Subclass Counsel shall be reimbursed, indemnified, and paid solely out of the Settlement Fund for all expenses, including, but not limited to, attorneys' fees, costs, and expenses." Settlement Agreement, § 8.5.

Subclass Counsel propose that they and Intervenor Counsel be paid from the interest earned on the Settlement Fund. Although Intervenor Counsel claim that such a payment to Subclass Counsel will deprive the class of the time value of their money, their own fee request will have the equivalent effect. Framing their fee request as a portion of the total fee award does nothing to alter that reality. In addition, nothing in the revised Settlement Agreement precludes payment of counsel from the interest accrued on the

escrowed Settlement Fund and this amount provides a source of payment that does not immediately diminish the amounts distributed to the Dairy Farmers Subclasses in the claims administration process. The court thus concludes that it is appropriate to consider the accrued interest as a source of payment for the pending fee requests.

## II.    Conclusions of Law and Analysis.

Supplemental fees and expenses may be awarded post-settlement if class counsel perform additional work that benefits the class. *See, e.g., Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 516 (2d Cir. 1998) (concluding that the district court did not abuse its discretion in granting a supplemental award to class counsel based upon work that benefitted the class); *Cassese v. Washington Mut., Inc.*, 27 F. Supp. 3d 335, 339 (E.D.N.Y. 2014) (ruling that a supplemental fee should be awarded to reflect costs incurred in "defending the Settlement on appeal and administering the Settlement and Distribution process").

Similarly, if class counsel incur further expenses not covered by a prior court award, they may seek additional compensation. *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (internal quotation marks omitted).

In deciding the appropriate fee award, if any, the court considers, among other things, the factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), including the relative time and labor expended by counsel; the magnitude and complexities of issues; the quality of representation; the amount of the fee requested in relation to the settlement; and public policy considerations.

In this case, the court must also consider the attorneys' fees previously awarded, the issues raised in the Haar appeal, the avoidance of unnecessary duplication of Rust's services at the expense of the Dairy Farmers Subclasses, and the relative roles of counsel in bringing about a final resolution of this lengthy and complex class action suit.

### A. Intervenor Counsel's Attorneys' Fees Award.

In seeking attorneys' fees of $249,016, Intervenor Counsel use billing rates of $300 per hour for partners and $140 per hour for associate attorneys. Intervenor Counsel claim they incurred 867.2 total hours while engaged the following activities: briefing, preparing for, traveling to, and presenting oral argument in opposition to Subclass Counsel's appeal of the court's fee award; monitoring the Haar appeal; appointing an Advisory Committee member; appointing the Ombudsperson; the claims administration process; and opposing Subclass Counsel's motion for additional fees and expenses. Intervenor Counsel argue that in light of the $7 million dollars in attorneys' fees previously awarded by the court, this represents "a reasonable and fair apportionment of the overall fee award[.]" (Doc. 2177 at 1.) As Intervenor Counsel played no role in the vast majority of the events in this case, this is a flawed starting point. Intervenor Counsel's efforts to improve upon a settlement already achieved warrant fair compensation, but are dwarfed by the efforts Subclass Counsel expended on behalf of the class in litigating this case from start to finish. It is thus erroneous to determine Intervenor Counsel's fee award based solely upon the total fee awarded in the litigation.

In addition, Intervenor Counsel cite no authority that would permit the court to compensate them for services they allegedly rendered to the Dairy Farmers Subclasses before they were appointed as class counsel. The Dairy Farmers Subclasses did not consent to that representation and the court did not authorize it.

While Intervenor Counsel played an important role in the resolution of this matter, they did not forestall the Haar appeal or gain the confidence of class representatives who had opposed the original Settlement Agreement and Subclass Counsel's representation. As the court did not task them with this responsibility, but rather made it clear that they had no greater nor lesser duties and responsibilities than Subclass Counsel, the court does not fault them on that basis. Correspondingly, Intervenor Counsel cannot claim they single-handedly achieved results that Subclass Counsel were unable to achieve.[2]

---

[2] Subclass Counsel's counter-argument that Intervenor Counsel "made no significant contributions for the benefit of the Subclasses[]" and that "[i]n fact, [Intervenor Counsel]

7

Intervenor Counsel brought a wealth of experience in the dairy industry to the settlement table, kept abreast of issues in the case, and offered valuable guidance in the settlement process. Their relationship with the class representatives was untainted by a history of acrimony and infighting. Although the issues did not require a high degree of specialized knowledge at the settlement phase, their experience in the dairy industry undoubtedly lent credibility to their negotiating positions. Intervenor Counsel's participation in the case was comparatively brief, and they occupied no superior status vis-à-vis Subclass Counsel, however they properly understood the Dairy Farmers Subclasses' desire for broader equitable relief and made important contributions in securing it.

The court's task in determining an attorneys' fees award for Intervenor Counsel is complicated by their failure to submit time records with descriptions of work done in support of their hours spent on this matter. *See* Doc. 2096 at 9 (observing that counsel aggregated their hours in broad categories of tasks, thereby diminishing the court's ability to scrutinize their fee request). For some services, they do not claim a lodestar. Intervenor Counsel direct the court to their supporting declarations wherein they state that "[t]he lodestar presented includes their originally submitted lodestar fee of $215,220 plus their additional lodestar incurred in the Appeal, amounting to $33,796." (Doc. 2177-2 at 12.) In Attorney Cassidy's declaration, he states:

> 6. Since my prior declaration I have worked 21.0 hours and my Associate, Matthew M. Shagam has work[ed] some 9.9 hours on the appellate brief that Attorney Daniel Smith and I filed in the Second Circuit Court of Appeals opposing Lead Counsel's appeal of the District Court's fee award.
>
> 7. At the original hourly rates stated in my prior declaration, our work on the appellate brief has a lodestar value of $7,696.
>
> 8. I assert a lodestar value of my law firms' work in this case equaling $47,880 plus, $7,696 which equals a total of $55,576.
>
> 9. The information about the other work, set out below, for which

---

contributed no work of the magnitude or complexity that could support increasing their fee allocation[]" is equally flawed and fails to recognize the important benefits Intervenor Counsel conferred upon the class. (Doc. 2176-1 at 3, 8.)

additional compensation is not sought, is provided in support of the Memorandum's [lodestar] "cross-check" analysis.

10. In fact, my law firm did provide additional services in connection with the Fairness Proceedings equaling 49.4 hours at the rates state[d] above equaling $6,963, I assert no lodestar value for this time.

11. Although I did monitor the progress of the Ha[a]r's pro se appeal of the Court's order approving the settlement, I assert no lodestar value for this time.

12. In addition, I participated in the claims administration phase of the case for total of 9.7 hours which of my usual rate of $300 per hour would have a lodestar value of $2[,]910. Again, I assert no lodestar value for this time.

13. The previously submitted and approved amount of my total, unreimbursed expenses incurred, through March 23, 2016 were $2,093.93.

(Doc. 2177-3 at 2-3.) In Attorney Smith's declaration, he claims to have conducted the following services after submission of the alternative fee petition:

> a. Monitoring of settlement Order appeal. 9.4 hours.
>
> Mr. Cassidy and I reviewed the documents filed as part of the Haars pro se appeal of the Court's Order approving the settlement, and Lead Counsel's briefs and responsive memos. I also monitored the appeal and the subsequent certiorari process before the United States Supreme Court.
>
> b. Appointment process for the Advisory Committee Member. 81.1 hours.
>
> Research by internet and phone to identify a candidate slate; telephonic interviews and conferences with other counsel; repeated travel to Albany for candidate interviews; one trip to Washington, DC for meeting with Subclass Counsel; follow up meeting with final candidate; process for executing employment contract.
>
>> i. In accordance with the settlement agreement, as discussed below, I submitted one invoice to Defendant DFA, and was paid for 12.2 hours in fees. I did not present any further invoices after it became apparent that all counsel were going to spend far more time and expense on this process than anticipated; no arrangement for additional payment has been reached.
>>
>> ii. The 81.1 hours cited above is net of the 12.2 hours of compensated amount.

9

  c. Appointment process for the Ombudsperson. 15.5 hours.

  Section 7.2 of the final Settlement Agreement also provided compensation from Defendant DFA for this work. Again, I did not present any invoices after it again became apparent that all counsel were also going to spend more time and expense on this process than anticipated.

  d. Claims administration process. 22.4 hours.

  Communication with Lead Counsel, Claims Administrator, Market Administrator and Deputy Administrator, General Manager of St[.] Albans Cooperative. Work performed immediately following the Supreme Court's certiorari decision and up to the Court's second status conference.

  e. Opposition to Motion for additional fees and expenses. 9 hours.

8. In addition to this post settlement time, I expended 79.6 hours to prepare, brief and participate in the Fairness proceedings and 37.5 hours to prepare the alternative fee petition. (Exclusive of time related to the fee allocation request contained within that memo.)

9. The additional time itemized in sections 7 and 8 above totals 245.5 hours. Based on my billing rate of $300/hr, this time reflects $73,650.00 in fees.

(Doc. 2177-4 at 3-4.)

  Considering the *Goldberger* factors, the court concludes that Intervenor Counsel are entitled to be compensated for their time incurred in the Haar appeal, monitoring the claims administration process, and their participation in the settlement negotiation process at rates previously approved by this court. The court nonetheless notes that Intervenor Counsel's role in the claims administration process and defending against the Haar appeal was limited. The court determines that the amount of $110,000 (366 hours at $300 per hour) fairly compensates them for their services to the class. In addition, the court awards them $2,093.93 in expenses.

  **B. Subclass Counsel's Supplemental Fee and Expenses Award.**

  Subclass Counsel's request for a supplemental fee award in the amount of $670,643 is more complicated. It has essentially three components: the Haar appeal, the settlement process, and the claims administration process. Intervenor Counsel argue that all three categories were foreseeable and sufficiently compensated in the court's previous

10

attorneys' fees award.

To the extent Subclass Counsel incurred additional fees and expenses in the settlement process, they had an opportunity to petition the court for those amounts and have the court consider them in its June 14, 2016 attorneys' fees and expense award. Although their request could have been included in the court's prior award, the court will not deprive them of reasonable compensation for services rendered post-settlement simply because they failed to ask for compensation previously. The court concludes that $100,000 (366 hours at $300 per hour) is a reasonable attorneys' fee for these services.

Notwithstanding Intervenor Counsel's argument that an appeal should have been expected, the Haar appeal was not inevitable in light of the revised Settlement Agreement's opt-out provision and the reaction of the remainder of the class. Rust compared this settlement with other antitrust class action settlements and characterized the claims rate of eighty-two percent as outstanding and virtually unprecedented. With the vast majority of the class approving the settlement and an opt-out provision for those who did not, it was reasonable to assume that no appeal would be forthcoming. On the other hand, although Subclass Counsel cannot be expected to be clairvoyant in anticipating the likelihood of an appeal, in this case, in light of the personal animus that persisted between certain Subclass Counsel and certain class representatives, an appeal was reasonably foreseeable. That alone, however, should not foreclose a supplemental fee award arising out of the Haar appeal.

Subclass Counsel assert that their requested fee of $290,403 for the Haar appeal is fair and reasonable. Although Subclass Counsel state that they "claim no hours or fees for work related to attorneys' fees[,]" (Doc. 2162-1 at 5 n.2), if the claimed amount pertains only to the Haars' appeal, at an hourly rate of $300, Subclass Counsel would in effect be claiming that they expended 968.01 hours to defend against a self-represented appeal, one that did not address or raise complex issues of antitrust law, but rather sought to re-litigate alleged wrongdoings by Subclass Counsel and the court in resolving and approving the resolution of this case. In such circumstances, the claimed hours are excessive. Although the Haars filed numerous motions and made multiple requests while

11

their appeal was pending before the Second Circuit, Subclass Counsel do not claim that any of them required specialized expertise. Because the Second Circuit places its own limits on what may be filed and by whom, many of the Haars' requests merited only a perfunctory response.

The adequacy of representation by Subclass Counsel in the Haar appeal is beyond question. In addition, there is a public policy interest in ensuring that class action appeals are vigorously pursued or defended in order to reach a final resolution that benefits the class.

Based upon the foregoing, the court concludes that two hundred (200) hours of attorney time at $300 per hour or $60,000 adequately and reasonably compensates Subclass Counsel in defending against the Haar appeal.

To the extent Subclass Counsel seek to recover for fees incurred in appealing the court's attorneys' fees award, they do not explain how their cross-appeal, if successful, would benefit the class. If they prevailed in overturning the court's attorneys' fees award, it would serve only to reduce the Dairy Farmers Subclasses' recovery. In the event of a remand, it would also further delay the claims administration process and potentially result in a second appeal. Although a larger attorneys' fee award might incentivize future class counsel in future class actions, thereby furthering a public interest in ensuring adequate representation for class action plaintiffs, it would confer no benefit on the Dairy Farmers Subclasses in this case. The court thus declines to award any additional fees related to Subclass Counsel's cross-appeal.

In contrast to the Haar appeal, Subclass Counsel's fees associated with the claims administration process were clearly contemplated at the time of the court's June 14, 2016 attorneys' fees award. While that does not and should not foreclose a supplemental award, Intervenor Counsel are correct that Subclass Counsel could have and should have included this in their original request. This portion of the fee award should also not reward duplication of the services performed by Rust. In the absence of an accurate lodestar, the court finds that a reasonable fee for these additional services in the amount of two hundred (200) hours at $300 per hour or $60,000 is a fair and reasonable

attorneys' fees award for Subclass Counsel's oversight and participation in the post-settlement claims administration process.

Subclass Counsel incurred $39,477 in out-of-pocket expenses post-settlement. Regardless of whether those expenses were foreseeable, they were undetermined at the time of the final Settlement Agreement and could not reasonably form the basis of a request. Because the amount of the claimed expenses is reasonable and was incurred in activities that benefitted the class, Subclass Counsel's request for an award of expenses in the amount of $39,477 is GRANTED.

For the foregoing reasons, supplemental attorneys' fees in the amount of $220,000 are hereby awarded to Subclass Counsel as well as $39,447 in reimbursed expenses. Subclass Counsel shall submit an approved allocation of this additional amount among Subclass Counsel within twenty (20) days of the date of this Order.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Subclass Counsel's motion for approval of the proposed allocation of attorneys' fees (Docs. 2174 & 2176), and GRANTS IN PART AND DENIES IN PART Intervenor Counsel's cross-motion for attorneys' fees (Doc. 2177). The court awards Intervenor Counsel $110,000 in attorneys' fees and $2,093.93 in expenses. Subclass Counsel are awarded supplemental attorneys' fees in the amount of $220,000 as well as $39,447 in reimbursed expenses. These fees awards may be paid from the interest accrued on the escrowed Settlement Fund within thirty-five (35) days of this Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 18th day of December, 2018.

Christina Reiss, District Judge
United States District Court